RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; kjm@lnbyb.com

Proposed Counsel for Chapter 11 Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

In re:

CITIZENS DEVELOPMENT CORP.,

    Debtor and Debtor in Possession.

Case No. 10-15142-LT11

Chapter 11

**DEBTOR'S MOTION FOR ORDER AUTHORIZING AND DIRECTING THE SUBSTANTIVE CONSOLIDATION OF DEBTOR WITH AFFILIATED ENTITIES; MEMORANDUM OF POINTS AND AUTHORITIES**

Date:  October 14, 2010
Time:  2:00 p.m.
Place:  325 West F. Street
        Dept. 3 – Room 129
        San Diego, CA

Judge: Hon. Laura S. Taylor

1

4750

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES………………………………….. 7

I.    STATEMENT OF FACTS…………………………………………………….. 7

    A.    Bankruptcy Filing…………………………………………………. 7

    B.    The Debtor's Ownership Structure and Operations………………………. 7

    C.    The Debtor's Assets and Debt Structure………………………………… 10

           *a.*    *The Restaurant Property*……….....………………………….. 10

           *b.*    *The Recreation Center Property*……………………………… 11

           *c.*    *The Lake and Lakefront Land*…………………………………. 12

           *d.*    *The Signage Parcels*…………………………………………. 12

           *e.*    *Park Land*…………………………………………………. 12

           *f.*    *Water Rights*…………………………………………………. 13

    D.    Summary of the Circumstances that Led to the Filing
          of the Debtor's Chapter 11 Case……………………………………. 13

    E.    Substantive Consolidation Of the Resort Entities Is
          Appropriate And Beneficial To The Resort Entities
          And Creditors Of The Resort Entities………………………………….. 13

II.    THE SUBSTANTIVE CONSOLIDATION OF THE RESORT
    ENTITIES IS APPROPRIATE UNDER NINTH CIRCUIT LAW……………..….. 17

III.    AN ANALYSIS OF THE BUSINESS AFFAIRS OF THE
    RESORT ENTITIES WARRANTS AND NECCESITATES
    SUBSTANTIVE CONSOLIDATION…………………………………………. 19

    A.    Substantive Consolidation Of The Resort Entities Is
          Consistent with Applicable Law………………………………………. 19

           *1.*    *Creditors Dealt with the Resort Entities as a*
                *Single Economic Unit and Did Not Rely on*
                *their Separate Identity in Extending Credit to*
                *the Resort Entities*………………………………………… 20

           *2.*    *The Affairs Of The Resort Entities Are So*
                 *Entangled That It Would Not Be Feasible To*
                *Identify And Allocate Their Assets And Liabilities Or*
                *Continue To Attempt To Operate As Separate Entities*………….. 21

i

4750

IV.    SUBSTANTIVE CONSOLIDATION WILL BENEFIT
       CREDITORS AND WILL AVOID NEEDLESS EXPENSES………………..    24

V.     CONCLUSION………………………………………………………………..    25

ii

4750

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

Alexander v. Compton (In re Bonham)
229 F.3d 750 (9th Cir. 2000)............................................................................................passim

Chemical Bank of New York v. Kheel
369 F.2d 845 (2d Cir. 1966)..................................................................................................19

Eastgroup Properties v. Southern Motel Assoc. Ltd.
935 F.2d 245 (11th Cir. 1991)...............................................................................................18

FDIC v. Colonial Realty Company
966 F.2d 57 (2nd Cir. 1992)..................................................................................................18

Flora Mir Candy Corp. v. R.S. Dickson & Co. (In re Flora Mir Candy Corp.)
432 F. 2d 1060..............................................................................................................18, 19

In re Continental Vending
517 F.2d......................................................................................................................18, 19

In re Parkway Calabasas Ltd.
89 B.R. 832 (Bankr. C.D. Cal. 1988) ....................................................................................18

In re Permian Producers Drilling, Inc.
263 B.R. 510 (Bankr. W.D. Tex. 2000) ................................................................................19

In re Vecco Construction Industries, Inc.
4 B.R. 407 (Bankr. E.D. Va. 1980) ......................................................................................19

Sampsell v. Imperial Paper & Color Corp.
313 U.S. 215, 61 S. Ct. 904, 85 L. Ed. 1293 (1941), reh'g denied, 313 U.S. 600, 61 S.
Ct. 1107, 85 L. Ed. 594 (1941)..............................................................................................19

Soviero v. Franklin National Bank of Long Island
328 F.2d 446 (2d Cir. 1964)..................................................................................................19

Union Savings Bank v. Augie/Restivo Banking Co., Ltd. (In re Augie/Restivo Banking
Co., Ltd.)
860 F.2d 515 (2nd Cir. 1988) ...............................................................................................18

**FEDERAL STATUTES**

11 U.S.C. § 105(a)...............................................................................................................18

11 U.S.C. §§ 544-551, et seq...................................................................................................6

iii

11 U.S.C. §§ 1107 and 1108 .................................................................................................. 7

iv

4750

Citizens Development Corp., the debtor and debtor in possession in the above-entitled Chapter 11 bankruptcy case, hereby moves (the "Motion") for the entry of an order authorizing and directing the substantive consolidation of the Resort Entities (as defined below).

The Debtor is the owner, either directly or through its affiliates, and operator, of the Lake San Marcos Resort and Country Club (the "Resort") located on the shores of the 80-acre Lake San Marcos (which the Debtor owns), in San Diego County, approximately 30 miles north of San Diego. The Resort is comprised of 252 acres of land that includes a 139-room hotel, 18,300 square feet of meeting and banquet space, a private 18-hole championship golf course with a clubhouse and pro-shop, a public 18-hole executive golf course, three restaurants, a fitness center, four tennis courts, two outdoor swimming pools and the 80-acre Lake San Marcos. While the Resort is a single Resort operated by the Debtor, the above-described components of the Resort are owned separately by the various Resort Entities. The Resort Entities are comprised of: the Debtor, LSM Country Club LLC ("Country Club"), LSM Hotel LLC ("Hotel") and LSM Executive Course LLC ("Executive Course"). The Debtor wholly owns Country Club and Hotel. Executive Course is directly owned by Matthew C. DiNofia, who is also the President and sole shareholder of the Debtor. Hotel and Executive Course are currently Chapter 11 debtors in possession in separate bankruptcy cases pending before this Court, Case Nos. 10-13024-LT11 and 10-07480-LT11, respectively.

The Resort Entities are inseparably related to one another, with the Debtor as the "hub" of all of the Resort Entities. Separately, the Resort Entities would be almost entirely non-functional and their respective assets standing alone would be significantly less valuable than as a whole. In order for the Resort to operate with any success, the Resort Entities are required to operate in unison, like a single entity. The proper and effective management and operation of the Resort depends in large part upon the ability of the various Resort Entities to work in unison and collectively. It would be virtually impossible to separate the operations, assets and liabilities of the Resort Entities due to the interrelatedness of their operations, their ownership structure, business model, physical and financial connectivity of assets, and overall relationship with each

2

4750

1  other.

2      Under Ninth Circuit law, Substantive consolidation is warranted: (1) when creditors have
3  dealt with related entities as a single economic unit; **or** (2) where the financial and other business
4  affairs of the entities are so intertwined that it becomes virtually impossible to separate their
5  operations, assets and liabilities. See  Here, both prongs of this test are satisfied.

6      Creditors of the Resort Entities deal with the Resort Entities as a single economic unit,
7  rather than separate entities, and do not rely on their separate identity in transacting business with
8  the Resort.  Creditors know of the Resort Entities as "Lake San Marcos Country Club & Resort",
9  and the Resort Entities operate under that name.  Invoices are billed directly to the Debtor
10 regardless of whether other Resort Entities cause such expenses to be incurred.  Thus, the Resort
11 Entities share liabilities, and it would be prohibitively expensive and impractical (or even
12 impossible) to somehow separate liabilities, particularly where the Resort Entities are sharing the
13 services or goods being supplied by various vendors of the Resort.  All checks are written out of
14 the Debtor's accounts, which accounts have been utilized to transact all Resort business
15 irrespective of the identity of the particular Resort Entity involved in such transactions. The
16 Resort Entities file a single tax return and their books and records are maintained on a
17 consolidated basis – for example, the Resort Entities prepare a consolidated balance sheet. The
18 Resort Entities work in unison, as a single enterprise. They share employees, revenues, expenses,
19 and assets.  As a result, the Resort Entities' creditors, customers and employees also treat the
20 Resort Entities as if they are a single business.  Creditors such as suppliers and vendors have not,
21 to the Debtor's knowledge, ever relied upon the separateness of the Resort Entities to extend
22 credit.  The exact opposite is true – such creditors have always treated the Resort Entities as a
23 single entity.  Even secured creditors which may have requested that their collateral be placed in a
24 separate entity have always been paid through overall commingled Resort revenues, as there has
25 never been a complete segregation of Resort funds, since the Resort Entities share bank accounts,
26 revenues and expenses as if they are a single entity.

27      The financial affairs of the Resort Entities are so entangled that it would not be feasible to

28

3

4750

identify and allocate, and keep separate, their assets and liabilities.  The Resort Entities share bank accounts, all in the name of the Debtor (except for the debtor-in-possession accounts that have recently been opened by Hotel and Executive Course), employees (all of whom are the Debtor's employees), management, ownership, revenues, and expenses (for example, all invoices are billed directly to the Debtor), even though they may be for expenses incurred by another of the Resort Entities).  Legal and accounting issues are addressed on a consolidated basis as if the Resort Entities are a single entity. Payroll taxes, sales taxes and hotel bed taxes are paid in the name of the Debtor.  Cash flow shortfalls experienced by one Resort Entity are typically addressed by applying to such shortfalls the revenues generated by other Resort Entities.  That is the manner in which the Resort Entities sustain their operations.  The seasonal nature of Resort operations necessitates such unity of operations and sharing of expenses and revenues.

The Resort Entities also share assets and it would severely harm customers, creditors, and the Debtor's business if the Resort Entities were unable to share assets.  For example, all liquor and food licenses are in the Debtor's name even though such licenses service various Resort Entities.  Hotel guests use the Restaurant for weddings and other ceremonies, and Country Club does catering for such events as well as providing room service support to Hotel.  Residents of Lake San Marcos who pay annual dues to the Debtor receive discounts to Hotel, the fitness center located at Country Club, Executive Course, as well as obtaining access to the Lake.  Common areas shared by the Resort Entities are serviced and maintained by the Debtor.  Country Club and Executive Course utilize the water from the Lake owned by the Debtor – without the use of such water, they would be unable to obtain water feasibly to maintain their golf courses.  Several areas of the Resort encroach upon other parcels of the Resort, particularly along Lake San Marcos, as parking and Resort access is shared between the Hotel, Restaurant, and various other portions of the Resort, with no method of or manner of separation of such parking areas.  Additionally, customers who utilize the services of more than one Resort Entity do not pay the Resort Entities separately – instead, they make single payments made out to the Debtor, which payments are for services or fees owed to various of the Resort Entities.

4

4750

1      Substantive Consolidation would benefit creditors. Each element of the Resort benefits
2  from the synergies of the Resort Entities as a whole, and such synergies will be furthered by
3  terminating the current artificial, technical separation that exists between the Resort Entities. As a
4  single entity, with consolidated assets and liabilities, the administration of the Debtor's and the
5  Resort Entities' bankruptcy cases will be more efficient and practical (Country Club is not a
6  debtor but would be consolidated with the existing debtors if this Motion is granted, see
7  Alexander v. Compton (In re Bonham), 229 F.3d 750 (9th Cir. 2000) (enunciating Ninth Circuit
8  test for substantive consolidation and holding that non-debtor entities may be consolidated with
9  debtor entities). Creditors will stand to recover more if the Motion is granted because as a single
10 economic unit, the Resort Entities are more valuable, will realize superior cash flows, and sustain
11 payments to creditors. Separately, the Resort Entities lose the benefits of being able to share
12 revenues and expenses, share and co-utilize assets, and appropriately service the surrounding
13 homeowners, Hotel guests, and other customers.

14     Accordingly, the Debtor respectfully requests that the Court enter an order:

15     (1)    granting this Motion;

16     (2)    ordering the substantive consolidation of the Resort Entities effective
17 immediately;

18     (3)    treating the assets of each of the Resort Entities as being a single estate;

19     (4)    treating all claims filed against each of the Resort Entities (regardless of
20 which of the Resort Entities the claim is against) as being a claim against the consolidated single
21 estate;

22     (5)    eliminating claims (including guarantees) between and among the Resort
23 Entities, so that the net effect of these inter-company and/or inter-debtor debts will be eliminated
24 as between and among the Resort Entities as part of substantive consolidation;

25     (6)    eliminating duplicate claims filed by the same creditor against more than
26 one Resort Entity;

27

28

5

4750

1    (7)    providing, that, notwithstanding substantive consolidation, nothing

2  contained in any order authorizing substantive consolidation shall affect any claims of the Resort

3  Entities against any third parties including, without limitation, claims under 11 U.S.C. §§ 544-

4  551, et seq., and all applicable state and federal laws;

5    (8)    providing, that, notwithstanding substantive consolidation, all claims which

6  the Debtor has commenced or shall commence on behalf of the Resort Entities shall continue to

7  reside in any of the separate estates that are subject to substantive consolidation, to the extent that

8  it is necessary to sustain such claims, including, but not limited to, issues of standing and

9  jurisdiction to hear and decide such matters; and

10    (9)    granting such other and further relief as this Court deems just and proper

11  under the circumstances.

12

13  Dated: September 16, 2010                    CITIZENS DEVELOPMENT CORP.

14

15                                By: ___ /s/ Krikor J. Meshefejian _____
                                    RON BENDER
16                                    KRIKOR J. MESHEFEJIAN
                                    LEVENE, NEALE, BENDER, YOO
17                                    & BRILL L.L.P.
                                    Proposed Counsel for Debtor and
18                                    Debtor in Possession

19

20

21

22

23

24

25

26

27

28

6

4750

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

A.    **Bankruptcy Filing**.

1.    On August 26, 2010 (the "Petition Date"), Citizens Development Corp. a California corporation, the debtor and debtor in possession herein (the "Debtor"), filed a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (as amended, the "Bankruptcy Code"). The Debtor is managing its financial affairs and operating its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.    **The Debtor's Ownership Structure and Operations**.

2.    The Debtor is the owner (either directly or through its affiliates), and operator, of Lake San Marcos Resort & Country Club (the "Resort"). The Resort is located on the shores of the 80-acre Lake San Marcos, in San Diego County, approximately 30 miles north of San Diego. The Resort is comprised of 252 acres of land that includes a 139-room hotel, 18,300 square feet of meeting and banquet space, a private 18-hole championship golf course with clubhouse and pro-shop, a public 18-hole executive golf course, three restaurants, a fitness center, four tennis courts, two outdoor swimming pools and the 80-acre Lake San Marcos.

3.    While the Resort is a single Resort operated by the Debtor, the various above-described components of the Resort are owned separately by various Resort Entities. The Resort Entities include: the Debtor, LSM Country Club LLC ("Country Club"), LSM Hotel LLC ("Hotel") and LSM Executive Course LLC ("Executive Course"). The Debtor wholly owns Country Club and Hotel. Executive Course is directly owned by Matthew C. DiNofia, who is also the President and sole shareholder of the Debtor. Hotel and Executive Course are currently Chapter 11 debtors in possession in separate bankruptcy cases pending before this Court, Case Nos. 10-13024-LT11 and 10-07480-LT11, respectively. Together the Resort Entities comprise the Resort.

4.    The Resort Entities are inseparably related to one another, with the Debtor as the

4750

"hub" of all of the Resort Entities. Separately, the Resort Entities would be almost entirely non-functional and their respective assets standing alone would be significantly less valuable than as a whole. In order for the Resort to operate with any success, the Resort Entities are required to operate in unison, like a single entity. The proper and effective management and operation of the Resort depends in large part upon the ability of the various Resort Entities to work in unison and collectively. It would be virtually impossible to separate the operations, assets and liabilities of the Resort Entities due to the interrelatedness of their operations, their ownership structure, business model, physical and financial connectivity of assets, and overall relationship with each other.

5. Creditors of the Resort Entities deal with the Resort Entities as a single economic unit, rather than separate entities, and do not rely on their separate identity in transacting business with the Resort. Creditors know of the Resort Entities as "Lake San Marcos Country Club & Resort", and the Resort Entities operate under that name. Invoices are billed directly to the Debtor regardless of whether other Resort Entities cause such expenses to be incurred. Thus, the Resort Entities share liabilities, and it would be prohibitively expensive and impractical (or even impossible) to somehow separate liabilities, particularly where the Resort Entities are sharing the services or goods being supplied by various vendors of the Resort. All checks are written out of the Debtor's accounts, which accounts have been utilized to transact all Resort business irrespective of the identity of the particular Resort Entity involved in such transactions. The Resort Entities file a single tax return and their books and records are maintained on a consolidated basis – for example, the Resort Entities prepare a consolidated balance sheet. Payroll taxes, sales taxes and hotel bed taxes are paid in the name of the Debtor. The Resort Entities work in unison, as a single enterprise. They share employees, revenues, expenses, and assets. As a result, the Resort Entities' creditors, customers and employees also treat the Resort Entities as if they are a single business. Creditors such as suppliers and vendors have not, to the Debtor's knowledge, ever relied upon the separateness of the Resort Entities to extend credit. The exact opposite is true – such creditors have always treated the Resort Entities as a single entity.

8

4750

Even secured creditors which may have requested that their collateral be placed in a separate entity have always been paid through overall commingled Resort revenues, as there has never been a complete segregation of Resort funds, since the Resort Entities share bank accounts, revenues and expenses as if they are a single entity.

6.    The financial affairs of the Resort Entities are so entangled that it would not be feasible to identify and allocate, and keep separate, their assets and liabilities. The Resort Entities share bank accounts, all in the name of the Debtor (except for the debtor-in-possession accounts that have recently been opened by Hotel and Executive Course), employees (all of whom are the Debtor's employees), management, ownership, revenues, and expenses (for example, all invoices are billed directly to the Debtor, even though they may be for expenses incurred by another of the Resort Entities). Cash flow shortfalls experienced by one Resort Entity are typically addressed by applying to such shortfalls the revenues generated by other Resort Entities. That is the manner in which the Resort Entities sustain their operations.

7.    The Resort Entities also share assets and it would severely harm customers, creditors, and the Debtor's business if the Resort Entities were unable to share assets.  For example, all liquor and food licenses are in the Debtor's name even though such licenses service various Resort Entities. Hotel guests use the Restaurant for weddings and other ceremonies, and Country Club does catering for such events as well as provide room service support to Hotel. Residents of Lake San Marcos who pay annual dues to the Debtor receive discounts to Hotel, the fitness center located at Country Club, Executive Course, as well as obtaining access to the Lake. Common areas shared by the Resort Entities are serviced and maintained by the Debtor. Country Club and Executive Course utilize the water from the Lake owned by the Debtor – without the use of such water, Country Club and Executive Course would be unable to obtain water feasibly to maintain their golf courses. Several areas of the Resort encroach upon other parcels of the Resort, particularly along Lake San Marcos, as parking and Resort access is shared between the Hotel, Restaurant, and various other portions of the Resort, with no method of or manner of separation of such parking areas. Additionally, customers who utilize the services of more than one Resort

4750

1  Entity do not pay the Resort Entities separately – instead, they make single payments made out to

2  the Debtor, which payments are for services or fees owed to various of the Resort Entities.

3  **C.    The Debtor's Assets and Debt Structure.**

4        8.    Aside from the Debtor's ownership interests in Hotel and Country Club, the

5  Debtor directly owns approximately 100 acres of land, upon which exist an 80 acre man-made

6  lake known as Lake San Marcos (the "Lake"), two signage parcels (the "Signage Parcels") which

7  are approximately 5,000 square feet each, certain other land adjacent to the Lake (the "Lakefront

8  Land"), and park land adjacent to the Lake ("Park Land").  The Debtor is also the owner of Quail

9  Restaurant (the "Restaurant") and a recreation center (the "Recreation Center").  The Debtor also

10  owns certain water rights (the "Water Rights"), as described below.

11          ***a.    The Restaurant Property.***

12        9.    The Debtor's Restaurant property is located at 1035 La Bonita Drive, Lake San

13  Marcos, California.  The Restaurant, currently not operating, is a 150-seat full service lakefront

14  restaurant with dramatic 20-foot floor-to-ceiling windows showcasing the Lake.  Due to lack of

15  business, the Restaurant ceased operations in January, 2009.  The Debtor has attempted to find a

16  tenant to lease the Restaurant space and pay rent to the Debtor, but has had difficulty attracting a

17  tenant willing to occupy and pay rent for the Restaurant property, despite listing the Restaurant

18  property with multiple commercial borkers in the area who specialize in the leasing of restaurant

19  space.  The Debtor continues to search for a tenant to occupy the Restaurant.  At times, Country

20  Club utilizes the Restaurant to host events, and Hotel guests utilize the Restaurant for events and

21  ceremonies.  Overall, the revenue generated by the Restaurant, is not adequate to pay for the

22  monthly debt service, tax, insurance and other expenses incurred by the Restaurant.

23        10.    The Restaurant is encumbered by a first deed of trust in favor of D&A Semi

24  Annual Mortgage Fund III, LC ("D&A"), securing a claim in the approximate amount of $1

25  million, pursuant to a loan which the Debtor obtained from D&A in the original principal sum of

26  $1 million (the "First D&A Loan").  The First D&A Loan matured in March, 2009, and the

27  Debtor has been unable to repay the First D&A Loan either directly or through a refinancing.

28

10

4750

11.     The Restaurant is also encumbered by a second deed of trust in favor of D&A, securing a claim in the approximate amount of $550,000, pursuant to a loan which the Debtor obtained from D&A in the original principal sum of $500,000 (the "Second D&A Loan").  The Second D&A Loan also matured in March, 2009, and the Debtor has been unable to repay the Second D&A Loan either directly or through a refinancing.

### b.     *The Recreation Center Property.*

12.     The Recreation Center includes a 3,388 square foot conference center with 15-foot ceilings that can accommodate up to 400 guests.  The Recreation Center also provides amenities for surrounding homeowners and hotel guests, including swimming pools, tennis, boat rentals, and fishing.   The Debtor generates income primarily from the following: (1) payments of assessments by homeowners and homeowners associations which enter into leases with the Debtor for the use of the Lake and Recreation Center facilities (there are currently between 800-900 such leases); and (2) payments of fees from groups and other parties that lease conference space for conferences and various other types of events.  Assessments are the primary source of revenue for the Recreation Center.  Assessments are collected twice per year, and, as a result of the interrelatedness of the Resort Entities, are typically utilized to pay expenses of the Resort Entities as such assessments are collected, therefore leaving the Recreation Center with budget shortfalls during the course of the year.

13.     The Recreation Center is encumbered by a first deed of trust in favor of Telesis Community Credit Union ("Telesis"), securing a claim in the approximate amount of $4,800,000 pursuant to a loan which the Debtor obtained from Telesis in the original principal sum of $4,740,000 (the "Telesis Loan").  The Telesis Loan matured in August, 2009, and the Debtor has been unable to repay the Telesis Loan either directly or through a refinancing.  In April, 2010, Telesis filed a lawsuit against the Debtor seeking to collect on the alleged debts owed by the Debtor (the "Telesis Action").  The Telesis Action was filed in the Superior Court for the State of California, County of San Diego, Case No. 37-2010-00090427-CU-BC-CDL.  Telesis and the Debtor have subsequently entered into a forbearance agreement which has essentially stayed the

11

4750

1    Telesis Action, but there currently is no permanent or long-term resolution with respect to the

2    Telesis Loan.

3         *c.*     ***The Lake and Lakefront Land.***

4         14.    The Lake and Lakefront Land comprise of approximately 110 acres, with the

5    Lakefront Land comprising approximately 30 acres of that total amount. The Lakefront Land is

6    currently undeveloped. The Lake offers various recreational activities such as boating, where

7    resort guests can rent boats.[1]    Such rentals generate income for the Debtor and such income is

8    reflected in the Budget for the Recreation Center, which Budget is included in Exhibit 1 to the

9    DiNofia Declaration. The Lake and Lakefront Land are encumbered by a first deed of trust in

10    favor of Pacific West TD Fund II, LP ("Pac West"), securing a claim in the approximate amount

11    of $2,800,000 pursuant to a loan which the Debtor obtained from Pac West in the original

12    principal sum of $2,800,000 (the "Pac West Loan"). The Pac West Loan matured in August,

13    2009, and is cross-collateralized against other assets owned by various entities owned or

14    controlled by Mr. DiNofia.

15         *d.*     ***The Signage Parcels.***

16         15.    The Signage Parcels consist of two approximate 5,000 square feet each pieces of

17    real property located on the corner of Rancho Santa Fe Road and Lake San Marcos Road. The

18    Signage Parcels provide major-thoroughfare exposure and signage for the Resort. The Signage

19    Parcels are encumbered by a first deed of trust in favor of Chris DiNofia ("Chris"), securing a

20    claim in the approximate amount of $250,000 pursuant to a loan agreement which authorizes the

21    Debtor to borrow up to $2,000,000 from Chris. Chris DiNofia and Matthew DiNofia are brothers.

22    This loan matures in August, 2012.

23         *e.*     ***Park Land***.

24         16.    The Debtor owns approximately 8,000 square feet of Park Land adjacent to the

25    Lake which is unencumbered land.

---

[1]    The Debtor is, and has been for more than a year, involved in various disputes with governmental and environmental agencies regarding the Lake and its environmental impact. These issues have negatively affected the Debtor's business operations.

4750

*f.*     ***Water Rights.***

17.     The Debtor has been the long-time owner of various water rights which permit the Debtor to pump water from the Lake. This is a significant asset given that the water is utilized to service the golf courses owned by the Debtor's affiliates. It is necessary, of course, for the golf courses to have access to water. Without access to the Lake water, the golf courses would have to find an alternative source of water, which would be prohibitively expensive.

**D.     Summary of the Circumstances that Led to the Filing of the Debtor's Chapter 11 Case.**

18.     The hospitality and leisure activity industries have experienced a major decline in revenues during the current, ongoing, economic recession. For the Debtor and its affiliates, such a decline began in August-September, 2008. Since that time, the revenues generated by the Debtor and its affiliates have decreased by more than fifty percent (50%). The Debtor has been forced to shut down its Restaurant operations, and has been unable to find a tenant to replace the Debtor's operations at the Restaurant. During that time, while the Debtor's revenues continued to decrease, most of the Debtor's secured debt obligations came due, but the Debtor has not been able to obtain alternative financing. Coupled with these financial problems, the Debtor and its affiliates face significant competition from multiple new golf courses and hotels in an extremely competitive industry. As financial pressure has mounted against the Debtor and its affiliates, the Debtor and certain of its affiliates, such as Hotel and Executive Course, have filed for Chapter 11 protection to preserve estate assets and attempt to collectively restructure their debt obligations and reorganize so as to be able to effectively compete in the marketplace.

**E.     Substantive Consolidation Of the Resort Entities Is Appropriate And Beneficial To The Resort Entities And Creditors Of The Resort Entities.**

19.     The affairs of the Resort Entities are so entangled that consolidation will benefit all creditors in their respective estates and is the only practical alternative available to the parties. The Resort Entities were operated and managed at all times as a consolidated and unified business

13

4750

1  enterprise. Administrative and operational expenses were shared with no real distinction made
2  for a particular company.

3       20.    Creditors of the Resort Entities treated the Resort Entities as a single economic
4  unit and did not rely on their separate identities in transacting business with the Resort Entities
5  prepetition and continue to do so today. Creditors know of the Resort Entities as "Lake San
6  Marcos Country Club & Resort", and the Resort Entities conduct business under that logo.
7  Suppliers bill the Debtor directly, irrespective of which Resort Entity benefits from the provision
8  of such goods or services. While the various Resort Entities may have incurred various expenses
9  for their own business operations, all such expenses were charged to the Debtor. By way of
10 example and not limitation, utility services for the Resort have been contracted for by the Debtor,
11 even though such services are for the various Resort Entities and not only the Debtor. Creditors
12 therefore believed that the Resort Entities were not separate entities, but, rather, were essentially a
13 single entity in the name of the Debtor.

14      21.    Even where creditors may have requested that the Resort Entities remain separate
15 entities, the Resort Entities still did not segregate funds, use separate bank accounts, or maintain
16 corporate formalities.

17      22.    All checks are written out of the Debtor's accounts, which are used for all Resort
18 business irrespective of which Resort Entity is actually transacting such business.

19      23.    Legal and accounting issues are addressed on a consolidated basis as if the Resort
20 Entities are a single entity. The Resort Entities file a single tax return, and their books and
21 records are also consolidated – for example, the Resort Entities prepare a consolidated balance
22 sheet. Payroll taxes, sales taxes and hotel bed taxes are paid in the name of the Debtor.

23      24.    All purchases, insurance, collections, inventory control, delivery services, filing
24 and general clerical matters are handled on a consolidated basis, as are the management of: (a)
25 golf reservations, (b) conference and meeting services, (c) marketing, and (d) personnel decisions.

26      25.    Ownership of the Resort Entities ultimately resides with a single person. The
27 Resort Entities share centralized management, officers, a human resources department, legal
28

14

4750

department, accounting department, and employees.   The Resort Entities shared the same corporate address, and the Resort Entities' assets are all located in the same vicinity.  There is an overlap in use of the Resort Entities' assets by both the Resort Entities and customers of the Resort.  Residents of Lake San Marcos who pay annual dues receive a discount for Hotel and also the fitness center located at Country Club.  Hotel patrons utilize the conference center amenities owned by the Debtor. The Resort Entities have always been managed and operated in this fashion - as if they are a single economic unit – and such management has benefited customers and the Resort.

26.    Even customers of the various Resort Entities did not treat the Resort Entities as separate entities.   Customers of the various Resort Entities would not pay the Resort Entities separately – instead, they would make single payments made out to the Debtor, which payment would be for services or fees owed to several of the Resort Entities.

27.    Additionally, intercompany transfers were the norm, as the Resort Entities shared bank accounts, covered each others' expenses, and shared revenues to cover respective cash flow shortfalls.  No written agreements regarding such transfers or management of funds existed.  For instance, although the Debtor manages Hotel and the other Resort Entities, no written agreements between the parties has ever existed.  Maintenance of the Resort is conducted on a consolidated basis, with the Resort Entities sharing maintenance staff.  By sharing such costs of maintenance, the Resort Entities benefit.

28.    The Resort Entities share assets and it would severely harm customers, creditors, and the Debtor's business if the Resort Entities were unable to share assets.  For example, all liquor, food and health licenses are in the Debtor's name even though such licenses service various Resort Entities.  Hotel guests use the Restaurant for weddings and other ceremonies, and Country Club does catering for such events as well as provide room service support to Hotel. Residents of Lake San Marcos who pay annual dues to the Debtor receive discounts to Hotel, the fitness center located at Country Club, Executive Course, as well as obtaining access to the Lake. Common area shared by the Resort Entities are serviced and maintained by the Debtor.  Country

15

4750

1    Club and Executive Course utilize the water from the Lake owned by the Debtor – without the use

2    of such water, Country Club and Executive Course would be unable to feasibly obtain water to

3    maintain their golf courses.  Executive Course and Country Club share equipment, mowers, and

4    employees.  Several areas of the Resort encroach upon other parcels of the Resort, particularly

5    along Lake San Marcos, as parking and Resort access is shared between the Hotel, Restaurant,

6    and various other portions of the Resort, with no method of or manner of separation of such

7    parking areas.

8          29.    The Resort Entities are a single enterprise that cannot be separated.  The artificial

9    and technical distinction serves no real practical purpose and should be abolished in favor of a

10   substantively consolidated estate which will be more easily administered and more valuable as a

11   single, unified, going concern.  The time and expense necessary even to attempt to unscramble the

12   Resort Entities' affairs and unwind intercompany transfers and other transactions would be so

13   substantial as to threaten the realization of any recovery for creditors of the Resort Entities.

14         30.    Additionally, each element of the Resort benefits from the synergies of the Resort

15   Entities as a whole, and such synergies will be furthered by terminating the current artificial,

16   technical separation that exists between the Resort Entities. As a single entity, with consolidated

17   assets and liabilities, the administration of the Debtor's and the bankruptcy cases of the other

18   Resort Entities will be more efficient and practical (Country Club is not a debtor but would be

19   consolidated with the existing debtors if this Motion is granted).  Creditors will stand to recover

20   more if the Motion is granted because as a single economic unit, the Resort Entities are more

21   valuable, will realize superior cash flows, and sustain payments to creditors.  Separately, the

22   Resort Entities lose the benefits of being able to share revenues and expenses, share and co-utilize

23   assets, and appropriately service the surrounding homeowners, Hotel guests, and other customers.

24         31.    As a result, the Debtor submits that the substantive consolidation of the Resort

25   Entities is necessary to address the nearly impossible task of administering and operating these

26   entities as separate entities.

27

28

16

4750

## II.

## THE SUBSTANTIVE CONSOLIDATION OF THE RESORT ENTITIES IS
## APPROPRIATE UNDER NINTH CIRCUIT LAW

The substantive consolidation of the Resort Entities is necessary and warranted under applicable law. The financial affairs of the Resort Entities are so entangled and interconnected that it would be virtually impossible to separate the Resort Entities now and operate them as independent, stand-along businesses capable of individually sustaining operations. Additionally, creditors of the Resort Entities have never truly treated the Resort Entities as separate entities. The Resort Entities have always been treated as a single entity – the Resort. Substantive consolidation will address the administrative problems that would result if the Resort Entities are required to operate separately. Additionally, creditors will benefit from substantive consolidation because the Resort is more valuable as a single, unified operation as opposed to an incoherent multitude of entities separate and distinct, with no ability to combine revenues, share employees, and combine efforts to generate business and succeed economically. For these reasons, the Resort Entities should be substantively consolidated.

Substantive consolidation of bankruptcy estates combines the assets and liabilities of separate – but related – debtors into a single pool and treats them as though they belong to a single entity.   Substantive consolidation enables a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in a common metaphor in order to reach assets for the satisfaction of debts of a related corporation. In place of two or more debtors, each with its own estate and body of creditors, substantive consolidation substitutes a common fund of assets with a combined body of creditors. The consolidated assets create a single fund from which all claims against the consolidated debtors are satisfied; duplicate and inter-company claims are extinguished; and the creditors of the consolidated entities are combined for purposes of voting on and receiving distributions under a chapter 11 plan.

Bankruptcy Courts have the power to order substantive consolidation by virtue of their general equitable powers under Section 105, despite the fact that there is no express provision in

17

4750

1   the Bankruptcy Code for the substantive consolidation of numerous entities.[2]  Alexander v.
2   Compton (In re Bonham), 229 F.3d 750, 764 (9th Cir. 2000); Eastgroup Properties v. Southern
3   Motel Assoc. Ltd., 935 F.2d 245, 248 (11th Cir. 1991); FDIC v. Colonial Realty Company, 966
4   F.2d 57, 58 (2nd Cir. 1992); Union Savings Bank v. Augie/Restivo Banking Co., Ltd. (In re
5   Augie/Restivo Banking Co., Ltd.), 860 F.2d 515, 518 n.1 (2nd Cir. 1988); In re Parkway Calabasas
6   Ltd., 89 B.R. 832, 837 (Bankr. C.D. Cal. 1988).  In fact, the power to substantively consolidate
7   bankruptcy cases "has been considered part of the bankruptcy court's general equitable powers
8   since the passage of the Bankruptcy Act of 1898."  Bonham, 229 F.2d at 763 (citations omitted).

9       "The primary purpose of substantive consolidation 'is to ensure the equitable treatment of
10  all creditors.'"  Bonham, 229 F.2d at 764 (*quoting* Augie/Restivo, 860 F.2d at 518).  Once a case
11  has been substantively consolidated, all assets and liabilities of each entity are pooled and all
12  inter-company liabilities are eliminated.  Augie/Restivo, 860 F.2d at 518.  Since the doctrine of
13  substantive consolidation is based strictly on fairness, "there are no statutorily prescribed
14  standards." 2 Collier § 105.09[2] at 105-88 and 105-89.  Alternatively, the standards developed in
15  case law determine whether substantive consolidation should be permitted. Id.

16      In the Bonham case, the Ninth Circuit analyzed the tests applied in various circuits with
17  respect to substantive consolidation.  Following its analysis, the Ninth Circuit adopted the test
18  applied by the Second Circuit.[3]  Bonham 229 F.2d at 766 ("The Second Circuit's approach is
19  more grounded in substantive consolidation and economic theory; it is also more easily applied.
20  Thus, we adopt it....").  Accordingly, the Ninth Circuit applies "an independent test which
21  requires the consideration of two elements: (1) whether creditors dealt with the entities as a single
22  economic unit and did not rely on their separate identity in extending credit; or (2) whether the

---

[2] Section 105 (a) provides that "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

[3] The Second Circuit has noted that substantive consolidation is appropriate when creditors of the consolidated entities treated the entities as a unit and the business affairs of the consolidated entities were hopelessly entangled.  Bonham 220 F.3d at 764 (*citing* Augie/Restivo, 860 F. 2d at 518; Flora Mir Candy Corp. v. R.S. Dickson & Co. (In re Flora Mir Candy Corp.), 432 F. 2d 1060, 1062-63; In re Continental Vending, 517 F.2d at 1000.

18

4750

affairs of the debtor are so entangled that consolidation will benefit all creditors"[4] (the "Bonham Factors"). Bonham 229 F.2d at 766 (*quoting* In re Reider, 31 F.3d 1102, 1108 (11th Cir. 1994) *citing* Augie/Restivo, 860 F.2d at 518) (emphasis added). As a result, if either element is satisfied, a sufficient basis for substantive consolidation exists. Bonham 229 F.2d at 766.[5]

Here, under either prong of the Bonham test, substantive consolidation is both warranted and appropriate.

## III.

## AN ANALYSIS OF THE BUSINESS AFFAIRS OF THE RESORT ENTITIES WARRANTS AND NECCESITATES SUBSTANTIVE CONSOLIDATION

A.    **Substantive Consolidation Of The Resort Entities Is Consistent with Applicable Law.**

---

[4] Entanglement of the Debtors' financial affairs warrants substantive consolidation if there is no way to accurately identify and allocate the Debtors' assets. Bonham 229 F.2d at 765.

[5] The codification of substantive consolidation as a remedy to limit prejudice to creditors has its genesis in the Supreme Court's decision in Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S. Ct. 904, 85 L. Ed. 1293 (1941), reh'g denied, 313 U.S. 600, 61 S. Ct. 1107, 85 L. Ed. 594 (1941). In recognizing the merit of substantive consolidation in bankruptcy proceedings, the Supreme Court stated that:

> (W)here the relationship between the stockholder and the corporation was such as to justify the use of summary proceedings to absorb the corporate assets into the bankruptcy estate of the stockholder, the corporation's unsecured creditors would have the burden of showing that their equity was paramount in order to obtain priority as respects the corporate assets.

Id., at 219.

After Sampsell, the majority of the significant decisions on substantive consolidation were rendered by the Second Circuit. See Soviero v. Franklin National Bank of Long Island, 328 F.2d 446 (2d Cir. 1964); Chemical Bank of New York v. Kheel, 369 F.2d 845 (2d Cir. 1966); Flora Mir Candy Corp. v. R.S. Dickson & Co., 432 F.2d 1060 (2d Cir. 1970); In re Continental Vending Machine Corp., 517 F.2d 997 (2d Cir. 1975).

A number of courts, building on the decisions of the Supreme Court and the Second Circuit, focused on the application of various "factors", still used today, including:

a.    the degree of difficulty in segregating and ascertaining individual assets and liabilities;
b.    the presence or absence of consolidated financial statements;
c.    the profitability of consolidation at a single physical location;
d.    commingling of assets and business functions;
e.    unity of interests and ownership between the various corporate entities;
f.    existence of parent and inter-corporate guarantee on loans; and
g.    the transfer of assets without formal observance of corporate formalities.

See In re Vecco Construction Industries, Inc., 4 B.R. 407 (Bankr. E.D. Va. 1980); In re Permian Producers Drilling, Inc., 263 B.R. 510 (Bankr. W.D. Tex. 2000).

4750

*1.*    ***Creditors Dealt with the Resort Entities as a Single Economic Unit and Did Not Rely on their Separate Identity in Extending Credit to the Resort Entities.***

Creditors of the Resort Entities consistently dealt with the Debtor on behalf of the entire group of Resort Entities, without regard for which legal entity may have been involved in a particular transaction. All of the Resort Entities share a common corporate address, share the same officers and employees, and conducted business as a single enterprise. Invoices and purchase orders were sent under the overall Resort logo and letterhead, all corporate stationery reflected that the entity from whom such correspondence was sent was the Resort, and all checks written on behalf of the Resort Entities were the Debtor's checks. In addition, funds received from each of the Resort Entities were generally deposited into common accounts, and the Debtor and other Resort Entities used such commingled funds for all corporate purposes. Because of these interrelationships, creditors as a whole would reasonably have believed that the only entity with whom they were dealing was the Debtor.

Creditors know of the Resort Entities as "Lake San Marcos Country Club & Resort". Suppliers bill the Debtor directly, irrespective of which Resort Entity benefits from the provision of such goods or services. While the various Resort Entities may have incurred expenses for their own business operations, all such expenses were charged to the Debtor. Utility services and other services for the Resort have been contracted for by the Debtor, even though such services are for the various Resort Entities and not only the Debtor. Employees of the Resort Entities are all the Debtor's employees even if they perform work for the other Resort Entities. Such employees would receive a paycheck from the Debtor from funds in the Debtor's accounts. Even customers of the various Resort Entities did not treat the Resort Entities as separate entities. Customers of the various Resort Entities would not pay the Resort Entities separately – instead, they would make single payments to the Debtor, which payments would be for services or fees owed to various of the Resort Entities.

In short, the Debtor's creditors, employees and customers treated the Resort Entities as a single economic unit. Even though certain secured creditors did initially require the Resort

4750

Entities to place assets in separate entities, such secured creditors have been paid throughout the course of their dealings with the Debtor by the Resort Entities as a whole, from checks written by the Debtor, through the Debtor's bank accounts. There has never been any true separation of the Resort Entities' assets, as the collateral of various lenders has been utilized by the various Resort Entities, irrespective of the underlying ownership of such collateral. Creditors of the Resort Entities have always been aware of the interrelated and unified nature of the Resort's operations, and did not rely on the Resort Entities' separate identities in transacting with the Debtor. Accordingly, the Debtor believes that the first element for substantive consolidation is satisfied.

2.  *The Affairs Of The Resort Entities Are So Entangled That It Would Not Be Feasible To Identify And Allocate Their Assets And Liabilities Or Continue To Attempt To Operate As Separate Entities.*

"Consolidation under the second factor, entanglement of the debtor's affairs, is justified only where 'the time and expense necessary even to attempt to unscramble then [is] so substantial as to threaten the realization of any net assets for all the creditors **or** where no accurate identification and allocation of assets is possible." Bonham, 229 F.3d at 766 (emphasis added) (citing Augie/Restivo, 860 F.2d at 519). Here, the Debtor believes that both sub-elements are satisfied.

First, the Debtor believes that it will not be able to accurately identify and allocate its assets and liabilities for the following reasons: Although the Resort Entities are technically separate corporations, the Resort Entities operated as single entity. The Resort Entities maintain consolidated books and records, file consolidated tax returns, commingle revenues and share expenses. There is no way of now undoing accurately the many years of these practices. Bank accounts were in the name of only the Debtor, and while the Debtor maintained two "Country Club" operating accounts, even those accounts included revenues derived from the use of the Recreation Center, which is not even technically owned by Country Club. It would be virtually impossible to unwind these transactions now, correctly re-allocate revenues, and somehow

21

4750

1  reverse expense payments to reflect the true allocation of revenues and expenses amongst the
2  Resort Entities.

3        Additionally, the Resort Entities share common ownership, management, employees,
4  corporate offices, and operate under the "Lake San Marcos Country Club & Resort". The Debtor
5  wholly owns Hotel and Executive Course. The Debtor, in turn, is wholly owned by Matthew C.
6  DiNofia, who owns Country Club. All of the Resort Entities are ultimately owned and controlled
7  by a single person, and comprise the Resort – a hallmark of cause to substantively consolidate.

8        The Resort Entities work in unison to sustain the Resort and are reliant upon each other to
9  conduct their business. For example, without Country Club's ability to use Lake water (owned by
10 the Debtor), Country Club would be unable to maintain its golf course. Without Hotel's ability to
11 use the Debtor's employees, the Hotel would be unable to run its business. Without the Resort
12 Entities being able to combine revenues, the Resort Entities separately would be unable to survive
13 the seasonal shifts in revenue streams.

14       Thus the Resort Entities share assets and it would severely harm customers, creditors, and
15 the Debtor's business if the Resort Entities were unable to share assets. For example, all liquor
16 and food licenses are in the Debtor's name even though such licenses service various Resort
17 Entities. Hotel guests use the Restaurant for weddings and other ceremonies, and Country Club
18 does catering for such events as well as providing room service support to Hotel. Country Club
19 utilizes the water rights owned by the Debtor – without the use of such water, Country Club
20 would be unable to feasibly obtain water to maintain its golf course. Country Club and Executive
21 Course share equipment such as lawn mowers, as well as employees who are capable of running
22 and maintaining golf courses. Several areas of the Resort encroach upon other parcels of the
23 Resort, particularly along Lake San Marcos, as parking is shared between the Hotel, Restaurant,
24 and various other portions of the Resort, with no method of or manner of separation of such
25 parking areas. Additionally, customers who utilize the services of more than one Resort Entity do
26 not pay the Resort Entities separately – instead, they make single payments to the Debtor, which
27 payments would be for services or fees owed to various of the Resort Entities. It would be

28

4750

1    impossible to somehow account for the commingled use of assets between the Resort Entities, or
2    the proper allocation of customer payments, or the countless intercompany transfers that have
3    occurred as a result of the sharing of bank accounts and use of revenues from one Resort Entity to
4    cover the expenses of another Resort Entity. While one Resort Entity will have benefited from
5    the use of its affiliates' assets, there exist no written agreements memorializing the terms of any
6    such use and therefore it would be impossible to retroactively account for shared use and such
7    benefits obtained by one Resort Entity at the expense of another.

8        The second factor of this portion of the Bonham test is also satisfied because the time and
9    expense necessary even to attempt to unscramble the many years of commingled transactions
10   would be so substantial as to threaten the realization of any recovery for the creditors of the
11   Debtor and the other Resort Entities. The commingling of assets and liabilities that occurred
12   prepetition was so pervasive that the Debtor believes that it would be extremely difficult and
13   expensive, if not impossible, to segregate with accuracy the Resort Entities' assets and liabilities,
14   so that creditors could accurately ascertain which Resort Entities owed what to whom and which
15   Resort Entity paid for the obligations of another Resort Entity. Further, it would be virtually
16   impossible to operate the Resort Entities as completely separate businesses, and it would not be
17   beneficial to do so anyway, given that the Resort Entities, standing alone, would be unable to
18   effectively operate and service Resort customers or generate adequate revenue. The Debtor
19   believes that in order to avoid the substantial expense of attempting to unscramble and keep
20   separate the Debtor's financial affairs, substantive consolidation is appropriate in this case and the
21   only sensible manner in which to proceed.

22       The Debtor has satisfied both prongs of the Bonham test despite the fact that satisfying
23   only one prong is necessary to justify the substantive consolidation of the Resort Entities. After
24   reviewing all of the foregoing and balancing the interests of creditors (who would actually likely
25   benefit from substantive consolidation), it is clear that the cost of untangling the Debtor's
26   financial affairs far outweighs its benefits. Thus, under either test, substantive consolidation is
27   warranted, justified and appropriate.

28

23

4750

**IV.**

## SUBSTANTIVE CONSOLIDATION WILL BENEFIT CREDITORS AND WILL AVOID
## NEEDLESS EXPENSES

Substantive consolidation of the Resort Entities will avoid potential expenses and rationalize administrative costs for the collective estates. There are currently three active and separate Chapter 11 proceedings pending before the same Court (the Debtor's, Hotel's and Executive Course's Chapter 11 cases). These entities are so interrelated and intertwined that it will be virtually impossible to reorganize and administer their estates separately. Coupled with that is the fact that one of the Resort Entities is not in bankruptcy (Country Club), yet shares revenues, expenses, customers, creditors and employees with the three debtors in possession. Pursuant to Bonham, the substantive consolidation of a non-debtor entity with debtor entities is possible and, in this case, completely warranted. In re Bonham, 229 F.3d 750 (enunciating Ninth Circuit test for substantive consolidation and holding that non-debtor entities may be consolidated with debtor entities). Without substantively consolidating the Resort Entities, it would be virtually impossible for the Resort Entities to continue operating in the long-run while the debtor in possession Resort Entities comply with the various rules and regulations of the Bankruptcy Code, including with respect to the use of cash collateral (given that revenues and expenses are shared), payments to employees (given that employees are shared), use of estate assets (given that assets are shared), and use of bank accounts (given that bank accounts are shared). By eliminating the artificial separation of the Resort Entities, the logistical problems in administering the three bankruptcy estates would be solved. Consolidation will curtail potential administrative expenses that could possibly be incurred if the estates are maintained and administered solely as separate estates. Creditors would benefit from such an approach, and it is difficult to imagine a scenario where creditors would be prejudiced in light of the ample evidence warranting consolidation.

Indeed, each element of the Resort benefits from the synergies of the Resort Entities as a whole, and such synergies will be furthered by terminating the current artificial, technical

24

4750

1 separation that exists between the Resort Entities. As a single entity, with consolidated assets and
2 liabilities, the administration of the Debtor's and the Resort Entities' bankruptcy cases will be
3 more efficient and practical (Country Club is not a debtor but would be consolidated with the
4 existing debtors if this Motion is granted). Creditors will stand to recover more if the Motion is
5 granted because as a single economic unit, the Resort Entities are more valuable, will realize
6 superior cash flows, and sustain payments to creditors. Separately, the Resort Entities lose the
7 benefits of being able to share revenues and expenses, share and co-utilize assets, and
8 appropriately service the surrounding homeowners, Hotel guests, and other customers.
9 Accordingly, the Motion should be granted

10
## V.

11
## CONCLUSION

12 Based on the foregoing, the Debtor respectfully requests that the Court grant the Motion in
13 all respects and grant such other and further relief as the Court deems just and proper.

14

15 Dated: September 16, 2010                    CITIZENS DEVELOPMENT CORP.

16
                                       By:  _/s/Krikor J. Meshefejian_
17                                          RON BENDER
                                            KRIKOR J. MESHEFEJIAN
18                                          LEVENE, NEALE, BENDER, YOO
                                            & BRILL L.L.P.
19                                          Proposed Counsel for Debtor and
20                                          Debtor in Possession

21

22

23

24

25

26

27

28

25

4750

| In re:                          |            | CHAPTER 11               |
|---------------------------------|------------|--------------------------|
| CITIZENS DEVELOPMENT CORP.,      |            |                          |
|                                 | Debtor(s). | CASE NO. 10-15142-MM11   |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described as: **DEBTOR'S MOTION FOR ORDER AUTHORIZING AND DIRECTING THE SUBSTANTIVE CONSOLIDATION OF DEBTOR WITH AFFILIATED ENTITIES; MEMORANDUM OF POINTS AND AUTHORITIES**, will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ["NEF"]** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 16, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Service information on attached page  [X]

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL OR ATTORNEY SERVICE:** On **September 16, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service and/or by attorney service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**BY OVERNITE EXPRESS**
Hon. Laura S. Taylor
U. S. Bankruptcy Court/So. District (San Diego)
Jacob Weinberger U. S. Courthouse
325 West F Street, Room 129
San Diego, CA 92101-6998

**BY U.S. MAIL**
*Debtor*
Matthew C. DiNofia
Citizens Development Corp.
1295 Discovery Street
San Marcos, CA  92078

Service information on attached page  [X]

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Service information on attached page  [ ]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 16, 2010 | TRISH MELENDEZ |  |
|--------------------|----------------|--------------|
| *Date*             | *Type Name*    | *Signature*  |

4750

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Ron Bender on behalf of Debtor Citizens Development Corp.
rb@lnbyb.com

Haeji Hong on behalf of United States Trustee United States Trustee
Haeji.Hong@usdoj.gov,
USTP.Region15@usdoj.gov;shannon.m.vencill@usdoj.gov;tiffany.l.carroll@usdoj.gov

Dean T. Kirby on behalf of Creditor Javier Serhan
dkirby@kirbymac.com,
twright@kirbymac.com;jrigg@kirbymac.com;gsparks@kirbymac.com;jcastranova@kirbymac.com;jlewin@kirbymac.com

Krikor Meshefejian on behalf of Debtor Citizens Development Corp.
kjm@lnbyb.com

Kelly Ann Mai Khanh Tran on behalf of Interested Party Ronald Frazar, Trustee of the Ronald Frazar 1999
Trust
ktran@mkblaw.com, ssandbeck@mkblaw.com

United States Trustee
ustp.region15@usdoj.gov

**II. SERVED BY U.S. MAIL**

**[SEE ATTACHED SERVICE LIST]**

1-2-1 MARKETING, INC
20607 WILD SPRINGS DRIVE
SAN ANTONIO, TX 78258

24 HOUR FIRE PROTECTION, INC.
2012 E. VISTA WAY
VISTA, CA 92084

3E COMPANY, INC.
1905 ASTON AVENUE, SUITE 100
CARLSBAD, CA 92008

6.2.6 EQUIPMENT RENTALS
175 SOUTH VIA VERA CRUZ
SAN MARCOS, CA 92078-2615

A T & T
PAYMENT CENTER
SACRAMENTO, CA 95887-0001

A T & T ADVERTISING & PUBLISHING
P. O. BOX 989046
WEST SACRAMENTO, CA 95798-9046

ACCOUNTEMPS
FILE 73484
P.O. BOX 60000
SAN FRANCISCO, CA 94160-3484

ACUSHNET/TITLEST
P.O. BOX 88112
CHICAGO, IL 60695-1112

AHEAD
ATTN: A/R DEPT
270 SAMUEL BARNET BLVD
NEW BEDFORD, MA 02745

AIRGAS WEST
P. O. BOX 7423
PASADENA, CA 91109-7423

ALLIANCE RESERVATIONS NETWORK
428 E. THUNDERBIRD ROAR, #247
PHOENIX, AZ 85022

AM&E
606 S. Hacienda D rive
TEMPE, AZ 85281-2988

AMERICA'S FINEST BAR SUPPLY
P. O. BOX 3494
SAN DIEGO, CA 92163

AMERICAN BATTERY SUPPLY
525 W. WASHINGTON
ESCONDIDO, CA 92025

AMERICAN EXPRESS CONSUMER
2421 WEST PEORIA AVE., 3RD
PHOENIX, AZ 85029

AMERICAN HOTEL REGISTER CO.
16458 COLLECTIONS CENTER DRIVE
CHICAGO, IL 60693

ANAR PARTY RENTAL, INC
925 POINSETTIA AVE, STE 5
VISTA, CA 92081

ANDMORE CORPORATION
13125 DANIELSON ST. STE 104
POWAY, CA 92064

ANGELO GABRIELE
20521 HIGHWAY 76
PAUMA VALLEY, CA 92061

ARROW PIPELINE REPAIR, INC
1330 PARK CENTER DRIVE
SUITE 101
VISTA, CA 92081

ARROWHEAD MT. SPRING WATER
P.O. BOX 856158
LOUISVILLE, KY 40285-6158

ASCAP
21678 NETWORK PLACE
CHICAGO, IL 60673-1216

ASH CITY USA
PMB 816, 60 INDUSTRIAL PARKWAY
CHEEKTOWAGA, NY 14227

ATCO INTERNATIONAL
2136 KINGSTON COURT
MARIETTA, GA 30067-8902

ATEL COMMUNICATIONS, INC
8447 MIRAMAR MALL
SAN DIEGO, CA 92121

ATLAS PEN AND PENCIL CORP.
P O BOX 553673
DETROIT, MI 48255-3673

AUTO CLUB OF SO CALIF/SANTA AN
P.O. BOX 25001
APPROVED ACCOMMOD DEPT A1
SANTA ANA, CA 92799-5001

AUTO CLUB OF SOUTHERN CA/DOWNE
8223 FIRESTONE BLVD.
DOWNEY, CA 90241

AUTO-CHLOR SYSTEM
4388 VANDEVER AVENUE
SAN DIEGO, CA 92120

AZUMANO TRAVEL SERVICE/OR
320 SW STARK, SUITE 600
PORTLAND, OR 97204

BALBOA CAPITAL CORPORATION
P. O. BOX 79018
CITY OF INDUSTRY, CA 91716-9018

BANDWIDTH.COM INC.
75 REMITTANCE DR. STE 6647
CHICAGO, IL 60675-6647

BANK OF AMERICA
P.O. BOX 15731
WILMINGTON, DE 19886-5731

Bank of the West
180 MONTGOMERY ST, 25TH FLOOR
San Francisco, CA 94104

BARKER, OLMSTED & BARNIER
2341 JEFFERSON ST. SUITE 200
SAN DIEGO, CA 92110

BCD TRAVEL
SIX CONCOURSE PARKWAY NE
12TH FLOOR
ATLANTA, GA 30328

BESTWAY LAUNDRY SOLUTIONS
1035 EAST THIRD STREET
CORONA, CA 92879-7476

BOYD COFFEE COMPANY
19730 NE SANDY BLVD.
PORTLAND, OR 97230

BRIDGESTONE SPORTS (USA), INC.
P.O. BOX 2908
CAROL STREAM, IL 60132-2908

BRIGGS TREE COMPANY INC.
1111 POINSETTIA
VISTA, CA 92083

BUSINESS MUSIC & COMMUNICATIONS
8450 PRODUCTION AVE STE B
SAN DIEGO, CA 92121

CA State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279-8006

CAL-WEST AIR CONDITIONING, INC
2366 Auto Park Way
ESCONDIDO, CA 92029

CALI-FAME OF LOS ANGELES, INC
20934 SOUTH SANTA FE AVE
CARSON, CA 90810-1131

CALIFORNIA BAKING CO
PO BOX 761
SAN MARCOS, CA 92079

California Credit Union
701 N. BRAND BLVD
3RD FLOOR
GLENDALE, CA 91203

CALIFORNIA TREE SERVICE, INC
334 MULBERRY DRIVE
SAN MARCOS, CA 92069

CALLAWAY GOLF
P. O. BOX 9002
CARLSBAD, CA 92018-9002

.

Campos/Furber Enterprises LTD
dba: Panorama Travel
9450 SW Commerce Circle, #111
WILSONVILLE, OR 97070

CANNON PACIFIC SERVICES, INC
285 PAWNEE, SUITE A
SAN MARCOS, CA 92078

CARQUEST SAN MARCOS
1365 GRAND AVE., SUITE 100
SAN MARCOS, CA 92069

CATER-EASE
HORIZON BUSINESS SERVICES, INC
1020 GOODLETTE ROAD NORTH
NAPLES, FL 34102

Chris DiNofia
Magnifund Group
1 Civic Center Drive, #370
San Marcos, CA 92069

CHRISTOPHERSON ANDAVO TRAVEL
5680 GREENWOOD PLAZA BLVD.
GREENWOOD, CO 80111

CINTAS FIRST AID & SAFETY
6400 LUSK BLVD STE D108
SAN DIEGO, CA 92121

CIT TECHNOLOGY FIN. SERV. INC
P. O. BOX 100706
PASADENA, CA 91189-0706

CitiCapital Commercial Corp.
3950 Regent Blvd.
Irving, TX 75063

CitiCapital Commercial Leasing Corp.
3950 Regent Blvd.
Irving, TX 75063

CLUB HATS
4775 HIGHLAND AVE.
LA MESA, CA 91941

COAST PAPER & RIBBON PRODUCTS, INC
1100 SOUTH CYPRESS
LA HABRA, CA 90631

Collection at Law
Attn: Angela
31200 Via Colinas, Suite 101
WESTLAKE VILLAGE, CA 91362

COLONIAL SUPPLEMENTAL INS CO
PROCESSING CENTER
P. O. BOX 903
COLUMBIA, SC 29202-0903

COLORS ENTERPRISES, INC.
2349 LA MIRADA DRIVE
VISTA, CA 92081-7863

COMMUNITY PRESS
11432 SOUTH STREET #248
CERRITOS, CA 90703

CORAL POOL SUPPLY, INC.
4377 CONVOY STREET
SAN DIEGO, CA 92111

COUNTY OF SAN DIEGO/DEH
DEPT OF ENVIRONMENTAL HEALTH
P.O. BOX 129261
SAN DIEGO, CA 92112-9261

CREDIT SOURCE LLC.
P.O. BOX 3338
CHATSWORTH, CA 91313-3338

CREST BEVERAGE CO
DEPT 8536
LOS ANGELES, CA 90084-8536

CROSPETE SPORTS
P. O. BOX 5257
FULLERTON, CA 92838-5257

CUBE-AIRE
9933 CHANNEL ROAD
LAKESIDE, CA 92040-3003

CUTTER & BUCK
P. O. BOX 34855
SEATTLE, WA 98124-1855

D&A SEMI-ANNUAL MORTGAGE FUND III
10251 VISTA SORRENTO PARKWAY
SUITE 200
SAN DIEGO, CA 92121

DE LAGE LANDEN FINANCIAL SVCS
P. O. BOX 41601
PHILADELPHIA, PA 19101-1601

DELL FINANCIAL SERVICES
PAYMENT PROCESSING CENTER
4307 COLLECTION CENTER DRIVE
CHICAGO, IL 60693

DEPT OF WATER RESOURCES
P.O. BOX 942836
SACRAMENTO, CA 94236-0001

DIGITAL IMAGING SYSTEMS
P O BOX 100706
PASADENA, CA 91189-0706

DIRECTV
P O BOX 60036
LOS ANGELES, CA 90060-0036

DMV RENEWAL
P.O. BOX 942894
SACRAMENTO, CA 94294-0894

El Toreador Prop Grp/J Serhan
c/o Wm J Caldarelli, Esq.
550 W. C St, Ste 700
San Diego, CA 92101

ELITE SHOW SERVICES INC
2878 CAMINO DEL RIO SOUTH
SUITE 260
SAN DIEGO, CA 92108

ESCONDIDO COUNTRY CLUB
1800 W. COUNTRY CLUB LANE
ESCONDIDO, CA 92026

ETONIC WORLDWIDE LLC
P. O. BOX 414935
BOSTON, MA 02241-4935

EXPEDIA INC
P. O. BOX 847675
DALLAS, TX 75284-7675

FARMER BROS. CO.
FILE 55172
LOS ANGELES, CA 90074-5172

FCC, LLC
PO BOX 643382
CINCINNATI, OH 45264-3382

FLUEGGE EGG RANCH
24120 CROWN HILL LANE
ESCONDIDO, CA 92027

FOLEY & LARDNER LLP
555 SOUTH FLOWER STREET
SUITE 3500
LOS ANGELES, CA 90071-2411

FOOT-JOY
P.O. BOX 88111
CHICAGO, IL 60695-1111

FORE-PAR GROUP
7650 STAGE ROAD
BUENA PARK, CA 90621

G E CAPITAL
P. O. BOX 802585
CHIGAGO, IL 60680-2585

GE Capital
P O BOX 31001-1351
PASADENA, CA 91110-1351

GE CAPITAL
P.O. BOX 31001-0273
PASADENA, CA 91110-0273

German American Capital Corp
60 Wall Street, 10th Floor
New York, NY 10005

German American Capital Corp.
c/o Greenwald, Pauly, Foster & Miller
1299 Ocean Avenue, Suite 400
Santa Monica, CA 90401

GLOBAL TOUR GOLF, INC.
1345 SPECIALTY DR STE E
VISTA, CA 92081

GMAC
P O BOX 9001948
LOUISVILLE, KY 40290-1948

GOLDEN STATE POOLS
P O BOX 131143
CARLSBAD, CA 92013

GOLDEN STATE TIRE
DIVISION OF TIRE EMPORIUM. INC
630 ROCK SPRINGS ROAD
ESCONDIDO, CA 92025

GOLF SCORECARDS, INC
9735 SW SUNSIIINE CT
SUITE 700
BEAVERTON, CA 97005

GOLF VENTURES WEST
361 N. ANDREASEN DR.
ESCONDIDO, CA 92025

GRANGETTO'S FARM/GARDEN SUPPLY
P.O. BOX 463095
1105 W. MISSION AVE.
ESCONDIDO, CA 92046-3095

GROUP TRAVEL PLANET, LLC
124 N HENDERSON AVENUE
SEVIERVILLE, TN 37862

GUEST DIRECT
714 SPIRIT 40 PARK DR
SUITE 100
CHESTERFIELD, MO 63005

HAINESLAW
Laurence F. Haines, Esq.
139 East Third Ave., Ste. #108
ESCONDIDO, CA 92025

HAMILTON MEATS & PROVISIONS,INC
PO BOX 2999
PHOENIX, AZ 85062-2999

HARRY VARDON GOLF
1220 EAST 7TH STREET
WINONA, MN 55987

HORNUNG'S PRO GOLF SALES INC.
P.O. BOX 1078
FOND DU LAC, WI 54936-1078

HOSPITALITY SOFTNET
SIXTY STATE STREET, STE 700
BOSTON, MA 02109

IGCC
P.O. BOX 1586
INYOKERN, CA 93527

ILD TELECOMMUNICATIONS, INC.
P.O. BOX 538647
ATLANTA, GA 30353-8647

IMPACT PAPER & INK LTD.
1590 GILBRETH ROAD
BURLINGAME. CA 94010

J-R-S LANDSCAPE MAINTENANCE
29790 SPUR AVENUE
VISTA, CA 92084

JAM FIRE PROTECTION INC
9082 CLAIREMONT MESA BLVD
SAN DIEGO, CA 92123

JANI-KING OF CALIF, INC.-SDO
FILE 749318
LOS ANGELES, CA 90074-9318

Javier Serhan
530 B STREET
SUITE 1530
SAN DIEGO, CA 91311

JOBING.COM
P. O. BOX 29386
PHOENIX, AZ 85038-9386

JONAS SOFTWARE USA, INC
BOX NO. 3476, P.O. BOX 8500
PHILADELPHIA, PA 19178-3476

KEF CONSULTING
31770 VIA SALTIO
TEMECULA, CA 92592

KIMBALL, TIREY & ST. JOHN, LLP
1202 KETTNER BLVD., 3RD FLOOR
SAN DIEGO, CA 92101

KITABAYASHI DESIGN STUDIO
1227 J STREET
SAN DIEGO, CA 92101

KLEEN & GREEN
P.O. BOX 575
CARLSBAD, CA 92018

KONE, INC
P. O. BOX 429
MOLINE, IL 61266-0429

KONICA MINOLTA BUSINESS SOLUTIONS
5959 CORNERSTONE COURT WEST
SUITE 200
SAN DIEGO, CA 92121

KUSHNER,SMITH,JOANOU &
GREGSON,LLP
8105 IRVINE CENTER DRIVE
SUITE 1000
IRVINE, CA 92618

LARRY W. BROWN
13130 RIO BRAVA COURT
JAMUL, CA 91935

LEGENDARY HOLDINGS, INC
8653 AVENIDA COSTA NORTE
SAN DIEGO, CA 92154

LEGOLAND CALIFORNIA
ONE LEGOLAND DRIVE
MAIL STOP CC1
CARLSBAD, CA 92008

LIFESAFE SERVICES - SAN DIEGO
P. O. BOX 547
HAZELWOOD, MO 63042

LLOYD PEST CONTROL
935 SHERMAN STREET
SAN DIEGO, CA 92110-4092

LOGO GOLF CHIPS, INC.
PO BOX 13116
PALM DESERT, CA 92255

LOWELL AND ROBIN
ATTORNEYS AT LAW
707 BROADWAY 18TH FLOOR
SAN DIEGO, CA 92101-5314

LOYALTY TRAVEL
ATTN: ACCOUNTING
9300 W. OVERLAND RD., STE 230
BOISE, ID 83709

LSM COMMUNITY ASSOCIATION
1030 LA BONITA DR. STE 342
SAN MARCOS, CA 92078

LSM SECURITY PATROL
1132 SAN MARINO DRIVE
SUITE 105
LAKE SAN MARCOS, CA 92078

LUBEMASTER CONSTRUCTION
P.O. BOX 971327
DALLAS, TX 75397-1327

M H W, LTD/SHERBROOKE CELLARS
1129 NORTHERN BLVD STE 410
MANHASSET, NY 11030

MAINTEX
P.O. BOX 7110
CTY OF INDUSTRY, CA 91744-7110

MANIFEST FUNDING SERVICES
P. O. BOX 790448
ST. LOUIS, MO 63179-0448

MARKSTEIN BEVERAGE CO
P. O. BOX 6902
SAN MARCOS, CA 92079-6902

MARLIN LEASING
520 WALNUT STREET STE 1150
PHILADELPHIA, PA 19106

McDANNALD SYSTEMS, INC.
PUMPS & MAINTENANCE SERVICE
2851 S. CENTRE CITY PARKW
ESCONDIDO, CA 92025

MINTZ, LEVIN
3580 CARMEL MTN ROAD STE 300
SAN DIEGO, CA 92130

MISSION IRON WORKS CO.
P. O. BOX 707
SAN FERNANDO, CA 91341

MISSION LINEN SERVICE
SAP #111500
2727 INDUSTRY STREET
OCEANSIDE, CA 92054-4810

MIWA LOCK COMPANY LTD
816 HICKS DRIVE
ELBURN, IL 60119

MOCERI PRODUCE
8597 SPECTRUM LANE
SAN DIEGO, CA 92121

MUZAK
P.O. BOX 70131
LOS ANGELES, CA 90074-0131

MWB BUSINESS SYSTEMS
FILE 50897
LOS ANGELES, CA 90074-0897

NATIONAL CITY GOLF FINANCE
P. O. BOX 931034
CLEVELAND, OH 44193

NATIONAL GOLF FOUNDATION
DEPT #215485
MIAMI, FL 33121-5485

NEC FINANCIAL SERVICES, LLC
ATTN: Rosie
250 Pehle Ave., Suite 309
SADDLE BROOK, NJ 07663

NISH LANDSCAPE, INC
2414 EUCLID AVENUE
EL CAJON, CA 92019

NORTH COUNTY TIMES
P. O. BOX 54358
LOS ANGELES. CA 90054-0358

NORTH COUNTY TIMES DELIVERY
207 E. PENNSYLVANIA AVENUE
ESCONDIDO, CA 92025-2888

OAKWOOD CORPORATE HOUSING
FILE 056739
LOS ANGELES, CA 90074-6739

OFFICE DEPOT CREDIT PLAN
DEPT 56-4203301113
P. O. BOX 689020
DES MOINES, IA 50368-9020

Orbit Enterprises, Inc.
dba Cybergolf
13024 Beverly Park Road
Mukilteo, WA 98275

OUTSIDE LABS, INC
DBA H I C SUNCARE
16823 S. WESTERN AVE
GARDENA, CA 90247

PACIFIC DRAIN SERVICE
1330 PARK CENTER DR., STE 101
VISTA, CA 92081

Pacific West Realty Group
2550 5th Avenue, Suite 529
San Diego, CA 92103

PAETEC
P. O. BOX 1283
BUFFALO, NY 14240-1283

PAHR FAIRWAY ESSENTIALS
2796 LOKER AVE., STE 111
CARLSBAD, CA 92008

PALOMAR BACKFLOW
P. O. BOX 2702
ESCONDIDO, CA 92033

PALOMAR PEN & OFFICE SUPPLY
700 South Rancho Santa Fe Road
SAN MARCOS, CA 92078

PAYNE-MASON, INC
10696 CAMINO DEL VERADO
VALLEY CENTER, CA 92082-3505

PEGASUS SOLUTIONS
P.O. BOX 910727
DALLAS, TX 75391

PITNEY BOWES GLOBAL FINANCIAL
SVCS
P. O. BOX 856460
LOUISVILLE, KY 40285-6460

PNC EQUIPMENT FINANCE
P.O. BOX 931034
CLEVELAND, OH 44193-0004

POS SUPPLIES
201 S. BISCAYNE DRIVE, 28TH FL
MIAMI, FL 33131

PRICELINE.COM/TRAVELWEB.COM
P. O. BOX 915204
DALLAS, TX 75391-5204

PRIVATE CLUB NETWORK LLC
P O BOX 171022
SALT LAKE CITY, UT 84117

PROGRESSIVE GROWERS INC.
P.O. BOX 2045
VISTA, CA 92085

PROGRESSIVE TECHNOLOGY
SECURITY SYSTEMS INC.
749 W. 4TH AVENUE
ESCONDIDO, CA 92025

PROHYGIENE, INC
1330 Specialty Drive, Suite C
VISTA, CA 92081

PURCHASE POWER
P.O. BOX 856042
LOUISVILLE, KY 40285-6042

R & R PRODUCTS, INC.
3334 EAST MILBER STREET
TUCSON, AZ 85714

RCMA
7702 WOODLAND DR , SUITE 120
INDIANAPOLIS, IN 46278

RESORT DATA PROCESSING, INC
P. O. BOX 1170
VAIL, CO 81658

RMB ASSOCIATES Inc.
10623 LAWSON RIVER AVE
FOUNTAIN VALLEY, CA 92708

Ron Frazar
P.O. Box 4970
Whitefish, MT 59937

RSF SECURITY SYSTEMS, INC
1991 VILLAGE PARK WAY
ENCINITAS, CA 92024-1966

S.S. FUNDRAISING
3615 KERNY VILLA ROAD
SUIT 103
SAN DIEGO, CA 92123

SAFEGUARD DENTAL & VISION
P. O. BOX 30910
LAGUNA HILLS, CA 92654-0910

SAFETY-KLEEN SYSTEMS, INC
P. O. BOX 7170
PASADENA, CA 91109-7170

SAN DIEGO CANDLE
7918-N EL CAJON BLVD #295
LA MESA, CA 91941

SAN DIEGO CONV & VISITORS BUREAU
2215 INDIA STREET
SAN DIEGO, CA 92101

SAN DIEGO COUNTY TREASURER-
TAX COLLECTOR
P. O. BOX 129009
SAN DIEGO, CA 92112

SAN DIEGO DESSERTS
5987 EL CAJON BLVD
SAN DIEGO, CA 92115-3827

SAN DIEGO GAS & ELECTRIC
P.O. BOX 25111
SANTA ANA, CA 92799-5111

SAN DIEGO GOLF RESERVATIONS
7445 GIRARD AVENUE STE 11
LA JOLLA, CA 92037

SAN DIEGO NORTH CVB
360 N. ESCONDIDO BLVD
ESCONDIDO, CA 92025

SAN MARCOS BAKERY
1300 E. MISSION ROAD STE A
SAN MARCOS, CA 92069

SAN MARCOS GLASS
760-C NO. TWIN OAKS VALLEY ROAD
SAN MARCOS, CA 92069

SCHOLASTIC SPORTS, LTD.
C/O SAN MARCOS HIGH SCHOOL
8474 COMMERCE AVENUE
SAN DIEGO, CA 92121

SESAC
P. O. BOX 900013
RALEIGH, NC 27675-9013

SHELL FLEET PLUS
P O BOX 183019
COLUMBUS, OH 43218-3019

SMART HOSPITALITY CORPORATION
P. O. BOX 6937
VISALIA, CA 93290-6937

SMITH TRAVEL RESEARCH
735 E MAIN STREET
HENDERSONVILLE, TN 37075

SO. CAL TREE CARE, INC.
P. O. BOX 2424
VISTA, CA 92085-2424

SOUTHCOAST HEATING & A/C
P. O. BOX 95000-2350
PHILADELPHIA, PA 19195-2350

SOUTHERN WINE & SPIRITS
FILE 56002
LOS ANGELES, CA 90074-6002

SPANISH SHOPPER
525 S. ESCONDIDO BLVD.
SUITE C & D
ESCONDIDO, CA 92025

SPANKY'S PORTABLE SERVICES
1925 PALOMAR OAKS WAY STE 204
CARLSBAD, CA 92008-6526

SPORTSTURF IRRIGATION SALES
1019 SOUTH MELROSE STREET
SUITE A
PLACENTIA, CA 92870

ST. TROPEZ CALIFORNIA
7004 CARROLL ROAD
SAN DIEGO, CA 92121

STAR BUILDERS SUPPLY
961 GRAND AVENUE
SAN MARCOS, CA 92078

STATE BOARD OF EQUALIZATION
P O BOX 942879
SACRAMENTO, CA 94279-8063

STATE WATER RESOURCES
CONTROL BOARD
P.O. BOX 944212
SACRAMENTO, CA 94244-2120

STEVE I. KASTNER, ESQ.
101 West Broadway, #1700
San Diego, CA 92101

STONE BREWING CO.
1999 CITRACADO PARKWAY
ESCONDIDO, CA 92029

STUART SCHNEIDER
250 N. WESTLAKE BLVD. STE 240
THOUSAND OAKS, CA 91362

SUN GRAPHICS, INC
8544 COMMERCE AVENUE
SAN DIEGO, CA 92121

SUNSET MARINE, INC
1517 SOUTH COAST HWY
OCEANSIDE, CA 92054

SUPERIOR ONSITE SERVICE, INC
237 S. BENT AVENUE
SAN MARCOS, CA 92078

T l S Speedy
657 S. Rancho Santa Fe Road
SAN MARCOS, CA 92078

TELEPACIFIC COMMUNICATIONS
P.O. BOX 526015
SACRAMENTO, CA 95852-6015

Telesis / Business Partners
Commercial Loan Dept
9301 Winnetka Ave
Chatsworth, CA 92101

THE CAWLEY COMPANY
P. O. BOX 2110
MANITOWOC, WI 54221-2110

THE HOME DEPOT SUPPLY
P.O. BOX 509058
SAN DIEGO, CA 92150-9058

THE HOME DEPOT, INC
DEPT 32
P O BOX 6029
THE LAKES, NV 88901-6029

THE MAX COMPANY
1400 QUAIL STREET STE 138
NEWPORT BEACH, CA 92660-2713

THE PEPSI BOTTLING GROUP
P. O. BOX 75948
CHICAGO, IL 60675-5948

THE POOL SUPPLY STORE
419 S. LAS POSAS ROAD
SAN MARCOS, CA 92078

THE SAN DIEGO UNION TRIBUNE
P.O. BOX 121546
SAN DIEGO, CA 92112-5546

TIG GLOBAL LLC
14851 COLLECTIONS CENTER DR
CHICAGO, IL 60693

TIME WARNER CABLE
P. O. BOX 60506
City of Industry, CA 91716-0506

TRAVEL & TRANSPORT INC./OMAHA
2120 SOUTH 72ND STREET, #200
OMAHA, NE 68124-6310

TRAVELCLICK, INC.
c/o Murphy Lomon
2860 S. River Rd., #200
DES PLAINES, IL 90018

TRAVELNOW.COM
4319 SOUTH NATIONAL, #108
SPRINGFIELD, MO 65810-2607

TURF STAR, INC
P. O. BOX 45621
SAN FRANCISCO, CA 94145-0621

U S MAILING HOUSE, INC
4133 AVENIDA DE LA PLATA
OCEANSIDE, CA 92056

U.S. FOODSERVICE INC.
P.O. BOX 100131
PASADENA, CA 91189-0131

UAP DISTRIBUTION, INC
2787 W. BULLARD
FRESNO, CA 93711

ULTRA CHEM, INC
8043 FLINT STREET
LENEXA, KS 66214-3335

ULTRAMAX CHEMICAL COMPANY
14655 COLLECTIONS CENTER DRIVE
CHICAGO, IL 60693

UNI IMPORTS
35 SONGSPARROW
IRVINE, CA 92604

UNITED PARCEL SERVICE
P. O. BOX 894820
LOS ANGELES, CA 90189-4820

URBAN TREE CARE, INC
16654 SOLEDAD CANYON ROAD #189
SANTA CLARITA, CA 91387

US Bancorp
P.O. Box 580337
Minneapolis, MN 55458

UTELL
14000 N. PIMA RD
SUITE 100
SCOTTSDALE, AZ 85260

VALLECITOS WATER DISTRICT
201 VALLECITOS DE ORO
SAN MARCOS, CA 92069-1453

VANORSDALE INSURANCE SERVICES
4909 MURPHY CANYON RD STE 510
SAN DIEGO, CA 92123

VB MANAGEMENT MARKETING SVCS
P. O. BOX 6236
TORRANCE, CA 90504

VERTICAL COMMUNICATION
TECHNOLOGIES
1500 ROSECRANS AVE., STE 500
MANHATTAN BEACH, CA 90266

VIZIO
654 Corte Loren
SAN MARCOS, CA 92069

WEDDING COMPASS, INC.
22691 LAMBERT STREET STE 505
LAKE FOREST, CA 92630

WELLS FARGO TRADE CAPITAL
SERVICES, INC.
P. O. BOX 360286
PITTSBURGH, PA 15250-6286

WESTAIR GASES & EQUIP INC
P. O. BOX 620338
SAN DIEGO, CA 92162-0338

WESTERN FARM SERVICE
2787 W. BULLARD
FRESNO, CA 93711

WESTERN GOLF, INC.
P.O. BOX 970
THOUSAND PALMS, CA 92276-0970

WILBUR-ELLIS COMPANY
P. O. BOX 45326
SAN FRANCISCO, CA 94145-0326

WINE WAREHOUSE
P O BOX 910900
LOS ANGELES, CA 90091-0900

Woogee World
P. O, BOX 748
OCEANSIDE, CA 92049

WORLDWIDE PAYMENT SYSTEMS S.A.
TORNEO, 72
41002 SEVILLA. SPAIN,

YOUNG'S MARKET COMPANY
P. O. BOX 30145
LOS ANGELES, CA 90030-0145

ZOOLOGICAL SOCIETY SAN DIEGO
SALES DEPARTMENT
P. O. BOX 120551
SAN DIEGO, CA 92112-0551

LSM Executive Course, LLC
1295 Discovery Street
San Marcos, CA  92078-4032

Beth F. Regan
5462 Coach Lane
San Diego, CA  92130-3745

Philadelphia Ins. Companies
P. O. Box 70251
Philadelphia, PA 19176-0251

Richard L. Finegold, Esq.
Jones, Barden & Finegold, APC
16959 Bernardo Ctr Drive, Suite 102
San Diego, CA 92128-2554

Ronald Frazar, Trustee of the Ronald Frazar
c/o Mulvaney, Kahan & Barry, LLP
Everett G. Barry, Jr.; Kelly Ann Tran
401 West A Street, 17th Floor
San Diego, CA 92101-7994

Safety-Kleen Systems, Inc.
P. O. Box 7170
Pasadena, CA 91109-7170

Dept. Indust. Rel. Labor Law Enforce.
1550 West Main Street
El Centro, CA 92243-2105

Div. of Labor Standards Enforcement
7575 Metropolitan Drive, Suite 210
San Diego, CA 92108-4424

Dunn & Bradstreet
Attn:  Lynne Roberts, 2nd Floor
3501 Corporate Parkway
PO Box 520
Center Valley, PA 18034-0520

LSM Hotel, LLC
1295 Discovery Street
San Marcos, CA 92078-4032

U.S. Securities & Exchange Commission
Attn: Bankruptcy Counsel
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA 90036-5627

United States Trustee
Office of the U.S. Trustee
402 West Broadway, Suite 600
San Diego, CA 92101-8511

Arrow Pipeline Repair, Inc.
1228 Keystone Way
Vista, CA 92081-8316

Andrew S. Pauly, Esq.
Andrew J. Haley, Esq.
Greenwald, Pauly, Foster & Miller
1299 Ocean Avenue, Suite 400
Santa Monica, CA 90401-1007

CIT Technology Financing Svs, Inc.
Bankruptcy Processing Solutions, Inc.
800 E. Sonterra Blvd., Suite 240
San Diego, CA 78258-3941

California Credit Union
c/o Gerson Law Firm, APC
Jana M. Beck, Esq.
9255 Towne Centre Dr., Suite 300
San Diego, CA 92121-3036

Dean T. Kirby, Jr.
Kirby & McGuinn, APC
707 Broadway, Suite 1750
San Diego, CA 92101-5393

Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0531

Group Travel Planet, LLC
PO Box 5467
Sevierville, TN 37864-5467

German American Cap. Corp.
c/o Greenwald, Pauly, Foster & Miller
Attn: Andrew S. Pauly, Esq.
1299 Ocean Avenue, Suite 400
Santa Monica, CA 90401-1007

Javier Serhan
c/o Wm. J. Caldarelli
550 West C, Suite 700
San Diego, CA 92101-8605

01 Communications
1515 K Street, Suite 100
Sacramento, CA 95814-4052

Prohygiene, Inc.
2834 La Costa Avenue
Carlsbad, CA 92009-7328

SESAC, Inc.
55 Music Square East
Nashville, TN 37203-4362

SouthCoast Heating Air Conditioning, LP
c/o AMS
13300 Mid Atlantic Blvd.
Laurel, MD 20708-1432

UAP Distribution, Inc.
File #30556
PO Box 60000
San Francisco, CA 94160-0001

Waste Management
PO Box 78251
Phoenx, AZ 85062-8251

Western Farm Service
File 73041
PO Box 60000
San Francisco, CA 94160-0001

Christopher W. Olmsted
Barker Olmsted & Barnier, APLC
2341 Jefferson Street, Suite 200
San Diego, CA 92110-3027

Alan S. Wolf, Esq.
Daniel K. Fujimoto, Esq.
The Wolf Firm
2955 Main Street, 2nd Floor
Irvine, CA 92614