Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1  ANDREW S. PAULY SBN 90145 and
ANDREW J. HALEY SBN 202900, Members of
2  GREENWALD, PAULY, FOSTER & MILLER,
A Professional Corporation
3  1299 Ocean Avenue, Suite 400
Santa Monica, California 90401-1007
4  Telephone:  (310) 451-8001
Facsimile:   (310) 395-5961
5  Email:   apauly@gpfm.com
ahaley@gpfm.com
6
7  Attorneys for Interested Party
SYMPHONY ASSET POOL X, LLC

8            **UNITED STATES BANKRUPTCY COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In re                                        )   Case No. 10-15142-LT11
                                                 )
12  CITIZENS DEVELOPMENT CORP.,                  )   Chapter 11
                                                 )
13        Debtor and Debtor in Possession.      )   **SYMPHONY ASSET POOL X, LLC's**
                                                 )   **TRIAL BRIEF REGARDING**
14                                               )   **DEBTOR'S MOTION FOR ORDER**
                                                 )   **AUTHORIZING AND DIRECTING**
15                                               )   **THE SUBSTANTIVE**
                                                 )   **CONSOLIDATION OF DEBTOR**
16                                               )   **WITH AFFILIATED ENTITIES**
                                                 )
17                                               )
                                                 )   **HEARINGS**
18                                               )
                                                 )   Date:   January 20, 21 & 24, 2011
19  _____  )   Place:  Courtroom 3

20

21

22

23

24

25

26

27

28

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1

## **TABLE OF CONTENTS**

2  I.    INTRODUCTION. ............................................................................................. 1

3  II.   OVERVIEW OF MATERIAL FACTS.......................................................... 5

4       A.    The Property Securing LSM's Debt to Symphony. ..................................... 5

5       B.    The Original Loan and Security Interest....................................................... 5

6       C.    Symphony has not treated the affiliated entities as being one, and there
7              is No Evidence that its predecessor-in-interest did so. ................................ 7

8       D.    LSM Hotel Defaulted on the Loan and Filed Bankruptcy On the Eve of
9              the Hearing for Appointment of A Receiver In the State
10            Court Action. ................................................................................................ 9

11  III.  ARGUMENT.................................................................................................. 10

12      A.    Overview of Substantive Consolidation...................................................... 10

13          1.     The proponent of substantive consolidation bears the burden to
14                  justify consolidation by showing that at least one of a two factor test
15                  is met. ................................................................................................. 10

16          2.     Substantive Consolidation is a "last resort" remedy to be used
17                  "sparingly." ...................................................................................... 10

18      B.    CDC Cannot Meet Either of the Two Factors for Substantive
19           Consolidation............................................................................................... 11

20          1.     CDC cannot met its burden of showing a prepetition disregard of the
21                 separateness of CDC, LSM Hotel or other affiliated entities. .......... 11

22          2.     CDC has not met its burden of showing that the affairs of the
23                 "Resort Entities" are so entangled that Substantive Consolidation
24                 will benefit all creditors. ................................................................. 15

25      C.    The Cross-Complaint filed by DiNofia in his state court case is fatal to this
26           Motion. ....................................................................................................... 18

27

28

1092554.1 – 21393.001          -ii-           Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

        D.     CDC's Withdrawal of LSM Executive Course from its Substantive Consolidation Motion and its efforts to sell the Restaurant Property are Fatal to the Motion. ........................................................................... 20

IV.   CONCLUSION.................................................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1092554.1 – 21393.001

-iii-

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Augie/Restivo Baking Co.,*
  860 F.2d 515 (2d Cir. 1988) ............................................................ passim

*In re Avery,*
  377 B.R. 264 (Bankr. D. Alaska 2007)................................................... 10

*In re Bonham,*
  229 F.3d 750 (9th Cir. 2000) ......................................................... passim

*In re Flora Mir Candy Corp.,*
  432 F.2d 1060 (2d Cir. 1970) ............................................................ 10

*In re Owens Corning,*
  419 F.3d 195 (3rd Cir. 2005) ........................................................ passim

*In re World Access, Inc.,*
  301 B.R. 217 (Bankr. N.D. Ill. 2003) .................................................. 17

*Reider v. Fed. Deposit Ins. Corp. (In re Reider),*
  31 F.3d 1102 (11th Cir. 1994) ........................................................... 10

1092554.1 – 21393.001

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

# I.    **INTRODUCTION**.

Symphony Asset Pool X, LLC ("Symphony") is the successor-in-interest to German American Capital Corporation ("GACC").  On November 19, 2010, GACC assigned to Symphony all right, title and interest to the subject loan made to LSM Hotel, LLC ("LSM Hotel"), an affiliated entity of debtor Citizens Development Corp. ("CDC" or "Debtor").  Like GACC, Symphony opposes CDC's Motion for Substantive Consolidation ("Motion").

The test for substantive consolidation requires CDC to meet one of two exacting factors: (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors.  The case law is clear that the remedy of substantive consolidation should be used "sparingly" and only as a "last resort."  Nevertheless, CDC's pleadings make it sound as if mere convenience to the CDC is sufficient to justify substantive consolidation, but that is clearly not the test.

CDC has not, and cannot, meet either factor to justify consolidation.  Indeed, it is notable that after the last hearings:

- Symphony discovered that CDC's principal, Matthew DiNofia ("DiNofia"), filed a Cross-Complaint in a state court action against the junior lien holder on the hotel property.  DiNofia alleges in that Cross-Complaint that he had made a deal to give back the hotel property to Symphony's predecessor-in-interest.  (Trial Exh. "T").  Specifically, DiNofia alleges that "LSM and [DiNofia] agreed to turn over the Hotel to GACC in return for GACC releasing [DiNofia] from their personal guaranty (the "GACC Guaranty") on the GACC Loan."  (Trial Exh. "T" at ¶ 23.)  How can the financial affairs of the hotel property possibly be "hopelessly scrambled" with the financial affairs of other affiliated entities if LSM Hotel could so readily give up the hotel property to GACC as DiNofia alleges in his Cross-Complaint?

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

- CDC has since withdrawn its Motion to substantively consolidate its case with affiliated debtor LSM Executive Course, LLC ("LSM Executive Course"). The fact that CDC told this Court that LSM Executive Course *must* be substantively consolidated before (because the financial affairs of those entities were purportedly inextricably intertwined), but now has dropped LSM Executive Course from its Motion speaks volumes as to the veracity of its assertions that substantive consolidation is necessary. If CDC can pick and choose so easily (and drop entities when their lenders make deals with CDC), then the affairs of these entities can hardly be considered "hopelessly scrambled" as CDC had claimed so as to meet the stringent test for substantive consolidation. Substantive consolidation is a "last resort" remedy, and CDC's actions have clearly shown that such a remedy is not warranted here.

- Symphony has learned that CDC tried to sell the "restaurant property" located at 1035 La Bonita Drive as reflected on an advertising flier (Trial Exh. "S"). The fact that CDC sought to sell the restaurant property demonstrates that the financial affairs of these various entities are not so "hopelessly scrambled" with the affairs of other entities so as to merit substantive consolidation.

It is readily evident that the purpose of this Motion is not to substantively consolidate the various entities, but rather is a strategic ploy to frustrate and delay the secured real estate lien holders, such as Symphony, in their efforts to realize upon their respective collateral. The Motion is nothing but leverage so that Debtor can either work out deals with these lien holders or by gerrymandering a larger class of unsecured creditors to vote in favor of some kind of unspecified reorganization plan. CDC's tactic appears to have worked as to some lenders, but the tactic is not grounds for substantive consolidation – it is a misuse of the bankruptcy process and justification for relief from stay.

Even if this Motion was not just a strategic ploy by CDC, the facts here do not even come close to warranting substantive consolidation. In brief, Symphony now

-2-

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1    holds a first priority $12 million secured loan against the hotel property owned by

2    debtor LSM Hotel. This loan is with one entity, LSM Hotel, not any other debtors or

3    affiliated entities. And the security for the loan is the real and personal property of the

4    hotel. LSM Hotel is presently in bankruptcy (Chapter 11 bankruptcy, Case No. 10-

5    13024-LT11) and Symphony has a Motion for Relief from Stay also set for evidentiary

6    hearing concurrently with this Motion.

7        CDC is the managing member of LSM Hotel. CDC filed bankruptcy after LSM

8    Hotel, which in turn had filed bankruptcy after LSM Executive Course. It is notable

9    that these entities did not file bankruptcy at the same time, thus further demonstrating

10   that they are not hopelessly intertwined as CDC now claims. CDC originally asked this

11   Court to substantively consolidate four estates: (1) CDC, (2) LSM Hotel, (3) LSM

12   Executive Course and (4) non-debtor Country Club, LLC ("Country Club"), which

13   entities CDC collectively calls the "Resort Entities." As noted above, CDC has

14   withdrawn LSM Executive Course from its Motion (and no explanation about the terms

15   of their deal has been provided to date).

16       To justify substantive consolidation, the Ninth Circuit employs a two factor test

17   which the Court in *In re Bonham* adopted and applied to consolidate the debtors in that

18   case. *Bonham* was a rare case where consolidation was appropriate to address debts

19   arising from a ponzi scheme engineered by one individual. It is vastly different than the

20   case here.

21       The first factor of the test for substantive consolidation is: whether creditors

22   dealt with the entities as a single economic unit and did not rely on their separate

23   identity in extending credit. CDC thus must show that creditors dealt with the "Resort

24   Entities" as a single economic unit and did not rely on their separate identity in

25   extending credit. It is abundantly obvious that Symphony and its predecessors-in-

26   interest relied on LSM Hotel individually, and its asset (the hotel), in extending credit –

27   and did not rely on the "Resort Entities" as a "singe economic unit." The loan

28   documents speak for themselves.

1092554.1 – 21393.001                           -3-
                                                        Symphony Asset Pool X, LLC's Trial Brief re
                                                        Debtor's Motion re Consolidation;
                                                        Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1  Furthermore, Symphony submits two declarations from officers of the original

2  lender (Pacific Western Bank) together with copies of the actual loan underwriting

3  report and approvals. As noted in those two declarations and the exhibits attached to

4  them, at all times Pacific Western Bank was looking to LSM Hotel and its collateral

5  (the hotel) to repay the loan and at no time did it extend credit based on the credit of

6  other entities.

7  Notably, CDC's Motion references several other lenders that similarly made

8  loans and secured them with first priority trust deeds on other real property. There's

9  little doubt that these lenders knew exactly which entity that they were dealing with and

10  were relying on the assets of that entity, namely the real property security. Indeed,

11  CDC has not listed any of the other lenders as witnesses or listed exhibits concerning

12  those loans. Thus, it is very clear that the major creditors clearly looked to the

13  individual entities, and not to the so-called group of "Resort Entities" when extending

14  credit. Thus, CDC cannot meet its burden on the first test.

15  CDC also can never show the second factor of the test for substantive

16  consolidation: that the assets and liabilities are so "scrambled" that separating them is

17  prohibitive and hurts all creditors. Not only are the material assets and liabilities well

18  known (since they are the loans and the properties that secure them), but the individual

19  "Resort Entities" have already sorted out the finances of debtors LSM Hotel and LSM

20  Executive Course in connection with seeking approval for their respective Cash

21  Collateral Motions in those bankruptcies. As Symphony's predecessors-in-interest

22  pointed out previously in this Court, LSM Hotel supplied three years of itemized

23  income and expense statements for the hotel as part of its Cash Collateral Motion. Such

24  documents are completely at odds with CDC's current position that the assets and

25  liabilities of the "Resort Entities" are hopelessly scrambled.

26  Certainly, the assets and liabilities of LSM Hotel are easily determined because

27  all one needs to look at is the income and expenses of the hotel. Indeed, CDC, LSM

28  Hotel and LSM Executive Course have all filed schedules under oath, and detailed

-4-

1092554.1 – 21393.001

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1    Operating Reports, that readily break down the revenues, assets and liabilities of these

2    entities.  Their financial affairs are certainly not "hopelessly scrambled" in order to

3    meet the test for substantive consolidation.  Notably, CDC has not designated any

4    expert to testify that the affairs of these entities are somehow hopelessly scrambled.

5    CDC thus can *never* meet the second factor as to LSM Hotel.

6        For these reasons, CDC will not be able to meet its burden at trial.

7    **II.    OVERVIEW OF MATERIAL FACTS.**

8        **A.    The Property Securing LSM's Debt to Symphony.**

9        LSM Hotel owns a single-asset consisting of a 140 room limited service hotel

10   ("Hotel") located at 1025 La Bonita Drive, San Marcos, California 92078

11   ("Property").  Trial Exh. "A"; *see also*, Docket No. 75 [Declaration of Joan Kramer

12   ("*Kramer Decl.*") at ¶ 2, and Exh. "A" (legal description of property)].

13       **B.    The Original Loan and Security Interest.**

14       Symphony is the assignee of GACC which is in turn the assignee of Pacific

15   Western Bank ("PWB") which was the successor in interest to First National Bank

16   ("FNB") (for ease of reference PWB and FNB are collectively referred to herein as

17   "Original Lender").  As of June 13, 2006, Original Lender lent to LSM Hotel the

18   principal sum of Eleven Million Three Hundred Fifty Thousand Dollars

19   ($11,350,000.00) (the "Loan").

20       The Loan was memorialized in, among other things, the following documents:

21       1.    Business Loan Agreement dated June 13, 2006 (the "Loan

22             Agreement").  Trial Exh. "B"; *see also*, Docket No. 75 [*Kramer

23             Decl.*, Exh. "B"];

24       2.    Promissory Note dated June 13, 2006 (the "Note") executed by LSM

25             Hotel in favor of Original Lender.  Trial Exh. "C"; *see also*, Docket

26             No. 75 [*Kramer Decl.*, Exh. "C"]:

27       3.    Deed of Trust for the Property, recorded in the Official Records of

28             the County of San Diego, State of California, as Instrument No.

-5-

1092554.1 -- 21393.001                    Symphony Asset Pool X, LLC's Trial Brief re
                                          Debtor's Motion re Consolidation;
                                          Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

2006-0428346.  Trial Exh. "D"; *see also*, Docket No. 75 [*Kramer Decl.*, Exh. "D"];

4.  Assignment of Rents (the "Assignment") recorded in the Official Records of the County of San Diego, State of California as Instrument No. 2006-0428347. Trial Exh. "E"; *see also*, Docket No. 75 [*Kramer Decl.*, Exh. "E"];

5.  Commercial Security Agreement dated June 13, 2006 ("Security Agreement") together with a UCC-1.  Trial Exh. "F"; *see also*, Docket No. 75 [*Kramer Decl.*, Exh. "F"];

6.  Commercial Guarantees (collectively the "Guarantees") dated June 13, 2006 and March 27, 2009. Trial Exh. "G"; *see also*, Docket No. 75 [*Kramer Decl.*, Exh. "G"];

7.  Change in Terms Agreement, dated March 27, 2009 (the "Change Agreement").  Trial Exh. "H"; *see also*, Docket No. 75 [*Kramer Decl.*, Exh. "H"];

8.  Forbearance and Modification Agreement dated December 1, 2009 ("Forbearance Agreement"). Trial Exh. "I"; *see also*, Docket No. 75 [*Kramer Decl.*, Exh. "I"];

9.  Assignment of Deed of Trust and Lender's Interest in Other Documents (the "Loan Assignment").  Trial Exh. "J"; *see also*, Docket No. 75 [*Kramer Decl.*, Exh. "J"]; and,

10. Letter Agreement dated March 26, 2010 ("Letter Agreement"). Trial Exh. "K"; *see also*, Docket No. 75 [*Kramer Decl.*, Exh. "K"].

For ease, the Note, the Deed of Trust, the Assignment, the Security Agreement and UCC-1, the Guarantees, the Change Agreement, the Forbearance Agreement, the Loan Assignment, and the Letter Agreement will be collectively referred to as the "Loan Documents." Docket No. 75 [*Kramer Decl.*, ¶¶ 3-6].

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

**C.**   **Symphony has not treated the affiliated entities as being one, and**
**there is No Evidence that its predecessor-in-interest did so.**

Symphony purchased the Note on November 19, 2010 and has certainly not treated LSM Hotel as being an indistinguishable part of a "single economic unit" with CDC or its affiliates.   Symphony's predecessor-in-interest, GACC, did not do so either.   Docket No. 75 [*Kramer Decl.*, ¶¶ 12-15].   In fact, LSM Hotel was created shortly before this loan funded for the purpose of procuring this loan.   The loan proceeds were used to pay off an existing loan in excess of $6 million and to pay the prior owner of the property $5.5 million.   Docket No. 75 [*Kramer Decl.*, ¶ 14].   The Business Loan Agreement makes it crystal clear that GACC's predecessor was looking solely and exclusively to LSM Hotel and to Mr. DiNofia as the guarantor. Indeed, LSM Hotel submitted specific corporate resolution documents that make it clear that GACC's predecessor was looking to LSM Hotel, and not to other "Resort Entities," with respect to obligations no the loan.   Trial Exhs. "K," "L," "M," and "N"; *see also,* Docket No. 75 [*Kramer Decl.*, ¶ 14 and Exh. "L"].   CDC was not the borrower under this loan, nor were any of the other affiliated entities.

Symphony concurrently files two declarations from officers of the Original Lender, Robert Borgman and Robert Koering.   Mr. Borgman was the President and Chief Executive Officer for the bank at the time it made the Loan to LSM Hotel.   Mr. Borgman served on the credit committee that approved the Loan and he unequivocally testifies, among other things, that the Loan "was not approved based on any consideration of the credit or cash flow of entities that may or might have been affiliated with LSM." Borgman Decl., ¶ 6.   Mr. Borgman attaches to his declaration a copy of the Loan Approval and Credit Report used by the bank in approving the Loan. Trial Exh. "P."

Mr. Borgman testifies that the loan was to be repaid from cash flow from the hotel operation and the collateral, and not from any other sources.   Borgman Decl., ¶ 7.   The Loan Approval and Credit Report also bear this out at the section titled

1092554.1 -- 21393.001                                  -7-                Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1    "Repayment Sources." Trial Exh. "P" at p. 2. Mr. Borgman testifies that had the

2    bank "been looking at other sources for repayment, it would have identified those

3    sources as part of the loan approval process and secured the Loan with any such

4    additional potential sources of repayment with appropriate documentation, including

5    but not limited to perfection of a security interest in such potential sources of

6    repayment." Borgman Decl., ¶ 8. Mr. Borgman further testifies that there was good

7    reason that the bank was only looking to the hotel property and not to other affiliated

8    entities – namely, the fact that "Mr. DiNofia's other properties, which he owned

9    indirectly through other entities, were highly leveraged." Borgman Decl., ¶ 9.

10        Mr. Koering was involved in the two loan modifications, which are reflected in

11    Trial Exhibits "H" and "I." Mr. Koering testifies that at no time during these loan

12    modifications did the bank make a new loan or otherwise extend additional credit to

13    LSM Hotel. Koering Decl., ¶¶ 7 and 15. Mr. Koering unequivocally states that the

14    bank "had already made the Loan and was not extending any additional credit to LSM

15    nor was it looking to affiliates of LSM as potential sources of repayment in

16    conjunction with the two loan modifications." Koering Decl., ¶ 17. Mr. Koering

17    testifies that the bank relied on the same repayment sources and did not obtain

18    additional collateral in connection with the modifications. Koering Decl., ¶¶ 8, 14 and

19    17. In easing the loan terms, the bank was simply "seeking ways to recoup payment

20    on the Loan that it had already made to LSM." Koering Decl., ¶ 17. Mr. Koering

21    attaches the two Loan Approval and Credit Reports relating to the two loan

22    modifications, each of which show that the "Repayment Sources" were the hotel

23    revenue and the collateral, and not from any entity affiliated with CDC. Koering

24    Decl., ¶¶ 3-5 and 9-12, and Trial Exhs. "Q" and "R."

25        In sum, any assertion by CDC that Symphony or its predecessors-in-interest

26    were looking to the credit of entities other than LSM Hotel is completely unfounded.

27

28

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

**D.    LSM Hotel Defaulted on the Loan and Filed Bankruptcy On the Eve of the Hearing for Appointment of A Receiver In the State Court Action.**

In February 2010 and continuing thereafter, LSM Hotel failed to pay the amounts due under the Loan as provided for in the Forbearance Agreement and other Loan Documents.    LSM Hotel did not make any payments to Symphony's predecessor-in-interest, GACC (and has likewise not made any payments to Symphony).

GACC then recorded its Notice of Default on June 30, 2010 and subsequent commenced an action on July 2, 2010 against LSM Hotel and Matthew DiNofia in San Diego County Superior Court (Case No. 37-2010-00056979-CU-OR-NC).    The Complaint alleges three causes of action: (1) Judicial Foreclosure, (2) Appointment of a Receiver, and (3) Breach of Guaranty.    On the eve of a hearing on GACC's ex parte application for the appointment of a receiver, LSM Hotel filed bankruptcy.

The total due from LSM Hotel as of the bankruptcy filing was $11,680,082.73. Docket No. 75 [*Kramer Decl.*, ¶ 10].    Default interest continues to accrue at a rate of $3,443.42 per day (Docket No. 75 [*Kramer Decl.*, ¶ 11]) and amounts to an additional $616,372.18 owed on the Loan as of the commencement of the evidentiary hearings. Thus, the total due as of January 20, 2011 is at least $12,296,454.91, not including attorneys' fees and costs.

As reflected in LSM Hotel's Schedule E, LSM Hotel has also failed to pay the first and second installments of 2009-2010 real property taxes, and supplemental taxes and assessments for the Property.

1092554.1 – 21393.001

-9-

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

## III.  ARGUMENT.

### A.  Overview of Substantive Consolidation.

#### 1.  The proponent of substantive consolidation bears the burden to justify consolidation by showing that at least one of a two factor test is met.

The Ninth Circuit employs the Second Circuit's test for substantive consolidation, which test "requires the consideration of two factors: (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." *In re Bonham*, 229 F.3d 750, 766 (9th Cir. 2000); *see also, In re Owens Corning*, 419 F.3d 195, 211 (3rd Cir. 2005) (summarizing Second Circuit test as requiring proponent of substantive consolidation to prove that, "(i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors").

"The burden is upon the proponent of a motion for consolidation and is exacting." *In re Avery*, 377 B.R. 264, 269 (Bankr. D. Alaska 2007), *quoting, Reider v. Fed. Deposit Ins. Corp. (In re Reider)*, 31 F.3d 1102, 1109 (11th Cir. 1994); *see also, In re Owens Corning*, 419 F.3d at 212 ("Proponents of substantive consolidation have the burden of showing one or the other rationale for consolidation").

#### 2.  Substantive Consolidation is a "last resort" remedy to be used "sparingly."

The two factors are extremely difficult to meet as evidenced by the fact that the courts have declared that it is a remedy to be used sparingly and only as a last resort. *In re Bonham*, 229 F.3d at 767 (explaining that "almost every other court has noted [that substantive consolidation] should be used 'sparingly'") *citing, In re Flora Mir Candy Corp.*, 432 F.2d 1060, 1062-63 (2d Cir. 1970); *see also, In re Owens Corning*, 419 F.3d

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1    at 209 ("[T]here appears nearly unanimous consensus that [substantive consolidation] is

2    a remedy to be used 'sparingly'") *citing, In re Augie/Restivo Baking Co.*, 860 F.2d 515,

3    518 (2d Cir. 1988).

4        "Substantive consolidation usually results in, inter alia, pooling the assets of, and

5    claims against, the [consolidated] entities; satisfying liabilities from the resultant

6    common fund; eliminating inter-company claims; and combining the creditors of the

7    two companies for purposes of voting on reorganization plans. *In re Augie/Restivo*

8    *Baking Co.*, 860 F.2d at 518. Thus, it is no surprise that this extreme remedy is a "last

9    resort." *In re Owens Corning*, 419 F.3d at 211 (stating that, "Because substantive

10   consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and

11   imprecise, this 'rough justice' remedy should be rare and, in any event, one of last resort

12   after considering and rejecting other remedies (for example, the possibility of more

13   precise remedies conferred by the Bankruptcy Code)" *parenthesis in original*).[1]

14   **B.    CDC Cannot Meet Either of the Two Factors for Substantive**

15          **Consolidation**

16          **1.    CDC cannot met its burden of showing a prepetition disregard**

17                 **of the separateness of CDC, LSM Hotel or other affiliated**

18                 **entities.**

19       To justify consolidation under the first factor, CDC must show that creditors

20   dealt with the "Resort Entities" as "a single economic unit and did not rely on their

21   separate identity in extending credit." *In re Bonham*, 229 F.3d at 766. This first

22   factor is based on the consideration that lenders "structure their loans according to

23   their expectations regarding the borrower and do not anticipate either having the assets

24   of a more sound company available in the case of insolvency or having the creditors

25

---

26   [1] CDC's pursuit of this motion implicitly concedes that in the absence of
     substantive consolidation and gerrymandering of unsecured creditors, LSM Hotel
27   cannot propose a confirmable plan of reorganization. That concession is not lost on
     Symphony and it urges the Court once again to grant its pending relief from stay
28   motion at the earliest opportunity.

1092554.1 – 21393.001                            -11-                Symphony Asset Pool X, LLC's Trial Brief re
                                                                      Debtor's Motion re Consolidation;
                                                                      Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1  of a less sound debtor compete for the borrower's assets.  *Id., quoting In re*

2  *Augie/Restivo*, 860 F.2d at 518-19.

3      The Second Circuit's rationale for the first factor continues and is instructive:

4      Such lenders structure their loans according to their expectations
       regarding that borrower and do not anticipate either having the assets of a
5      more sound company available in the case of insolvency or having the
       creditors of a less sound debtor compete for the borrower's assets.  Such
6      expectations create significant equities.  Moreover, lenders' expectations
       are central to the calculation of interest rates and other terms of loans,
7      and fulfilling those expectations is therefore important to the efficiency
       of credit markets.  Such efficiency will be undermined by imposing
8      substantive consolidation in circumstances in which creditors believed
       they were dealing with separate entities.

9
10  *In re Augie/Restivo Baking Co.*, 860 F.2d at 518-519.

11      Here, CDC can not satisfy this test.  What CDC has demonstrated by its

12  pleadings is that CDC can never meet its burden.  Specifically, CDC identified

13  creditors of the various "Resort Entities" that looked to the individual companies and

14  their assets when extending loans.  In addition to Symphony's Loan (which is

15  discussed further below), CDC's Motion lists other creditors and their loans, each of

16  which are secured by distinct assets.  For example:

17  ▪  Loan from D&A Semi Annual Mortgage Fund III, LC secured by first and

18     second deeds of trust on the "Restaurant" property.  (Motion at p. 10, ¶ 9; *see*

19     *also*, Docket No. 56, bankruptcy Schedule D, at p. 54)

20  ▪  Loan from Telesis Community Credit Union secured by a first deed of trust on

21     the "Recreation Center" property.  (Motion at p. 11, ¶ 13; *see also*, Docket No.

22     56, bankruptcy Schedule D, at p. 55.)

23  ▪  Loan from Pacific West TD Fund II, LP secured by a first deed of trust on the

24     "Lake and Lakefront Land" property.  (Motion at p. 12, ¶ 14; *see also*, Docket

25     No. 56, bankruptcy Schedule D, at p. 55.)

26  ▪  Loan from Chris DiNofia secured by a first deed of trust on the "Signage

27     Parcels" property.  (Motion at p. 12, ¶ 15; *see also*, Docket No. 56, bankruptcy

28     Schedule D, at p. 54.)

-12-

1092554.1 -- 21393.001

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1    And, although CDC omits mention of it in its papers, there is a loan from

2  Ronald Frazar to debtor LSM Executive Course which loan is secured by a deed of

3  trust on the "Executive Course" property. *see*, *In Re LSM Executive Course*, Case No.

4  10-07480-LT11 at Docket No. 22 (emergency motion referencing Frazar loan).

5    CDC cannot prove that the above creditors disregarded the corporate structure

6  of the specific entity that that is the subject of their loan so as to create contractual

7  expectations that they were dealing with the four "Resort Entities" as though they

8  were one indistinguishable entity.    Given the size of the subject loans, it is

9  inconceivable that the above creditors did not know exactly which entity they were

10  dealing with, and the assets of that entity, when extending credit.    Indeed, each of

11  individual lenders secured their loans by deeds of trust, and thus each of these

12  creditors had to know the assets of the entity for that purpose. Symphony incorporates

13  the opposition pleadings filed by Ronald Frazar which demonstrate that there was no

14  confusion by Mr. Frazar as to which entity he was dealing with in extending credit.

15  *See*, Symphony's Request for Judicial Notice.

16    Most importantly, CDC cannot demonstrate, that Symphony or Symphony's

17  predecessor-in-interest ever treated LSM Hotel as part of some sort of single

18  economic entity with the other "Resort Entities".    The subject transaction was

19  "Lending 101" – Symphony's predecessor-in-interest lent money to LSM Hotel and

20  obtained a first priority security interest on the hotel (both the real and personal

21  property).  The parties documented this Loan in what could be fairly characterized as

22  "typical" loan documents.    Trial Exhs. "B" through "F."    The Loan was then

23  reaffirmed repeatedly by LSM Hotel. Trial Exhs. "G," "H," "I," and "K."

24    "This kind of lending occurs every business day.  To undo this bargain [with

25  substantive consolidation] is a demanding task." *In re Owens Corning*, 419 F.3d at

26  212.  The reason: "Creditors who make loans on the basis of the financial status of a

27  separate entity expect to be able to look to the assets of their particular borrower for

28  satisfaction of that loan." *In re Augie/Restivo Baking Co.*, 860 F.2d at 518-519.

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1    It is readily apparent that the case of Symphony's Loan to LSM Hotel is far

2    from a situation like the Ninth Circuit had in *Bonham* where consolidation was found

3    to be appropriate.  In *Bonham* the Court was dealing with a ponzi scheme in which

4    there was never any business structure or remotely definable separateness of the

5    parties involved in the scheme.   In affirming the bankruptcy courts decision to

6    consolidate, the Ninth Circuit commented:

> 7    The record clearly shows, and the investors do not dispute the bankruptcy
> 8    court's determination, that Bonham commingled her personal assets with
>      those of WPI and APFC, that there was no clear demarcation between the
>      affairs of Bonham, WPI and APFC, and that Bonham often commingled
> 9    the assets and names of WPI and APFC.

10   *In re Bonham*, 229 F.3d at 767.

11   Here, there is overwhelming (and insurmountable) evidence that Symphony's

12   predecessor looked to the assets of LSM Hotel, namely, the hotel property, when

13   making its Loan to LSM Hotel.  Messrs. Borgman and Koering unequivocally state so

14   in their concurrently filed declarations.  This asset is not commingled – title to the

15   hotel property is held as a matter of public record by LSM Hotel.

16   CDC nevertheless asserts that a few creditors (mainly small vendors)

17   supposedly viewed the affiliated entities as a "single economic unit."  The fact that a

18   few small vendors supposedly had this view is hardly enough to justify substantive

19   consolidation.  Symphony has a $12 million loan and this is plainly the material debt

20   for purposes of the test for substantive consolidation.

21   Moreover, the fact that certain creditors may have invoiced CDC or the "Lake

22   San Marcos Resort" is of no moment.   That is no different than if there was a

23   management company in place operating the various entities and the vendor invoiced

24   the management company rather than the underlying entity.   It does not justify

25   substantive consolidation.

26   In short, CDC has not, and cannot, meet the first factor so as to justify

27   consolidation.

28

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

**2.    CDC has not met its burden of showing that the affairs of the "Resort Entities" are so entangled that Substantive Consolidation will benefit all creditors.**

To justify substantive consolidation under the second factor, CDC must show that the "affairs of the debtor are so entangled that consolidation will benefit all creditors." *In re Bonham*, 229 F.3d at 766. Consolidation under this second factor "is justified only where the time and expense necessary even to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all the creditors" or "where no accurate identification and allocation of assets is possible." *Id., quoting In re Augie/Restivo*, 860 F.2d at 519.

Importantly, this factor requires that consolidation benefit "all creditors," meaning that CDC must show that consolidation will benefit Symphony. *In re Owens Corning*, 419 F.3d 195, 214-215 (3rd Cir. Del. 2005) ("commingling justifies consolidation only when separately accounting for the assets and liabilities of the distinct entities will reduce the recovery of *every* creditor – that is, when every creditor will benefit from the consolidation" [*emphasis in original*]).

Here, CDC has not met its burden.  CDC has not provided any meaningful evidence post-petition of hopeless commingling of the "Resort Entities" assets and liabilities.  CDC has not designated any expert to testify that the affairs of the various entities are in any way "hopelessly scrambled," and yet it is CDC's burden to show just that.

There is no question which entity owns certain principal assets and which entity has certain material liabilities because CDC has identified which of the four "Resort Entities" owns each of the material assets, *i.e.*, the various real property assets; and, CDC has similarly identified which creditors have loans secured by those assets. These facts are also a matter of public record.

CDC's claim that the "Resort Entities" affairs are somehow hopelessly scrambled is also belied by the very pleadings that those "Resort Entities" have filed

1092554.1 – 21393.001                                          -15-

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1   in this Court.   Specifically, LSM Hotel has already argued that it can, and has,

2   segregated its finances.   LSM Hotel made this argument in dealing with its Cash

3   Collateral Motion in its own case.   In fact, LSM Hotel prepared a budget showing its

4   anticipated revenues and estimated expenses in operating the hotel.   Moreover, in

5   asking this Court to approve its use of Cash Collateral, LSM Hotel provided *three*

6   *years* of Income and Expense Statements (aka Profit and Loss Statements) for the

7   hotel dating back to January 2007.   Those Statements contain line item details of the

8   income and expenditures in operating the hotel.   Docket No. 51 (Exhibit "1" to

9   Supplemental Declaration of M. DiNofia, filed 8/24/10).   Similarly, debtor LSM

10  Executive Course was able to segregate its finances sufficiently to prepare a budget as

11  part of its Cash Collateral Motion.   *See, In re LSM Executive Course*, USBC Southern

12  Dist. Case No. 10-07480-LT11 at docket No. 22 (Exhibit "1" Emergency Motion re

13  Use of Cash Collateral).

14       Furthermore, LSM Hotel and the other debtors filed schedules under oath that

15  specify their assets and liabilities.   And, the various debtors have filed detailed

16  operating reports reflecting their individual revenues and costs.   Such documents belie

17  any claim that these debtors' financial affairs are hopelessly scrambled so as to meet

18  the test for substantive consolidation.

19       The material assets and liabilities of LSM Hotel are readily apparent by looking

20  at the hotel (the asset) and its operations (which yield its income and expenses).   LSM

21  Hotel's affairs are far from scrambled.   Just because LSM Hotel outsources its

22  management and shares some employees with other affiliated entities does not even

23  come close to justifying substantive consolidation.

24       Besides, case law is clear that even if LSM Hotel could not precisely account

25  for some of its affairs, that is not sufficient to justify consolidation.   "Neither the

26  impossibility of perfection in untangling the affairs of the entities nor the likelihood of

27  some inaccuracies in efforts to do so is sufficient to justify consolidation."   *In re*

28  *Owens Corning*, 419 F.3d at 214-215.

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1    The *In re Owens Corning* Court found the comments in *In re World Access,*

2    *Inc.*, 301 B.R. 217 (Bankr. N.D. Ill. 2003) instructive on the issue of inter-company

3    accounting and those comments are pertinent here.  In that case, the Court noted that

4    the controlling entity "had no uniform guidelines for the recording of intercompany

5    interest charges" and that the debtors failed to "allocate overhead charges amongst

6    themselves." *Id.* at 234.  The Court held, however, that those accounting shortcomings

7    were "merely imperfections in a sophisticated system of accounting records that were

8    conscientiously maintained."  *Id.* at 279.  It ultimately concluded that "all the relevant

9    accounting data ... still existed," that only a "reasonable review to make any

10   necessary adjustments [was] required," and, thus, that substantive consolidation was

11   not warranted. *Id.*

12   The Third Circuit astutely commented that, "Imperfection in intercompany

13   accounting is assuredly not atypical in large, complex company structures."  *In re*

14   *Owens Corning*, 419 F.3d at 214-215.  While the "Resort Entities" are hardly large,

15   complex company structures, imperfection in intercompany accounting among the

16   "Resort Entities" is certainly likely given the inexperienced management.  Whatever

17   self-created imperfections may exist, they are certainly not justification for the drastic

18   remedy of consolidation.  Rather, they serve to justify granting Symphony's Motion

19   for Relief from Stay so that Symphony may proceed with having the state court

20   appoint a receiver experienced in operating hotels to take charge of the Property

21   pending Symphony's foreclosure.

22   What's more, there is no showing at all that Symphony will benefit from

23   consolidation.  Consolidation will not benefit Symphony, but instead will only serve

24   to put higher priority claims of other consolidated entities above the claims of

25   Symphony.  Such a result is one of the reasons why the Second Circuit denied

26   consolidation in the landmark case of *In re Augie/Restivo Baking Co.*  In that case,

27   secured creditor Union Bank objected to consolidation because it would impair Union

28

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1  Bank's rights and benefit later creditors, including Manufacturers Hanover Trust

2  Company ("MHTC"), who supported consolidation. The Court found that:

> The result of substantive consolidation in the instant case would be to
> make the assets of Augie's available to pay the debts of Augie/Restivo,
> and to enrich MHTC (whose entire pre-petition loans to Augie/Restivo
> have been converted to fully-secured post-petition super-priority
> administrative debt pursuant to the cash collateral stipulations) at the
> expense of Union. Even if the reorganization and sale remained viable,
> moreover, there would be no justification for submitting Union to "cram-
> down" procedures dominated by creditors of Augie/Restivo.

8  860 F.2d at 521. These same grounds justify denial of the consolidation motion here.

9  LSM Hotel's asset (the hotel) and the revenues from that asset should not be used to

10  pay other creditors, and, Symphony should not have whatever unsecured portion of its

11  loan subordinated to any higher priority claims of other debtors.

12  Furthermore, Symphony should not be subjected to possible gerrymandering

13  that certainly will occur if it is placed into a much larger pool of debtors. On this

14  point, the Third Circuit in *In re Owens Corning* noted:

> substantive consolidation should be used defensively to remedy
> identifiable harms, not offensively to achieve advantage over one group
> in the plan negotiation process (for example, by deeming assets
> redistributed to negate plan voting rights), nor a "free pass" to spare
> Debtors or any other group from proving challenges, like fraudulent
> transfer claims, that are liberally brandished to scare yet are hard to show.

19  *In re Owens Corning*, 419 F.3d at 215. Here, it is self-evident that Symphony will

20  have a drastically different perspective towards LSM Hotel than the unsecured

21  creditors of LSM Hotel, CDC and the remaining "Resort Entities." LSM Hotel should

22  not be permitted to use consolidation as a tool to garner support for any reorganization

23  plan (which Symphony contends it cannot achieve).

24  For these reasons, this Court should deny CDC's Motion.

25  **C.**   **The Cross-Complaint filed by DiNofia in his state court case is fatal**

26  **to this Motion.**

27  LSM Hotel sought to give up the Hotel to Symphony's predecessor-in-interest

28  (GACC). As revealed in a state court Cross-Complaint filed by CDC's principal,

-18-

1092554.1 – 21393.001

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1   Matthew DiNofia, LSM Hotel already tried to give the Property back to Symphony's

2   predecessor-in-interest (GACC) right before LSM Hotel filed bankruptcy.  DiNofia

3   alleges that this was attempted in the hopes that GACC would release Mr. DiNofia

4   from his personal guaranty.    Trial Exh. "T";  *see also*, Symphony's Request for

5   Judicial Notice, Exh. "T".  Mr. DiNofia alleges in his Cross-Complaint that:

6           During the early summer of 2010, as a result of the dramatic
        upheaval in the real estate market and collapse of the hospitality industry,
7       LSM was no longer able to continue making payments on the terms of
        the Senior Loan.  In an effort to accommodate GACC, LSM and CROSS-
8       COMPLAINANT agreed to turn over the Hotel to GACC in return for
        GACC releasing CROSS-COMPLAINANT from their personal guaranty
9       (the "GACC Guaranty") on the GACC Loan (the "GACC Settlement").[2]

10  Trial Exh. "T"; *see also*, Request for Judicial Notice, Exh. "T", Cross-Complaint at ¶

11  23.

12          The Cross-Complaint filed by DiNofia evidences two critical points:  First, how

13  can the financial affairs of the hotel property possibly be "hopelessly scrambled" with

14  the financial affairs of the other debtors if LSM Hotel could readily have given the

15  property to GACC as DiNofia claims in his state court Cross-Complaint.  Trial Exh.

16  "T".  This fact unequivocally shows that the financial affairs of these entities are not

17  scrambled and can easily be kept as separate and distinct entities (which they are).

18          Second, the Cross-Complaint reveals the grave conflict of interest that DiNofia

19  has in these bankruptcy proceedings.  How can DiNofia be responsible for a plan of

20  reorganization (if there even was a realistic probability of one, which there is not)

21  when it is clear that he is looking out for himself first (i.e., by trying to absolve

22  himself of his personal guaranty) and not looking at the best interests of the LSM

23  Hotel.  Nowhere does DiNofia reconcile how he can uphold his fiduciary duties owed

24  to LSM Hotel and CDC with his own personal interests in avoiding personal

25

26

27      [2] Symphony is informed that there was no settlement and that GACC disputes the
28  allegations that there was a settlement.

1092554.1 – 21393.001                    -19-
                                    Symphony Asset Pool X, LLC's Trial Brief re
                                    Debtor's Motion re Consolidation;
                                    Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1  liabilities.  This constitutes a further ground for not allowing substantive consolidation

2  when DiNofia is simply looking out for his own interests above those of the debtors.

3  **D.    CDC's Withdrawal of LSM Executive Course from its Substantive**

4  **Consolidation Motion and its efforts to sell the Restaurant Property**

5  **are Fatal to the Motion.**

6  CDC claimed that LSM Executive Course must be substantively consolidated

7  with CDC, LSM Hotel, and non-debtor LSM Country Club because the affairs of all

8  of these entities are somehow hopelessly scrambled.  Of course, when it made a deal

9  with LSM Executive Course, suddenly those affairs were not so scrambled after all.

10  The fact that CDC withdrew LSM Executive Course from its motion only after those

11  parties cut a deal speaks volumes on the veracity of CDC's claims in its motion and

12  demonstrates that CDC is willing to say anything when it suits it.  Such action plainly

13  shows that this Motion is nothing but an attempt to gain leverage against the secured

14  lenders.

15  Similarly, CDC has argued that the financial affairs of the various "resort"

16  components are so inextricably intertwined so as to justify consolidation, and yet it

17  tried to sell one of those components, the Restaurant Property.  Trial Exh. "S."  The

18  fact that CDC tried to sell off the Restaurant Property is illustrative that the

19  components of the so-called "resort" are not scrambled at all.

20  The Motion should be denied for these reasons as well.

21

22

23

24

25

26

27

28

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

## IV.    __CONCLUSION__.

CDC can never show the requirements for substantive consolidation at trial, and therefore this Court should deny its Motion.    This Court should further grant Symphony's Motion for Relief from Stay.

DATED:  January 6, 2011.

Respectfully submitted,

GREENWALD, PAULY, FOSTER & MILLER,
A Professional Corporation

ANDREW S. PAULY
ANDREW J. HALEY

By:___/s/ ANDREW S. PAULY_____
        ANDREW S. PAULY, a Member of
        GREENWALD, PAULY, FOSTER &
        MILLER, A Professional Corporation,
        Attorneys for Interested Party SYMPHONY
        ASSET POOL X, LLC

1092554.1 – 21393.001

Symphony Asset Pool X, LLC's Trial Brief re
Debtor's Motion re Consolidation;
Case No. 10-15142-LT11

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1299 Ocean Avenue, Suite 400, Santa Monica, California 90401-1007.

On January 6, 2011, I served the foregoing document described as **SYMPHONY ASSET POOL X, LLC's TRIAL BRIEF REGARDING DEBTOR'S MOTION FOR ORDER AUTHORIZING AND DIRECTING THE SUBSTANTIVE CONSOLIDATION OF DEBTOR WITH AFFILIATED ENTITIES** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed to the addressee(s) as follows:

**SEE ATTACHED SERVICE LIST**

[X] BY MAIL: I caused such envelope to be deposited in the mail at Santa Monica, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service on that same day in the ordinary course of business.

[ ] BY PERSONAL SERVICE: I personally delivered such envelope by hand to the offices of the addressee.

[ ] BY FEDERAL EXPRESS: The Federal Express package tracking number for this envelope is _____, and the envelope was sent [mode] for receipt on [day], [date].

[ ] BY ELECTRONIC MEANS: A courtesy copy of the above-referenced document was transmitted by [ ] facsimile and/or [ ] e-mail transmission; said transmission was reported as complete and without error.

[X] Executed on January 6, 2011, at Santa Monica, California.

[ ] (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (Federal)    I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_Leslie M. Rudolph_
LESLIE M. RUDOLPH

-22-

1093638.1 -- 21393.001

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

## SERVICE LIST
### *In re Citizens Development Corp.*
### United States Bankruptcy Court, Southern District of California
### Case No. 10-15142-LT11

IRS – Centralized
Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114-0326

Haeji Hong, Esq.                              Counsel for the U. S. Trustee
Office of the United States Trustee           Tel. (619) 557-5013
402 West Broadway, Suite 600                  Fax (619) 557-5339
San Diego, CA 92101-8511                      Email:  Haeji.Hong@usdoj.gov

The Wolf Firm
2955 Main Street, 2nd Floor
Irvine, CA 92614

Richard Pekin, Esq.                           Counsel for Secured Creditor D&A Semi-
Fox Johns Lazar Pekin & Wexler, APC           Annual Mortgage Fund III, L.P.
525 "B" Street, Suite 1500                    Tel. (619) 237-0011
San Diego, CA 92101                           Fax (619) 237-9717

Citizens Development Corp.
1295 Discovery Street
San Marcos, CA 92078-4032

Internal Revenue Service
Insolvency Group 1
880 Front Street
San Diego, CA 92101

Dean T. Kirby, Jr., Esq.                       Counsel for Javier Serhan and El Toreador
Kirby & McGuinn, APC                           Properties Group, L.P.
707 Broadway, Suite 1750                       Tel. (619) 685-4000
San Diego, CA 92101                            Fax (619) 685-4004

Dennis J. Wickham, Esq.                        Counsel for California Credit Union
Seltzer Caplan McMahon Vitek                   Work (619) 685-3135
2100 Symphony Towers, 750 B Street             Fax (619) 702-6812
San Diego, CA 92101                            Cell (619) 980-9247
                                               Email: *wickham@scmv.com*

-23-

1093638.1 – 21393.001

Greenwald, Pauly,
Foster & Miller
A Professional
Corporation

1

2   Wayne R. Terry, Esq.                                    Counsel for Creditor Bank of the West
3   Hemar Rousso & Heald, LLP                               Tel. (818) 501-3800
    15910 Ventura Blvd., 12th Floor                         Fax (818) 501-2985
4   Encino, CA 91436-2829

5   Angela A. Velen, Esq.
6   Collection at Law, Inc.
    3835 E. Thousand Oaks Blvd., #R-349
7   Westlake Village, CA 91362

8   Krikor J. Meshefejian, Esq.                             Counsel for Debtor
9   Levene, Neale, Bender, Yoo & Brill, L.L.P.              Tel. (310) 229-1234
    10250 Constellation Blvd., Suite 1700                   Driect (310) 229-3380
10  Los Angeles, CA 90067                                   Fax (310) 229-1244
                                                            Email: KJM@lnbyb.com
11

12  Gerson Law Firm, APC
13  9255 Towne Centre Drive, Suite 300
    San Diego, CA 92121
14

15  Kelly Ann Tran, Esq.                                    Counsel for Frazar
    Mulvaney, Kahan & Barry LLP                             Tel. (619) 238-1010
16  401 West "A" Street, 17th Floor                         Fax (619) 238-1981
    San Diego, CA 92101
17

18

19

20

21

22

23

24

25

26

27

28

1093638.1 -- 21393.001