JUDITH A. DESCALSO (SBN 103211)
LAW OFFICE OF JUDITH A. DESCALSO
960 Canterbury Place, Suite 340
Escondido, California 92025
PHONE:  760-745-8380
FAX:  760-860-9800

KENNETH H. LOUNSBERY (SBN 38055)
LOUNSBERY FERGUSON ALTONA & PEAK, LLP
960 Canterbury Place, Suite 300
Escondido, California 92025
PHONE:  760-743-1201
FAX:  760-743-9926

Attorneys for Creditor, LAKE SAN MARCOS
COMMUNITY ASSOCIATION

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>CITIZENS DEVELOPMENT CORP.,<br><br>Debtor and Debtor in Possession | CASE NO.   10-15142-LT11<br><br>Chapter 11<br><br>**MOTION FOR ADEQUATE PROTECTION BY SEGREGATION OF FUNDS AND FOR ACCOUNTING**<br><br>**[11 USC §363(e)]**<br><br>Hearing Date:   March 1, 2011<br>Time:                2:00 p.m.<br>Judge:              Hon. Laura S. Taylor<br>Courtroom:     Dept. 3, Room 129 |

The Lake San Marcos Community Association ("LSMCA" or the "Association") moves this court for an order segregating the funds paid by LSMCA for maintenance and upkeep of

the facilities owned and operated by the Debtor and for an accounting of the use funds since filing for relief herein and throughout the remainder of this Chapter.

# I
# STATEMENT OF FACTS

The Association is a non-profit corporation and by the terms of its articles and by-laws, represents its members (the "Members") who are parties to executory contracts with the Debtor, Citizens Development Corporation ("CDC").

The Members are comprised of individual homeowners, and a collection of Home Owners Associations ("HOA"). The HOA's are the product of individual subdivisions which were completed over an extended period; appended to each subdivision were covenants forming the HOA's. There are 21 separate HOA's in the Lake San Marcos Community and approximately 2295 residential units. Of the 21 HOA's, 13 have agreements with CDC, as described below. Approximately 900 of the individual unit owners also have separate agreements with CDC, as described below. Of the latter, 556 are identified in Schedule G of the Debtor's Petition. Nine of the 21 HOA's are dues paying Members of the Association. Approximately 1300 individual unit owners are also LSMCA Members.

By the terms of their various agreements, Members pay fees to the Debtor (the fees are called rents) for the right to use certain facilities that are in the nature of common area improvements but are, in fact, owned by the Debtor. The facilities include swimming pools, tennis courts, recreational areas, a meeting facility and Lake San Marcos, itself, including boat docks (the Facilities). Annualized, the fees total payments of about $700,000.

Although the language of the lease agreements is not uniform, each such agreement requires CDC to properly maintain the Facilities in a manner making them fit for use by the

Members.  The failure of CDC to properly maintain the Facilities constitutes a breach of the Agreements, for which various enforcement remedies are made available to the Members.  The remedies of certain of the Member HOA's have been expressly assigned to the Association for purposes of pursuing enforcement of the obligations of CDC in these proceedings.

For the past several years the Association has requested CDC properly maintain the facilities in good repair so that the members of the association can receive the benefit of their payment of fees.  Prior to and continuing beyond the filing of the petition for relief, CDC has failed to maintain the Facilities and they have fallen into such disrepair and deterioration that they are dangerous as well as unacceptable for use by the membership of the Association.

## II
## THE ASSOCIATION IS ENTITLED TO ADEQUATE PROTECTION
## OF THE PAYMENTS MADE PURSUANT TO CONTRACTS WITH DEBTOR

11 U.S.C. §363(e) provides that:

> at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

Over the past several years, the Facilities have been under-maintained and have fallen into a state of disrepair.  Proof of the state of disrepair is contained in the preliminary Inspection Report prepared by Mr. James Courtney, a credentialed Building Inspector and filed herewith.  Mr. Courtney includes in his report initial estimates of the cost necessary to bring the Facilities up to an acceptable standard of use.  He also estimates the amount of money necessary to budget for the proper maintenance of the Facilities on a continuing basis.

An analysis of the condition of the waters of the Lake was prepared by Dr. Michael Anderson and is attached as Exhibit "A" to the Declaration of F. John Andrew filed herewith. Dr. Anderson concludes that the Debtor has allowed the Lake to become polluted and that its condition must be remediated.

The condition of the Facilities, including the Lake, renders them unfit for their intended purpose. The use for which the Members have paid, and for which they continue to pay, has been, and is being, wrongfully denied. Therefore, it is the position of the Association that CDC has failed and is continuing to fail to comply with its duties under the terms of the contracts. The result of this ongoing failure is the deterioration of the Facilities and creation of conditions risking the health and safety of the homeowners and parties to the contracts as well as other visitors to the Facilities.

The Association engaged Mr. Courtney for the express purpose of identifying the extent of the Debtor's breach. The Courtney report was intended to be preliminary; in fact, it is believed by the Association to only partially report the extent of the deficiencies. The Association relies upon Mr. Courtney's report, and the appended report of Dr. Anderson, to prove its allegation of breach. Based upon such evidence, it was the intention of the Association to do six things:

- First, to file suit in Superior Court against the Debtor for breach of the contracts. It should be noted that a similar suit was filed by the Association in 2005 and was referred to mediation. The mediation failed because CDC would only agree to address and resolve the maintenance issues on the condition that the Association

include in the settlement agreement a covenant not to sue in the future – the Association was unwilling to contractually forfeit its legal remedies.]

- Second, to include in the suit, a claim for specific performance by the Debtor of its duties under the executory contracts.
- Third, to with-hold from any payments to the Debtor those amounts necessary to bring the Facilities up to an acceptable standard of use, or alternatively, make such payments to the court by interpleader in the breach proceedings;
- Fourth, to with-hold from any payments to the Debtor those amounts necessary to maintain the Facilities to a proper and acceptable standard, or alternatively, make such payments to the court by interpleader in the breach proceedings;
- Fifth, to use for repair and maintenance those portions of Member payments necessary to complete the necessary repairs and to sustain a program of maintenance, in the event that the Association is granted leave to do so.
- Sixth, to establish as a matter of law that the Debtor owes a contractual duty to the Members to remediate the polluted condition of Lake San Marcos.

Over the course of the past few months, certain of the Members have expressed concern about making future rent payments to CDC. The prevailing conviction is that any such funds, if tendered, would continue to be diverted by CDC to the payment of creditor obligations other than the repair and maintenance of the Facilities. In the meantime, contrary to the position taken by the Debtor, the Facilities, continue to deteriorate, intensifying the compromised value of the Facilities to the Members as well as unsecured creditors. In order to avoid wasting their money, and yet remain in "equitable" compliance with the terms of the various executory

contracts, certain of the Members have resorted to the various strategies including withholding payments and self-help maintenance as more fully described in the Declaration of F. John Andrew, president of the board of LSMCA filed herewith.

These examples emphasize an important point. The Members are capable of meeting the payment requirements of the contracts. However, they are convinced that their obligation to pay has been qualified by the breach of said agreements by CDC. They are uniformly willing to meet their payment requirements if they can be assured that their money will be used for the repair and maintenance of the Facilities.

Over the course of the several weeks, two things have happened:

- First, when advised of the existence of the Courtney Report, CDC requested a copy of same, which the Association tendered. The Association's purpose was not to sandbag CDC in these proceedings; rather it sought to encourage compliance with the terms of the executory contracts. The response from CDC has been an implied admission of its breach of the contracts over the past six years. It immediately directed a narrowly crafted, four question survey of certain of the residents, confidentially compiled the responses and announced the "results." CDC will not disclose the actual responses or its method of compilation. Then, CDC undertook a slap-dash, crash course of superficial corrections of the most glaring of the maintenance deficiencies. To describe the scope of these corrections attempted by CDC, the Association engaged James Courtney to prepare a follow-up report, a copy of which is filed herewith.

- Second, the Debtor has repeated its threat to prohibit the use of the Facilities by any non-paying Member.

In addition to the amounts charged pursuant to the contracts described above, CDC imposes on those Members who have boats on the lake an additional fee for lake use. This "license fee" is not the subject of a written obligation between CDC and the boat-owning Members. Before CDC was acquired by the Debtor, the annual fee charged was $260. The Debtor unilaterally increased the fee to $500 in 2005. For the 2010 calendar year, the fee was raised to $590. By custom and practice, the annual fee has been levied on or about January 1 of each year. If the fee for 2011 remains the same as 2010, the total charges for boat use will be $97,000, based upon an inventory of approximately 169 boats. CDC has threatened to remove from the lake any boat for which the fee is not paid

Compounding the breaches by the Debtor is the over-arching issue concerning the deteriorated condition of the waters of Lake San Marcos. The Regional Water Quality Control Board has declared the Lake to be an "impaired" water body. [The nature of the deterioration of the Lake water is described in the report prepared by Dr. Michael Anderson and attached to the Declaration of F. John Andrew filed herewith]. The designation is a regulatory term of art that requires the party, or parties, responsible for the impairment to undertake a program of remediation.

Advancement of the remediation program has been the subject of attention by the Regional Board for several years. Yet, CDC has resisted acceptance of its responsibility for the impairment. Rather, it blames upstream dischargers into San Marcos Creek (which flows into the Lake), including the County, the City of San Marcos, the City of Escondido, the

Vallecitos Water District and the surrounding residents, among others.  Notwithstanding the Debtor's denials, the Executive Officer of the Regional Board, David Gibson, has stated his position; CDC bears responsibility for the impairment of the Lake and the remediation of its deteriorated condition.  In an e-mail message received by counsel for the Association on December 16, 2010, Mr. Gibson stated his intention "…to issue an Investigative Order or Clean Up and Abatement Order to CDC with regard to the eutrophication and nuisance that exists in the reservoir."

Use of a clean, un-impaired Lake by the Members is an inherent consideration for which the Members pay their Lake and Lodge fees every year.  To whatever extent the Debtor allows the Lake pollution to remain unaddressed, the Debtor denies the Members effective use of the Lake, thereby compounding its breach of the contracts.

### III
### CONCLUSION

It is clear from the reports herein that CDC has not been using the paid assessments to maintain the property for the benefit and use of the homeowners.  It is further apparent that CDC is content to allow the Facilities to deteriorate to a level that is a risk to the health and safety of the homeowners as well as other visitors to the Facilities.

/ / /

/ / /

/ / /

The Association now seeks to prevent the continuing waste of the Debtor's assets, the Facilities, by the imposition of a mandate upon the Debtor that the payments made under the contracts be segregated and applied in a sufficient amount for repair and maintenance of the Facilities and that an accounting of the use of paid assessments be provided to the court and to moving party.

Dated: January 21. 2011  /s/ Judith A. Descalso
Judith A. Descalso
Attorney for Movant