RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO& BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  rb@lnbyb.com; kjm@lnbyb.com

Counsel for Chapter 11 Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CITIZENS DEVELOPMENT CORP.,<br><br>                         Debtor.<br>———————————————<br>LSM HOTEL, LLC,<br><br> Member Case No. 10-13024-LT11<br><br>LSM COUNTRY CLUB, LLC,<br><br>(No Member Case Number) | ) Case No. 10-bk-15142-LT11<br>)<br>) Chapter 11<br>)<br>) (Substantively Consolidated)<br>)<br>) **DEBTOR'S OMNIBUS MOTION FOR:**<br>)<br>) **(1)  ORDER APPROVING SETTLEMENT**<br>) **AGREEMENT WITH PAC WEST TD**<br>) **FUND II, L.P. PURSUANT TO RULE 9019**<br>) **OF THE FEDERAL RULES OF**<br>) **BANKRUPTCY PROCEDURE; AND**<br>)<br>) **(2) ORDER AUTHORIZING THE**<br>) **DEBTOR TO OBTAIN POST-PETITION**<br>) **FINANCING PURSUANT TO 11 U.S.C. §**<br>) **364(c) and (d)**<br>)<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES**<br>)<br>) **DECLARATION OF PINO VITTI IN**<br>) **SUPPORT THEREOF**<br>)<br>) <u>Hearing</u>:<br>) Date:   September 23, 2013<br>) Time:  9:30 a.m.<br>) Place:  Dept. 3<br>)<br>) [Hon. Laura S. Taylor] |

Debtor's Omnibus Motion To
Approve Settlement Agreements

## <u>TABLE OF CONTENTS</u>

I.       INTRODUCTION ......................................................................................2

II.      STATEMENT OF FACTS .......................................................................5

III.     DISCUSSION..........................................................................................9

         A.      The Settlement Is Fair And In The Best Interests Of The Estate ...............9

         B.      The Court Should Authorize The Settlement Loan So That The
                 Debtor Can Comply With The Terms Of The Settlement...........................12

         C.      The Settlement Loan Should Be Approved On A Final Basis Pursuant
                 To The Proposed Settlement Loan Order ......................................................16

         D.      The Debtor Has Satisfied All Procedural Requirements Regarding
                 Approval Of The DIP Loan..........................................................................16

IV.      CONCLUSION .....................................................................................17

i

Debtor's Omnibus Motion To
Approve Settlement Agreements

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

cert.deniedsubnom.Benson v. Newman
　　409 U.S. 1039 (1972) .......................................................................... 10

Cosoff v. Rodman (In re W.T. Grant Co.)
　　699 F.2d 599 (2d Cir. 1983), cert.denied 464 U.S. 822 (1983)................................. 10

In re Ames Dept. Stores
　　115 B.R. 34 (Bankr. S.D.N.Y. 1990) ("Ames").......................................... 12, 14, 15

In re Antico Mfg. Co.
　　31 B.R. 103 (Bankr. E.D.N.Y. 1983) ...................................................... 13

In re Aqua Assoc.
　　123 B.R. 192 (Bankr. E.D.Pa. 1991) ....................................................... 14

In re Blair
　　538 F.2d 849 (9th Cir. 1976)................................................................. 8

In re Crouse Group, Inc.
　　71 B.R. 544 (Bankr. E.D.Pa. 1987)......................................................... 14

In re Defender Drug Stores
　　126 B.R. 76 (Bankr. D. Ariz. 1991), aff'd 145 B.R. 312 (Bankr. 9th Cir. 1992) ................... 13

In re Ellingsen MacLean Oil Co.
　　834 F.2d 599 (6th Cir. 1987)................................................................. 13

In re Lee Way Holding Co.
　　120 B.R. 881 (Bankr. S.D. Ohio 1990) ..................................................... 10

In re Photo Promotion Associates, Inc.
　　87 B.R. 835 (Bankr. S.D.N.Y. 1988), aff'd, 881 F.2d 6 (2d. Cir. 1989).......................... 12, 13

In re Simasko Production Co.
　　47 B.R. 444 (D. Colo.1985) ................................................................ 12

In re Snowshoe Co., Inc.
　　789 F. 2d 1085 (4th Cir. 1986)............................................................. 14

In re T.M. Sweeney & Sons LTL Services, Inc.
　　131 B.R. 984 (Bankr.N.D.Ill.1991)......................................................... 13

Debtor's Omnibus Motion To
Approve Settlement Agreements

In re Walsh Construction, Inc.
   669 F.2d 1325 (9th Cir. 1982) .................................................................... 8, 9

Martin v. Kane (In re A & C Properties)
   784 F.2d 1377 (9th Cir. 1986), cert.denied 479 U.S. 854 (1986) ....................... 9, 10

Newman v. Stein
   464 F.2d 689 (2d Cir. 1972) ............................................................................ 10

Protective Committee for Independent Stockholders of TNT Trailer Fairy, Inc. v.
      Anderson
   390 U.S. 414 (1968) ......................................................................................... 9

Richmond Leasing Co. v. Capital Bank N.A.
   762 F.2d 1303 (5th Cir. 1985) ......................................................................... 15

seealsoAnaconda-Ericsson Inc. v. Hessen (In re Teltronics Services, Inc.)
   762 F.2d 185 (2d Cir. 1985) ............................................................................ 10

Woodson v. Fireman's Fund Ins. Co. (In re Woodson)
   839 F.2d 610 (9th Cir. 1988) ............................................................................ 9

**FEDERAL STATUTES**

11 U.S.C. § 364(b) .................................................................................... 13, 14

11 U.S.C. § 364(c) ................................................................................... passim

11 U.S.C. § 364(d) .................................................................................... 13, 14

11 U.S.C. § 506(c) ............................................................................................ 4

11 U.S.C. § 544 ................................................................................................ 4

11 U.S.C. § 545 ................................................................................................ 4

11 U.S.C. § 547 ................................................................................................ 4

11 U.S.C. § 548 ................................................................................................ 4

11 U.S.C. § 549 ................................................................................................ 4

11 U.S.C. § 553(b) ........................................................................................... 4

11 U.S.C. § 723(a) ........................................................................................... 4

**FEDERAL RULES**

Fed.R.Bankr.P. 4001 ........................................................................................ 3

iii

Fed.R.Bankr.P. 4001-2 ................................................................................................ 16

Fed.R.Bankr.P. 4001(c) ....................................................................................... 15, 16

Fed.R.Bankr.P. 4001(d) ...................................................................................... 15, 16

Fed.R.Bankr.P. 9014 ................................................................................................ 15

Fed.R.Bankr.P. 9019 .................................................................................................. 2

iv

# I.

## __INTRODUCTION__

Citizens Development Corp., Chapter 11 Debtor and Debtor in Possession (the "__Debtor__"), hereby moves (the "__Motion__") for orders:

1.    approving the Settlement Agreement (the "__Settlement__") between the Debtor, LSM Lender, LLC ("__LSM Lender__"), and Pac West TD Fund II, L.P. ("__Pac West__") attached hereto as Exhibit "1"; and

2.    authorizing the Debtor to obtain post-petition financing in the amount of $100,000 from LSM Lender in order to meet the payment requirements to Pac West set forth the Settlement, pursuant to 11 U.S.C. § 364(c) (the "__Settlement Loan__").

The Debtor submits that the Settlement is in the best interests of the estate, and meets the requirements of Court approval of a settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure.    The Debtor further submits that the Settlement Loan is fair and reasonable, and meets the requirements of 11 U.S.C. §364(c) and (d).

Pursuant to the Settlement, Pac West has agreed to a payment from the Debtor of $100,000 in full settlement and satisfaction of its claims against the Debtor, which claims are asserted to be comprised of a $875,000 secured claim against the Debtor.

Pursuant to the Settlement Loan, the Debtor will receive $100,000 from LSM Lender. The Settlement Loan will be secured by: (1) a first priority Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing encumbering the property described in Exhibit A to the Loan Agreement attached as Exhibit "G" to the Settlement; and (2) all of the Debtor's assets described in the Security Agreement attached as Exhibit "G" to the Settlement.

The Settlement Loan will be due four years from its inception.    The Debtor will be required to make interest only payments on the Settlement Loan at a rate of 7% per annum.    The Debtor believes that it can easily comply with such terms and that such terms are not only fair and reasonable, but that no other lender would be willing to provide financing to the Debtor upon terms remotely as favorable as the terms of the Settlement Loan.    The proposed documents

Debtor's Omnibus Motion To
Approve Settlement Agreements

evidencing the Settlement Loan are attached as Exhibit "G" to the Settlement and a proposed order approving the Settlement Loan is attached hereto as Exhibit "2."

Pursuant to the Settlement and the Settlement Loan, a $875,000 fully matured obligation is being replaced by a $100,000 obligation which will not mature until 2017. Pursuant to the Settlement and the Settlement Loan, a major contingency regarding the Debtor's plan or reorganization will be resolved for the benefit of the Debtor and its bankruptcy estate. Pursuant to the Settlement, the Debtor's avoidance action commenced against Pac West will be resolved favorably for the Debtor, at minimal cost to the Debtor. Indeed, the Settlement Loan amount is likely the minimal amount that the Debtor would have to spend litigating with Pac West, with no certainty that the Debtor's litigation will prove fruitful. The Settlement and the Settlement Loan are clearly in the best interests of the estate and should be approved.

Pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure, the Debtor hereby provides the following disclosures with respect to the Settlement Loan:

| **Description of Provision** | **Paragraph No. (Of Loan Agreement)** | **Explanation** |
| --- | --- | --- |
| A grant of priority or a lien on property of the estate under § 364(c) or (d) | Para. 1.14 | The Settlement Loan will be secured by: (1) a first priority Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing encumbering the property described in Exhibit A to the Loan Agreement attached as Exhibit "G" to the Settlement; and (2) all of the Debtor's assets described in the Security Agreement attached as Exhibit "G" to the Settlement. |
| The providing of adequate protection or priority for a claim that arose before the commencement of the case, including the | See Settlement | The Debtor will utilize the proceeds of the Settlement Loan to pay Pac West |

Debtor's Omnibus Motion To
Approve Settlement Agreements

| | | |
|---|---|---|
| granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim | | $100,000 in full settlement and satisfaction of its claims against the Debtor. |
| A determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim | See Settlement | The Settlement requires the Debtor to pay to Pac West $100,000 in full settlement and satisfaction of its claims against the Debtor. The Settlement Loan will provide the Debtor the funds necessary to pay Pac West the Settlement amount. |
| A waiver or modification of Code provisions or applicable rulings relating to the automatic stay | N/A | |
| A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request to obtain authority to obtain credit under § 364 | N/A | |
| The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order | N/A | |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien | N/A | |
| A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action | See Settlement | The Settlement includes a release of the Debtor's claims against Pac West. |
| The indemnity of an entity | See paragraphs 6.1, 6.2, and 6.3 | The Settlement Loan requires that the Debtor provide various indemnities to LSM Lender which the Debtor submits are typical |

4

Debtor's Omnibus Motion To
Approve Settlement Agreements

| | | indemnifications provided to lenders and appropriate under the circumstances |
|---|---|---|
| A release, waiver, or limitation of any right under Section 506(c) | N/A | |
| The granting of a lien on any claim or cause of action arising under Sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) | N/A | |

For the reasons set forth herein, the Debtor requests the entry of orders:

1.      Granting the Motion;

2.      Approving the Settlement;

3.      Authorizing the Debtor to enter into the Settlement Loan;

4.      Authorizing the Debtor to take any action necessary to consummate and enforce the Settlement;

5.      Authorizing the Debtor to execute the Settlement Loan documents and take any action necessary to consummate the Settlement Loan; and

6.      Granting such further relief as the Court deems just and proper.

**II.**

**STATEMENT OF FACTS**

1.      On August 26, 2010, the Debtor filed a voluntary chapter 11 bankruptcy case.  The Debtor has been and remains a debtor in possession.

2.      On or about January 5, 2010, THE DEBTOR executed  (1) that certain "Guaranty" (the "Midway/ECC Guaranty") in favor of Pac West reciting that the Debtor was guarantying advances made by Pac West under a "Loan" made by Pac West to  Escondido Country Club, LLC and LDG Midway Plaza, LLC after a date defined as the "Effective Date" in a related "Modification Agreement" plus interest accruing on that Loan and other advances made after that Effective Date;  (2) that certain "Guaranty" (the "Convoy/Mississippi Guaranty") in favor of Pac West  reciting that the Debtor was guarantying advances made by Pac West under a "Loan" made

Debtor's Omnibus Motion To
Approve Settlement Agreements

by Pac West to  LDG Convoy Street, LLC and Mississippi Avenue, LLC after a date defined as the "Effective Date" in a related "Modification Agreement" plus interest accruing on that Loan and other advances made after that Effective Date; and (3) that certain "Guaranty" (the "Mississippi Guaranty", and collectively with the Midway/ECC Guaranty and the Convoy/Mississippi Guaranty, the "Guaranties") in favor of Pac West  reciting that the Debtor was guarantying advances made by Pac West under another  "Loan" made by Pac West to Mississippi Avenue, LLC after a date defined as the "Effective Date" in a related "Modification Agreement" plus interest accruing on that Loan and other advances made after that Effective Date.  True and correct copies of the Midway/ECC Guaranty, the Convoy/Mississippi Guaranty, and the Mississippi Guaranty are attached to the Settlement as Exhibits "A," "B," and "C," respectively.

3.    Concurrently with the execution of each of the Guaranties, the Debtor executed that certain "Deed of Trust, Security Agreement, Assignment of Rents and Leases, Security Agreement and Fixture Filing" dated as of January 5, 2010, and recorded on January 11, 2010 (the "Deed of Trust") reciting that the real and personal property described therein secures the payment and performance by the Debtor of the Guaranties and the Deed of Trust.  A true and correct copy of the Deed of Trust is attached to the Settlement as Exhibit "D".

4.    On or about September 26, 2011, Pac West filed a Proof of Claim (Claim No 72 the face page of which is attached to the Settlement as Exhibit E) in the Debtor's case in the amount of $875,000 attaching and referring as the basis therefore, inter alia, the Guaranties and Deed of Trust (the "Pac West Claim").

5.    On June 7, 2013, the Debtor filed that certain Adversary Proceeding, Case No. 13-90149-LT styled *Citizens Development Corp. v. Pacific West TD Fund II,* (the "Avoidance Action"), seeking, *inter alia* to avoid the lien of the Deed of Trust, set aside the Guaranties, and disallow the Pac West Claim for the reasons set forth in the Complaint in the Avoidance Action. Pac West disputes the Debtor's contentions and contends that the Guaranties and Deed of Trust are valid and enforceable as to the Debtor.

Debtor's Omnibus Motion To
Approve Settlement Agreements

6.      During the course of the Bankruptcy Case and continuing currently, the Debtor has collected rents and other sums potentially cash collateral subject to the Deed of Trust (the "Cash Collateral") and Pac West has claimed or reserved claims in such Cash Collateral. LSM Lender contends it has a security interest superior to Pac West in the Cash Collateral   (the "LSM Cash Collateral Claims").

7.      The Settlement entered into by the Debtor, Pac West and LSM Lender will resolve their differences and avoid the expenses and uncertainties of protracted litigation among them.

8.      The salient terms of the Settlement are as follows (capitalized terms not otherwise defined have the meaning ascribed to such terms in the Settlement):

(a)      Pursuant to the Settlement, within 6 business days of the entry of the Court Order, CDC shall make payment to Pac West by causing the sum of $100,000 to be forwarded to Pac West's counsel's trust account to be held by Pac West's counsel pursuant to the terms of this Agreement ("Settlement Payment"). The Settlement Payment shall be funded by a loan to CDC from LSM Lender under the terms and conditions provided below ("Settlement Loan");

(b)      Upon receipt of the Settlement Payment in valid funds, Pac West and its Affiliates agree: (i) the Guaranties shall be deemed cancelled and of no force and effect; (ii) the Pac West Claim shall be deemed irrevocably waived and withdrawn; (iii) any liens, claims, encumbrances, or interests of Pac West and or its Affiliates in or to any property of CDC shall be deemed released, withdrawn, and of no further force or effect, and the Deed of Trust shall be deemed reconveyed to CDC; and  (iiii) Pac West waives any and all past present or future claims to the Cash Collateral and does not dispute the LSM Cash Collateral Claims.  Pac West shall execute any and all documents reasonably necessary, and take any required action to effectuate the terms of this Paragraph and Agreement, including without limitation executing and recording a valid reconveyance of the Deed of Trust to CDC and preparing and filing a UCC-3 releasing any UCC-1 filings (if any) Pac West or its Affiliates have filed against any property of CDC. Upon CDC's reasonable

7

Debtor's Omnibus Motion To
Approve Settlement Agreements

satisfaction that Pac West and or its Affiliates have complied with the terms of this Paragraph 2B, CDC shall dismiss the Avoidance Action and provide written notice to Pac West's counsel of such satisfaction, and Pac West's counsel may then release the Settlement Payment to Pac West.

(c)    Within 1 business days of the entry of the Court Order approving the Settlement including the Settlement Loan, CDC shall execute in favor of LSM (a) Loan Agreement, (b) a Secured Promissory Note in the amount of the Settlement Payment,  (c) a Deed of Trust with Assignment of Rents and Leases , Security Agreement and Fixture Filing (the "LSM DOT") that provides the identical or less restrictive security interests than those held by Pac West pursuant to the Deed of Trust, (d) a Security Agreement and (e) a UCC-1 Financing Statement each in substantially the form attached hereto as composite Exhibit G ("The Settlement Loan Agreements").    Within one business day of recording the LSM DOT, LSM shall fund the Settlement Payment. The Court Order shall provide that the LSM DOT shall be a first priority lien on all property of CDC secured by the LSM DOT superior to any and all other creditors, other than real estate taxes properly of record on the collateral described in the LSM DOT.

9.    Pursuant to the Settlement Loan, the Debtor will receive $100,000 from LSM Lender.  The Settlement Loan will be secured by: (1) a first priority Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing encumbering the property described in Exhibit A to the Loan Agreement attached as Exhibit "G" to the Settlement; and (2) all of the Debtor's assets described in the Security Agreement attached as Exhibit "G" to the Settlement.

10.    The Settlement Loan will be due four years from its inception.  The Debtor will be required to make interest only payments on the Settlement Loan at a rate of 7% per annum.  The Debtor believes that it can easily comply with such terms and that such terms are not only fair and reasonable, but that no other lender would be willing to provide financing to the Debtor upon terms remotely as favorable as the terms of the Settlement Loan.  The proposed documents evidencing the Settlement Loan are attached as Exhibit "G" to the Settlement and a proposed

Debtor's Omnibus Motion To
Approve Settlement Agreements

1  order approving the Settlement Loan is attached hereto as Exhibit "2."

2                                    **III.**

3                            **DISCUSSION**

4  **A.    The Settlement Is Fair And In The Best Interests Of The Estate.**

5          The Settlement is fair and in the best interests of the estate because it resolves Pac West's

6  secured $875,000 claim, the Avoidance Action, and a primary plan contingency, at the cost of

7  $100,000, which is what the Debtor expected it would spend in professionals' fees litigating with

8  Pac West, without the certainty that the Debtor would prevail.

9          The purpose of any compromise agreement is to allow the debtor in possession and the

10  creditors to avoid the expenses and burdens associated with litigating sharply contested and

11  uncertain claims. In re Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982) (citing In re

12  California Associated Prods., 183 F.2d 946, 949-50 (9th Cir. 1950).  The law favors compromise

13  and not litigation for its own sake. In re Blair, 538 F.2d 849, 851 (9th Cir. 1976).

14          The Court of Appeals for the Ninth Circuit has long recognized that "[t]he bankruptcy

15  court has great latitude in approving compromise agreements."  Woodson v. Fireman's Fund Ins.

16  Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).  "The purpose of a compromise

17  agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and

18  burdens associated with litigating sharply contested and dubious claims." Martin v. Kane (In re A

19  & C Properties), 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert.denied 479 U.S. 854 (1986).

20  Accordingly, in approving a settlement agreement, the Bankruptcy Court need not conduct an

21  exhaustive investigation of the claims sought to be compromised.  See United States v. Alaska

22  National Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).

23          The Supreme Court in Protective Committee for Independent Stockholders of TNT Trailer

24  Fairy, Inc. v. Anderson, 390 U.S. 414, 425 (1968), held that a bankruptcy court, in considering

25  whether to approve a compromise, should apprise itself of all facts necessary for an intelligent and

26  objective opinion of the probabilities of ultimate success should the claim be litigated.  It also

27  explained that the court should form an educated estimate of the complexity, expense and likely

28

Debtor's Omnibus Motion To
Approve Settlement Agreements

duration of such litigation, the possibility of collection on any judgment that might be obtained, and all other factors relevant to the full and fair assessment of the wisdom of the proposed compromise.  The Court need not, however, conduct an exhaustive investigation into the validity of the claims to be compromised nor is the Court expected to conduct a mini-trial on the merits. In re Walsh Construction, Inc., 669 F.2d at 1328.  It is sufficient that the Bankruptcy Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. See In re A & C Properties, supra, 784 F.2d at 1381.

The Court of Appeals for the Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable:

      (a)    the probability of success in the litigation;

      (b)    the difficulties, if any, to be encountered in the matter of collection;

      (c)    the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and

      (d)    the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re A & C Properties, supra, 784 F.2d at 1381 (the "A & C Factors").

Consideration of these factors does not require the Bankruptcy Court to determine whether a settlement presented is the best one that could possibly have been achieved.  Rather, the Bankruptcy Court need only canvass the issues to determine whether the settlement falls "below the lowest point in the zone of reasonableness."  Newman v. Stein, 464 F.2d 689, 698 (2d Cir. 1972) (emphasis added), cert.deniedsubnom.Benson v. Newman, 409 U.S. 1039 (1972); seealsoAnaconda-Ericsson Inc. v. Hessen (In re Teltronics Services, Inc.), 762 F.2d 185, 189 (2d Cir. 1985); Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert.denied 464 U.S. 822 (1983).  Finally, although the Bankruptcy Court should give deference to the reasonable views of creditors, "objections do not rule.  It is well established that compromises are favored in bankruptcy."  In re Lee Way Holding Co., 120 B.R. 881, 891 (Bankr. S.D. Ohio

Debtor's Omnibus Motion To
Approve Settlement Agreements

1  1990).

2      Based on an analysis of the settlement in light of the <u>A & C</u> factors, the Debtor believes

3  that the terms of the Settlement is fair, reasonable, and in the best interests of its creditors and the

4  estate.  In this case, the Settlement was negotiated at arms' length by the respective parties to

5  settle pending litigation.

6      1.   <u>The probability of success in the litigation.</u>

7      The Debtor believes that there are significant risks associated with the litigation with Pac

8  West.  Though the Debtor believes that its position is strong, Pac West has indicated that it

9  completely disagrees with the Debtor and Pac West's claim is supported by extensive

10 documentation.  Though the Debtor believes it would prevail in any litigation it commenced

11 (indeed, it would not have commenced litigation if it did not believe it would prevail), there is still

12 the risk that the Debtor would not prevail.  Were the Debtor unable to prevail in connection with

13 its Avoidance Action, the Debtor would risk the ability to confirm its plan of reorganization,

14 which requires that the Debtor provide to LSM Lender a lien on all assets free and clear of all

15 other liens.  Moreover, were Pac West to prevail, the Debtor would be saddled with an additional

16 $875,000 secured claim that it would be required to pay.

17     2.   <u>The difficulties, if any, to be encountered in the matter of collection.</u>

18     This factor is not particularly relevant in this instance, since the Avoidance Action does

19 not contemplate collection from Pac West.

20     3.   <u>The complexity of the litigation involved, and the expense, inconvenience, and</u>

21         <u>delay necessarily attending it.</u>

22     In this case, the Settlement does far more than rise above "the lowest point in the range of

23 reasonableness."  Indeed, it is eminently fair to the estate and the unsecured creditors and benefits

24 both.  The litigation being resolved by the Settlement is complex, time-intensive, and will be very

25 expensive to manage.  Additionally, the Debtor's plan may be deemed unconfirmable if the

26 Debtor is unable to avoid Pac West's liens.  Moreover, the issues related to the Avoidance Action

27 will likely involve the retention of financial experts and at least $100,000 of professionals' fees

28

11

Debtor's Omnibus Motion To
Approve Settlement Agreements

1   and many months of litigation which is cash and time that the Debtor simply does not have at its

2   disposal. The Debtor's experience in negotiations at this point suggests to the Debtor that

3   litigation with will not be an easy, or productive, task.  The proposed Settlement as a whole

4   represent a beneficial outcome for this estate without the risk, cost and delay associated with

5   continuing litigation.

6           4.    The paramount interest of the creditors and a proper deference to their

7                 reasonable views.

8           Creditors will benefit from the Settlement because the Settlement will provide a release of

9   liens and claims against assets of the estate. The Settlement promotes the Debtor's plan, and as a

10  result, promotes distributions to general unsecured creditors.  Thus, the Settlement is in the best

11  interests of creditors and should be approved by this Court.

12  **B.    The Court Should Authorize The Settlement Loan So That The Debtor Can Comply**

13         **With The Terms Of The Settlement.**

14          Pursuant to Bankruptcy Code §§ 364(c) and (d), the Debtor requests authority to incur

15  $100,000 of post-petition financing from LSM Lender on a final basis, upon the terms and

16  conditions set forth in the loan documents attached as Exhibit "G" to the Settlement.   The

17  Settlement Loan proposed to be provided by LSM Lender will infuse the Debtor with the funds

18  necessary to enable the Debtor to comply with the terms of the Settlement.

19          Pursuant to Bankruptcy Code § 364(c), a debtor may, in the exercise of its business

20  judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the

21  borrowing is in the best interest of the estate.  See, e.g., In re Simasko Production Co., 47 B.R.

22  444, 448-9 (D. Colo.1985) (authorizing interim financing agreement where Debtors' best business

23  judgment indicated financing was necessary and reasonable for benefit of estate); In re Ames

24  Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) ("Ames") (with respect to post-petition

25  credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent

26  with their fiduciary duties").  Section 364(c) provides, in pertinent part, that:

27          (c)  If the trustee [or debtor in possession] is unable to obtain unsecured credit

28

Debtor's Omnibus Motion To
Approve Settlement Agreements

allowable-under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

>   (1)  with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title:

>   (2)  secured by a lien on property of the estate that is not otherwise subject to a lien; or

>   (3)  secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

Section 364(d)(1) of the Bankruptcy Code governs the incurrence of senior secured debt or "priming" loans.  Pursuant to Section 364(d)(1), the Court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien only if –

>   (1)    the trustee is unable to obtain such credit otherwise; and

>   (2)    there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. 11 U.S.C. § 364 (d)(1).

Section 364 of the Bankruptcy Code is structured with an escalating series of inducements which a debtor in possession may offer to attract credit during the post-petition period.  In re Photo Promotion Associates, Inc., 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), aff'd, 881 F.2d 6 (2d. Cir. 1989).  Where a trustee or debtor in possession cannot otherwise obtain unsecured post-petition credit, such credit may be obtained under certain carefully proscribed conditions.  In re T.M. Sweeney & Sons LTL Services, Inc., 131 B.R. 984, 989 (Bankr.N.D.Ill.1991).   For example, if creditors are unwilling to extend unsecured credit to a debtor in possession, further inducements are offered, with court approval after notice and a hearing, including, without limitation, liens equal to or senior to existing liens on encumbered property in accordance with 11 U.S.C. § 364(d).  In re Photo Promotion Associates, Inc., 87 B.R. at 839.

Debtor's Omnibus Motion To
Approve Settlement Agreements

Subject to the approval of the Court, the Debtor has agreed to grant to LSM Lender: (1) valid, perfected enforceable liens that provide to LSM Lender the identical or less restrictive security interests than those held by Pac West pursuant to the Deed of Trust (subject only to valid, enforceable, perfected real estate tax liens); and (2) liens against the Debtor's assets described in the Security Agreement attached as Exhibit "G" to the Settlement (with such liens being junior in interest to any valid, enforceable, perfected liens). The Court Order is required to provide that the LSM DOT shall be a first priority lien on all property of CDC secured by the LSM DOT superior to any and all other creditors, other than real estate taxes properly of record on the collateral described in the LSM DOT. The Debtor does not believe that any other creditors secured by such collateral, other than LSM Lender, exist, therefore, though the Debtor has referenced section 364(d) of the Bankruptcy Code, the Debtor does not believe that it has any actual practical application in this case, since the only entity that can conceivably have a security interest superior to Pac West, is LSM Lender.

Two factors courts consider in determining whether to authorize post-petition financing which contemplates the granting of a security interest in favor of the lender are (1) whether the debtor is unable to obtain unsecured credit per 11 U.S.C. § 364(b), i.e., by allowing a lender *only* an administrative claim per 11 U.S.C. § 364(b)(1)(A); and (2) whether the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D.Pa. 1987); see also In re Aqua Assoc., 123 B.R. 192, 195 (Bankr. E.D.Pa. 1991).

The Debtor submits that these standards have been satisfied in this case.

1.      The Debtor Is Unable To Obtain Unsecured Credit.

Section 364(d)(1)(A) does not impose upon a debtor-in-possession the onerous duty to seek credit from every possible lender before concluding that such credit is unavailable. See In re Snowshoe Co., Inc., 789 F. 2d 1085, 1089 (4th Cir. 1986). Instead, a good faith effort to obtain less burdensome credit is required of the debtor.

The Debtor has negotiated with LSM Lender for months, in connection with providing

14

Debtor's Omnibus Motion To
Approve Settlement Agreements

1   loans to the Debtor.  LSM Lender is a secured creditor of the Debtor and is not inclined to provide

2   any unsecured financing to the Debtor.  Moreover, given that the Debtor's estate will likely be

3   rendered administratively insolvent absent substantial future cash infusions (which will be made

4   pursuant to the Debtor's plan), there is no conceivable way of obtaining financing on an

5   unsecured basis in this case.   The Settlement Loan is the only loan available to the Debtor at this

6   time, and the overall terms and conditions of the Settlement Loan are extremely favorable to the

7   Debtor, and the Debtor does not believe that any other lender would ever be willing or able to

8   offer such terms to the Debtor.  The Debtor does not believe that any other lender is prepared to

9   or would provide the financing needed by the Debtor on terms more favorable than those

10  proposed by LSM Lender. Under these circumstances, the Debtor believes that the terms of the

11  Settlement Loan are very favorable to the Debtor and the estate.

12          2.     The Terms Of The Dip Loan Are Fair, Reasonable and Appropriate.

13          The Debtor submits that the terms of the Settlement Loan are fair, reasonable and

14  adequate.  While in determining whether to approve such a transaction, a Court is authorized to

15  act in its informed discretion, In re Ames Department Stores, Inc., 115 B.R. 34, 37 (Bankr.

16  S.D.N.Y. 1990), the Court should give broad deference to the business decision of a chapter 11

17  debtor, particularly with respect to a debtor's business judgment regarding the need for and

18  proposed use of funds. Richmond Leasing Co. v. Capital Bank N.A., 762 F.2d 1303, 1311 (5th

19  Cir. 1985).  As the court noted in Ames Dept. Stores, "the court's discretion under section 364 is

20  to be utilized on the grounds that permit the reasonable business judgment [of the Debtor] to be

21  exercised . . . ." In re ames Dept. Stores, Inc., 115 B.R. at 40.

22          The Debtor, in the exercise of its business judgment, has concluded that borrowing this

23  money from LSM Lender is in the clear best interests of the Debtor's estate because without such

24  funds, the Debtor will be unable to settle with Pac West.

25          3.     "Priming" Implications.

26          The Debtor does not believe that any other creditors exist that are secured by the collateral

27  in which LSM Lender is receiving a first priority lien, and the Debtor believes that the extent of

28

Debtor's Omnibus Motion To
Approve Settlement Agreements

1   the collateral in which LSM Lender is receiving a first priority lien is collateral on which Pac

2   West, assuming it prevailed in the Avoidance Action, already has a valid, perfected, enforceable,

3   first priority lien.  Therefore, though the Debtor has referenced section 364(d) of the Bankruptcy

4   Code, the Debtor does not believe that it has any actual practical application in this case, since the

5   only entity that can conceivably have a security interest superior to Pac West, is LSM Lender.

6   **C.**      **The Settlement Loan Should Be Approved On A Final Basis Pursuant To The**

7          **Proposed Settlement Loan Order.**

8          Rule 4001(c) of the Federal Rules of Bankruptcy Procedure governs certain procedures for

9   obtaining authorization to obtain post-petition financing and provides, in relevant part, that "[t]he

10  court may commence a final hearing on a motion for authority to obtain credit no earlier than 15

11  days after service of the motion."  Here, the Debtor has set the hearing on this Motion on regular

12  notice pursuant to Rule 9014 and applicable Local Rules, and the hearing will be held

13  approximately 28 days after service of the Motion.  Thus, since the Debtor has complied with all

14  applicable Bankruptcy Code provisions regarding this Motion, and adequate notice of the relief

15  requested herein has been provided, the Settlement Loan should be approved on a final basis.

16  **D.**      **The Debtor Has Satisfied All Procedural Requirements Regarding Approval Of The**

17          **DIP Loan.**

18          Rule 4001(d) of the Federal Rules of Bankruptcy Procedure also sets forth procedural

19  requirements for obtaining post-petition credit.  There are three general provisions of Bankruptcy

20  Rule 4001(d).  First, the Motion must contain a copy of the proposed form of order, which has

21  been done by attaching the proposed Settlement Loan as Exhibit "2" to the annexed Declaration

22  of Pino Vitti.  Second, the Motion must provide a concise statement of the relief requested, which

23  was done above.  Third, the Motion is required to be served on a creditors' committee or on the

24  twenty largest unsecured creditors if there is no committee and on such other parties as the Court

25  directs.  Here, the Debtor served the Motion on the twenty largest unsecured creditors, the Office

26  of the United States Trustee, all known lien holders, and those parties who have requested special

27  notice.  Accordingly, the Motion complies with the requirements of Rule 4001(d).  Also, the

28

Debtor's Omnibus Motion To
Approve Settlement Agreements

1   Debtors have addressed the requirements of Local Bankruptcy Rule 4001-2 and Bankruptcy Rule

2   4001(c) regarding a motion for obtaining post-petition credit.

3                                                    IV.

4                                          <u>CONCLUSION</u>

5          **WHEREFORE,** the Debtor respectfully requests that this Court enter orders:

6          7.      Granting the Motion;

7          8.      Approving the Settlement;

8          9.      Authorizing the Debtor to enter into the Settlement Loan;

9          10.     Authorizing the Debtor to take any action necessary to consummate and enforce

10                 the Settlement;

11         11.     Authorizing the Debtor to execute the Settlement Loan documents and take any

12                 action necessary to consummate the Settlement Loan; and

13         12.     Granting such further relief as the Court deems just and proper.

14  Dated: August 26, 2013                          CITIZENS DEVELOPMENT CORP.

15

16                                                  By:  ___*/s/ Krikor J. Meshefejian*_____
                                                         RON BENDER
17                                                       KRIKOR J. MESHEFEJIAN
                                                         LEVENE, NEALE, BENDER, YOO
18                                                       &BRILL L.L.P.
                                                         Counsel for Debtor and Debtor in
19                                                       Possession

20

21

22

23

24

25

26

27

28

                                                    17
Debtor's Omnibus Motion To
Approve Settlement Agreements

## DECLARATION OF PINO VITTI

I, Pino Vitti, hereby declare as follows:

1.      I am over 18 years of age.  I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto.

2.      I am the President of Citizens Development Corp., the Chapter 11 debtor and debtor in possession in the above-referenced bankruptcy case (the "Debtor").  I am also the Chief Financial Officer of Pacifica Enterprises, Inc. ("Pacifica").

3.      I have access to the books and records of the Debtor.  I am familiar with the history, organization, operations and financial condition of the Debtor.  The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor and its affiliates to accurately and completely take, make, and maintain such records and documents.  I am a custodian of records for the Debtor and I am familiar in the manner in which the Debtor's books and records are maintained.

4.      On August 26, 2010, the Debtor filed a voluntary chapter 11 bankruptcy case.  The Debtor has been and remains a debtor in possession.

5.      On or about January 5, 2010, the Debtor executed  (1) that certain "Guaranty" (the "Midway/ECC Guaranty") in favor of Pac West reciting that the Debtor was guarantying advances made by Pac West under a "Loan" made by Pac West to  Escondido Country Club, LLC and LDG Midway Plaza, LLC after a date defined as the "Effective Date" in a related "Modification Agreement" plus interest accruing on that Loan and other advances made after that Effective Date; (2) that certain "Guaranty" (the "Convoy/Mississippi Guaranty") in favor of Pac West  reciting that the Debtor was guarantying advances made by Pac West under a "Loan" made by Pac West to LDG Convoy Street, LLC and Mississippi Avenue, LLC after a date defined as the "Effective Date" in a related "Modification Agreement" plus interest accruing on that Loan and other advances made after that Effective Date; and (3) that certain "Guaranty" (the "Mississippi Guaranty", and

Debtor's Omnibus Motion To
Approve Settlement Agreements

1   collectively with the Midway/ECC Guaranty and the Convoy/Mississippi Guaranty, the

2   "Guaranties") in favor of Pac West reciting that the Debtor was guarantying advances made by Pac

3   West under another "Loan" made by Pac West to Mississippi Avenue, LLC after a date defined as

4   the "Effective Date" in a related "Modification Agreement" plus interest accruing on that Loan and

5   other advances made after that Effective Date.   True and correct copies of the Midway/ECC

6   Guaranty, the Convoy/Mississippi Guaranty, and the Mississippi Guaranty are attached to the

7   Settlement as Exhibits "A," "B," and "C," respectively.

8          6.     Concurrently with the execution of each of the Guaranties, the Debtor executed that

9   certain "Deed of Trust, Security Agreement, Assignment of Rents and Leases, Security Agreement

10  and Fixture Filing" dated as of January 5, 2010, and recorded on January 11, 2010 (the "Deed of

11  Trust") reciting that the real and personal property described therein secures the payment and

12  performance by the Debtor of the Guaranties and the Deed of Trust.  A true and correct copy of the

13  Deed of Trust is attached to the Settlement as Exhibit "D".

14         7.     On or about September 26, 2011, Pac West filed a Proof of Claim (Claim No 72 the

15  face page of which is attached to the Settlement as Exhibit E) in the Debtor's case in the amount of

16  $875,000 attaching and referring as the basis therefore, inter alia, the Guaranties and Deed of Trust

17  (the "Pac West Claim").

18         8.     On June 7, 2013, the Debtor filed that certain Adversary Proceeding, Case No. 13-

19  90149-LT styled *Citizens Development Corp. v. Pacific West TD Fund II,* (the "Avoidance

20  Action"), seeking, *inter alia* to avoid the lien of the Deed of Trust, set aside the Guaranties, and

21  disallow the Pac West Claim for the reasons set forth in the Complaint in the Avoidance Action.

22  Pac West disputes the Debtor's contentions and contends that the Guaranties and Deed of Trust are

23  valid and enforceable as to the Debtor.

24         9.     During the course of the Bankruptcy Case and continuing currently, the Debtor has

25  collected rents and other sums potentially cash collateral subject to the Deed of Trust (the "Cash

26  Collateral") and Pac West has claimed or reserved claims in such Cash Collateral. LSM Lender

27  contends it has a security interest superior to Pac West in the Cash Collateral   (the "LSM Cash

28

Debtor's Omnibus Motion To
Approve Settlement Agreements

Collateral Claims").

10.    The Settlement entered into by the Debtor, Pac West and LSM Lender will resolve their differences and avoid the expenses and uncertainties of protracted litigation among them.

11.    The Settlement is attached as Exhbit "1" to this Declaration.  The salient terms of the Settlement are as follows (capitalized terms not otherwise defined have the meaning ascribed to such terms in the Settlement):

(a)    Pursuant to the Settlement, within 6 business days of the entry of the Court Order, CDC shall make payment to Pac West by causing the sum of $100,000 to be forwarded to Pac West's counsel's trust account to be held by Pac West's counsel pursuant to the terms of this Agreement ("Settlement Payment"). The Settlement Payment shall be funded by a loan to CDC from LSM Lender under the terms and conditions provided below ("Settlement Loan");

(b)    Upon receipt of the Settlement Payment in valid funds, Pac West and its Affiliates agree: (i) the Guaranties shall be deemed cancelled and of no force and effect; (ii) the Pac West Claim shall be deemed irrevocably waived and withdrawn; (iii) any liens, claims, encumbrances, or interests of Pac West or its Affiliates in or to any property of CDC shall be deemed released, withdrawn, and of no further force or effect, and the Deed of Trust shall be deemed reconveyed to CDC; and  (iiii) Pac West waives any and all past present or future claims to the Cash Collateral and does not dispute the LSM Cash Collateral Claims.  Pac West shall execute any and all documents reasonably necessary, and take any required action to effectuate the terms of this Paragraph and Agreement, including without limitation executing and recording a valid reconveyance of the Deed of Trust to CDC and preparing and filing a UCC-3 releasing any UCC-1 filings (if any) Pac West or its Affiliates have filed against any property of CDC. Upon CDC's reasonable satisfaction that Pac West and or its Affiliates have complied with the terms of Paragraph 2B, CDC shall dismiss the Avoidance Action and provide written notice to Pac West's

20

Debtor's Omnibus Motion To
Approve Settlement Agreements

counsel of such satisfaction, and Pac West's counsel may then release the Settlement Payment to Pac West.

(c)    Within 1 business days of the entry of the Court Order approving the Settlement including the Settlement Loan, CDC shall execute in favor of LSM (a) Loan Agreement, (b) a Secured Promissory Note in the amount of the Settlement Payment,  (c) a Deed of Trust with Assignment of Rents and Leases , Security Agreement and Fixture Filing (the "LSM DOT") that provides the identical or less restrictive security interests than those held by Pac West pursuant to the Deed of Trust, (d) a Security Agreement and (e) a UCC-1 Financing Statement each in substantially the form attached hereto as composite Exhibit G ("The Settlement Loan Agreements").    Within one business day of recording the LSM DOT, LSM shall fund the Settlement Payment. The Court Order shall provide that the LSM DOT shall be a first priority lien on all property of CDC secured by the LSM DOT superior to any and all other creditors, other than real estate taxes properly of record on the collateral described in the LSM DOT.

12.    Pursuant to the Settlement Loan, the Debtor will receive $100,000 from LSM Lender.  The Settlement Loan will be secured by: (1) a first priority Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing encumbering the property described in Exhibit A to the Loan Agreement attached as Exhibit "G" to the Settlement; and (2) all of the Debtor's assets described in the Security Agreement attached as Exhibit "G" to the Settlement.

///

///

///

///

///

///

///

///

21

Debtor's Omnibus Motion To
Approve Settlement Agreements

13.    The Debtor will be required to make interest only payments on the Settlement Loan at a rate of 7% per annum.  The Debtor believes that it can easily comply with such terms and that such terms are not only fair and reasonable, but that no other lender would be willing to provide financing to the Debtor upon terms remotely as favorable as the terms of the Settlement Loan.  The proposed documents evidencing the Settlement Loan are attached as Exhibit "G" to the Settlement and a proposed order approving the Settlement Loan is attached hereto as Exhibit "2."

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 26th day of August, 2013.

PINO VITTI

Debtor's Omnibus Motion To
Approve Settlement Agreements

**EXHIBIT 1**

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is made by and among Citizens Development Corp., a California corporation and Chapter 11 debtor in possession ("CDC" or the Debtor"), Pacific West TD Fund II, L.P. a California limited partnership ("Pac West") and LSM Lender LLC, a Delaware limited liability company ("LSM"). At times below, any of the above are referred to generically as a "Party" and collectively referred to as the "Parties."

## RECITALS

A. On August 26, 2010, CDC filed a voluntary Chapter 11 bankruptcy case before the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court"), assigned Case No. 10-15142-LT11 (the "Bankruptcy Case"). CDC has been and remains a debtor in possession in the Bankruptcy Case.

B. . On or about January 5, 2010, CDC executed  (1) that certain "Guaranty" (the "Midway/ECC Guaranty") in favor of Pac West reciting that CDC was guarantying advances made by Pac West under a "Loan" made by Pac West to  Escondido Country Club, LLC and LDG Midway Plaza, LLC after a date defined as the "Effective Date" in a related "Modification Agreement" plus interest accruing on that Loan and other advances made after that Effective Date; (2) that certain "Guaranty" (the "Convoy/Mississippi Guaranty") in favor of Pac West  reciting that CDC was guarantying advances made by Pac West under a "Loan" made by Pac West to  LDG Convoy Street, LLC and Mississippi Avenue, LLC after a date defined as the "Effective Date" in a related "Modification Agreement" plus interest accruing on that Loan and other advances made after that Effective Date; and (3) that certain "Guaranty" (the "Mississippi Guaranty", and collectively with the Midway/ECC Guaranty and the Convoy/Mississippi Guaranty, the "Guaranties") in favor of Pac West  reciting that CDC was guarantying advances made by Pac West under another  "Loan" made by Pac West to Mississippi Avenue, LLC after a date defined as the "Effective Date" in a related "Modification Agreement" plus interest accruing on that Loan and other advances made after that Effective Date.  True and correct copies of the Midway/ECC Guaranty, the Convoy/Mississippi Guaranty, and the Mississippi Guaranty are attached hereto as Exhibits "A," "B," and "C," respectively.

C. Concurrently with the execution of each of the Guaranties, CDC executed that certain "Deed of Trust, Security Agreement, Assignment of Rents and Leases, Security Agreement and Fixture Filing" dated as of January 5, 2010, and recorded on January 11, 2010 (the "Deed of Trust") reciting that the real and personal property described therein secures the payment and performance by CDC of the Guaranties and the Deed of Trust.  A true and correct copy of the Deed of Trust is attached hereto as Exhibit "D".

D. On or about September 26, 2011, Pac West filed a Proof of Claim (Claim No 72 the face page of which is attached hereto as Exhibit E) in the Bankruptcy Case in

-1-

the amount of $875,000 attaching and referring as the basis therefore, inter alia, the Guaranties and Deed of Trust (the "Pac West Claim").

E.      On June 7, 2013, CDC filed that certain Adversary Proceeding, Case No. 13-90149-LT styled *Citizens Development Corp. v. Pacific West TD Fund II,* (the "Avoidance Action"), seeking, *inter alia* to avoid the lien of the Deed of Trust, set aside the Guaranties, and disallow the Pac West Claim for the reasons set forth in the Complaint in the Avoidance Action.   Pac West disputes CDC's contentions and contends that the Guaranties and Deed of Trust are valid and enforceable as to CDC.

F.      During the course of the Bankruptcy Case and continuing currently, CDC has collected rents and other sums potentially cash collateral subject to the Deed of Trust (the "Cash Collateral") and Pac West has claimed or reserved claims in such Cash Collateral. LSM contends it has a security interest superior to Pac West in the Cash Collateral   (the "LSM Cash Collateral Claims").

G.      This Agreement is entered into by the Parties to resolve their differences and to avoid the expenses and uncertainties of protracted litigation among them.  The Parties now intend to settle and compromise their respective rights and obligations as set forth herein, in connection with the Bankruptcy Case, the Guaranties, the Deed of Trust, the Cash Collateral, the LSM Cash Collateral Claims, the Pac West Claim and the Avoidance Action.

H.      "Affiliates" as used herein shall mean all existing partners (general or limited), successors and assigns, any parent/subsidiary/sister companies, and their respective members, partners, shareholders, managers, officers, directors, and heirs as applicable to each of them.  For the avoidance of doubt, "Affiliates" shall not include any "Borrower" named in any of the Guaranties, nor any "guarantor" of the Loans referenced in the Guaranties, other than CDC, nor any officer, agent or employee of any of them that were officers, agents or employees of CDC at or before the time the Bankruptcy Case was commenced.

I.      All of the statements contained in Recitals A through H above are incorporated in this Agreement as if set forth in full below.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, and conditions and upon acknowledgement of each of the Parties of the receipt of valuable consideration, the Parties herein agree as follows:

1.      <u>Court Approval</u>.   Notwithstanding any contrary language herein, this Agreement and all of its terms, including releases and the Settlement Loan, is expressly conditioned upon and subject to the entry of an Order of the Bankruptcy Court (substantially in the form attached hereto as Exhibit "F") in the Bankruptcy Case approving this Agreement and all of the terms and conditions hereof pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Court Order"). CDC shall take all actions reasonably necessary to obtain the Court Order from the Bankruptcy

Court at the earliest opportunity.    The Parties waive any right to appeal and/or collaterally attack the Court Order.

2.    <u>Resolution Of The Avoidance Action, Guaranties,</u> <u>Deed of Trust, the Cash</u> <u>Collateral, the LSM Cash Collateral Claims and the Pac West Claim.</u>

A.    Within 6 business days of the entry of the Court Order, CDC shall make payment to Pac West by causing the sum of $100,000 to be forwarded to Pac West's counsel's  trust account to be held by Pac West's counsel pursuant to the terms of this Agreement ("Settlement Payment"). The Settlement Payment shall be funded by a loan to CDC from LSM under the terms and conditions provided hereafter ("Settlement Loan");

B.    Upon receipt of the Settlement Payment in valid funds, Pac West and its Affiliates agree: (i) the Guaranties shall be deemed cancelled and of no force and effect; (ii) the Pac West Claim shall be deemed irrevocably waived and withdrawn; (iii) any liens, claims, encumbrances, or interests of Pac West and or its Affiliates in or to any property of CDC shall be deemed released, withdrawn, and of no further force or effect, and the Deed of Trust shall be deemed reconveyed to CDC; and  (iiii) Pac West waives any and all past present or future claims to the Cash Collateral and does not dispute the LSM Cash Collateral Claims.    Pac West shall execute any and all documents reasonably necessary, and take any required action to effectuate the terms of this Paragraph and Agreement, including without limitation executing and recording  a valid reconveyance of the Deed of Trust to CDC and preparing and filing a UCC-3 releasing any UCC-1 filings (if any) Pac West or its Affiliates have filed against any property of CDC. Upon CDC's reasonable satisfaction that Pac West and or its Affiliates have complied with the terms of this Paragraph 2B, CDC shall dismiss the Avoidance Action and provide written notice to Pac West's counsel of such satisfaction, and Pac West's counsel may then release the Settlement Payment to Pac West.

3.    <u>The Settlement Loan.</u>    Within 1 business days of the entry of the Court Order approving this Agreement including the Settlement Loan, CDC shall execute in favor of LSM (a) Loan Agreement, (b) a Secured Promissory Note in the amount of the Settlement Payment,  (c) a Deed of Trust with Assignment of Rents and Leases , Security Agreement and Fixture Filing (the "LSM DOT") that provides the identical or less restrictive security interests than those held by Pac West pursuant to the Deed of Trust, (d) a Security Agreement and (e) a UCC-1 Financing Statement each in substantially the form attached hereto as composite Exhibit G ("The Settlement Loan Agreements").    Within one business day of recording the LSM DOT, LSM shall fund the Settlement Payment. The Court Order shall provide that the LSM DOT shall be a first priority lien on all property of CDC secured by the LSM DOT superior to any and all other creditors, other than real estate taxes properly of record on the collateral described in the LSM DOT.

4.    <u>General Release of CDC.</u>  Except for the obligations imposed upon CDC by this Agreement, Pac West and its Affiliates (the "Pac West Releasors") hereby

generally release and discharge CDC and its Affiliates from any and all claims, claims for relief, debts, demands, liabilities, obligations, suits, indebtedness, causes of action and rights, whether known or unknown, which the Pac West Releasors, or any of them, now own or hold, or at any time heretofore owned or held, from the beginning of time until the Bankruptcy Court's approval of this Agreement in any way relating to the Bankruptcy Case, the Guaranties, the Deed of Trust, the Cash Collateral, the LSM Cash Collateral Claims, the Pac West Claim, and the Avoidance Action. Notwithstanding the above, except as to any claims against CDC which are to be released hereunder, the Pac West Releasors are not releasing any claims against any "Borrower" under the "Loans" described in the Guaranties, nor any claims against any parties other than CDC and its "Affiliates" as that term is defined above.

5.   <u>General Release of Pac West</u>.  Except for the obligations imposed upon Pac West by this Agreement, CDC and its Affiliates (the "CDC Releasors") hereby generally release and discharge Pac West and its Affiliates from any and all claims, claims for relief, debts, demands, liabilities, obligations, suits, indebtedness, causes of action and rights, whether known or unknown, which the CDC Releasors, or any of them, now own or hold, or at any time heretofore owned or held, from the beginning of time until the Bankruptcy Court's approval of this Agreement in any way relating to the Bankruptcy Case, the Guaranties, the Deed of Trust, the Cash Collateral, the LSM Cash Collateral Claims, the Pac West Claim, and the Avoidance Action. Notwithstanding the above, the CDC Releasors are not purporting to or releasing any claim against Pac West held by Matthew DiNofia and/or the Borrowers under the Loans described in the Guaranties

6.   <u>Waiver of Civil Code Section 1542</u>.  The release contained in Paragraphs 4 and 5 above, extends to all claims whether or not claimed or suspected by the Parties relating in any way to the Bankruptcy Case, the Guaranties, the Deed of Trust, the Cash Collateral, the LSM Cash Collateral Claims, the Pac West Claim, and the Avoidance Action and constitutes a waiver of each and all the provisions of Section 1542 of the California Civil Code, which reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

7.   <u>Assumption of Risk</u>.  It is expressly understood and agreed by the Parties that the facts with respect to which this Agreement is given may hereinafter turn out to be other than or different from the facts in that connection now known or believed by them to be true, and they each expressly assume the risk of the facts turning out to be so different, and agree that this Agreement shall be in all respects effective and not subject to termination or rescission by reason of any difference in the facts.  The Parties understand and acknowledge the significance and the consequence of the

specific waiver of unknown claims and hereby assume full responsibility for any injuries, damages, losses or liabilities that any of them may hereinafter incur from the waiver of these unknown claims.

8.      Representations and Warranties.  Each Party represents and warrants to the other Parties that, subject, in the case of CDC, to Bankruptcy Court approval of the settlement and the secured loan from LSM Lender to CDC: (a) it has the full right, power and authority to execute and deliver this Agreement and perform its obligations hereunder; (b) this Agreement has been duly authorized, executed and delivered by it and constitutes its valid and binding obligation; (c) no consent of any party to any agreement, contract, mortgage, indenture or arrangement to which it is a party, or is bound, is required for its execution, delivery or performance of this Agreement; (d) it is the sole and lawful owner of all claims which it is releasing pursuant to the terms of this Agreement and that it has not assigned or transferred, or attempted to assign or transfer, to any person or entity all or any portion of such claims or any interest therein in any manner, including by way of subrogation or operation of law or otherwise. Each Party hereby agrees to indemnify, defend and hold harmless the other Parties (individually and/or severally) from and against any and all liabilities, claims, demands, obligations, damages, costs, expenses and attorneys' fees as a result of a breach of such Party's foregoing representations and warranties.

9.      Covenant Not to Sue.  CDC and Pac West  each covenant and agree that they will forever refrain and forebear from bringing, commencing or prosecuting any action, lawsuit, claim or proceeding against each other, their Affiliates and attorneys, representatives, insurers, and trustees for any claims released or discharged by each of them, respectively, pursuant to this Agreement.

10.      General Provisions.

a.      No Admission. This Agreement is a compromise of disputes among the Parties and should not be treated as an admission of liability by any Party for any purpose.

b.      Entire Agreement.  This Agreement sets forth in full the terms of agreement between the Parties and is intended as the full, complete and exclusive contract governing the subject matter hereof.  This Agreement supersedes all other discussions, promises, representations, warranties, agreements and understandings between the Parties with respect to the subject matter hereof.

c.      Amendments.  This Agreement may not be modified or amended except in a writing signed by the Party against whom enforcement of the modification or amendment is sought.

d.      No Waiver.  No waiver of any default, breach or failure to satisfy a condition by any Party shall be implied from any omission by the other Party to take action on account thereof on one or more occasions, and no express waiver shall affect

any default other than that referenced therein, and any such waiver shall be operative only for the time and to the extent stated therein.  The consent or approval of a Party to any act of the other Party shall not be deemed to waive or render unnecessary the consent or approval of the consenting Party to any subsequent similar act.  No waiver of any kind or termination of this Agreement shall be effective unless set forth in a writing signed by the Parties.

e.      <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the heirs, predecessors, assignors, successors and assigns of the Parties.

f.      <u>Governing Law</u>.   This Agreement shall be governed by and construed in accordance with the internal laws of the State of California without resort to choice of law principles.

g.      <u>Attorneys' Fees</u>.  If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing Party or Parties shall be entitled to recover actual attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it may be entitled.

h.      <u>Counterparts</u>.  This Agreement may be executed in counterparts and all such executed counterparts shall constitute one Agreement which shall be binding upon all of the Parties, notwithstanding that all of the Parties are not signatories to the original or same counterpart.  For purposes of this Agreement, a faxed signature on a counterpart shall be fully binding as though it was an original signature.

i.      <u>Interpretation</u>.  All of the Parties acknowledge and agree that they have each been represented by independent counsel of their own choice throughout all of the negotiations which preceded the execution of this Agreement.  This Agreement shall be construed fairly as to all Parties and not in favor of or against any of the Parties, regardless of which of the Parties prepared this Agreement.   Accordingly, any uncertainty or ambiguity existing in this Agreement shall not be interpreted against any Party as a result of the manner of the preparation of this Agreement.  Thus, the Parties hereby waive Section 1654 of the California Civil Code, which reads:  IN CASES OF UNCERTAINTY NOT REMOVED BY THE PRECEDING RULES, THE LANGUAGE OF A CONTRACT SHOULD BE INTERPRETED MOST STRONGLY AGAINST THE PARTY WHO CAUSED THE UNCERTAINTY TO EXIST.

j.      <u>Further Assurances</u>.  Each of the Parties agrees that it will execute and deliver all such documents and instruments as may be necessary and appropriate to effectuate the terms hereof.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the respective dates set forth below.

DATED:  August  12, 2013.

CITIZENS DEVELOPMENT CORP.,
a California corporation

By: _____
Name:  Pino Vitti
Title:  President

DATED:  August  9 , 2013.

PACIFIC WEST TD FUND II, L.P. a
California limited partnership

By:    PWRG LLC, a California limited
         liability company
Its:    General Partner

By: _____
Name:  Harry R. Bigham, Trustee of
            the Bigham  Family Trust
            dtd 09/27/2002
Its:  Member

DATED:  August  12, 2013.

LSM Lender LLC, a Delaware limited
liability company

By: Pacifica Enterprises, Inc, its general
partner

By: _____
Name: Dario De Luca
Title President

-7-

## GUARANTY

      This Guaranty (the "**Guaranty**") is made as of January 5, 2010, by CITIZENS DEVELOPMENT CORPORATION, a California corporation ("**Guarantor**"), with reference to the following facts:

      A.     PACIFIC WEST TD FUND II, L.P., a California limited partnership ("**Lender**") made a loan (the "**Loan**") to LDG MIDWAY PLAZA, LLC, a California limited liability company and ESCONDIDO COUNTRY CLUB, LLC, a California limited liability company (collectively, "**Borrower**") evidenced by that certain Promissory Note dated as of November 28, 2007 executed by Borrower in favor of Lender (the "**Note**"). The Loan is secured by, among other things, that certain Deed of Trust with Assignment of Rents dated as of November 28, 2007 executed by Borrower, as trustor, in favor of Lender, as beneficiary (the "**Deed of Trust**").

      B.     Borrower is in default of its obligations under the Loan, and Borrower has requested that the Loan be modified as more particularly provided in that certain Modification Agreement of even date herewith by and between Borrower and Lender with respect to the Loan (the "**Modification Agreement**"). The Note, the Deed of Trust, the Modification Agreement, and all other present and future agreements, documents and instruments executed or to be executed in connection with the Loan, and all extensions, renewals, substitutions, replacements and modifications of any of the foregoing documents are referred to herein, collectively, as the "**Loan Documents**"; provided, however, the Environmental Indemnity (if any) dated as of April 10, 2009 made by Borrower in favor of Lender (the "**Environmental Indemnity**") is not one of the Loan Documents.

      C.     As an essential inducement to and as a condition to Lender's entering into the Modification Agreement, and in consideration therefor, Guarantor has agreed to execute this Guaranty, and a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing of even date herewith securing this Guaranty and certain other obligations of Guarantor to Lender.

      D.     Guarantor will obtain substantial direct and indirect benefits from the Loan and the transaction contemplated by the Modification Agreement.

      NOW, THEREFORE, in consideration of the foregoing recitals, and to induce and in consideration for entering into the Modification Agreement, Guarantor agrees as follows:

      1.    **Guaranty.**

      (a)     Guarantor unconditionally and irrevocably guaranties to Lender the full and timely payment and performance when due of all of Borrower's indebtedness and obligations of any nature whatsoever, now existing or arising in the future, under the Note, Deed of Trust, any of the other Loan Documents, and/or the Environmental Indemnity, and all extensions, renewals, substitutions, replacements and modifications of any of the foregoing documents (collectively, the "**Obligations**").

(b)    Notwithstanding any contrary provision hereof, Guarantor's liability under this Guaranty shall be limited to the sum of (i) the aggregate amount of all advances made by Lender under the Loan on and after the Effective Date (as defined in the Modification Agreement), and (ii) the aggregate amount of any interest on the Loan that (A) accrues after the Effective Date (as defined in the Modification Agreement) plus (B) is not paid by advances by Lender (and Guarantor acknowledges that, pursuant to the Modification Agreement, Lender has no obligation to make advances for payment of interest following an Event of Default (as therein defined)). Payments and recoveries on account of the Obligations other than from Guarantor under this Guaranty shall not reduce this limitation on Guarantor's liability.

2.    **Guaranty of Payment; Independent Obligation.** This Guaranty is a guaranty of payment and performance and not of collectability. Guarantor's obligations under this Guaranty are independent of those of Borrower or any other person. Lender may bring one or more separate actions against Guarantor without proceeding against Borrower or any other person or any security, and without pursuing any other remedy. Lender's rights under this Guaranty shall not be exhausted by any action of Lender until all of the Obligations have been indefeasibly paid and performed in full.

3.    **Rights of Lender.** Lender shall have the right, without notice to or consent by Guarantor, to: (a) renew, extend, accelerate, waive, settle, compromise, release, restructure, liquidate, increase, decrease and otherwise modify, or refuse to modify, the Obligations, the liability of any person therefor as principal, guarantor, surety or otherwise, and/or any security therefor, and accept new or additional documents, instruments, or agreements relative to the Obligations; (b) consent or not consent to any change, restructure or termination of the individual, partnership, corporate or other organizational structure or existence of Borrower or any other person; (c) pursue in any order or manner, or not pursue, and make elections among, Lender's remedies against Borrower, any other person, and any security, and accept transfers of security in lieu of foreclosure, even if any rights that Guarantor may have, including subrogation, reimbursement, indemnity, contribution and/or participation in security, are thereby impaired or extinguished; (d) take, hold, release, perfect, fail to perfect, subordinate, and/or apply the proceeds of any security for and any guaranties of the Obligations; (e) apply amounts received, including partial payments, from any source on account of the Obligations toward payment thereof in such order and to such portions as Lender may elect, notwithstanding any contrary designation by Borrower, Guarantor or any other person; and (f) assign Lender's rights under this Guaranty in whole or part. Guarantor waives any right or defense that might arise by reason of Lender's exercise of any such rights, even if, as a result, Guarantor has no recourse to Borrower, to security or to other persons for amounts paid by Guarantor.

4.    **Waivers.** Guarantor's liability shall not be affected by any circumstance, including cessation of Borrower's liability, other than indefeasible payment and performance in full of the Obligations. Guarantor waives: (a) any right to require Lender to proceed against Borrower, any other person, or any security now or hereafter held by Lender, or to pursue any other remedy whatsoever; (b) any defense based upon any legal disability of, any release, discharge or limitation of the liability of, any restraint or stay applicable to actions against, or the

death, incapacity, lack of authority or termination of existence of, Borrower or any other person; (c) any defense based upon or arising out of any defense Borrower or any other person may have to any of the Obligations, including the running of any statute of limitations; (d) any right of setoff, recoupment or counterclaim; (e) notice, demand, presentment, protest, notice of acceptance, notice of protest, notice of dishonor and notice of any action or inaction; (f) any defense based upon negligence of Lender, including any failure to record any deed of trust or other document, otherwise perfect any lien or security interest, or file a claim in any Bankruptcy (as defined below); (g) all rights of subrogation, reimbursement, indemnity and contribution against Borrower or any other person, participation in security provided by Borrower or any other person, and all rights to enforce any remedy that Lender may have against Borrower or any other person or security, until all Obligations have been indefeasibly paid and performed in full; (h) any defense related to any change in the person(s) liable for the Obligations, whether by reason of a change in the structure of Borrower, assumption of the Obligations by another person, transfer of any security for the Obligations, or otherwise; (i) any right to revoke this Guaranty, including any such right arising under California Civil Code § 2815; and (j) all rights and defenses that are or may become available to Guarantor by reason of California Civil Code §§ 2787 through 2855, inclusive, 2899 and/or 3433, and/or California Code of Civil Procedure § 359.5.

5.      **Impairment of Subrogation and Other Rights.**  Guarantor waives all rights and defenses that Guarantor may have because the Obligations are or may become secured by real or personal property.  This means, among other things: (a) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower or otherwise; and (b) if Lender forecloses on any real or personal property collateral pledged by Borrower or otherwise (i) the amount of the Obligations may be reduced only by the price for which that collateral was sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (ii) Lender may collect from Guarantor even if Lender, by foreclosing on the real or personal property collateral, has destroyed any right Guarantor may have to collect from Borrower or any other person.  This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Obligations are or may become secured by real or personal property.  These rights and defenses include, but are not limited to, any rights or defenses based upon California Code of Civil Procedure §§ 580a, 580b, 580d, or 726.  Guarantor also waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as nonjudicial foreclosure with respect to security for the Obligations, has destroyed Guarantor's rights of subrogation and/or reimbursement, if any, against Borrower or any other person by the operation of California Code of Civil Procedure § 580d or otherwise.

6.      **Guarantor's Knowledge.**  Guarantor represents and warrants to Lender that it has had full access to and has reviewed all of the documentation of the Obligations, and has fully informed itself of all circumstances bearing upon the risks of executing this Guaranty, with such assistance of legal counsel and other experts as Guarantor requires.  Guarantor represents and warrants to Lender that it is relying on its own knowledge of and is fully informed with respect to Borrower's financial condition, and has adequate means to keep itself fully informed of Borrower's financial condition and all other matters relating to Borrower's ability to perform the

\\192.168.1.147\data\TD Fund II\Lake San Marcos Land\Guaranty _CDC_ FCC.doc

3

Obligations. Guarantor assumes full responsibility for doing so and agrees that Lender shall have no duty to report to Guarantor any information which Lender receives about Borrower's financial condition or any other matters relating to Borrower's ability to perform the Obligations, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume, has reason to believe that such facts are unknown to Guarantor, or has a reasonable opportunity to communicate such facts to Guarantor. Guarantor waives any right or defense related to any lack of knowledge by or lack of notice to Guarantor of any such matters.

7.    **Continuance of Guaranty.**    Guarantor's liability under this Guaranty shall continue in effect notwithstanding any payment or performance received by Lender on account of the Obligations, and notwithstanding any release of this Guaranty, such that, if any claim is made upon Lender at any time for avoidance, recovery, return or repayment with respect to any such payment or performance, and if Lender pays or otherwise returns value on any such claim in whole or part, whether pursuant to judgment, decree, order, settlement, voluntary payment or otherwise, Guarantor shall remain liable as though such payment or performance had never been received by Lender. Lender may elect in its sole discretion whether to contest or pay any such claim.

8.    **Effect of Bankruptcy.**    In this Guaranty, "**Bankruptcy**" means any voluntary or involuntary bankruptcy, insolvency, receivership, reorganization, liquidation, debtor-relief or similar proceeding. Guarantor's obligations under this Guaranty shall not be altered, limited, stayed or otherwise affected by any Bankruptcy of Borrower or any other person, or by any defense Borrower or any other person may have to the Obligations by reason of any such Bankruptcy. Any stay of enforcement or stay of acceleration of the time for payment of any of the Obligations as against Borrower or any other person, in Bankruptcy or otherwise, shall not affect Guarantor's liability under this Guaranty or the time for payment or performance by Guarantor hereunder, and all Obligations otherwise subject to acceleration shall be payable by Guarantor upon demand notwithstanding any such stay.

9.    **Claims in Bankruptcy and Other Proceedings.**    Guarantor shall file in any Bankruptcy or other proceeding in which the filing of claims is required or permitted all claims Guarantor may have against Borrower on any indebtedness of Borrower to Guarantor. Guarantor assigns to Lender all rights of Guarantor thereunder and arising therefrom, and shall execute any necessary documents reflecting such assignment. If Guarantor does not file any such claim at least twenty (20) days prior to any applicable deadline, then Lender, as attorney-in-fact for Guarantor, is hereby authorized to do so in the name of Guarantor or, in Lender's discretion, to assign the claim to a nominee and cause such proof of claim to be filed in such nominee's name. This power of attorney is coupled with an interest and is irrevocable until the indefeasible payment and performance in full of all of the Obligations. All cash, property and other distributions of any kind which otherwise would be payable to Guarantor in respect of all such claims shall be paid to Lender, or as Lender elects otherwise in writing. Guarantor's obligations under this Guaranty shall not be satisfied, however, except to the extent of cash received by Lender, and if Lender receives anything other than cash it shall be held as security for amounts due under this Guaranty.

\\192.168 1.147\data\TD Fund II\Lake San Marcos Land\Guaranty_ CDC_ECC doc

4

10.    **Subordination.** All existing and future obligations of Borrower to Guarantor are hereby subordinated to Borrower's full and indefeasible payment and performance of the Obligations. Upon any default under any of the Obligations or hereunder, all obligations of Borrower to Guarantor shall be collected, enforced and received by Guarantor as trustee for Lender, and all amounts received shall be paid over to Lender for application to the Obligations and/or to Guarantor's liability hereunder.

11.    **Security Interest.** Guarantor grants to Lender a security interest in all monies, securities and other personal property of Guarantor now or hereafter in Lender's possession, and all present and future deposit accounts of Guarantor with Lender, as security for the obligations of Guarantor hereunder.

12.    **Costs and Expenses.** Guarantor shall immediately reimburse Lender for all reasonable fees and costs, including attorneys' and experts' reasonable fees and costs, incurred by Lender for: (a) enforcement (including post-judgment) or prevention of a breach of this Guaranty or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; (b) representation of Lender in any Bankruptcy of or relating to Borrower, to Guarantor, or to any security for the Obligations or for this Guaranty; (c) representation of Lender in any action or proceeding relating to any security for the Obligations or for this Guaranty; and (d) representation of Lender in connection with any claim upon Lender for avoidance, recovery, return or repayment of any payment or performance of the Obligations, in Bankruptcy or otherwise. All such fees and costs shall bear interest until paid at the rate applicable to the Obligations.

13.    **Controlling Law; Jurisdiction; Service.** This Guaranty shall be governed by and construed in accordance with the internal laws of the State of California, without regard to principles of conflicts of law. Guarantor irrevocably submits to the non-exclusive jurisdiction of any state or federal court located in San Diego, California. Guarantor irrevocably consents to the service of process in any action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to Guarantor at its address set forth below, but nothing herein shall affect Lender's right to serve process in any other manner permitted by law.

14.    **Parties Bound and Benefited.** This Guaranty will bind and benefit the heirs, executors, administrators, legal representatives, successors and assigns of Guarantor and Lender.

15.    **Interpretation.** In addition to definitions set forth above, in this Guaranty: (a) **"Borrower"** means both the named Borrower and any other person at any time primarily liable for all or any part of the Obligations; (b) if there are multiple Borrowers, **"Borrower"** means all and any one or more of them; (c) if there are multiple Guarantors, "Guarantor" means all and any one or more of them; (d) **"Lender"** means both the named Lender and any other or future owners or holders, including pledgees and participants, of the Obligations or any portion thereof or interest therein; and (e) **"person"** means any individual, corporation, partnership, limited liability company, governmental authority, or other entity of any kind.

\\192 168 1 147\data\TD Fund II\Lake San Marcos Land\Guaranty _ CDC_ ECC doc

5

16. **Joint and Several Liability; Separate and Community Property.** If there are multiple Guarantors (or other guarantors). their liability is joint and several. Any married person who executes this Guaranty agrees that recourse may be had against his or her separate property and against community property.

17. **Entire Agreement; Modifications; Waiver; Cumulative Remedies.** This Guaranty constitutes the entire agreement between Guarantor and Lender with respect to its subject matter, and supersedes all prior or contemporaneous agreements, representations and understandings. No supplement to or modification of this Guaranty shall be binding unless executed in writing by Guarantor and Lender, nor shall any waiver of any of Lender's rights hereunder be effective unless executed in writing by Lender. No such waiver shall be applicable except in the specific instance for which given. No delay or failure by Lender to exercise any right or remedy against Borrower or Guarantor or any other person or security shall constitute a waiver of that right or remedy or any other. All remedies of Lender under this Guaranty and under, arising out of. or relating to the Obligations, are cumulative, and are in addition to all remedies of Lender at law or in equity.

18. **Headings; Severability.** Headings in this Guaranty are for convenience only and do not define or limit the scope of provisions of this Guaranty. The invalidity or unenforceability of any one or more provisions of this Guaranty will not affect the validity or enforceability of any other provision.

19. **Counterparts**. This Guaranty may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

20. **WAIVER OF RIGHTS OF TRIAL BY JURY.** TO THE FULLEST EXTENT PERMITTED BY LAW (INCLUDING, WITHOUT LIMITATION, ANY LAW HEREAFTER IN EFFECT), EACH OF GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, INTENTIONALLY, IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE (INCLUDING BY WAY OF JURY TRIAL) IN RESOLVING ANY DISPUTE OR LITIGATION (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG GUARANTOR AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN. THE LOAN DOCUMENTS, THE ENVIRONMENTAL INDEMNITY OR ACTIONS OF BORROWER, GUARANTOR OR LENDER RELATING TO THE LOAN. THIS PROVISION AND THE WAIVER SET FORTH HEREIN ARE MATERIAL INDUCEMENTS TO LENDER TO MAKE THE LOAN. EACH OF GUARANTOR AND LENDER HAS REVIEWED THIS WAIVER WITH ITS COUNSEL.

WITHOUT INTENDING IN ANY WAY TO LIMIT GUARANTOR'S AND LENDER'S AGREEMENT TO WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY, if the above waiver of the right to a trial by jury is not enforceable, Guarantor and Lender agree that any and all disputes or controversies of any nature between them arising at any time shall be

\\192 168 1 147\data\TD Fund II\Lake San Marcos Land\Guaranty_CDC_ECC doc

6

decided by a reference to a private judge, mutually selected by the parties (or, if they cannot agree, by the Presiding Judge of the San Diego County, California Superior Court) appointed in accordance with California Code of Civil Procedure Section 638 (or pursuant to comparable provisions of federal law if the dispute falls within the exclusive jurisdiction of the federal courts), sitting without a jury, in San Diego County, California; and the parties hereby submit to the jurisdiction of such court. The reference proceedings shall be conducted pursuant to and in accordance with the provisions of California Code of Civil Procedure Sections 638 through 645.1, inclusive. The private judge shall have the power, among others, to grant provisional relief, including without limitation, entering temporary restraining orders, issuing preliminary and permanent injunctions and appointing receivers. All such proceedings shall be closed to the public and confidential and all records relating thereto shall be permanently sealed. If during the course of any dispute, a party desires to seek provisional relief, but a judge has not been appointed at that point pursuant to the judicial reference procedures, then such party may apply to the San Diego County, California Superior Court for such relief. The proceeding before the private judge shall be conducted in the same manner as it would be before a court under the rules of evidence applicable to judicial proceedings. The parties agree that the selected or appointed private judge shall have the power to decide all issues in the action or proceeding, whether of fact or of law, and shall report a statement of decision thereon pursuant to the California Code of Civil Procedure Section 644(a). The private judge shall also determine all issues relating to the applicability, interpretation, and enforceability of this paragraph.

Notwithstanding anything contrary in this Section 20, nothing in this Section 20 shall limit the right of Guarantor, Lender or any other person to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or non-judicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights; or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies. The filing of a court action is not intended to constitute a waiver of the right of Guarantor, Lender or any other person, including the suing party, thereafter to request or require submittal of the claim to arbitration or judicial reference as provided herein.

21. **Additional Covenants**. As a material inducement to Lender to enter into the Modification Agreement, Guarantor hereby unconditionally represents, warrants, covenants and agrees as follows:

(a) There are no other documents governing the collection and use of revenues for the LSMRA (as hereinafter defined), other than those certain leases that have been delivered to Lender or will be delivered to Lender in accordance with Section 21(c) hereinbelow. As used herein, "**LSMRA**" shall mean the Lake San Marcos Recreation Area more particularly described in **Exhibit A** attached hereto and incorporated herein by this reference;

(b) Guarantor neither currently nor at any time had in its possession or control any of the documents described in **Exhibit B** attached hereto and incorporated herein by this reference, and to the best knowledge of Guarantor, such documents are of no further force or effect; and

\\192.168.1.147\data\TD Fund II\Lake San Marcos Land\Guaranty_CDC_ECC.doc

7

(c)     On or before February 1, 2010, Guarantor shall provide to Lender a current list certified by Guarantor of all lessees, tenants and other occupants for all or any portion of the LSMRA (including, without limitation, all lessees, tenants and other occupants of any docks within the LSMRA), together with true, complete and correct copies of all leases, licenses, and other occupancy agreements with respect to such lessees, tenants and other occupants.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

IN WITNESS WHEREOF, this Guaranty has been duly executed by Guarantor as of the day and year first above written.

**GUARANTOR**:

_____

Matthew C. DiNofia

**Address of Guarantor:**

1295 Discovery Street
San Marcos, California 92078

### *Exhibit A*

Lake San Marcos Recreation Area consists of:

A.   The Lake, Lodge and Recreational Facilities described in the Lake San Marcos Lease Agreement by and between Citizens Development Corp, a California Corporation as Lessor and The Hunter Valley Homeowners Association as Lessee, having an effective date of April 1, 2008, and

B.   All docks, wharfage areas, the marina and any other fixtures which are currently on the Lake and/or which CDC may put on, in or near the Lake

C.   The real property upon which the above facilities are located is more particularly identified by Assessor Parcel Numbers as follows:

222-030-30, 222-030-44, 222-030-56, 222-031-06, 221-240-01, 221-280-44, 221-500-35, 221-510-57, 221-570-19, 221-570-20, 221-570-24 and 221-570-25

## *Exhibit B*

1. A document entitled "**Agreement**", dated, June 7, 1973, executed by Citizens Development Corporation and CESCO Development Corporation, subject to all the terms, provisions and conditions therein contained, recorded July 12, 1973 as Instrument No. 73-192437 of Official Records.

2. A document entitled "**Agreement**", dated, June 7, 1973, executed by Citizens Development Corporation and CESCO Development Corporation, subject to all the terms, provisions and conditions therein contained, recorded July 12, 1973 as Instrument No. 192438 of Official Records.

3. A document entitled "**Agreement**", dated, June 7, 1973, executed by Citizens Development Corporation and Conde Invest Corporation, subject to all the terms, provisions and conditions therein contained, recorded June 12, 1973 as Instrument No. 73-192442 of Official Records

## GUARANTY

This Guaranty (the "**Guaranty**") is made as of January 5, 2010, by CITIZENS DEVELOPMENT CORPORATION, a California corporation ("**Guarantor**"), with reference to the following facts:

A.     PACIFIC WEST TD FUND II, L.P., a California limited partnership ("**Lender**") made a loan (the "**Loan**") to LDG CONVOY STREET, LLC, a California limited liability company and MISSISSIPPI AVENUE, LLC, a California limited liability company (collectively, "**Borrower**") evidenced by that certain Promissory Note dated as of April 8, 2008 executed by Borrower in favor of Lender (the "**Note**"). The Loan is secured by, among other things, that certain Deed of Trust with Assignment of Rents dated as of April 8, 2008 executed by Borrower, as trustor, in favor of Lender, as beneficiary (the "**Deed of Trust**").

B.     Borrower is in default of its obligations under the Loan, and Borrower has requested that the Loan be modified as more particularly provided in that certain Modification Agreement of even date herewith by and between Borrower and Lender with respect to the Loan (the "**Modification Agreement**"). The Note, the Deed of Trust, the Modification Agreement, and all other present and future agreements, documents and instruments executed or to be executed in connection with the Loan, and all extensions, renewals, substitutions, replacements and modifications of any of the foregoing documents are referred to herein, collectively, as the "**Loan Documents**"; provided, however, the Environmental Indemnity (if any) dated as of April 10, 2009 made by Borrower in favor of Lender (the "**Environmental Indemnity**") is not one of the Loan Documents.

C.     As an essential inducement to and as a condition to Lender's entering into the Modification Agreement, and in consideration therefor, Guarantor has agreed to execute this Guaranty, and a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing of even date herewith securing this Guaranty and certain other obligations of Guarantor to Lender.

D.     Guarantor will obtain substantial direct and indirect benefits from the Loan and the transaction contemplated by the Modification Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals, and to induce and in consideration for entering into the Modification Agreement, Guarantor agrees as follows:

1.     **Guaranty.**

(a)     Guarantor unconditionally and irrevocably guaranties to Lender the full and timely payment and performance when due of all of Borrower's indebtedness and obligations of any nature whatsoever, now existing or arising in the future, under the Note, Deed of Trust, any of the other Loan Documents, and/or the Environmental Indemnity, and all extensions, renewals, substitutions, replacements and modifications of any of the foregoing documents (collectively, the "**Obligations**").

(b)     Notwithstanding any contrary provision hereof, Guarantor's liability under this Guaranty shall be limited to the sum of (i) the aggregate amount of all advances made by Lender under the Loan on and after the Effective Date (as defined in the Modification Agreement), and (ii) the aggregate amount of any interest on the Loan that (A) accrues after the Effective Date (as defined in the Modification Agreement) plus (B) is not paid by advances by Lender (and Guarantor acknowledges that, pursuant to the Modification Agreement, Lender has no obligation to make advances for payment of interest following an Event of Default (as therein defined)). Payments and recoveries on account of the Obligations other than from Guarantor under this Guaranty shall not reduce this limitation on Guarantor's liability.

2.     **Guaranty of Payment; Independent Obligation.** This Guaranty is a guaranty of payment and performance and not of collectability. Guarantor's obligations under this Guaranty are independent of those of Borrower or any other person. Lender may bring one or more separate actions against Guarantor without proceeding against Borrower or any other person or any security, and without pursuing any other remedy. Lender's rights under this Guaranty shall not be exhausted by any action of Lender until all of the Obligations have been indefeasibly paid and performed in full.

3.     **Rights of Lender.** Lender shall have the right, without notice to or consent by Guarantor, to: (a) renew, extend, accelerate, waive, settle, compromise, release, restructure, liquidate, increase, decrease and otherwise modify, or refuse to modify, the Obligations, the liability of any person therefor as principal, guarantor, surety or otherwise, and/or any security therefor, and accept new or additional documents, instruments, or agreements relative to the Obligations; (b) consent or not consent to any change, restructure or termination of the individual, partnership, corporate or other organizational structure or existence of Borrower or any other person; (c) pursue in any order or manner, or not pursue, and make elections among, Lender's remedies against Borrower, any other person, and any security, and accept transfers of security in lieu of foreclosure, even if any rights that Guarantor may have, including subrogation, reimbursement, indemnity, contribution and/or participation in security, are thereby impaired or extinguished; (d) take, hold, release, perfect, fail to perfect, subordinate, and/or apply the proceeds of any security for and any guaranties of the Obligations; (e) apply amounts received, including partial payments, from any source on account of the Obligations toward payment thereof in such order and to such portions as Lender may elect, notwithstanding any contrary designation by Borrower, Guarantor or any other person; and (f) assign Lender's rights under this Guaranty in whole or part. Guarantor waives any right or defense that might arise by reason of Lender's exercise of any such rights, even if, as a result, Guarantor has no recourse to Borrower, to security or to other persons for amounts paid by Guarantor.

4.     **Waivers.** Guarantor's liability shall not be affected by any circumstance, including cessation of Borrower's liability, other than indefeasible payment and performance in full of the Obligations. Guarantor waives: (a) any right to require Lender to proceed against Borrower, any other person, or any security now or hereafter held by Lender, or to pursue any other remedy whatsoever; (b) any defense based upon any legal disability of, any release, discharge or limitation of the liability of, any restraint or stay applicable to actions against, or the death, incapacity, lack of authority or termination of existence of, Borrower or any other person;

\\192.168.1.147\data\TD Fund II\Lake San Marcos Land\Guaranty_CDC_Convoy.doc

2

(c) any defense based upon or arising out of any defense Borrower or any other person may have to any of the Obligations, including the running of any statute of limitations: (d) any right of setoff, recoupment or counterclaim; (e) notice, demand, presentment, protest, notice of acceptance, notice of protest, notice of dishonor and notice of any action or inaction; (f) any defense based upon negligence of Lender, including any failure to record any deed of trust or other document, otherwise perfect any lien or security interest, or file a claim in any Bankruptcy (as defined below); (g) all rights of subrogation, reimbursement, indemnity and contribution against Borrower or any other person, participation in security provided by Borrower or any other person, and all rights to enforce any remedy that Lender may have against Borrower or any other person or security, until all Obligations have been indefeasibly paid and performed in full; (h) any defense related to any change in the person(s) liable for the Obligations, whether by reason of a change in the structure of Borrower, assumption of the Obligations by another person, transfer of any security for the Obligations, or otherwise; (i) any right to revoke this Guaranty, including any such right arising under California Civil Code § 2815; and (j) all rights and defenses that are or may become available to Guarantor by reason of California Civil Code §§ 2787 through 2855, inclusive, 2899 and/or 3433, and/or California Code of Civil Procedure § 359.5.

5.    **Impairment of Subrogation and Other Rights.**  Guarantor waives all rights and defenses that Guarantor may have because the Obligations are or may become secured by real or personal property. This means, among other things: (a) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower or otherwise; and (b) if Lender forecloses on any real or personal property collateral pledged by Borrower or otherwise (i) the amount of the Obligations may be reduced only by the price for which that collateral was sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (ii) Lender may collect from Guarantor even if Lender, by foreclosing on the real or personal property collateral, has destroyed any right Guarantor may have to collect from Borrower or any other person. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Obligations are or may become secured by real or personal property. These rights and defenses include, but are not limited to, any rights or defenses based upon California Code of Civil Procedure §§ 580a, 580b, 580d, or 726. Guarantor also waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as nonjudicial foreclosure with respect to security for the Obligations, has destroyed Guarantor's rights of subrogation and/or reimbursement, if any, against Borrower or any other person by the operation of California Code of Civil Procedure § 580d or otherwise.

6.    **Guarantor's Knowledge.**  Guarantor represents and warrants to Lender that it has had full access to and has reviewed all of the documentation of the Obligations, and has fully informed itself of all circumstances bearing upon the risks of executing this Guaranty, with such assistance of legal counsel and other experts as Guarantor requires. Guarantor represents and warrants to Lender that it is relying on its own knowledge of and is fully informed with respect to Borrower's financial condition, and has adequate means to keep itself fully informed of Borrower's financial condition and all other matters relating to Borrower's ability to perform the Obligations. Guarantor assumes full responsibility for doing so and agrees that Lender shall

have no duty to report to Guarantor any information which Lender receives about Borrower's financial condition or any other matters relating to Borrower's ability to perform the Obligations, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume, has reason to believe that such facts are unknown to Guarantor, or has a reasonable opportunity to communicate such facts to Guarantor. Guarantor waives any right or defense related to any lack of knowledge by or lack of notice to Guarantor of any such matters.

7. **Continuance of Guaranty.** Guarantor's liability under this Guaranty shall continue in effect notwithstanding any payment or performance received by Lender on account of the Obligations. and notwithstanding any release of this Guaranty, such that, if any claim is made upon Lender at any time for avoidance, recovery, return or repayment with respect to any such payment or performance, and if Lender pays or otherwise returns value on any such claim in whole or part, whether pursuant to judgment, decree, order, settlement, voluntary payment or otherwise, Guarantor shall remain liable as though such payment or performance had never been received by Lender. Lender may elect in its sole discretion whether to contest or pay any such claim.

8. **Effect of Bankruptcy.** In this Guaranty, "**Bankruptcy**" means any voluntary or involuntary bankruptcy. insolvency, receivership, reorganization, liquidation, debtor-relief or similar proceeding. Guarantor's obligations under this Guaranty shall not be altered, limited, stayed or otherwise affected by any Bankruptcy of Borrower or any other person. or by any defense Borrower or any other person may have to the Obligations by reason of any such Bankruptcy. Any stay of enforcement or stay of acceleration of the time for payment of any of the Obligations as against Borrower or any other person, in Bankruptcy or otherwise, shall not affect Guarantor's liability under this Guaranty or the time for payment or performance by Guarantor hereunder, and all Obligations otherwise subject to acceleration shall be payable by Guarantor upon demand notwithstanding any such stay.

9. **Claims in Bankruptcy and Other Proceedings.** Guarantor shall file in any Bankruptcy or other proceeding in which the filing of claims is required or permitted all claims Guarantor may have against Borrower on any indebtedness of Borrower to Guarantor. Guarantor assigns to Lender all rights of Guarantor thereunder and arising therefrom, and shall execute any necessary documents reflecting such assignment. If Guarantor does not file any such claim at least twenty (20) days prior to any applicable deadline, then Lender, as attorney-in-fact for Guarantor, is hereby authorized to do so in the name of Guarantor or, in Lender's discretion, to assign the claim to a nominee and cause such proof of claim to be filed in such nominee's name. This power of attorney is coupled with an interest and is irrevocable until the indefeasible payment and performance in full of all of the Obligations. All cash, property and other distributions of any kind which otherwise would be payable to Guarantor in respect of all such claims shall be paid to Lender, or as Lender elects otherwise in writing. Guarantor's obligations under this Guaranty shall not be satisfied. however, except to the extent of cash received by Lender, and if Lender receives anything other than cash it shall be held as security for amounts due under this Guaranty.

10. **Subordination.** All existing and future obligations of Borrower to Guarantor are hereby subordinated to Borrower's full and indefeasible payment and performance of the Obligations. Upon any default under any of the Obligations or hereunder, all obligations of Borrower to Guarantor shall be collected, enforced and received by Guarantor as trustee for Lender, and all amounts received shall be paid over to Lender for application to the Obligations and/or to Guarantor's liability hereunder.

11. **Security Interest.** Guarantor grants to Lender a security interest in all monies, securities and other personal property of Guarantor now or hereafter in Lender's possession, and all present and future deposit accounts of Guarantor with Lender, as security for the obligations of Guarantor hereunder.

12. **Costs and Expenses.** Guarantor shall immediately reimburse Lender for all reasonable fees and costs, including attorneys' and experts' reasonable fees and costs, incurred by Lender for: (a) enforcement (including post-judgment) or prevention of a breach of this Guaranty or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; (b) representation of Lender in any Bankruptcy of or relating to Borrower, to Guarantor, or to any security for the Obligations or for this Guaranty; (c) representation of Lender in any action or proceeding relating to any security for the Obligations or for this Guaranty; and (d) representation of Lender in connection with any claim upon Lender for avoidance, recovery, return or repayment of any payment or performance of the Obligations, in Bankruptcy or otherwise. All such fees and costs shall bear interest until paid at the rate applicable to the Obligations.

13. **Controlling Law; Jurisdiction; Service.** This Guaranty shall be governed by and construed in accordance with the internal laws of the State of California, without regard to principles of conflicts of law. Guarantor irrevocably submits to the non-exclusive jurisdiction of any state or federal court located in San Diego, California. Guarantor irrevocably consents to the service of process in any action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to Guarantor at its address set forth below, but nothing herein shall affect Lender's right to serve process in any other manner permitted by law.

14. **Parties Bound and Benefited.** This Guaranty will bind and benefit the heirs, executors, administrators, legal representatives, successors and assigns of Guarantor and Lender.

15. **Interpretation.** In addition to definitions set forth above, in this Guaranty: (a) "**Borrower**" means both the named Borrower and any other person at any time primarily liable for all or any part of the Obligations; (b) if there are multiple Borrowers, "**Borrower**" means all and any one or more of them; (c) if there are multiple Guarantors, "Guarantor" means all and any one or more of them; (d) "**Lender**" means both the named Lender and any other or future owners or holders, including pledgees and participants, of the Obligations or any portion thereof or interest therein; and (e) "**person**" means any individual, corporation, partnership, limited liability company, governmental authority, or other entity of any kind.

16. **Joint and Several Liability; Separate and Community Property.** If there are multiple Guarantors (or other guarantors), their liability is joint and several. Any married person

\\192 168.1 147\data\TD Fund II\Lake San Marcos Land\Guaranty_ CDC_ Convoy.doc

who executes this Guaranty agrees that recourse may be had against his or her separate property and against community property.

17. **Entire Agreement; Modifications; Waiver; Cumulative Remedies.** This Guaranty constitutes the entire agreement between Guarantor and Lender with respect to its subject matter, and supersedes all prior or contemporaneous agreements, representations and understandings. No supplement to or modification of this Guaranty shall be binding unless executed in writing by Guarantor and Lender, nor shall any waiver of any of Lender's rights hereunder be effective unless executed in writing by Lender. No such waiver shall be applicable except in the specific instance for which given. No delay or failure by Lender to exercise any right or remedy against Borrower or Guarantor or any other person or security shall constitute a waiver of that right or remedy or any other. All remedies of Lender under this Guaranty and under, arising out of, or relating to the Obligations, are cumulative, and are in addition to all remedies of Lender at law or in equity.

18. **Headings; Severability.** Headings in this Guaranty are for convenience only and do not define or limit the scope of provisions of this Guaranty. The invalidity or unenforceability of any one or more provisions of this Guaranty will not affect the validity or enforceability of any other provision.

19. **Counterparts**. This Guaranty may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

20. **WAIVER OF RIGHTS OF TRIAL BY JURY.** TO THE FULLEST EXTENT PERMITTED BY LAW (INCLUDING, WITHOUT LIMITATION, ANY LAW HEREAFTER IN EFFECT), EACH OF GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, INTENTIONALLY, IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE (INCLUDING BY WAY OF JURY TRIAL) IN RESOLVING ANY DISPUTE OR LITIGATION (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG GUARANTOR AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN, THE LOAN DOCUMENTS, THE ENVIRONMENTAL INDEMNITY OR ACTIONS OF BORROWER, GUARANTOR OR LENDER RELATING TO THE LOAN. THIS PROVISION AND THE WAIVER SET FORTH HEREIN ARE MATERIAL INDUCEMENTS TO LENDER TO MAKE THE LOAN. EACH OF GUARANTOR AND LENDER HAS REVIEWED THIS WAIVER WITH ITS COUNSEL.

WITHOUT INTENDING IN ANY WAY TO LIMIT GUARANTOR'S AND LENDER'S AGREEMENT TO WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY, if the above waiver of the right to a trial by jury is not enforceable, Guarantor and Lender agree that any and all disputes or controversies of any nature between them arising at any time shall be decided by a reference to a private judge, mutually selected by the parties (or, if they cannot agree, by the Presiding Judge of the San Diego County, California Superior Court) appointed in accordance with California Code of Civil Procedure Section 638 (or pursuant to comparable

\\192 168 1 147\data\TD Fund II\Lake San Marcos Land-Guaranty _ CDC_ Convoy doc

6

provisions of federal law if the dispute falls within the exclusive jurisdiction of the federal courts), sitting without a jury, in San Diego County, California; and the parties hereby submit to the jurisdiction of such court. The reference proceedings shall be conducted pursuant to and in accordance with the provisions of California Code of Civil Procedure Sections 638 through 645.1, inclusive. The private judge shall have the power, among others, to grant provisional relief, including without limitation, entering temporary restraining orders, issuing preliminary and permanent injunctions and appointing receivers. All such proceedings shall be closed to the public and confidential and all records relating thereto shall be permanently sealed. If during the course of any dispute, a party desires to seek provisional relief, but a judge has not been appointed at that point pursuant to the judicial reference procedures, then such party may apply to the San Diego County, California Superior Court for such relief. The proceeding before the private judge shall be conducted in the same manner as it would be before a court under the rules of evidence applicable to judicial proceedings. The parties agree that the selected or appointed private judge shall have the power to decide all issues in the action or proceeding, whether of fact or of law, and shall report a statement of decision thereon pursuant to the California Code of Civil Procedure Section 644(a). The private judge shall also determine all issues relating to the applicability, interpretation, and enforceability of this paragraph.

Notwithstanding anything contrary in this Section 20, nothing in this Section 20 shall limit the right of Guarantor, Lender or any other person to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or non-judicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights; or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies. The filing of a court action is not intended to constitute a waiver of the right of Guarantor, Lender or any other person, including the suing party, thereafter to request or require submittal of the claim to arbitration or judicial reference as provided herein.

21.    **Additional Covenants**. As a material inducement to Lender to enter into the Modification Agreement, Guarantor hereby unconditionally represents, warrants, covenants and agrees as follows:

(a)    There are no other documents governing the collection and use of revenues for the LSMRA (as hereinafter defined), other than those certain leases that have been delivered to Lender or will be delivered to Lender in accordance with Section 21(c) hereinbelow. As used herein, "**LSMRA**" shall mean the Lake San Marcos Recreation Area more particularly described in **Exhibit A** attached hereto and incorporated herein by this reference;

(b)    Guarantor neither currently nor at any time had in its possession or control any of the documents described in **Exhibit B** attached hereto and incorporated herein by this reference, and to the best knowledge of Guarantor, such documents are of no further force or effect; and

(c)    On or before February 1, 2010, Guarantor shall provide to Lender a current list certified by Guarantor of all lessees, tenants and other occupants for all or any

portion of the LSMRA (including, without limitation, all lessees, tenants and other occupants of any docks within the LSMRA), together with true, complete and correct copies of all leases, licenses, and other occupancy agreements with respect to such lessees, tenants and other occupants.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

\\192.168.1.147\data\TD Fund II\Lake San Marcos Land\Guaranty_ CDC_ Convoy.doc

8

IN WITNESS WHEREOF, this Guaranty has been duly executed by Guarantor as of the day and year first above written.

**GUARANTOR**:

Matthew C. DiNofia

**Address of Guarantor:**

1295 Discovery Street
San Marcos, California 92078

## *Exhibit A*

Lake San Marcos Recreation Area consists of:

A.  The Lake, Lodge and Recreational Facilities described in the Lake San Marcos Lease
    Agreement by and between Citizens Development Corp, a California Corporation as
    Lessor and The Hunter Valley Homeowners Association as Lessee, having an effective
    date of April 1, 2008, and

B.  All docks, wharfage areas, the marina and any other fixtures which are currently on the
    Lake and/or which CDC may put on, in or near the Lake

C.  The real property upon which the above facilities are located is more particularly
    identified by Assessor Parcel Numbers as follows:

    222-030-30, 222-030-44, 222-030-56, 222-031-06, 221-240-01, 221-280-44, 221-500-35,
    221-510-57, 221-570-19, 221-570-20, 221-570-24 and 221-570-25

## *Exhibit B*

1. A document entitled "**Agreement**", dated, June 7, 1973, executed by Citizens Development Corporation and CESCO Development Corporation, subject to all the terms, provisions and conditions therein contained, recorded July 12, 1973 as Instrument No. 73-192437 of Official Records.

2. A document entitled "**Agreement**", dated, June 7, 1973, executed by Citizens Development Corporation and CESCO Development Corporation, subject to all the terms, provisions and conditions therein contained, recorded July 12, 1973 as Instrument No. 192438 of Official Records.

3. A document entitled "**Agreement**", dated, June 7, 1973, executed by Citizens Development Corporation and Conde Invest Corporation, subject to all the terms, provisions and conditions therein contained, recorded June 12, 1973 as Instrument No. 73-192442 of Official Records

## GUARANTY

This Guaranty (the "**Guaranty**") is made as of January 5, 2010, by CITIZENS DEVELOPMENT CORPORATION, a California corporation ("**Guarantor**"), with reference to the following facts:

A.      PACIFIC WEST TD FUND II, L.P., a California limited partnership ("**Lender**") made a loan (the "**Loan**") to MISSISSIPPI AVENUE, LLC, a California limited liability company ("**Borrower**") evidenced by that certain Promissory Note dated as of April 10, 2009 executed by Borrower in favor of Lender (the "**Note**"). The Loan is secured by, among other things, that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing dated as of April 10, 2009 executed by Borrower, as trustor, in favor of Lender, as beneficiary (the "**Deed of Trust**").

B.      Borrower is in default of its obligations under the Loan, and Borrower has requested that the Loan be modified as more particularly provided in that certain Modification Agreement of even date herewith by and between Borrower and Lender with respect to the Loan (the "**Modification Agreement**"). The Note, the Deed of Trust, the Modification Agreement, and all other present and future agreements, documents and instruments executed or to be executed in connection with the Loan, and all extensions, renewals, substitutions, replacements and modifications of any of the foregoing documents are referred to herein, collectively, as the "**Loan Documents**"; provided, however, the Environmental Indemnity (if any) dated as of April 10, 2009 made by Borrower in favor of Lender (the "**Environmental Indemnity**") is not one of the Loan Documents.

C.      As an essential inducement to and as a condition to Lender's entering into the Modification Agreement, and in consideration therefor, Guarantor has agreed to execute this Guaranty, and a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing of even date herewith securing this Guaranty and certain other obligations of Guarantor to Lender.

D.      Guarantor will obtain substantial direct and indirect benefits from the Loan and the transaction contemplated by the Modification Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals, and to induce and in consideration for entering into the Modification Agreement, Guarantor agrees as follows:

### 1.      **Guaranty.**

(a)      Guarantor unconditionally and irrevocably guaranties to Lender the full and timely payment and performance when due of all of Borrower's indebtedness and obligations of any nature whatsoever, now existing or arising in the future, under the Note, Deed of Trust, any of the other Loan Documents, and/or the Environmental Indemnity, and all extensions, renewals, substitutions, replacements and modifications of any of the foregoing documents (collectively, the "**Obligations**").

\\192 168 1 147\data\TD Fund II\Lake San Marcos Land\Guaranty_ CDC_ Mississippi doc

1

(b) Notwithstanding any contrary provision hereof, Guarantor's liability under this Guaranty shall be limited to the sum of (i) the aggregate amount of all advances made by Lender under the Loan on and after the Effective Date (as defined in the Modification Agreement), and (ii) the aggregate amount of any interest on the Loan that (A) accrues after the Effective Date (as defined in the Modification Agreement) plus (B) is not paid by advances by Lender (and Guarantor acknowledges that, pursuant to the Modification Agreement, Lender has no obligation to make advances for payment of interest following an Event of Default (as therein defined)). Payments and recoveries on account of the Obligations other than from Guarantor under this Guaranty shall not reduce this limitation on Guarantor's liability.

2. **Guaranty of Payment; Independent Obligation.** This Guaranty is a guaranty of payment and performance and not of collectability. Guarantor's obligations under this Guaranty are independent of those of Borrower or any other person. Lender may bring one or more separate actions against Guarantor without proceeding against Borrower or any other person or any security, and without pursuing any other remedy. Lender's rights under this Guaranty shall not be exhausted by any action of Lender until all of the Obligations have been indefeasibly paid and performed in full.

3. **Rights of Lender.** Lender shall have the right, without notice to or consent by Guarantor, to: (a) renew, extend, accelerate, waive, settle, compromise, release, restructure, liquidate, increase, decrease and otherwise modify, or refuse to modify, the Obligations, the liability of any person therefor as principal, guarantor, surety or otherwise, and/or any security therefor, and accept new or additional documents, instruments, or agreements relative to the Obligations; (b) consent or not consent to any change, restructure or termination of the individual, partnership, corporate or other organizational structure or existence of Borrower or any other person; (c) pursue in any order or manner, or not pursue, and make elections among, Lender's remedies against Borrower, any other person, and any security, and accept transfers of security in lieu of foreclosure, even if any rights that Guarantor may have, including subrogation, reimbursement, indemnity, contribution and/or participation in security, are thereby impaired or extinguished; (d) take, hold, release, perfect, fail to perfect, subordinate, and/or apply the proceeds of any security for and any guaranties of the Obligations; (e) apply amounts received, including partial payments, from any source on account of the Obligations toward payment thereof in such order and to such portions as Lender may elect, notwithstanding any contrary designation by Borrower, Guarantor or any other person; and (f) assign Lender's rights under this Guaranty in whole or part. Guarantor waives any right or defense that might arise by reason of Lender's exercise of any such rights, even if, as a result, Guarantor has no recourse to Borrower, to security or to other persons for amounts paid by Guarantor.

4. **Waivers.** Guarantor's liability shall not be affected by any circumstance, including cessation of Borrower's liability, other than indefeasible payment and performance in full of the Obligations. Guarantor waives: (a) any right to require Lender to proceed against Borrower, any other person, or any security now or hereafter held by Lender, or to pursue any other remedy whatsoever; (b) any defense based upon any legal disability of, any release, discharge or limitation of the liability of, any restraint or stay applicable to actions against, or the death, incapacity, lack of authority or termination of existence of, Borrower or any other person;

\\192 168 1.147\data\TD Fund II\Lake San Marcos Land\Guaranty_CDC_Mississippi doc

2

(c) any defense based upon or arising out of any defense Borrower or any other person may have to any of the Obligations, including the running of any statute of limitations; (d) any right of setoff, recoupment or counterclaim; (e) notice, demand, presentment, protest, notice of acceptance, notice of protest, notice of dishonor and notice of any action or inaction; (f) any defense based upon negligence of Lender, including any failure to record any deed of trust or other document, otherwise perfect any lien or security interest, or file a claim in any Bankruptcy (as defined below); (g) all rights of subrogation, reimbursement, indemnity and contribution against Borrower or any other person, participation in security provided by Borrower or any other person, and all rights to enforce any remedy that Lender may have against Borrower or any other person or security, until all Obligations have been indefeasibly paid and performed in full; (h) any defense related to any change in the person(s) liable for the Obligations, whether by reason of a change in the structure of Borrower, assumption of the Obligations by another person, transfer of any security for the Obligations, or otherwise; (i) any right to revoke this Guaranty, including any such right arising under California Civil Code § 2815; and (j) all rights and defenses that are or may become available to Guarantor by reason of California Civil Code §§ 2787 through 2855, inclusive, 2899 and/or 3433, and/or California Code of Civil Procedure § 359.5.

5.      **Impairment of Subrogation and Other Rights.** Guarantor waives all rights and defenses that Guarantor may have because the Obligations are or may become secured by real or personal property. This means, among other things: (a) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower or otherwise; and (b) if Lender forecloses on any real or personal property collateral pledged by Borrower or otherwise (i) the amount of the Obligations may be reduced only by the price for which that collateral was sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (ii) Lender may collect from Guarantor even if Lender, by foreclosing on the real or personal property collateral, has destroyed any right Guarantor may have to collect from Borrower or any other person. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Obligations are or may become secured by real or personal property. These rights and defenses include, but are not limited to, any rights or defenses based upon California Code of Civil Procedure §§ 580a, 580b, 580d, or 726. Guarantor also waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as nonjudicial foreclosure with respect to security for the Obligations, has destroyed Guarantor's rights of subrogation and/or reimbursement, if any, against Borrower or any other person by the operation of California Code of Civil Procedure § 580d or otherwise.

6.      **Guarantor's Knowledge.** Guarantor represents and warrants to Lender that it has had full access to and has reviewed all of the documentation of the Obligations, and has fully informed itself of all circumstances bearing upon the risks of executing this Guaranty, with such assistance of legal counsel and other experts as Guarantor requires. Guarantor represents and warrants to Lender that it is relying on its own knowledge of and is fully informed with respect to Borrower's financial condition, and has adequate means to keep itself fully informed of Borrower's financial condition and all other matters relating to Borrower's ability to perform the Obligations. Guarantor assumes full responsibility for doing so and agrees that Lender shall

have no duty to report to Guarantor any information which Lender receives about Borrower's financial condition or any other matters relating to Borrower's ability to perform the Obligations, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume, has reason to believe that such facts are unknown to Guarantor, or has a reasonable opportunity to communicate such facts to Guarantor. Guarantor waives any right or defense related to any lack of knowledge by or lack of notice to Guarantor of any such matters.

7. **Continuance of Guaranty.** Guarantor's liability under this Guaranty shall continue in effect notwithstanding any payment or performance received by Lender on account of the Obligations, and notwithstanding any release of this Guaranty, such that, if any claim is made upon Lender at any time for avoidance, recovery, return or repayment with respect to any such payment or performance, and if Lender pays or otherwise returns value on any such claim in whole or part, whether pursuant to judgment, decree, order, settlement, voluntary payment or otherwise, Guarantor shall remain liable as though such payment or performance had never been received by Lender. Lender may elect in its sole discretion whether to contest or pay any such claim.

8. **Effect of Bankruptcy.** In this Guaranty, "**Bankruptcy**" means any voluntary or involuntary bankruptcy, insolvency, receivership, reorganization, liquidation, debtor-relief or similar proceeding. Guarantor's obligations under this Guaranty shall not be altered, limited, stayed or otherwise affected by any Bankruptcy of Borrower or any other person, or by any defense Borrower or any other person may have to the Obligations by reason of any such Bankruptcy. Any stay of enforcement or stay of acceleration of the time for payment of any of the Obligations as against Borrower or any other person, in Bankruptcy or otherwise, shall not affect Guarantor's liability under this Guaranty or the time for payment or performance by Guarantor hereunder, and all Obligations otherwise subject to acceleration shall be payable by Guarantor upon demand notwithstanding any such stay.

9. **Claims in Bankruptcy and Other Proceedings**. Guarantor shall file in any Bankruptcy or other proceeding in which the filing of claims is required or permitted all claims Guarantor may have against Borrower on any indebtedness of Borrower to Guarantor. Guarantor assigns to Lender all rights of Guarantor thereunder and arising therefrom, and shall execute any necessary documents reflecting such assignment. If Guarantor does not file any such claim at least twenty (20) days prior to any applicable deadline, then Lender, as attorney-in-fact for Guarantor, is hereby authorized to do so in the name of Guarantor or, in Lender's discretion, to assign the claim to a nominee and cause such proof of claim to be filed in such nominee's name. This power of attorney is coupled with an interest and is irrevocable until the indefeasible payment and performance in full of all of the Obligations. All cash, property and other distributions of any kind which otherwise would be payable to Guarantor in respect of all such claims shall be paid to Lender, or as Lender elects otherwise in writing. Guarantor's obligations under this Guaranty shall not be satisfied, however, except to the extent of cash received by Lender, and if Lender receives anything other than cash it shall be held as security for amounts due under this Guaranty.

\\192.168.1.147\data\TD Fund II\Lake San Marcos Land\Guaranty_ CDC_ Mississippi.doc

10. **Subordination.** All existing and future obligations of Borrower to Guarantor are hereby subordinated to Borrower's full and indefeasible payment and performance of the Obligations. Upon any default under any of the Obligations or hereunder, all obligations of Borrower to Guarantor shall be collected, enforced and received by Guarantor as trustee for Lender, and all amounts received shall be paid over to Lender for application to the Obligations and/or to Guarantor's liability hereunder.

11. **Security Interest.** Guarantor grants to Lender a security interest in all monies, securities and other personal property of Guarantor now or hereafter in Lender's possession, and all present and future deposit accounts of Guarantor with Lender, as security for the obligations of Guarantor hereunder.

12. **Costs and Expenses.** Guarantor shall immediately reimburse Lender for all reasonable fees and costs, including attorneys' and experts' reasonable fees and costs, incurred by Lender for: (a) enforcement (including post-judgment) or prevention of a breach of this Guaranty or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; (b) representation of Lender in any Bankruptcy of or relating to Borrower, to Guarantor, or to any security for the Obligations or for this Guaranty; (c) representation of Lender in any action or proceeding relating to any security for the Obligations or for this Guaranty; and (d) representation of Lender in connection with any claim upon Lender for avoidance, recovery, return or repayment of any payment or performance of the Obligations, in Bankruptcy or otherwise. All such fees and costs shall bear interest until paid at the rate applicable to the Obligations.

13. **Controlling Law; Jurisdiction; Service.** This Guaranty shall be governed by and construed in accordance with the internal laws of the State of California, without regard to principles of conflicts of law. Guarantor irrevocably submits to the non-exclusive jurisdiction of any state or federal court located in San Diego, California. Guarantor irrevocably consents to the service of process in any action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to Guarantor at its address set forth below, but nothing herein shall affect Lender's right to serve process in any other manner permitted by law.

14. **Parties Bound and Benefited.** This Guaranty will bind and benefit the heirs, executors, administrators, legal representatives, successors and assigns of Guarantor and Lender.

15. **Interpretation.** In addition to definitions set forth above, in this Guaranty: (a) "**Borrower**" means both the named Borrower and any other person at any time primarily liable for all or any part of the Obligations; (b) if there are multiple Borrowers, "**Borrower**" means all and any one or more of them; (c) if there are multiple Guarantors, "Guarantor" means all and any one or more of them; (d) "**Lender**" means both the named Lender and any other or future owners or holders, including pledgees and participants, of the Obligations or any portion thereof or interest therein; and (e) "**person**" means any individual, corporation, partnership, limited liability company, governmental authority, or other entity of any kind.

16. **Joint and Several Liability; Separate and Community Property.** If there are multiple Guarantors (or other guarantors), their liability is joint and several. Any married person

\\192 168 1.147\data\TD Fund II\Lake San Marcos Land\Guaranty_ CDC_ Mississippi doc

5

who executes this Guaranty agrees that recourse may be had against his or her separate property and against community property.

17.    **Entire Agreement; Modifications; Waiver; Cumulative Remedies.**    This Guaranty constitutes the entire agreement between Guarantor and Lender with respect to its subject matter, and supersedes all prior or contemporaneous agreements, representations and understandings. No supplement to or modification of this Guaranty shall be binding unless executed in writing by Guarantor and Lender, nor shall any waiver of any of Lender's rights hereunder be effective unless executed in writing by Lender. No such waiver shall be applicable except in the specific instance for which given. No delay or failure by Lender to exercise any right or remedy against Borrower or Guarantor or any other person or security shall constitute a waiver of that right or remedy or any other. All remedies of Lender under this Guaranty and under, arising out of, or relating to the Obligations, are cumulative, and are in addition to all remedies of Lender at law or in equity.

18.    **Headings; Severability.** Headings in this Guaranty are for convenience only and do not define or limit the scope of provisions of this Guaranty. The invalidity or unenforceability of any one or more provisions of this Guaranty will not affect the validity or enforceability of any other provision.

19.    **Counterparts**. This Guaranty may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument**.**

20.    **WAIVER OF RIGHTS OF TRIAL BY JURY.** TO THE FULLEST EXTENT PERMITTED BY LAW (INCLUDING, WITHOUT LIMITATION, ANY LAW HEREAFTER IN EFFECT), EACH OF GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, INTENTIONALLY. IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE (INCLUDING BY WAY OF JURY TRIAL) IN RESOLVING ANY DISPUTE OR LITIGATION (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG GUARANTOR AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN, THE LOAN DOCUMENTS, THE ENVIRONMENTAL INDEMNITY OR ACTIONS OF BORROWER, GUARANTOR OR LENDER RELATING TO THE LOAN. THIS PROVISION AND THE WAIVER SET FORTH HEREIN ARE MATERIAL INDUCEMENTS TO LENDER TO MAKE THE LOAN. EACH OF GUARANTOR AND LENDER HAS REVIEWED THIS WAIVER WITH ITS COUNSEL.

WITHOUT INTENDING IN ANY WAY TO LIMIT GUARANTOR'S AND LENDER'S AGREEMENT TO WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY, if the above waiver of the right to a trial by jury is not enforceable, Guarantor and Lender agree that any and all disputes or controversies of any nature between them arising at any time shall be decided by a reference to a private judge, mutually selected by the parties (or, if they cannot agree, by the Presiding Judge of the San Diego County, California Superior Court) appointed in accordance with California Code of Civil Procedure Section 638 (or pursuant to comparable

provisions of federal law if the dispute falls within the exclusive jurisdiction of the federal courts), sitting without a jury, in San Diego County, California; and the parties hereby submit to the jurisdiction of such court. The reference proceedings shall be conducted pursuant to and in accordance with the provisions of California Code of Civil Procedure Sections 638 through 645.1, inclusive. The private judge shall have the power, among others, to grant provisional relief, including without limitation, entering temporary restraining orders, issuing preliminary and permanent injunctions and appointing receivers. All such proceedings shall be closed to the public and confidential and all records relating thereto shall be permanently sealed. If during the course of any dispute, a party desires to seek provisional relief, but a judge has not been appointed at that point pursuant to the judicial reference procedures, then such party may apply to the San Diego County, California Superior Court for such relief. The proceeding before the private judge shall be conducted in the same manner as it would be before a court under the rules of evidence applicable to judicial proceedings. The parties agree that the selected or appointed private judge shall have the power to decide all issues in the action or proceeding, whether of fact or of law, and shall report a statement of decision thereon pursuant to the California Code of Civil Procedure Section 644(a). The private judge shall also determine all issues relating to the applicability, interpretation, and enforceability of this paragraph.

Notwithstanding anything contrary in this Section 20, nothing in this Section 20 shall limit the right of Guarantor, Lender or any other person to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or non-judicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights; or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies. The filing of a court action is not intended to constitute a waiver of the right of Guarantor, Lender or any other person, including the suing party, thereafter to request or require submittal of the claim to arbitration or judicial reference as provided herein.

21.     **Additional Covenants**. As a material inducement to Lender to enter into the Modification Agreement, Guarantor hereby unconditionally represents, warrants, covenants and agrees as follows:

(a)     There are no other documents governing the collection and use of revenues for the LSMRA (as hereinafter defined), other than those certain leases that have been delivered to Lender or will be delivered to Lender in accordance with Section 21(c) hereinbelow. As used herein, "**LSMRA**" shall mean the Lake San Marcos Recreation Area more particularly described in **Exhibit A** attached hereto and incorporated herein by this reference;

(b)     Guarantor neither currently nor at any time had in its possession or control any of the documents described in **Exhibit B** attached hereto and incorporated herein by this reference, and to the best knowledge of Guarantor, such documents are of no further force or effect; and

(c)     On or before February 1, 2010, Guarantor shall provide to Lender a current list certified by Guarantor of all lessees, tenants and other occupants for all or any

portion of the LSMRA (including, without limitation, all lessees, tenants and other occupants of any docks within the LSMRA), together with true, complete and correct copies of all leases, licenses, and other occupancy agreements with respect to such lessees, tenants and other occupants.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

IN WITNESS WHEREOF, this Guaranty has been duly executed by Guarantor as of the day and year first above written.

**GUARANTOR**:

Matthew C. DiNofia

**Address of Guarantor:**

1295 Discovery Street
San Marcos, California 92078

### *Exhibit A*

Lake San Marcos Recreation Area consists of:

A.   The Lake, Lodge and Recreational Facilities described in the Lake San Marcos Lease
     Agreement by and between Citizens Development Corp, a California Corporation as
     Lessor and The Hunter Valley Homeowners Association as Lessee, having an effective
     date of April 1, 2008, and

B.   All docks, wharfage areas, the marina and any other fixtures which are currently on the
     Lake and/or which CDC may put on, in or near the Lake

C.   The real property upon which the above facilities are located is more particularly
     identified by Assessor Parcel Numbers as follows:

     222-030-30, 222-030-44, 222-030-56, 222-031-06, 221-240-01, 221-280-44, 221-500-35,
     221-510-57, 221-570-19, 221-570-20, 221-570-24 and 221-570-25

## *Exhibit B*

1.  A document entitled "**Agreement**", dated, June 7, 1973, executed by Citizens Development Corporation and CESCO Development Corporation, subject to all the terms, provisions and conditions therein contained, recorded July 12, 1973 as Instrument No. 73-192437 of Official Records.

2.  A document entitled "**Agreement**", dated, June 7, 1973, executed by Citizens Development Corporation and CESCO Development Corporation, subject to all the terms, provisions and conditions therein contained, recorded July 12, 1973 as Instrument No. 192438 of Official Records.

3.  A document entitled "**Agreement**", dated, June 7, 1973, executed by Citizens Development Corporation and Conde Invest Corporation, subject to all the terms, provisions and conditions therein contained, recorded June 12, 1973 as Instrument No. 73-192442 of Official Records.

DOC 2010-0011875



JAN 11, 2010    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
DAVID L. BUTLER, COUNTY RECORDER
FEES:    165.00    WAYS:    4
DA:    1
**PAGES:    43**

RECORDING REQUESTED BY:
CHICAGO TITLE COMPANY

$F11$
$430$
$4\omega$

WHEN RECORDED MAIL TO:

Pacific West TD Fund II, L.P.
2550 Fifth Avenue, Suite 529
San Diego, California 92103
Attention: Harry Bigham    **5164**
Order #930015956-U50

APN's: 221-240-01, 221-280-44, 221-500-35, 221-510-57, 222-030-30, 222-030-44, 222-030-56, 222-031-06 & 222-440-15

## DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING

This DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING (the "**Deed of Trust**") is made as of January 5, 2010 by and among CITIZENS DEVELOPMENT CORPORATION, a California corporation ("**Trustor**"), whose address is 1295 Discovery Street, San Marcos, California 92078, PACIFIC WEST REALTY GROUP, a California corporation ("**Trustee**"), whose address is 2550 Fifth Avenue, Suite 529, San Diego, California 92103, and PACIFIC WEST TD FUND II, L.P., a California limited partnership ("**Beneficiary**"), whose address is 2550 Fifth Avenue, Suite 529, San Diego, California 92103 with reference to the following facts:

A.    Trustor has executed that certain Guaranty in favor of Beneficiary of even date herewith with respect to that certain loan in the original stated principal amount of $100,000 made as of April 10, 2009 to MISSISSIPPI AVENUE, LLC, a California limited liability company (the "**Mississippi**") by Beneficiary (the "**Mississippi Guaranty**"), which loan is evidenced by that certain Promissory Note dated as of April 10, 2009 in the stated principal amount of $100,000 made by Mississippi in favor of Beneficiary, and secured by that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing dated as of April 10, 2009 and executed by Mississippi for the benefit of Beneficiary, and recorded on April 16, 2009 in the official records of San Diego County, California as Instrument No. 2009-0195586, and which loan is modified by that certain Modification Agreement of even date herewith by and between Mississippi and Beneficiary.

B.    Trustor has executed that certain Guaranty in favor of Beneficiary of even date herewith with respect to that certain loan in the original stated principal amount of $650,000 made as of April 8, 2008 to LDG CONVOY STREET, LLC, a California limited liability company and Mississippi (collectively, "**Convoy Borrower**") by Beneficiary (the "**Convoy Guaranty**"), which loan is evidenced by that certain Promissory Note dated as of April 8, 2008 in the stated principal amount of $650,000 made by Convoy Borrower in favor of Beneficiary, and secured by that certain Deed of Trust with Assignment of Rents dated as of April 8, 2008 and executed by Convoy Borrower for the benefit of Beneficiary, and recorded on April 18, 2008

101206612.2

1

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

5165

in the official records of San Diego County, California as Instrument No. 2008-0207710, and which loan is modified by that certain Modification Agreement of even date herewith by and between Convoy Borrower and Beneficiary.

C.    Trustor has executed that certain Guaranty in favor of Beneficiary of even date herewith with respect to that certain loan in the original stated principal amount of $2,000,000 made as of November 28, 2007 to LDG MIDWAY PLAZA, LLC, a California limited liability company and ESCONDIDO COUNTRY CLUB, LLC, a California limited liability company (collectively, "**ECC Borrower**") by Beneficiary (the "**ECC Guaranty**" and, together with the Mississippi Guaranty and the Convoy Guaranty, collectively, the "**Guaranties**"), which loan is evidenced by that certain Promissory Note dated as of November 28, 2007 in the stated principal amount of $2,000,000 made by ECC Borrower in favor of Beneficiary, and secured by that certain Deed of Trust with Assignment of Rents dated as of November 28, 2007 and executed by ECC Borrower for the benefit of Beneficiary, and recorded on November 30, 2007 in the official records of San Diego County, California as Instrument No. 2007-0746270, and which loan is modified by that certain Modification Agreement of even date herewith by and between ECC Borrower and Beneficiary.  The Guaranties and this Deed of Trust are collectively referred to herein as the "**Documents**".

D.    Trustor has agreed to execute and deliver to Beneficiary this Deed of Trust as security (except as provided in Article 4) for performance of all of its obligations under, among other things, the Documents, as more particularly set forth below.

NOW, THEREFORE, in consideration of the foregoing, Trustor grants and agrees as follows:

## ARTICLE 1
## GRANTS; OBLIGATIONS SECURED

**1.1    Property.**  Trustor irrevocably GRANTS, TRANSFERS AND ASSIGNS to Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession, all of Trustor's present and future estate, right, title and interest in and to all of the following property, now owned or hereafter acquired (collectively the "**Property**"):

**1.1.1    Real Property.**  That certain real property (the "**Real Property**") described in Exhibit A attached hereto and incorporated herein by this reference;

**1.1.2    Improvements.**  All present and future structures, buildings and improvements of any kind on the Real Property, and all machinery, equipment, appliances, furnishings, fixtures and other property used or usable in connection with the Real Property or the improvements now or hereafter on the Real Property or any business conducted on the Real Property, now or hereafter attached or affixed in any manner to, installed in, or adapted to the use of, the Real Property or any improvement thereon, including heating and air-conditioning equipment and systems; facilities used to provide utility services, refrigeration, ventilation, laundry, drying, dishwashing, garbage disposal, recreation or other services; window coverings, drapes and rods; and carpeting and floor coverings (all collectively the "**Improvements**");

101206612.2

2

5166

**1.1.3    Appurtenances.** All present and future appurtenances of the Real Property and rights of the Trustor in and to any streets, alleys, roads, navigable waters, air space, public places, easements or rights of way relating to the Real Property or Improvements;

**1.1.4    Leases and Rents.** All rights of the Trustor under all present and future leases, licenses, franchises, concessions, subleases, rental agreements and other agreements for possession, use or occupancy pertaining to any of the Property, all extensions and modifications of any thereof, and all guarantees of, security for, and letters of credit and other credit enhancements given in connection with any person's obligations under any thereof (collectively, the "**Leases**"), and all of the rents, issues, royalties, profits, receipts, revenue and income (including security deposits) of any thereof or any of the Property (the "**Rents**") (subject, however, to the absolute assignment of the Leases and Rents set forth in Article 4);

**1.1.5    Water; Associations.** All present and future water, water rights and water stock relating to any of the Property, all present and future documents of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Property, and all present and future rights as declarant or otherwise under any covenants, conditions or restrictions affecting the Real Property or Improvements;

**1.1.6    Minerals.** All present and future rights to all minerals, oil, gas and other hydrocarbon substances in, on or under the surface of the Real Property; and

**1.1.7    Proceeds, Deposits.** All proceeds, including insurance proceeds and claims arising on account of any damage to, loss or taking of, or diminution in value of any of the Property; all claims, causes of action, judgments and recoveries by settlement or otherwise for or arising on account of any damage to, loss or taking of, or diminution in value of any of the Property; all present and future deposits and payments made by Trustor with third parties in connection with any development of, construction upon or use of the Real Property or Improvements, and refunds thereof; and all present and future deposits and payments made with or other security given to utility companies by Trustor with respect to the Real Property or Improvements, and refunds thereof.

**1.2    Collateral.** Trustor, as debtor, hereby GRANTS a security interest to Beneficiary, as secured party, in all of Trustor's present and future right, title and interest in and to all of the following property, now owned or hereafter acquired (collectively the "**Collateral**"):

**1.2.1    All Personal Property Collateral.** All goods, accounts, documents, instruments, money, deposit accounts, chattel paper, investment property, letter-of-credit rights, and general intangibles, as those terms are or may hereafter be defined in the California Uniform Commercial Code from time to time in effect, now or hereafter located or installed on or attached or affixed to the Property, or used, necessary for use, or intended for use in connection with or otherwise relating in any way to or deriving from the any of the Property (including the ownership, design, development, construction, improvement, equipping, furnishing, use, leasing, operation, management, occupancy, financing or sale, damage, destruction, condemnation, or taking of, any Property, or any business that is conducted on or from the Property or that uses any of the Property);

101206612.2

3

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

)                                              )

**5167**

        **1.2.2**    **Property.**  Any portion of the Property as to which the grant of a security interest is subject to the California Uniform Commercial Code in effect from time to time; and

        **1.2.3**    **Proceeds; Receipts and Revenues.**  In any form and of any type, all proceeds, replacements, substitutions, products, accessions, and increases of any of the Property or any property described in <u>Section 1.2.1</u> or <u>1.2.2</u>; and all receipts, revenues, rents, issues and profits of operation, use, hiring, leasing or licensing of any of the Property or any property described in <u>Section 1.2.1</u> or <u>1.2.2</u>.

     **1.3**    **Fixture Filing.**  The personal property in which Beneficiary has a security interest includes goods which are or will become fixtures on the Property. This Deed of Trust is intended to be effective as a financing statement filed as a fixture filing pursuant to the California Uniform Commercial Code. Trustor is the "debtor"; Beneficiary is the "secured party"; and the addresses of each are as specified in the first paragraph of this Deed of Trust. Trustor's organizational type, state of organization, and organizational identification number (if Trustor is an organization) are as set forth in **Article 8** below.

     **1.4**    **Obligations Secured.**  The grants, assignments and transfers made in <u>Sections 1.1</u> and <u>1.2</u> secure, in such order of priority as Beneficiary, in its sole and absolute discretion, may determine, the due, prompt and complete payment, performance, observance and satisfaction by Trustor of all of its obligations, covenants, agreements and conditions under all of the following (collectively the "**Secured Obligations**"):

        **1.4.1**    the Documents;

        **1.4.2**    all other instruments and agreements now or hereafter given to evidence or further secure any obligation secured hereby;

        **1.4.3**    all other agreements to which Trustor (or the then owner of the Property) and Beneficiary may now or hereafter be or become parties which state that Trustor's (or such owner's) obligations under such agreements are secured by this Deed of Trust; and

        **1.4.4**    all extensions, modifications, substitutions, replacements and renewals of any of the foregoing.

     **1.5**    **Intentionally Deleted.**

**ARTICLE 2**
**REPRESENTATIONS AND WARRANTIES**

    As a material inducement to Beneficiary to make the Loan, Trustor hereby unconditionally represents and warrants to Beneficiary as follows:

     **2.1**    **Organizational Matters.**

101206612.2

4

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

**2.1.1    Organization; Standing.** Trustor's representations and warranties in Article 8 are true and correct, and if Trustor is other than an individual, Trustor is duly organized, validly existing, and in good standing under the laws of the state of its organization and all other states if any in which Trustor is required to be qualified.

**2.1.2    Organizational Documents.** If Trustor is other than an individual, a true and complete copy of Trustor's organizational documents and all amendments thereto have been furnished to Beneficiary, and no party is in default of its obligations under Trustor's organizational documents and no condition exists which, with the giving of notice and/or the passage of time, would constitute a default under Trustor's organizational documents. If any guarantor of the Loan is other than an individual, a true and complete copy of the organizational documents of such guarantor (and all amendments thereto) have been furnished to Beneficiary, and no party is in default of its obligations under any such guarantor's organizational documents and no condition exists which, with the giving of notice and/or the passage of time, would constitute a default under any such guarantor's organizational documents.

**2.2    Authority of Individuals Executing Transaction Documents.** The individuals executing the Documents on behalf of Trustor and any guarantor are authorized and empowered by their signatures alone to bind Trustor and any such guarantor, respectively.

**2.3    Power and Authority; Enforceability.** Trustor has full right, power and authority to own the Property and the Collateral, execute and deliver the Documents to be executed and delivered by it, consummate the transactions contemplated thereby, and perform its obligations thereunder. The Documents to be executed and delivered by Trustor have been duly authorized, executed and delivered, do not and will not require any consent or approval of any person or entity other than that which has been heretofore obtained, and constitute valid and legally binding obligations of Trustor, enforceable in accordance with their terms, and the Loan is not usurious.

**2.4    Litigation.** There are no actions, suits or proceedings pending or, to the knowledge of Trustor, threatened against or affecting it, the Property, the Collateral or any guarantor of the Loan, or involving the validity or enforceability of this Deed of Trust or the priority of the lien thereof, at law or in equity, or before or by any governmental entity which has jurisdiction or control over the Property or the Collateral, including, without limitation, any federal authority, state, city, county, agency, department, commission, board, bureau or instrumentality or political subdivision of any of them (**"Governmental Authority"**). Trustor is not in default with respect to any order, writ, injunction, decree or demand of any court or any Governmental Authority.

**2.5    No Breach or Violation.** The execution and delivery of the Documents, consummation of the transactions thereby contemplated, and performance of the obligations therein provided will not (a) result in any breach of, or constitute a default under, or result in the creation or imposition of any lien, claim, charge or encumbrance (other than as provided in the Documents) under, any mortgage, deed of trust, lease, loan or security agreement, corporate charter, bylaws, partnership agreement or other document, agreement or instrument to which Trustor is a party or by which it or its property may be bound or affected, or (b) violate any

1012066122

5

5169

present or future federal, state and local laws, ordinances, rules, regulations, decisions, and other requirements of Governmental Authorities applicable to the Property, the Collateral or Trustor (collectively, "**Applicable Law**").

**2.6    Encroachments; Defects.**  There are no encroachments, defects or conditions (including unstable soils conditions) in, on or about the Real Property that would or could render it unfit for the Improvements.  There are no structural defects in the Improvements, and no violation of any Applicable Law exists with respect to the Property, the Collateral or Trustor.

**2.7    No Construction; Utilities.**  No construction of any kind has commenced on the Real Property.  All utility services necessary for the operation of the Property and the Collateral for their intended purpose are available and fully operational at the Property.

**2.8    Proper Subdivision.**  The Real Property is taxed separately without regard to any other real property.  The Real Property has been properly subdivided or entitled to exemption therefrom, so that for all purposes and under all Applicable Law the Real Property may be mortgaged, conveyed and otherwise dealt with as a separate legal lot or parcel.

**2.9    Compliance with Applicable Law.**  The Improvements in all respects conform to and comply with, all covenants, conditions, restrictions, reservations and zoning ordinances and land use ordinances and plans affecting the Property and the Collateral.  Trustor has complied with all other Applicable Law related to the Property and the Collateral.  No other permit, authorization, consent, approval, order, license, exemption from, or filing, registration or qualification with, any Governmental Authority is required in connection with the execution and delivery of the Documents, consummation of the transactions thereby contemplated, and performance of the obligations therein provided.

**2.10    Flood Areas.**  No portion of the Improvements is located within any flood-prone area or any area designated by the United States Department of Housing and Urban Development as a special flood hazard area.

**2.11    Taxes.**  Trustor has filed all required federal, state, county and city tax returns and has paid all taxes due and payable.  Trustor knows of no basis for additional assessments with respect to any taxes.

**2.12    Financial Statements and Tax Returns.**  All financial statements and tax returns delivered or caused to be delivered by Trustor to Beneficiary are true and correct in all respects; such financial statements have been prepared in accordance either with generally accepted accounting practice consistently applied or market value basis for cash basis taxpayers, and fairly present the respective financial conditions reflected therein since their respective dates; no additional borrowings have been made by any individual or person represented thereon since the date thereof other than the borrowing contemplated hereby or approved by Beneficiary in writing, nor has there been any material adverse changes since that date; such tax returns are the final returns as submitted to the Internal Revenue Service and no amendments to any such tax returns have been or will be made prior to the filing thereof with the Internal Revenue Service.

5170

**2.13  No Default.** No default exists under the Documents, nor any event with which the giving of notice or passage of time or both would constitute a default under the Documents.

**2.14  Nature of Representations and Warranties.** Trustor certifies to Beneficiary that all representations and warranties made in all of the Documents are true and correct and do not contain any untrue statement of any material fact or omit any material fact necessary to make such representations and warranties not misleading. All such representations and warranties shall remain true and correct as of the date hereof and as of the date of any renewal, extension or modification of the Loan, and at all times the Loan is outstanding. Each representation and warranty made in any Document, or in any other document delivered to Beneficiary by Trustor or any guarantor of the Loan, shall be deemed to have been relied upon by Beneficiary notwithstanding any investigation, inspection or inquiry theretofore or thereafter made by or on behalf of Beneficiary.

## ARTICLE 3
## COVENANTS OF TRUSTOR

TO PROTECT AND MAINTAIN THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

**3.1  Payment and Performance of Obligations When Due.** Trustor shall promptly pay when due all amounts due as part of the Secured Obligations and perform, observe and discharge every condition, obligation, covenant and agreement thereof.

**3.2  Ownership, Maintenance and Preservation of Property and Collateral; Compliance with Law.**

**3.2.1**  Trustor shall maintain and keep the Property and the Collateral in good condition and repair and shall not commit or permit waste or unreasonable depreciation of any part thereof. Trustor shall not alter, remove or demolish any buildings, improvements, machinery, equipment, appliances or fixtures now or hereafter on the Property without Beneficiary's prior written consent, except as may be required by Applicable Law. Trustor shall not initiate, join in, or consent to any change in the current use of the Property or in any zoning ordinance, entitlements, conditions of use, private restrictive covenant, assessment proceedings or other public or private restriction limiting or restricting the uses that may be made of the Property or any part thereof or in any way change the boundaries of the Property without the prior written consent of Beneficiary.

**3.2.2**  Trustor shall promptly repair, replace or restore (in good, workmanlike manner and in compliance with Applicable Law) all buildings, improvements, machinery, equipment, appliances and fixtures now or hereafter on the Property, in the event of damage thereto or destruction thereof. Trustor shall promptly replace every part of the Collateral that may be damaged, destroyed, consumed, worn out, lost, or rendered obsolete or otherwise unfit for use in the operation of the Property, with other Collateral which shall be: (a) in good operating condition, with a value and utility at least equal to that of the replaced Collateral in usable condition and good repair; (b) owned by Trustor free and clear of all liens and

101206612.2

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

encumbrances; and (c) subject to Beneficiary's security interest hereunder, perfected and in first priority. Trustor shall promptly notify Beneficiary in the event of any damage to or loss of any material Collateral.

**3.2.3** Trustor represents and warrants that it is, and as to portions of the Property or Collateral acquired hereafter agrees that it shall be, the sole owner of the Property and Collateral, free from any adverse lien, security interest or other claim, other than the security interest granted hereby or as otherwise approved by Beneficiary in writing. Trustor represents and warrants that it has not executed or authorized any mortgage, deed of trust, security agreement, assignment, pledge or financing statement covering any of the Property or Collateral except in favor of Beneficiary or as otherwise approved by Beneficiary in writing, and that no financing statement covering any of the Property or Collateral is on file in any public office in any jurisdiction. Without Beneficiary's prior written consent, Trustor shall not execute, file or authorize to be filed, in any jurisdiction, any financing statement covering any of the Property or Collateral in which Beneficiary is not named as the sole secured party. Trustor represents and warrants that there is no personal property of any type or description which is leased to Trustor, and agrees and warrants that Trustor shall not become the lessee of any personal property without Beneficiary's prior written consent.

**3.2.4** All tangible Collateral, and all tangible embodiments and evidences of intangible Collateral, shall be and remain located on the Property, except as Beneficiary may consent in writing. Trustor shall not sell, transfer, assign, remove or permit to be removed from the Property any of the Collateral unless: (a) such Collateral is inventory sold in the ordinary course of business and is promptly replenished with like Collateral of equivalent value in which Beneficiary has a first-priority security interest; or (b) Beneficiary has consented thereto in writing, and under such conditions as Beneficiary may impose; or (c) such Collateral is concurrently replaced with like Collateral of equivalent value and utility in which Beneficiary has a perfected first-priority security interest.

**3.2.5** Trustor shall comply with and make all payments required under Applicable Law and shall not commit, suffer or allow any act to be done in violation thereof; subject, however, to Trustor's right of contest set forth in Section 3.4.3.

**3.2.6** In the performance of all such acts and all other acts required by this Deed of Trust, Trustor shall promptly pay when due, at its own expense, all expenses incurred and shall promptly pay, discharge or otherwise satisfy all claims for labor performed and materials furnished in connection therewith.

**3.3** **Entry and Inspections.** Beneficiary and Trustee and their agents, attorneys, employees and contractors may enter upon any part of the Property at all reasonable times to attend to Beneficiary's or Trustee's interests, respectively, inspect the Property and the Collateral, or perform any act which Beneficiary or Trustee, respectively, is authorized to perform hereunder. Trustor shall cooperate in such entries and inspections as Beneficiary or Trustee may request.

**3.4** **Taxes and Assessments; Liens.**

101206612.2

8

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

5172

**3.4.1     Payment.** Trustor shall pay when due, without extension (and shall not enter into any extension of the due dates of): (a) all taxes, fees, impositions, and assessments which may become a lien against any of the Property or Collateral or any interest therein, (ii) all claims and demands arising from Trustor's ownership, development, construction, use or occupancy thereof, and (iii) all required payments in lieu of taxes. At Beneficiary's request, Trustor shall provide, at Trustor's expense, tax service contracts by a tax reporting agency satisfactory to Beneficiary until reconveyance of this Deed of Trust.

**3.4.2     Protection of the Property.** Trustor shall not permit any lien or security interest prior or equal to the lien and security interest of this Deed of Trust to be imposed upon or to exist against the Property or the Collateral, other than (a) the lien of taxes and assessments not delinquent and (b) any lien permitted under the provisions of <u>Section 3.4.3</u>.

**3.4.3     Trustor's Right to Contest.** Trustor may withhold payment of any contested taxes, assessments, claims or demands, or contest any lien, if Trustor is diligently prosecuting its contest in good faith and in proper proceedings, so long as Beneficiary's interest in the Property and the Collateral is not jeopardized. If any part of the Property or the Collateral is subjected to a lien not discharged within ten (10) days following Trustor's knowledge of such lien, Trustor shall deposit with Beneficiary cash in an amount adequate to provide for, or shall post a surety bond which causes, the discharge of the lien plus any interest, costs, attorneys' and experts' fees and costs or other charges that could accrue thereon. Beneficiary shall have the right to apply any such amounts on deposit to so discharge the lien at any time if deemed necessary or appropriate by Beneficiary to prevent enforcement of such lien, or to prevent accrual of interest, attorneys' fees and costs or other charges thereon in excess of amounts on deposit, notwithstanding the pendency of any contest. In any contest Trustor shall defend itself and Beneficiary and shall satisfy any final adverse judgment before enforcement against the Property or the Collateral. Trustor shall name Beneficiary as an additional obligee under any surety bond furnished in the contest proceedings.

**3.4.4     Evidence of Payment of Taxes or Assessments.** Trustor shall upon demand furnish to Beneficiary evidence of payment of all taxes or assessments and shall authorize the appropriate governmental official to deliver to Beneficiary at any time a written statement of the taxes and assessments against the Property or the Collateral.

**3.4.5     Subrogation.** Beneficiary shall be subrogated to the lien of all encumbrances against the Property or the Collateral, whether released of record or not, paid in whole or in part by Beneficiary pursuant to this Deed of Trust or by the proceeds of any loan secured by this Deed of Trust.

**3.5     Insurance.**

**3.5.1     Maintenance of Insurance.** Trustor shall procure and maintain policies of insurance in form and content and from insurers acceptable to Beneficiary, providing such coverage as Beneficiary may require. All such policies shall name Beneficiary as loss payee. Trustor shall deliver to Beneficiary certificates of coverage from each insurer containing a stipulation that coverage will not be canceled, diminished in scope or limits of coverage,

101206612.2

9

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

allowed to lapse, surrendered or materially amended, without a minimum of thirty (30) days written notice to Beneficiary. All such policies shall contain an endorsement or agreement by the insurer that any loss shall be payable in accordance with the terms of the policy notwithstanding any act or negligence of Trustor or any party holding or claiming under by or through Trustor, and waiving all rights of setoff, counterclaim or deduction against Trustor. At least thirty (30) days prior to the expiration of each required policy, Trustor shall deliver to Beneficiary evidence satisfactory to Beneficiary of the payment of premium and the renewal or replacement of such policy in compliance with the foregoing.

**3.5.2   Trustor's Report on Insurance.**  Within sixty (60) days after the close of each of its fiscal years, Trustor shall furnish to Beneficiary a report on each existing policy of insurance showing (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) if applicable, the property insured, the then current replacement cost of the property and the manner of determining that cost; and (e) the expiration date of the policy. Trustor shall upon Beneficiary's request have the insurer's appraiser determine the replacement cost of the Property and the Collateral.

### 3.5.3   Insurance Proceeds.

(a)   Trustor shall promptly notify Beneficiary of any material loss or damage to the Property or the Collateral or any material portion thereof. Trustor irrevocably authorizes Beneficiary, as Trustor's attorney-in-fact, with full power of substitution, at Beneficiary's election, to make proof of loss, adjust and compromise any claim under insurance policies, commence, appear in and prosecute any action arising from such policies, collect and receive insurance proceeds, and deduct therefrom Beneficiary's expenses incurred in the collection thereof, including reasonable attorneys' and experts' fees and costs, but Beneficiary shall not be responsible for any failure to collect any claim, proceeds or award for any reason.

(b)   Trustor hereby absolutely and unconditionally assigns to Beneficiary all insurance proceeds which Trustor may be entitled to receive under any and all insurance policies relating to the Property or the Collateral, whether or not such policies are required by this Deed of Trust or by Beneficiary, and all such proceeds shall be paid to Beneficiary to be disposed of in accordance with the following:

(i)   Beneficiary may, in its sole and absolute discretion, (a) elect to apply such insurance proceeds or any portion thereof to any one or more of the Secured Obligations, whether or not then due, in such order and to such installments thereof as Beneficiary may elect, (b) hold such insurance proceeds or any portion thereof in a non-interest-bearing account to be used for the cost of replacement, reconstruction, repair, or alteration of the Property or the Collateral (collectively "**Repair**"), and/or (c) and/or release such insurance proceeds or any portion thereof to Trustor.

(ii)   Notwithstanding the foregoing, Beneficiary shall permit use of such proceeds for Repair if Beneficiary determines that all of the following conditions are satisfied: (a) Trustor is not in default hereunder; (b) Beneficiary's security is not and will not be impaired; (c) income from the Property (or insurance for loss of such income) will be sufficient

101206612.2

10

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

)                                  )

5174

to pay all debt service and operating expenses of the Property during the Repair and thereafter; (d) the insurance required to be maintained hereunder will be available to Trustor during the Repair and thereafter; (e) Beneficiary has approved the plans and specifications for the Repair, (f) the Repair is, in Beneficiary's reasonable judgment, economically feasible, and can be completed in no more than sixty (60) days; and (g) Trustor has deposited with Beneficiary, within five (5) days of demand by Beneficiary, any amount which Beneficiary determines to be necessary to effect the Repair in excess of insurance proceeds available therefor. Insurance proceeds to be disbursed for Repair shall be disbursed in accordance with such fund control procedures as Beneficiary may require. The receipt, application, use or release of insurance proceeds by Beneficiary shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

        **3.5.4    Transfer of Policies.**  Upon any foreclosure under this Deed of Trust or other transfer of title to the Property and/or the Collateral in extinguishment of any portion of the Secured Obligations, all right, title and interest of Trustor in and to any insurance policy, unearned premiums thereon or proceeds thereof shall pass to the purchaser or grantee.

        **3.6    Impound.**  Trustor shall, upon demand by Beneficiary, maintain with Beneficiary or Beneficiary's designated agent an impound account (which, except to the extent otherwise required by law, shall be non-interest-bearing) for amounts to become due (based upon Beneficiary's reasonable estimate thereof from time to time) for any one or more of the following: property taxes, assessments, insurance premiums and any other charge or expense which, if unpaid, might give rise to a lien upon the Property or the Collateral or otherwise adversely affect Trustor's or Beneficiary's interests therein (collectively the **"Charges"**). After any such demand by Beneficiary, Trustor shall pay to Beneficiary or Beneficiary's designated agent: (a) immediately, a ratable portion of the next-due amount of each of the Charges which corresponds to that portion of one year which, as of such demand, has elapsed since the date each of such Charges was last due; (b) on or before the first day of each calendar month thereafter, an amount equal to the next-due amount of each of the Charges less amounts deposited and available in the impound account therefor, divided by the number of months to elapse before one month prior to the next due date of each of the Charges; and (c) not later than thirty (30) days prior to the due date of each of the Charges, an amount equal to any excess of the next-due amount of each of the Charges over amounts deposited and available in the impound account therefor. If Beneficiary determines at any time that amounts theretofore paid into the impound account are less than a ratable portion of the next-due amount of the Charges corresponding to that portion of one year which, as of such determination, has elapsed since the date each of such Charges was last due, upon demand, Trustor shall pay to Beneficiary or Beneficiary's designated agent the amount of such shortfall. All such amounts shall be held in the account for payment of the Charges when due.

       **3.7    Litigation; Attorneys' Fees.**

        **3.7.1**    Trustor shall promptly notify Beneficiary of the commencement or threat of commencement of any litigation which seeks to or could materially affect any of the Property or the Collateral, the lien or security interest of this Deed of Trust, or the rights or powers of Beneficiary or Trustee hereunder. Trustor shall, at its own expense, appear in and

1012066122

11

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

defend any such litigation. Beneficiary and Trustee shall also have the right, but not the obligation, to appear and participate in any such litigation, and Trustor shall pay all costs and expenses (including costs of evidence of title and attorneys' and experts' fees and costs) of Beneficiary and Trustee in so appearing and participating.

**3.7.2** Trustor shall immediately reimburse Beneficiary for all fees and costs, including attorneys' and experts' fees and costs, incurred by Beneficiary for: (a) enforcement of any of the Secured Obligations, this Deed of Trust or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; (b) representation of Beneficiary in any bankruptcy, insolvency, reorganization or other debtor-relief or similar proceeding of or relating to Trustor, to any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) upon any of the Secured Obligations, or to the Property or the Collateral and/or any other real or personal property security for the Secured Obligations; or (c) representation of Beneficiary in any action or proceeding relating to the Property or the Collateral and/or any other real or personal property security for the Secured Obligations, whether commenced by Beneficiary or any other person, including foreclosure, receivership, lien or stop-notice enforcement, bankruptcy, eminent domain and probate actions or proceedings.

**3.8 Performance of Obligations by Beneficiary or Trustee.** Should Trustor fail to make any payment, perform any obligation or do any act set forth in or secured by this Deed of Trust, Beneficiary or Trustee (at the request of Beneficiary), without obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from making such payments, performing such obligations or doing such acts, then or in the future, may make such payment, perform such obligation or do such act in such manner and to such extent as Beneficiary or Trustee may deem necessary to protect the security of this Deed of Trust or the interests of Beneficiary or Trustee. Without limiting the foregoing, Beneficiary or Trustee may pay, purchase, contest or compromise any encumbrance, charge or lien which, in the sole and absolute judgment of Beneficiary or Trustee, appears to be prior or superior to this Deed of Trust. In exercising any such power, Beneficiary or Trustee may pay all necessary expenses incurred therefor including reasonable attorneys' and experts' fees and costs. Trustor shall pay, immediately and without demand, all sums so expended by Beneficiary or Trustee.

**3.9 Condemnation.**

**3.9.1** Trustor shall promptly notify Beneficiary of any pending or threatened action to condemn or take under eminent domain any of the Property or the Collateral. Trustor irrevocably authorizes Beneficiary, as Trustor's attorney-in-fact, with full power of substitution, at Beneficiary's election, to make claim for compensation, adjust and compromise any claim, commence, appear in and prosecute any action arising from such condemnation, collect and receive condemnation awards, and deduct therefrom Beneficiary's expenses incurred in the collection thereof, including reasonable attorneys' and experts' fees and costs, but Beneficiary shall not be responsible for any failure to collect any claim or award for any reason.

**3.9.2** Trustor hereby absolutely and unconditionally assigns to Beneficiary all condemnation awards, damages and compensation which it may be entitled to receive, all of

1012066122

12

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

5175

which shall be paid to Beneficiary to be disposed of in the same manner as provided in Section 3.5.3(b) relating to insurance proceeds. Trustor waives the benefit of any law or decision contrary thereto, and hereby agrees to execute such further assignments thereof as Beneficiary may require.

**3.10    Books and Records; Reports.**

      **3.10.1**    Trustor shall keep proper books and records in which full, true and correct entries shall be made of all dealings or transactions of, or in relation to the business and affairs of, Trustor with respect to the Property and the Collateral in accordance with generally accepted accounting principles (or such other system of accounting as may be approved by Beneficiary) consistently maintained. Trustor shall provide Beneficiary with access to such books and records upon reasonable notice, and Beneficiary shall have the right to inspect such books and records, and supporting materials, and to make extracts or copies thereof.

      **3.10.2**    If Beneficiary so requests, Trustor shall, at its own expense, furnish to Beneficiary within ninety (90) days after the last day of each of Trustor's fiscal years, a complete report in such detail as may be reasonably required by Beneficiary, covering the operations of Trustor with respect to the Property and the Collateral and containing itemized operating statements of income and expenses for such year and a current rent roll specifying the names of tenants, the space leased, rent reserved, and the status of performance of each tenant.

      **3.11    Estoppel Certificates.**    Trustor shall promptly furnish, upon Beneficiary's request from time to time, a duly acknowledged written statement specifying: (a) all amounts believed by Trustor to be due on the Secured Obligations; (b) the existence and details of any modifications of the Secured Obligations asserted by Trustor (or specifying that there are no such modifications); (c) the existence and details of any offsets, defenses or counterclaims asserted by Trustor which would in any way affect any liability of Trustor on any of the Secured Obligations (or specifying that there are no such offsets, defenses or counterclaims); and (d) such other matters as Beneficiary may reasonably require. Trustor's failure to provide any such statement, or to specify any asserted modification, offset, defense or counterclaim, shall conclusively establish the absence of any such modification, offset, defense or counterclaim.

      **3.12    Leasing of Property or Collateral.**    If any portion of the Property or the Collateral is leased or to be leased by Trustor as lessor, subject to Section 5.4.1, and subject to the requirements of Article 4:

      **3.12.1**    Each such lease shall be absolutely subordinate to the lien and security interest of this Deed of Trust, but shall, unless Beneficiary consents or requires otherwise, contain provisions satisfactory to Beneficiary (including, if Beneficiary so requires, provisions for unsubordinating the lease) pursuant to which the lease will continue in effect after a foreclosure sale hereunder and the tenant will attorn to the purchaser at such sale.

      **3.12.2**    Each such lease shall be in form and content and with lessees approved by Beneficiary, and Trustor shall provide to Beneficiary fully-executed copies of each such

1012066122

13

5177

lease. Upon request, Trustor shall provide to Beneficiary a current rent roll specifying the names of tenants, the space leased, rent reserved, and the status of performance of each tenant.

**3.13    Contracts, Leases, Permits, Licenses, Franchises.** With respect to Property or Collateral consisting of or arising under agreements, contracts, leases (whether Trustor is lessor or lessee), permits, licenses (whether Trustor is licensor or licensee), franchises (whether Trustor is franchisor or franchisee), and the like, now existing or hereafter acquired or entered into (collectively "**Agreements**"):

**3.13.1**    This Deed of Trust shall be a lien and security interest upon all of the following, now existing or hereafter acquired: (a) each Agreement and all of Trustor's rights and interests therein and arising thereunder or therefrom; (b) any leasehold estate or other right, title, estate and interest of Trustor in real or personal property arising under any Agreement; (c) any greater or other right, title, estate and interest of Trustor in the real or personal property to which any Agreement relates; and (d) all of Trustor's rights under or arising from Section 365 and other and successor provisions of the U.S. Bankruptcy Code (Title 11 U.S.C.) relating to the Agreements.

**3.13.2**    Except with respect to Agreements of inconsequential value and the breach or loss of which could have no material adverse effect upon Trustor, the Real Property, or any of the remaining Property or Collateral, Trustor shall, at its sole cost and expense: (a) timely perform and satisfy every obligation and condition of the Agreements to be performed or satisfied by Trustor and do all other things necessary to preserve unimpaired the rights of Trustor thereunder and the rights of Beneficiary under this Deed of Trust; (b) upon Beneficiary's request, submit satisfactory evidence of payment and performance of all of its obligations under the Agreements; (c) give immediate notice to Beneficiary of (i) any notice of asserted default given or received by Trustor under any Agreement, together with a complete copy of any such notice of default, (ii) any act, event or condition which, with or without notice or lapse of time, would constitute a material default on the part of any party, including Trustor, to any Agreement, (iii) the commencement of any action or proceeding by any party in connection with or relating to any Agreement, together with a complete copy of the filings, and (iv) the filing of any bankruptcy, insolvency, reorganization or other debtor-relief or similar proceeding by or against any party to any Agreement, together with a complete copy of the notice thereof, and the filing of any matter in any such proceeding by any party to an Agreement, including Trustor, relating to Trustor, Beneficiary, the Agreement, or this Deed of Trust, together with a complete copy of the pleadings relating thereto; (d) enforce, short of termination, the performance and satisfaction of every obligation and condition of the Agreements to be performed or satisfied by the other parties thereto; (e) exercise any options to renew or extend Agreements and give written confirmation thereof to Beneficiary within fifteen (15) calendar days after any such option becomes exercisable (or such shorter time as an Agreement may require for such exercise); (f) within fifteen (15) calendar days after request by Beneficiary (or such longer period as is provided in an Agreement), obtain and deliver to Beneficiary any estoppel certificates which Trustor has the right to obtain under any Agreement from the other parties thereto; and (g) appear in and defend any action arising out of or relating to any Agreement or the obligations of any party thereunder.

101206612.2

14

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

5178

**3.13.3** Except with respect to Agreements of inconsequential value and the breach or loss of which could have no material adverse effect upon Trustor, the Real Property, or any of the remaining Property or Collateral, Trustor shall not, without Beneficiary's prior written consent, take any action to or agree or consent to: (a) terminate, cancel, amend, supplement or otherwise modify any Agreement; (b) surrender or terminate any leasehold or other right, title, estate or interest in property arising under any Agreement; (c) waive, or release the parties to any Agreement from, any obligation or condition to be performed or satisfied by such parties; (d) make any other assignment or transfer of any of its rights in any Agreement, absolutely or for security; or (e) revoke or countermand, or attempt or purport to revoke or countermand, the irrevocable authorizations and instructions set forth in Section 3.13.4. Any action or attempted or purported action by Trustor contrary to this Section 3.13.3 without Beneficiary's prior written . consent shall be void, and shall constitute a default hereunder.

**3.13.4** Trustor hereby irrevocably authorizes and instructs every present and future party under every Agreement, upon demand by Beneficiary, to pay and perform all of such party's obligations thereunder directly and only to Beneficiary, to recognize and accept Beneficiary as the holder of all of Trustor's rights and benefits thereunder for all purposes, and to accept any payment or performance by Beneficiary of Trustor's obligations thereunder that Beneficiary may elect to tender. No such party shall have any duty to investigate the validity or accuracy of any such demand by Beneficiary. Each such party shall be relieved of any liability to Trustor for payment or performance under an Agreement to the extent that such party has paid or performed to Beneficiary, pursuant to demand of Beneficiary, even if it is later determined that Beneficiary's demand for payment or performance was invalid.

**3.13.5** If Trustor fails to comply fully with any of its obligations under any Agreement or to do all other things necessary to preserve unimpaired the rights of Trustor thereunder and the rights of Beneficiary under this Deed of Trust, Beneficiary may (but without obligation to do so), at its sole election, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, perform any of such obligations or do any of such things on behalf of Trustor and/or cure any of Trustor's defaults. Beneficiary shall not be obligated to pay, perform or satisfy any obligation or condition under any Agreement under or by reason of this Deed of Trust or any separate assignment to Beneficiary thereof, and Trustor shall remain liable under every Agreement to the same extent as if this Deed of Trust or such separate assignment had not been executed. The exercise by Beneficiary of any rights and remedies hereunder shall not release Trustor from any of its duties or obligations under any Agreement. Trustor agrees to protect, indemnify and defend Beneficiary against and hold Beneficiary harmless from any and all claims, causes of action, liability, loss or damage, including attorneys' and experts' fees and costs, which Beneficiary may incur under any Agreement or under or by reason of this Deed of Trust or any such separate assignment, or which may be asserted against it by reason of any alleged obligation or undertaking on its part to perform or satisfy any of the terms of any Agreement. Should Beneficiary incur any such liability, loss, or damage for or in defense against any such claims or demands (including, without limitation, costs, expenses and reasonable attorneys' and experts' fees), Trustor shall reimburse Beneficiary therefor immediately upon demand.

**3.14    Further Agreements, Acts; Financing Statements.**  Trustor shall execute any and all further agreements, assignments, documents and financing statements, and take such other further acts, as Beneficiary may reasonably request from time to time in order to evidence, protect, perfect or continue the lien and security interest of Beneficiary in the Property and/or the Collateral or otherwise carry out the purposes and intent of this Deed of Trust.  Beneficiary may file financing statements in all states, counties and other jurisdictions as it may elect, without the signature of Trustor if permitted by law.  At Beneficiary's election, in addition to or instead of any other description of the Collateral, any financing statement description may use the terms "all assets," "all personal property," or words to similar effect.

**3.15    ERISA Compliance.**

**3.15.1**    Neither Trustor nor any of Trustor's constituent entities is or shall be a party in interest to any plan defined or regulated under the Employee Retirement Income Security Act of 1974, as amended, and the regulations promulgated thereunder from time to time ("**ERISA**"), and the assets of Trustor are not "plan assets" of any employee benefit plan covered by ERISA or Section 4975 of the Internal Revenue Code.

**3.15.2**    Trustor shall not engage in any transaction which would cause any obligation or any action under the Documents, including Beneficiary's exercise of any of its rights or remedies under any of the Documents, to be a non-exempt prohibited transaction under ERISA.  In addition to any other limitations on transfer set forth in any of the Documents, Trustor shall not assign, sell, pledge, encumber, transfer, hypothecate or otherwise dispose of its interest or rights in this Deed of Trust or in any Property or any Collateral, or attempt to do any of the foregoing or suffer any of the foregoing, nor shall any party owning a direct or indirect interest in Trustor assign, sell, pledge, mortgage, encumber, transfer, hypothecate or otherwise dispose of any of its rights or interest (direct or indirect) in Trustor, attempt to do any of the foregoing or suffer any of the foregoing, if such action would cause the Loan, or the exercise of any of Beneficiary's rights in connection therewith, to constitute a prohibited transaction under ERISA or the Internal Revenue Code or otherwise result in Beneficiary being deemed in violation of any applicable provision of ERISA.

**3.15.3**    Trustor agrees to indemnify and hold Beneficiary harmless from and against all losses, costs (including attorneys' fees and expenses), taxes, damages (including consequential damages) and expenses Beneficiary may suffer by reason of the investigation, defense and settlement of claims and in obtaining any prohibited transaction exemption under ERISA necessary or desirable in Beneficiary's sole and absolute judgment or by reason of a breach of the foregoing prohibitions.  The foregoing indemnification shall be a recourse obligation of Trustor and shall survive repayment of the Secured Obligations, notwithstanding any limitations on recourse contained herein or in any of the Documents.

**3.16    Compliance with Anti-Terrorism Regulations.**  Trustor and all persons or entities holding any legal or beneficial interest whatsoever in Trustor are not included in, owned by, controlled by, acting for or on behalf of, providing assistance, support, sponsorship, or services of any kind to, or otherwise associated with any of the persons or entities referred to or described in Executive Order 13224 – Blocking Property and Prohibiting Transactions with

Persons Who Commit, Threaten to Commit, or Support Terrorism, as amended. Neither Trustor nor any persons holding any legal or beneficial interest whatsoever in Trustor shall at any time during the term of the Loan be described in, covered by or specially designated pursuant to or be affiliated with any person described in, covered by or specially designated pursuant to Executive Order 13224, as amended, or any similar list issued by the United States Office of Foreign Assets Control ("**OFAC**") or any other department or agency of the United States of America. Without limiting the foregoing, Trustor hereby confirms that if it becomes aware or receives any notice of any violation of the foregoing covenant and agreement (an **"OFAC Violation"**), Trustor shall immediately (i) give notice to Beneficiary of such OFAC Violation, and (ii) comply with all Applicable Laws applicable to such OFAC Violation, including, without limitation, Executive Order 13224; the International Emergency Economic Powers Act, 50 U.S.C. Sections 1701-06; the Iraqi Sanctions Act, Pub. L. 101-513, 104 Stat. 2047-55; the United Nations Participation Act, 22 U.S.C. Section 287c; the Antiterrorism and Effective Death Penalty Act, (enacting 8 U.S.C. Section 219, 18 U.S.C. Section 2332d, and 18 U.S.C. Section 2339b); the International Security and Development Cooperation Act, 22 U.S.C. Section 2349 aa-9; the Terrorism Sanctions Regulations, 31 C.F.R. Part 595; the Terrorism List Governments Sanctions Regulations, 31 C.F.R. Part 596; and the Foreign Terrorist Organizations Sanctions Regulations, 31 C.F.R. Part 597 (collectively, the **"Anti-Terrorism Regulations"**), and Trustor hereby authorizes and consents to Beneficiary's taking any and all reasonable steps Beneficiary deems necessary, in its sole and absolute discretion, to comply with all Applicable Laws, including the requirements of the Anti-Terrorism Regulations.

## ARTICLE 4
## ABSOLUTE ASSIGNMENT OF LEASES AND RENTS

**4.1    Absolute Assignment of Leases and Rents.**    Trustor absolutely and unconditionally hereby ASSIGNS and TRANSFERS to Beneficiary all of the Leases and Rents; reserving to Trustor only the right, prior to any default hereunder (which right shall terminate immediately and automatically upon any such default, without notice), to collect, receive and retain the Rents as and when (and not before) they become due and payable, but not otherwise. Trustor shall, at the request of Beneficiary, execute such further assignments to Beneficiary of such Leases and Rents as Beneficiary may require.

### 4.2    Trustor's License to Collect.

**4.2.1**    Subject to the absolute and unconditional assignment to Beneficiary of the Leases and Rents in Section 4.1, so long as there shall exist no default by Trustor under the Documents, Trustor shall have a license to collect and receive, but not more than one (1) month in advance of the time when the same become due, all Rents and to retain, use and enjoy the same, subject, however, to all of the other provisions of this Deed of Trust and the other Documents pertaining to the collection, receipt, use, application and deposit of the Rents. Upon any default under the Documents, such license shall, to the fullest extent permitted by law, be automatically revoked, cease and terminate without any further action and without the necessity of appointment of a receiver and whether or not Beneficiary has taken possession of the Property. Any Rents received by Trustor or its agents in violation of, or after termination of, its

1012066122

17

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

5181

license to collect Rents hereunder shall be held by Trustor in trust for Beneficiary, and shall not be commingled with other funds of Trustor.

**4.2.2** Notwithstanding the license granted to Trustor under Section 4.2.1, if any Lease is terminated, canceled, rejected or modified and in connection therewith any fee, premium, penalty, settlement or other amount is paid, then, whether or not Trustor is in default under the Documents, such amount shall at Beneficiary's option be payable directly to Beneficiary, and at Beneficiary's option may be applied to amounts due on the Secured Obligations or held by Beneficiary as additional collateral securing the Secured Obligations. Nothing herein shall be deemed approval by Beneficiary of the termination of any Lease or the payment of any such amount.

**4.3** **Duties of Trustor.** Trustor shall, at its sole cost and expense: (a) timely perform and satisfy every obligation and condition of the Leases to be performed or satisfied by the lessor thereunder; (b) give prompt notice to Beneficiary of any notice of default given or received by Trustor under the Leases, together with a complete copy of any such notice of default; (c) enforce, short of termination, the performance and satisfaction of every obligation and condition of the Leases to be performed or satisfied by the Lessees (as hereinafter defined) thereunder; (d) appear in and defend any action arising out of or relating to any of the Leases or the obligations of any party thereunder; (e) concurrently with the execution of any future Lease affecting the Property, give notice of this Deed of Trust and the assignment of Leases and Rents set forth in this Article 4 on a form approved by Beneficiary, and obtain from the Lessee such subordination, non-disturbance and attornment agreements and estoppel certificates as Beneficiary may request; (f) document all future Leases on a form of lease approved by Beneficiary in writing; and (g) furnish to Beneficiary true and correct copies of all Leases. As used herein, the term **"Lessee"** means the party(ies) to a Lease other than Trustor, including a lessee, tenant, licensee, franchisee, concessionaire, sublessee, party to a rental agreement or other agreement for possession, use or occupancy pertaining to any of the Property, or guarantor or surety thereof, or issuer of a letter of credit or other provider of credit support in connection therewith, as applicable.

**4.4** **Prohibited Acts.** Trustor shall not, without Beneficiary's prior written consent, take any action to: (a) terminate, modify or amend any material economic term of the Leases; (b) waive, or release any Lessee from, any material economic obligation or condition to be performed or satisfied by any Lessee thereunder; (c) terminate the term of any of the Leases or accept a surrender thereof unless required to do so by the terms thereof; (d) collect or accept Rents more than one (1) month in advance of the time when the same becomes due; (e) enter into any agreements whereby Rent is abated, reduced or deferred; (f) cause or permit the leasehold estate under any of the Leases to merge with Trustor's reversionary interest; (g) make any other assignment or transfer of any of its rights in any of the Leases or of the Rents, absolutely or for security; (h) consent to any assignments of or subletting under any Lease; or (i) revoke or countermand, or attempt or purport to revoke or countermand, the irrevocable authorizations and instructions set forth in Section 4.9. Any such purported action by Trustor without Beneficiary's prior written consent shall be void, and shall constitute a default hereunder.

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

) )

5182

**4.5** **Actions by Trustor.** Should Trustor fail to make any payment or do any act as herein required, then Beneficiary may (but shall not be obligated to) without notice to or demand upon Trustor and without releasing Trustor from any obligations hereunder, make or do the same, including appearing in and defending any action purporting to affect this Deed of Trust or the Leases and performing any obligation of the lessor under the Leases, and in so doing may pay all necessary costs and expenses, employ counsel, and incur and pay reasonable attorneys' and experts' fees and costs. Trustor shall pay immediately upon demand all such sums expended by Beneficiary, and the same shall be secured by this Deed of Trust.

**4.6** **Rights Upon Default.** Without limiting any rights or remedies of Beneficiary under Article 5 or elsewhere in this Deed of Trust, upon any default hereunder, Beneficiary may, at any time and without notice, irrespective of whether a notice of default has been delivered to Trustee, and without regard to the adequacy of the security for the Secured Obligations, in person or by agent or representative with or without bringing any action or proceeding, or by a receiver appointed by a court, do any one or more of the following, in its own name or in the name of Trustor: (a) enter upon, take possession of and/or operate the Property, the Collateral or any part thereof; (b) make, enforce, modify, and accept the surrender of Leases; (c) obtain and evict tenants; (d) fix or modify Rents; (e) sue for or otherwise collect and receive the Rents (including those past due and unpaid) and apply such Rents (less costs and expenses of operation (including reserves) and collection, including attorneys' and experts' fees and costs) to the payment of the Secured Obligations in such order and in proportions as Beneficiary in its sole and absolute discretion may determine; (f) deliver notice to Lessees directing them to pay Beneficiary (or its agent) at Rents; (g) dispossess by usual proceedings any Lessee defaulting in the payment of Rents; (h) lease the Property or the Collateral or any part thereof; (i) do any other acts which Beneficiary deems proper to protect this assignment and its interests hereunder until all of the Secured Obligations are paid in full; and (j) exercise any other right permitted by law. The exercise of any of the foregoing rights shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice, nor render Beneficiary a mortgagee in possession. Trustor expressly agrees that Beneficiary's rights hereunder to take possession and/or have a receiver appointed to operate the Property or the Collateral may be enforced upon an ex parte application to a court having jurisdiction thereof.

**4.7** **Additional Representations and Warranties.** Trustor represents and warrants to Beneficiary that: (a) it has not executed any prior assignment of its rights under any of the Leases or of the Rents; (b) it has not done anything which might prevent Beneficiary from or limit Beneficiary in operating under any of the provisions hereof; (c) it has not accepted Rent more than one (1) month in advance of when the same became due under the terms thereof; (d) no security deposit has been made by any Lessee except as has been disclosed to Beneficiary in writing prior to the date hereof; (e) the rent roll or occupancy schedule heretofore provided by Trustor to Beneficiary is a true, accurate and complete list of all Leases or options to enter into Leases executed as of the date of this Deed of Trust; (f) the written Lease documents heretofore submitted to Beneficiary are all of the Leases in effect as of the date hereof, and embody the entire agreements now existing between Trustor and the Lessees thereunder, and Trustor has not executed or granted any modification of any thereof, orally or in writing; (g) there are no defaults existing under any of the existing Leases, except as disclosed to Beneficiary in writing prior to the date hereof; and (h) all conditions precedent to the effectiveness of each of the existing
101206612.2

19

)                                                5183                )

Leases have been satisfied and each is in full force and effect according to the terms set forth in the written Lease documents heretofore submitted to Beneficiary, except as disclosed to Beneficiary in writing prior to the date hereof.

**4.8    Beneficiary Not Obligated to Perform; Indemnity.** Beneficiary shall not be obligated to perform or satisfy any obligation or condition under any of the Leases, or under or by reason of this Deed of Trust. Trustor agrees to indemnify and defend Beneficiary against and hold it harmless from any and all claims, demands, liability, loss or damage, including attorneys' and experts' fees and costs, which it may or might incur under the Leases or under or by reason of the assignment of Leases and Rents in this Deed of Trust, or which may be asserted against it by reason of any alleged obligation or undertaking on its part to perform or satisfy any of the terms of the Leases. Should Beneficiary incur any such liability, loss, or damage or in defense against any such claims or demands, the amount thereof including costs, expenses, and reasonable attorneys' and experts' fees and costs, shall be secured by this Deed of Trust, and Trustor shall reimburse Beneficiary therefor immediately upon demand.

**4.9    Authorization to Lessees to Pay Rents to Beneficiary.** Trustor hereby irrevocably authorizes and instructs each and every present and future Lessee to pay all unpaid Rents agreed upon in each Lease to Beneficiary upon receipt of demand from Beneficiary to so pay. No Lessee shall have any duty to investigate the validity or accuracy of any such demand by Beneficiary. Each Lessee shall be relieved of any liability to Trustor for payment of Rents under its Lease to the extent that it has paid Rents to Beneficiary pursuant to this Section 4.9, even if it is later determined that Beneficiary's demand for payment of Rents was invalid.

**4.10    Security for Leases.** No security deposited by any Lessee with Trustor under the terms of any of the Leases has been transferred to Beneficiary, and Beneficiary assumes no liability for any security deposit made with Trustor.

## ARTICLE 5
## DEFAULT; REMEDIES; ACCELERATION

**5.1    Events of Default.** It shall be a default under this Deed of Trust and under the Secured Obligations if:

**5.1.1**    Trustor fails to pay or deposit any amount when due on any of the Secured Obligations; or

**5.1.2**    Trustor breaches or fails to satisfy or perform any condition, covenant or other provision of this Deed of Trust; provided, however, that if such a breach or failure is a default only under this Section 5.1.2 and no other provision of Section 5.1, then the following shall apply: If in Beneficiary's reasonable judgment the breach or failure does not result in or relate to actual or imminent damage or harm to any person or property (or a threat of such imminent damage or harm) and is not incurable, such breach or failure shall not constitute a default under this Section 5.1.2 unless continued for a period of thirty (30) days after notice thereof to Trustor from Beneficiary (or such other time period, if any, as may be specified

1012066122

20

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

5184

elsewhere herein with respect to the particular condition, covenant or other provision of this Deed of Trust); or

**5.1.3** Trustor takes or purports to take any of the actions prohibited by Section 3.13.3 or 4.4; or

**5.1.4** any other event occurs which, under any Document or any other instrument or agreement evidencing, securing, guarantying or otherwise relating to any of the Secured Obligations, and subject to any provision for notice and cure set forth in such instrument or agreement, constitutes a default of Trustor or any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) for any of the Secured Obligations or gives Beneficiary the right to declare the maturity of any of the Secured Obligations; or

**5.1.5** any representation or warranty in this Deed of Trust or in any other instrument or agreement evidencing, securing, guarantying or otherwise relating to any of the Secured Obligations is or becomes untrue or misleading in any material respect; or

**5.1.6** subject to the provisions of Section 3.4.3, any claim of lien is filed against the Property or Collateral or any part thereof, or any interest or right made appurtenant thereto, or a notice to withhold funds is served upon Beneficiary; or

**5.1.7** there occurs an uninsured loss, damage, destruction or taking by eminent domain or other condemnation proceedings of any material part of the Property or the Collateral; or

**5.1.8** there occurs any event which constitutes a default of Trustor as lessee under any lease that is part of the Property or the Collateral, or gives the lessor thereunder the right to terminate any such lease or any leasehold arising thereunder; or

**5.1.9** Trustor or any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) upon any of the Secured Obligations, (i) fails to take all steps necessary to maintain its existence, continue to be in good standing in its state of organization, and be in good standing and qualified to do business in California, (ii) amends, modifies, terminates or cancels any of its organizational documents, changes its organizational structure, or changes its state of organization without Beneficiary's prior written consent, (iii) changes its fiscal year or principal place of business, or (iv) changes its name; provided, however, that the foregoing clauses (i) through (iii) shall not apply with respect to Trustor or such other person to the extent such Trustor or such other person is an individual; or

**5.1.10** there occurs any event which, in the reasonable discretion of Beneficiary, materially adversely affects (a) the performance by Trustor or any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) for any of the Secured Obligations or any agreement relating to the Secured Obligations or this Deed of Trust; (b) the priority or security of Beneficiary's lien and security interest on the Property or Collateral; (c) the business or financial condition of Trustor or any such person; or (d) the business, financial condition, operations or value of the Property or Collateral; or

1012066122

21

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

)                                                             )

## 5185

**5.1.11** there exists a default under any deed of trust, mortgage, lien or security agreement affecting or relating to the Property or the Collateral which is not a Document; or

**5.1.12** Trustor or any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) upon or in connection with any of the Secured Obligations: (a) voluntarily suspends the transaction of business; (b) becomes insolvent or unable to pay its debts as they mature; (c) makes an assignment for the benefit of creditors; (d) becomes the subject of a bankruptcy, reorganization or similar debtor-relief proceeding unless, in the case of an involuntary petition filed against Trustor, the petition is dismissed within sixty (60) days; (e) becomes, or any of its property becomes, the subject of appointment of a receiver, trustee, or conservator, unless, in the case of such appointment without Trustor's consent, the appointment is vacated within sixty (60) days; (f) has any of its property become subject to any attachment, execution, sequestration or other judicial seizure not discharged within sixty (60) days; (g) fails to pay or discharge any judgment against it, singly or in the aggregate, in excess of $15,000.00, or to appeal such judgment(s) and obtain a stay thereof within ten (10) days of entry; or (h) is dissolved or terminated.

### 5.2    Remedies.

**5.2.1** If there occurs an event of default under this Deed of Trust, Beneficiary may, at its sole option, without notice to or demand upon Trustor, do any one or more of the following:

(a)    declare any or all of the Secured Obligations immediately due and payable, irrespective of any otherwise-applicable maturity date;

(b)    enter on or into the Property, in person, by agent or by court-appointed receiver, and take such action as Beneficiary may determine desirable to complete any unfinished development and/or to manage and operate the Property and/or the Collateral and/or to collect the Rents, and Beneficiary may apply any Rents collected against the Secured Obligations without in any way curing or waiving any default of Trustor;

(c)    foreclose, non-judicially and/or by judicial action, in any order, separately or together, at the same or different times and places, in one sale or any number of separate sales, with disclaimers of any or all warranties, against some or all of the Property, the Collateral, and/or any other real or personal property security for the Secured Obligations, without waiving any other part thereof;

(d)    require Trustor to assemble any or all of the Collateral and make it available to Beneficiary in a place designated by Beneficiary, and sell the Collateral at the Property or elsewhere, with or without having the Collateral at the place of sale;

(e)    without removal, render the Collateral unusable and dispose of it on the Property;

22

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

)                                                                                              )

# 5186

(f)     enter upon the Property and possess and remove any or all of the Collateral without legal process, if Beneficiary can do so without a breach of the peace, or by legal action for possession;

(g)     sell, lease, license or otherwise dispose of any or all of the Collateral, disclaiming any or all warranties of any kind which by law may be disclaimed (and no such disclaimer shall be considered to affect the commercial reasonableness of any such sale, lease, license or other disposition), and exercise any or all other remedies now or in the future available to a secured party under the California Uniform Commercial Code;

(h)     obtain the appointment of a receiver ex parte and without prior notice to Trustor, which notice Trustor hereby waives;

(i)     with respect to any Agreement, do any of the following, in person or by agent or representative, with or without bringing any action or proceeding, or by a receiver appointed by a court, in Beneficiary's own name or in the name of Trustor: exercise any or all rights of Trustor thereunder; sue for or otherwise collect and receive payments and/or other performance due to Trustor thereunder; perform any or all of the duties of Trustor thereunder; cure or take action with respect to a default thereunder; give appropriate receipts, releases and satisfactions thereunder, for and on behalf of Trustor; do any other acts under or in connection therewith which Trustor could do if this Deed of Trust had not been made;

(j)     do any other acts which Beneficiary deems proper to protect this Deed of Trust and its interests hereunder until all of the Secured Obligations are paid and performed in full; and

(k)     exercise any other legal, equitable or contractual right or remedy against Trustor and/or any security and/or any other person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) for the Secured Obligations.

**5.2.2**     No remedy provided or permitted under this Deed of Trust is exclusive of any other, or of any remedy provided or permitted by law, equity or any instrument or agreement evidencing, securing, guarantying or relating to any of the Secured Obligations. Each such remedy is cumulative and in addition to every other. No exercise of remedies, including foreclosure, against any part of the Property or the Collateral and/or any other real or personal property security for the Secured Obligations shall exhaust or extinguish Beneficiary's rights to exercise remedies, including foreclosure, against any other part of the Property or the Collateral and/or any other real or personal property security for the Secured Obligations until the Secured Obligations are paid in full. A sale of less than all of the Property and/or the Collateral or any defective or irregular sale made under this Deed of Trust shall not exhaust or extinguish the power of sale provided for in this Deed of Trust or any right or power of sale provided by law, and subsequent sales may be made until the Secured Obligations are paid in full, or the entire Property and Collateral sold, without defect or irregularity. Beneficiary may exercise any one or more of its remedies at its option without regard to the adequacy of its security.

1012066122

23

**5.2.3** No delay or omission of Trustee or Beneficiary in the exercise of any right, remedy or power accruing upon any event of default hereunder shall impair such right, remedy or power or any other, nor shall such delay or omission be deemed a waiver of or acquiescence in any default.

**5.2.4** Neither Beneficiary's nor Trustee's nor any receiver's entry upon and/or taking possession of all or any part of the Property or the Collateral and/or any other real or personal property security for the Secured Obligations, nor any collection of Rents or other security or proceeds of other security, or other sums, nor the application of any collected sum to any Secured Obligation, nor the exercise of any other right or remedy by Beneficiary or Trustee or any receiver shall cure or waive any breach, default or notice of default under this Deed of Trust, or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and Trustor has cured all other defaults), or impair the status of the security, or prejudice Beneficiary or Trustee in the exercise of any right or remedy, or be construed as an affirmation by Beneficiary of any tenancy, lease, or option or a subordination of the lien of this Deed of Trust.

## 5.3 Sale(s) by Trustee of the Property and Collateral.

**5.3.1** If Beneficiary elects to sell any of the Property (separately from or together with all or any part of the Collateral) under the power of sale herein granted, Trustee shall record and give all notices of default(s), election(s) to sell and sale(s) as may be required by law. Upon the expiration of such time(s) as is required by law, Trustee shall, without demand on Trustor, sell all or such portions of the Property as Beneficiary may direct in its sole and absolute discretion (and, if so directed by Beneficiary, all or any portions of the Collateral) upon any terms and conditions specified by Beneficiary and permitted by law, at the time and place (or the times and places) fixed in the notice(s) of sale(s) (subject to postponement as provided below), as a whole or in separate parcels or items, and in such order, and in one sale or any number of separate sales, all as Beneficiary may direct in its sole and absolute discretion, at public auction(s), to the highest bidder(s) for cash payable at the time of sale(s). Trustor waives all rights (a) to require that the Property and/or Collateral and/or any other real or personal property security for the Secured Obligations be sold together or separately, (b) to direct the order in which any of the Property and/or Collateral and/or any other real or personal property security for the Secured Obligations will be sold, and (c) to have any of the Property or Collateral or any other real or personal property security for the Secured Obligations marshalled upon any sale. Trustee may postpone any sale from time to time by public announcement at the time and place of the sale as fixed by notice or by prior postponement, and may without further notice make such sale at the time fixed by the last postponement.

**5.3.2** Any person, including Trustee or Beneficiary, may purchase at such sale. Trustee shall deliver to the purchaser a deed conveying the Property or portion thereof sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.

**5.3.3** Upon a sale by Trustee, and after deducting all costs, expenses, and fees of Trustee (including the cost of evidence of title in connection with the sale), Trustee shall

101206612.2

24

)                                                      )
                                                    5188

apply the proceeds from the sale to the payment of the Secured Obligations in such order as Beneficiary may direct and the remainder, if any, to the person or persons legally entitled thereto.

**5.4    Acceleration of Indebtedness Upon Sale of the Property and Upon Change in Ownership, Control, or Membership of Trustor.**

**5.4.1**    In the event Trustor, or any successor in interest to Trustor in the Property, sells, conveys, alienates, leases (other than pursuant to any leasing program approved by Beneficiary), assigns, transfers, encumbers, or disposes of the Property, or any part thereof or any interest therein, or becomes divested of its title or any interest therein in any manner or way, absolutely or for security, voluntarily or involuntarily, or enters into an agreement to do so, without Beneficiary's prior written consent, then Beneficiary may, at its election, declare the Secured Obligations, irrespective of any otherwise-applicable maturity date, immediately due and payable without notice.

**5.4.2**    Beneficiary may, at its election, declare the Secured Obligations, irrespective of any otherwise-applicable maturity date, immediately due and payable without notice (a) if Trustor, or any successor in interest to Trustor in the Property, is a corporation, trust, limited or general partnership, limited liability company or joint venture, and there occurs a sale, conveyance, transfer, disposition or encumbrance, absolute or for security, voluntary or involuntary, or should an agreement be made to do so, without Beneficiary's prior written consent, with respect to any of the issued and outstanding capital stock of Trustor or such successor (if a corporation), or with respect to any limited partnership interests in Trustor or such successor (if a limited partnership), or with respect to any beneficial interest in Trustor or such successor (if a trust), or with respect to any general partner or joint venture interest in Trustor or such successor (if a general or limited partnership or joint venture), or with respect to any membership interests in Trustor or such successor (if a limited liability company), or if there shall occur such a change in any general partner, joint venturer or member in Trustor or such successor, or (b) if Matthew C. Dinofia ceases to control the management and affairs of Trustor or such successor.

**5.4.3**    No waiver of the requirement of consent by Beneficiary as set forth herein shall be effective unless in writing. Consent by Beneficiary to any one or more transactions described in Sections 5.4.1 or 5.4.2 shall not constitute nor be deemed to be a consent, or waiver of the requirement of consent, as to any future or succeeding transactions.

**5.5    Acceleration of Indebtedness Upon an Event of Bankruptcy or Insolvency.** Beneficiary may, at its election, declare the Secured Obligations, irrespective of any otherwise-applicable maturity date, immediately due and payable, without notice, if (a) any proceeding under the Bankruptcy Code, or under any present or future federal, state or other statute, law or regulation pertaining to bankruptcy, insolvency or other relief for debtors shall be instituted by or against Trustor or any other person who may be liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) for the Secured Obligations; or (b) a receiver or custodian shall be appointed for Trustor, such other person or the Property or Collateral or if Trustor or such other person shall make an assignment for the benefit of creditors and if such

101206612.2

25

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

5189

receiver or custodian shall not be dismissed, or such assignment shall not be voided, within sixty (60) days of such institution, appointment or making.

## ARTICLE 6
## MISCELLANEOUS PROVISIONS .

**6.1    Acceptance of Trust; No Duty to Notify.** Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is under no obligation to notify any party hereto of any action or proceeding in which Trustor, Beneficiary or Trustee is a party, unless brought by Trustee hereunder.

**6.2    Substitution of Trustees.** Beneficiary may, from time to time, by written instrument executed and acknowledged by Beneficiary and recorded in the county where the Real Property is located, substitute a successor or successors to any Trustee named herein or acting hereunder.

**6.3    Affidavit to Trustee.** Trustee, upon presentation to it of an affidavit signed by or on behalf of Beneficiary setting forth any fact(s) showing a default by Trustor under this Deed of Trust, is authorized to accept as true and conclusive all facts and statements in such affidavit and to act hereunder in complete reliance thereon.

**6.4    General Rights of Beneficiary and Trustee.** At any time or from time to time, without liability therefor, without notice and without affecting the liability of any person (including Trustor) for the payment or performance of any of the Secured Obligations or the lien and security interest of this Deed of Trust:

**6.4.1**    Beneficiary may do any one or more of the following: release any person liable for the payment or performance of any of the Secured Obligations; extend the time or otherwise alter the terms of payment of any of the Secured Obligations; accept additional security therefor of any kind, including deeds of trust and mortgages; and alter, substitute or release any portion of the Property or the Collateral securing the Secured Obligations;

**6.4.2**    Trustee may, with Beneficiary's prior written consent, do any one or more of the following: consent to the making of any map, plat or plot of the Property; join in granting any easements or creating any restrictions on the Property; join in any extension agreement or any agreement subordinating the lien or charge of this Deed of Trust; and reconvey or release any portion of the Property or the Collateral.

**6.5    Power of Attorney.** Trustor irrevocably appoints Beneficiary and its successors and assigns as Trustor's attorney-in-fact, coupled with an interest, with full power of substitution, to perform any of the following, in Beneficiary's or Trustor's name: (a) execute and record any notices of completion, cessation of labor, or any other notices that Beneficiary deems appropriate to protect Beneficiary's interest in the Property or the Collateral; (b) perform any actions necessary and incidental to exercising any right or remedy hereunder or to preserving Beneficiary's rights and interests hereunder; and (c) upon any failure by Trustor to do so, perform any obligation of Trustor under this Deed of Trust.    Beneficiary, as such

101206612.2

26

5190

attorney-in-fact, shall be accountable only for such funds as are actually received by Beneficiary. Beneficiary shall have no duty to act as such attorney-in-fact, and Beneficiary shall not be liable to Trustor or any other person or entity for any failure to act.

**6.6    No Merger.** No merger shall occur, and Beneficiary shall not be deemed to have intended that any merger occur, as a result of Beneficiary's acquiring any other estate or interest in, or any other lien on, the Property or the Collateral, unless Beneficiary consents to a merger in writing.

**6.7    Reconveyance.** Upon written request of Beneficiary stating that all of the Secured Obligations have been paid, upon surrender of this Deed of Trust to Trustee for cancellation and retention and upon payment to Trustee of its fees, costs and expenses incurred or to be incurred thereby, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

**6.8    Acceptance of Late and Partial Payments.** The acceptance by Beneficiary of the payment of any of the Secured Obligations or any installment thereof after its due date shall not constitute a waiver of the right to require prompt payment when due of all other and future Secured Obligations or installments, or to declare a default as herein provided for any failure to so pay, or to proceed with foreclosure or other remedies for any other default then existing. The acceptance by Beneficiary of a portion of any amount due on any Secured Obligation shall neither cure nor excuse the default caused by failure to pay the whole amount due or affect any notice of default, unless such notice is expressly revoked in writing by Beneficiary. Such acceptance shall not constitute a waiver of Beneficiary's rights to require full payment when due of all other and future sums.

**6.9    Partial Invalidity of this Deed of Trust.** In the event any one or more of the provisions of this Deed of Trust or the instruments or agreements reflecting the Secured Obligations are held to be invalid, illegal, unenforceable or avoidable in any respect, no other provision of this Deed of Trust, or of any such other instrument or agreement, shall be affected thereby, and such other provisions shall remain binding and enforceable.

**6.10    Governing Law.** This Deed of Trust has been executed and delivered in, and is to be construed, enforced and governed according to and by the internal laws of, the State of California, without regard to conflict of law provisions.

**6.11    Parties Benefitted.** Subject to Section 5.4, this Deed of Trust applies to, inures to the benefit of and binds all parties hereto and their respective heirs, legatees, devisees, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledgees, of any of the Secured Obligations.

**6.12    Headings.** Headings herein are used for convenience of reference only and do not define or limit the scope of provisions of this Deed of Trust.

101206612.2

27

**6.13    Waiver of Limitations.**  Trustor waives the pleading of any statute of limitations as a defense to the Secured Obligations to the fullest extent permitted by law.

**6.14    Waiver.**  To the extent permitted by law, Trustor waives the benefit of all laws now existing or hereafter enacted providing for any appraisement before sale of any portion of the Property or the Collateral, extension of the time for performance of the Secured Obligations, or creation or extension of a period of redemption from any sale.  Trustor further waives all rights and remedies which Trustor may have or be able to assert by reason of the laws or decisions pertaining to the rights and remedies of sureties.

**6.15    Tax.**  In the event of the passage, after the date of this Deed of Trust, of any law deducting from the value of real property, for tax purposes, any lien or charge thereon, or changing in any way the laws now existing for the taxation of deeds of trust or indebtedness secured by deeds of trust for federal, state or local purposes, or changing the manner of collection of any such taxes as to affect this Deed of Trust or the Secured Obligations, Trustor agrees to pay such tax arising from such new law unless it would be illegal to do so.  If Trustor fails to do so, Beneficiary may, at its election and without demand or notice, declare the Secured Obligations immediately due and payable.

**6.16    Notices.**  Except as otherwise required by law, all notices, demands and other communications required or permitted hereunder shall be in writing, addressed to the appropriate party at its address as set forth in the first paragraph hereof, or to such other address as may be designated from time to time by notice to the other parties in the manner set forth herein.  All such communications shall be deemed effective (a) upon actual delivery if delivered by personal delivery or certified postage prepaid mail, (b) three Business Days (as hereinafter defined) following deposit, first class postage prepaid, with the United States Mail, or (c) on the next Business Day after timely and proper deposit with a nationally-recognized overnight courier marked for next Business Day delivery.

**6.17    Statements of Indebtedness.**  Trustor agrees to pay Beneficiary reasonable charges, not to exceed the maximum allowed by law, for giving any statement of the status of the Secured Obligations.

**6.18    Joint and Several Obligations.**  If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons shall be joint and several.  Any married person who executes this Deed of Trust agrees that recourse may be had against his or her separate property and against community property.  If Trustor is a partnership, the obligations of Trustor shall be the joint and several obligations of all general partners therein.

**6.19    Interpretation.**  The words "**herein,**" "**hereof,**" "**hereunder**" and words of similar import refer to this Deed of Trust as a whole and not to any particular Article, Section or subdivision hereof.  All references to "**Articles,**" "**Sections,**" "**Exhibits**" and other parts or subdivisions are to the corresponding Articles, Sections, Exhibits or parts or subdivisions of this Deed of Trust, unless otherwise specified.  The terms "**include,**" "**including**" and forms thereof mean inclusive without limitation.  The term "**day**" means calendar day.  The term "**Business Day**" means every day other than a Saturday, Sunday or U.S. federal holiday.  The term

101206612.2

28

5192

"**person**" means any individual, corporation, partnership, limited liability company, governmental entity or authority, or other entity of any kind.

**6.20 Approvals, Consents, Waivers; Acceptability to Beneficiary.** No approval, acceptance or consent of Beneficiary required by any provision of this Deed of Trust, nor any statement or waiver of any required approval, acceptance, acceptability, consent or condition, shall be deemed to have occurred unless set forth in writing, signed by Beneficiary, and delivered to Trustor. Any approval, acceptance, consent, waiver or statement of acceptability granted by Beneficiary shall be applicable only to the particular occurrence, circumstance or instance identified in such writing, and shall not constitute a continuing approval, acceptance, consent, waiver or statement of acceptability or be otherwise applicable to any other occurrence, circumstance or instance, whether similar or dissimilar. When this Deed of Trust requires the consent or approval of Beneficiary, or provides that any document, matter, act, event, occurrence or person must be satisfactory or acceptable to Beneficiary or words of similar import, such consent or approval may be given or withheld by Beneficiary, and such document, matter, act, event, occurrence or person must be satisfactory or acceptable to Beneficiary, in its sole and absolute discretion, unless otherwise expressly provided herein or therein.

**6.21 Amendments.** This Deed of Trust cannot be modified, amended or terminated except by written agreement signed by the party against whom enforcement of any modification, amendment or termination is sought.

**6.22 Time is of the Essence.** Time is of the essence of this Deed of Trust and of every part hereof, and Trustor therefore acknowledges that Beneficiary has no obligation to grant any extension of any provision thereof, and any extension which Beneficiary may elect to grant may be conditioned upon such terms and conditions as Beneficiary may impose in its sole and absolute discretion.

**6.23 Request for Notice.** Trustor requests that a copy of any notice of default or any notice of sale hereunder be mailed to Trustor at the address set forth in the first paragraph hereof.

**6.24 WAIVER OF RIGHTS OF TRIAL BY JURY. TO THE FULLEST EXTENT PERMITTED BY LAW (INCLUDING, WITHOUT LIMITATION, ANY LAW HEREAFTER IN EFFECT), EACH OF TRUSTOR AND BENEFICIARY (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, INTENTIONALLY, IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE (INCLUDING BY WAY OF JURY TRIAL) IN RESOLVING ANY DISPUTE OR LITIGATION (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG TRUSTOR AND BENEFICIARY ARISING OUT OF OR IN ANY WAY RELATED TO THIS DEED OF TRUST, THE LOAN, OR THE DOCUMENTS, OR ACTIONS OF TRUSTOR OR BENEFICIARY RELATING TO THE LOAN. THIS PROVISION AND THE WAIVER SET FORTH HEREIN ARE MATERIAL INDUCEMENTS TO BENEFICIARY TO MAKE THE LOAN.**

101206612.2

29

WITHOUT INTENDING IN ANY WAY TO LIMIT TRUSTOR'S AND BENEFICIARY'S AGREEMENT TO WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY, if the above waiver of the right to a trial by jury is not enforceable, Trustor and Beneficiary (by its acceptance hereof) agree that any and all disputes or controversies of any nature between them arising at any time shall be decided by a reference to a private judge, mutually selected by the parties (or, if they cannot agree, by the Presiding Judge of the San Diego County, California Superior Court) appointed in accordance with California Code of Civil Procedure Section 638 (or pursuant to comparable provisions of federal law if the dispute falls within the exclusive jurisdiction of the federal courts), sitting without a jury, in San Diego County, California; and the parties hereby submit to the jurisdiction of such court. The reference proceedings shall be conducted pursuant to and in accordance with the provisions of California Code of Civil Procedure Sections 638 through 645.1, inclusive. The private judge shall have the power, among others, to grant provisional relief, including without limitation, entering temporary restraining orders, issuing preliminary and permanent injunctions and appointing receivers. All such proceedings shall be closed to the public and confidential and all records relating thereto shall be permanently sealed. If during the course of any dispute, a party desires to seek provisional relief, but a judge has not been appointed at that point pursuant to the judicial reference procedures, then such party may apply to the San Diego County, California Superior Court for such relief. The proceeding before the private judge shall be conducted in the same manner as it would be before a court under the rules of evidence applicable to judicial proceedings. The parties agree that the selected or appointed private judge shall have the power to decide all issues in the action or proceeding, whether of fact or of law, and shall report a statement of decision thereon pursuant to the California Code of Civil Procedure Section 644(a). The private judge shall also determine all issues relating to the applicability, interpretation, and enforceability of this paragraph.

Notwithstanding anything contrary in this Section 6.24, nothing in this Section 6.24 shall limit the right of Trustor, Beneficiary or any other person to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or non-judicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights; or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies. The filing of a court action is not intended to constitute a waiver of the right of Trustor, Beneficiary or any other person, including the suing party, thereafter to request or require submittal of the claim to arbitration or judicial reference as provided herein.

## ARTICLE 7
### NON-FOREIGN ENTITY CERTIFICATION

**7.1    Non-Foreign Entity.**    Section 1445 of Title 26 U.S.C., the Internal Revenue Code, as amended ("**Internal Revenue Code**") provides that a transferor of a U.S. real property interest must withhold tax if the transferor is a foreign person, as set forth therein. To inform Beneficiary that the withholding of tax will not be required in the event of the disposition of any

of the Property pursuant to the terms of this Deed of Trust, Trustor hereby certifies, under penalty of perjury, that:

**7.1.1** Trustor is not a foreign corporation, foreign partnership, foreign trust, foreign limited liability company or foreign estate, as those terms are defined in the Internal Revenue Code and the regulations promulgated thereunder; and

**7.1.2** Trustor's U.S. Employer Identification Number is 95-2229540; and

**7.1.3** Trustor's chief executive office and principal place of business is the address set forth on the first page of this Deed of Trust.

**7.2 Disclosure.** Beneficiary may disclose the contents of this certification to the Internal Revenue Service.

**7.2.1 Further Certifications.** Trustor shall execute such further certifications, under penalty of perjury, as Beneficiary may reasonably require.

**7.2.2 Survival.** Trustor's certifications under this Article 7 shall survive the reconveyance, foreclosure and/or acceptance of a deed in lieu of foreclosure of this Deed of Trust.

**7.3 Penalties.** Trustor acknowledges that false statements in its certifications under this Article 7 may be punishable by fine, imprisonment or both.

## ARTICLE 8
## SECURITY INTEREST PERFECTION INFORMATION

**8.1 Representations and Warranties.** Trustor represents and warrants to Beneficiary that:

**8.1.1** Trustor is an organization of the following type: corporation.

**8.1.2** If Trustor is an organization, (a) Trustor is organized solely under the laws of the following jurisdiction: California, and (b)Trustor's organizational identification number (**not** tax i.d. number) is: C0417432.

**8.1.3** Trustor's full, correct, legal name is as shown in the first paragraph of this Deed of Trust (and, if Trustor is an organization, is the name of Trustor as indicated on the public record of the jurisdiction of its organization, which shows Trustor to have been organized).

**8.1.4** Trustor's mailing address for purposes of any financing statement filed in connection with this Deed of Trust is as shown in the first paragraph of this Deed of Trust.

**8.1.5** The Collateral is for business, commercial and/or investment use by Trustor, and does not include goods used or bought for use by Trustor primarily for personal,

1012066122

31

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

family, or household purposes. The Secured Obligations are incurred by Trustor for business, commercial and/or investment purposes, and not primarily for personal, family, or household purposes. The transaction that is the subject of the Documents is not a consumer-goods transaction or a consumer transaction.

**8.2     Changes in Name or State of Organization or Residence**. Without limiting the terms of <u>Section 5.1.9</u>, Trustor shall not without Beneficiary's prior written consent (i) if Trustor is other than an individual, make any change to its name, organizational status or existence, or state of organization, and (ii) if Trustor is an individual, make any change to its name or state of principal residence

**ARTICLE 9**
**INTENTIONALLY DELETED**

**ARTICLE 10**
**INTENTIONALLY DELETED**

[REMAINDER OF PAGE INTENTIONALLY BLANK]

5196

IN WITNESS WHEREOF, this Deed of Trust is executed as of the date first written above.

## TRUSTOR:

CITIZENS DEVELOPMENT CORPORATION, a
California corporation

By:_____

Name: Matthew C. DiNofia
Its: Secretary

**ACKNOWLEDGMENT**

5197

STATE OF CALIFORNIA )
)
COUNTY OF San Diego )

On January 7, 2010, before me, Russell D. Tennesen , Notary Public,

personally appeared Matthew C. Dinofia

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Russell D. Tennesen_
Signature                                         (Seal)

RUSSELL D. TENNESEN
COMM. # 1789604
NOTARY PUBLIC-CALIFORNIA
COUNTY OF SAN DIEGO
MY COMM. EXP. FEB. 21, 2012

101206612.2

34

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

## EXHIBIT A

5198

### Description of Real Property

[See Attached]

1012066122

Exhibit A

Pacific West TD Fund II, L.P.
Deed of Trust, Assignment of Rents and Leases
27001-00001

)                                           ) Policy No.: 930015956-U50

## LEGAL DESCRIPTION

### EXHIBIT "A"          5199

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A: INTENTIONALLY OMITTED

PARCEL B: INTENTIONALLY OMITTED

PARCEL C: INTENTIONALLY OMITTED

PARCEL D: INTENTIONALLY OMITTED

PARCEL E: (221-500-35, 222-031-06)

THAT PORTION OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 16, THE EAST QUARTER OF SECTION 20, THE WEST HALF OF THE NORTHWEST QUARTER OF SECTION 21 IN TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTER LINE OF SAN MARINO DRIVE AND LA BONITA DRIVE, IN THE LAKE SAN MARCOS UNIT NO. 1, ACCORDING TO MAP THEREOF NO. 5137, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE SOUTHERLY PROLONGATION OF SAID CENTER LINE OF LA BONITA DRIVE, SOUTH 0°42'33" EAST 30.00 FEET TO THE SOUTHERLY LINE OF SAID SAN MARINO DRIVE; THENCE ALONG SAID SOUTHERLY LINE SOUTH 89°20'50" WEST 20.00 FEET; THENCE ALONG A LINE WHICH IS PARALLEL WITH AND 20.00 FEET WESTERLY AT RIGHT ANGLES FROM SAID SOUTHERLY PROLONGATION OF THE CENTER LINE OF LA BONITA DRIVE, SOUTH 04°42'33" EAST 400.25 FEET TO THE BEGINNING OF A TANGENT 275.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHERLY ALONG SAID CURVE 366.08 FEET THROUGH AN ANGLE OF 76°16'20" THENCE SOUTH 0°43'27" EAST 277.84 FEET, THENCE NORTH 89°16'33" EAST 362.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 89°16'33" WEST 37.00 FEET; THENCE SOUTH 0°43'27" EAST 130.00 FEET TO THE BEGINNING OF A TANGENT 130.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 204.20 FEET THROUGH AN ANGLE OF 90°00'; THENCE TANGENT TO SAID CURVE SOUTH 89°16'33" WEST 390.00 FEET; THENCE SOUTH 0°43'27" EAST 280.00 FEET; THENCE NORTH 89°16'33" EAST 270.00 FEET TO THE BEGINNING OF A TANGENT 130.00 FOOT RADIUS CURVE, CONCAVE WESTERLY; THENCE SOUTHEASTERLY, SOUTHERLY AND SOUTHWESTERLY

# LEGAL DESCRIPTION
(continued)

## 5200

ALONG SAID CURVE 408.41 FEET THROUGH AN ANGLE OF 180°00'; THENCE TANGENT TO SAID CURVE SOUTH 89°16'33" WEST 365.00 FEET; THENCE SOUTH 0°43'27" EAST 145.00 FEET; THENCE SOUTH 51°05'50" EAST 505.00 FEET MORE OR LESS TO A POINT OF INTERSECTION WITH THE 494.4 FOOT CONTOUR LINE AS ESTABLISHED WHEN THE SURFACE OF THAT CERTAIN BODY OF WATER KNOWN AS LAKE SAN MARCOS IS LEVEL WITH THE SPILLWAY CREST OF THAT CERTAIN DAM CONSTRUCTED ACROSS AND IN SAN MARCOS CREEK AND KNOWN TO THE STATE OF CALIFORNIA DEPARTMENT OF WATER RESOURCES AS SAN MARCOS DAM, STATE NO. 848, SAID 494.4 FOOT CONTOUR LINE BEING FURTHER QUALIFIED AS A HORIZONTAL PLANE 494.4 FEET ABOVE SEA LEVEL, THE TERM "SEA DESIGNATING THAT CERTAIN DATUM PLANE OR POINT WHICH IS 564.07 FEET VERTICALLY BELOW CERTAIN BENCH MARK CONSISTING OF A STANDARD UNITED STATES COASTAL AND GEODETIC SURVEY DISK STAMPED "L 302 1935" AND SET IN THE TOP OF A CONCRETE POST LOCATED 30.00 FEET RIGHT OF STATION 57 PLUS 85 OF SAN DIEGO COUNTY ROAD SURVEY NO. 454; THENCE SOUTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE WESTERLY END OF THE UPSTREAM FACE OF SAID SAN MARCOS DAM; THENCE EASTERLY ALONG THE UPSTREAM FACE OF SAID SAN MARCOS DAM AND SAID 494.4 FOOT CONTOUR LINE TO THE EASTERLY END OF SAID DAM AT ITS INTERSECTION WITH SAID 494.4 FOOT CONTOUR LINE; THENCE NORTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT NO. 606 OF LAKE SAN MARCOS UNIT NO. 7, ACCORDING TO MAP THEREOF NO. 5958, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE SOUTH 46°45'00" EAST ALONG SAID NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT NO. 606, A DISTANCE OF 22 FEET MORE OR LESS, TO THE MOST WESTERLY CORNER OF SAID LOT NO. 606; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 7 AS FOLLOWS:

NORTH 43°15' EAST 94.95 FEET; NORTH 76°38'25" EAST 617.94 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.02 FEET TO THE BEGINNING OF A TANGENT 163.50 FOOT RADIUS CURVE, CONCAVE EASTERLY; THENCE NORTHWESTERLY, NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE AND THE EASTERLY EXTENSION THEREOF 513.65 FEET THROUGH AN ANGLE OF 180°00'; THENCE TANGENT TO SAID CURVE NORTH 76°38'25" EAST 5.02 FEET TO THE MOST WESTERLY CORNER OF LOT 530 OF LAKE SAN MARCOS UNIT NO. 6, ACCORDING TO MAP NO. 5551, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 6 AS FOLLOWS:

NORTH 76°38'25" EAST 465.00 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.02 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE EASTERLY, HAVING A RADIUS OF 163.50 FEET; NORTHWESTERLY, NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE 513.65 FEET THROUGH AN ANGLE OF 180°00' AND TANGENT TO SAID CURVE NORTH 76°38'25" EAST 35.00 FEET TO THE NORTHWESTERLY CORNER OF LOT 445 OF LAKE SAN MARCOS UNIT NO. 5, ACCORDING TO MAP THEREOF NO. 5447, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 5 AS FOLLOWS:

Policy No.: 930015956-U50

## LEGAL DESCRIPTION 5201
(continued)

NORTH 76°38'25" EAST 435.00 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25"
WEST 270.00 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE
NORTHEASTERLY HAVING A RADIUS OF 163.50 FEET; AND NORTHWESTERLY ALONG
SAID CURVE 198.57 FEET THROUGH AN ANGLE OF 69°35' TO THE MOST SOUTHERLY
CORNER OF LOT 362 OF LAKE SAN MARCOS UNIT NO. 4, ACCORDING TO MAP THEREOF
NO. 5338, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY;
THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 4 AS FOLLOWS:

CONTINUING NORTHERLY AND NORTHEASTERLY ALONG THE EXTENSION OF THE
ABOVE DESCRIBED 163.50 FOOT RADIUS CURVE 315.09 FEET THROUGH AN ANGLE OF
110°25'; TANGENT TO SAID CURVE NORTH 76°38'25" EAST 270.00 FEET; AN NORTH 13°21'35"
WEST 167.03 FEET TO THE MOST SOUTHERLY CORNER OF LOT 105 OF LAKE SAN MARCOS
UNIT NO. 1 ACCORDING TO MAP NO. 5137, FILED IN THE OFFICE OF THE COUNTY
RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY SAID UNIT NO. 1
AS FOLLOWS:

NORTH 13°21'35" WEST 85.57 FEET; NORTH 36°21'35" EAST 65.69 FEET; SOUTH 53°38'25"
EAST 90.00 FEET TO A POINT ON A 50.00 FOOT RADIUS CURVE, CONCAVE EASTERLY, THE
TANGENT OF SAID CURVE BEARING NORTH 0°30'35" WEST TO SAID POINT; NORTHERLY
ALONG SAID CURVE 32.17 FEET THROUGH AN ANGLE OF 36°52'10"; AND NORTH 53°38'25"
WEST 330.00 FEET TO THE MOST WESTERLY CORNER OF LOT 173 OF SAID LAKE SAN
MARCOS UNIT NO. 1; THENCE ALONG THE SOUTHWESTERLY PROLONGATION OF THE
NORTHERLY LINE OF SAID LOT 173 SOUTH 36°21'35" WEST 185.91 FEET TO THE
BEGINNING OF A TANGENT 411.52 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY;
THENCE SOUTHWESTERLY ALONG SAID CURVE 290.69 FEET THROUGH AN ANGLE OF
40°28'20" TO THE BEGINNING OF REVERSED 350.00 FOOT RADIUS CURVE, CONCAVE
SOUTHEASTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 163.66 FEET
THROUGH AN ANGLE OF 23°16'06"; THENCE SOUTH 51°06'00" WEST 30.14 FEET; THENCE
SOUTH 31°22'03" WEST 160.00 FEET; THENCE SOUTH 0°43'27" EAST 400.00 FEET TO THE
TRUE POINT OF BEGINNING.
EXCEPTING THEREFROM THAT PORTION DESCRIBED IN CERTIFICATE OF COMPLIANCE
RECORDED DECEMBER 13, 1979 AS FILE NO. 79-522804 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITH LAKE SAN MARCOS
VILLAGE, ACCORDING TO MAP THEREOF NO. 8742, FILED IN THE OFFICE OF THE COUNTY
RECORDER OF SAN DIEGO COUNTY DECEMBER 16, 1977.

PARCEL F: INTENTIONALLY OMITTED.

PARCEL G: (221-510-57)

LOT 606 OF LAKE SAN MARCOS UNIT NO. 7, IN THE COUNTY OF SAN DIEGO, STATE OF
CALIFORNIA, ACCORDING TO MAP THEREOF NO. 5958, RECORDED SEPTEMBER 13, 1967 IN
THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY.

ALTA Loan Policy (6-17-06)
72-041-06 (6/06)

Policy No.: 930015956-U50

## LEGAL DESCRIPTION
(continued)

**5202**

PARCEL H: INTENTIONALLY OMITTED

PARCEL I: INTENTIONALLY OMITTED

PARCEL J: INTENTIONALLY OMITTED

PARCEL K: INTENTIONALLY OMITTED

PARCEL L: INTENTIONALLY OMITTED

PARCEL M: INTENTIONALLY OMITTED

PARCEL N: INTENTIONALLY OMITTED

PARCEL O: (221-240-01)

LOT 173 OF LAKE SAN MARCOS UNIT NO. 1 IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 5137 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY MARCH 5, 1963.

PARCEL PI: (222-030-30, 56 AND 44, 222-440-15)

ALL THAT PORTION OF THE EAST ONE-HALF OF SECTION 20, THE NORTHWEST ONE-QUARTER OF SECTION 21, AND THE NORTHEAST ONE-QUARTER OF THE NORTHEAST ONE-QUARTER OF SECTION 29, TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO GOVERNMENT PLAT THEREOF, TOGETHER WITH A PORTION OF LOT 8, COUNTY OF SAN DIEGO TRACT NO. 3730, ACCORDING TO MAP THEREOF NO. 9090 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND CERTIFICATE OF CORRECTION RECORDED October 25, 1979 AS INSTRUMENT NO. 79-449143, DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST NORTHERLY CORNER OF SAID LOT 8, SAID CORNER BEING A POINT IN THE SOUTHEASTERLY LINE OF LA PLAZA DRIVE, 56.00 FEET WIDE, AS SAME IS SHOWN ON SAID MAP NO. 9090; THENCE SOUTH 26°02'59" WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 8 A DISTANCE OF 539.04 FEET TO AN ANGLE POINT THEREIN AND/OR THE TRUE POINT OF BEGINNING;

ALTA Loan Policy (6-17-06)
72-041-06 (6/06)

Policy No.: 930015956-U50

## LEGAL DESCRIPTION     5203
(continued)

THENCE CONTINUING SOUTH 26°02'59" WEST ALONG THE SOUTHWESTERLY PROLONGATION OF SAID NORTHWESTERLY LINE A DISTANCE OF 472.64 FEET TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 8; THENCE SOUTH 54°49'09" EAST ALONG SAID SOUTHERLY LINE OF LOT 8 A DISTANCE OF 201.28 FEET TO AN ANGLE POINT THEREIN AND/OR A POINT IN THE LINE COMMON TO SAID SECTIONS 20 AND 21; THENCE SOUTH 00°40'41" EAST ALONG SAID LINE COMMON TO SECTIONS 20 AND 21A DISTANCE OF 1988.94 FEET TO THE SOUTHERLY TERMINUS THEREOF, SAID SOUTHERLY TERMINUS ALSO BEING THE CORNER COMMON TO SAID SECTIONS 20, 21 AND 29, AND SECTION 28, TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN; THENCE SOUTH 00°41'01" EAST ALONG THE EAST LINE OF SAID SECTION 29 A DISTANCE OF 267.31 FEET; THENCE SOUTH 89°17'59" WEST 320.37 FEET; THENCE NORTH 19°38'10" WEST 297.43 FEET TO A POINT IN THE LINE COMMON TO SAID SECTIONS 20 AND 29; THENCE NORTH 2°15'00" WEST 1073.02 FEET, THENCE NORTH 35°10'29" WEST 385.37 FEET; THENCE NORTH 23°54'18" WEST 202.36 FEET; THENCE NORTH 7°24'19" WEST 380.17 FEET; THENCE NORTH 13°29'45" EAST 411.36 FEET; THENCE NORTH 24°52'49" WEST 331.34 FEET TO THE SOUTHEAST CORNER OF LOT 14 OF LAKE SAN MARCOS SHORES ACCORDING TO MAP THEREOF NO. 8206 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE ALONG THE EASTERLY LINE OF SAID LOT 14 FOLLOWING ITS VARIOUS COURSES NORTH 16°22'43" EAST 64.30 FEET (RECORDED NORTH 16°23'21" EAST PER MAP NO. 8206); NORTH 27°04'43" WEST 52.60 FEET (RECORDED NORTH 27°04'05" EAST 52.65 FEET PER MAP NO. 8206); NORTH 60°22'58" EAST 63.00 FEET (RECORDED NORTH 60°23'36" EAST 62.99 FEET PER MAP NO. 8206);NORTH , 15°00'51" EAST, 261.92 FEET (RECORDED NORTH 15°01'29" EAST PER MAP NO. 8206); NORTH 23°45'56" EAST 112.72 FEET (RECORDED NORTH 23°46'38" EAST 112.68 FEET PER MAP NO. 8206); NORTH 36°55'43" EAST 256.14 FEET (RECORDED NORTH 36°56'04" EAST 258.18 FEET PER MAP NO. 8206); NORTH 16°35'51" EAST 147.79 FEET (RECORDED NORTH 16°36'27" EAST 147.44 FEET PER MA.:) NO. 8206); THENCE LEAVING SAID EASTERLY LINE OF LOT 14, SOUTH 51°05'50" EAST 25.00 FEET MORE OR LESS TO A POINT OF INTERSECTION WITH THE 494.4 FOOT CONTOUR LINE AS ESTABLISHED THE SURFACE OF THAT CERTAIN BODY OF WATER KNOWN AS LAKE SAN MARCOS IS LEVEL WITH THE SPILLWAY CREST OF THAT CERTAIN DAM CONSTRUCTED ACROSS AND IN SAN MARCOS CREEK AND KNOWN TO THE STATE OF CALIFORNIA DEPARTMENT OF WATER RESOURCES AS SAN MARCOS DAM, STATE NO. 848, SAID 494.4 FOOT CONTOUR

ALTA Loan Policy (6-17-06)
72-041-06 (6/06)

## LEGAL DESCRIPTION    **5204**
(continued)

LINE BEING FURTHER QUALIFIED AS A HORIZONTAL PLANE 494.4 FEET ABOVE SEA
LEVEL, THE TERM "SEA LEVEL" DESIGNATING THAT CERTAIN DATUM PLANE OR A
POINT WHICH IS 564.07 FEET VERTICALLY BELOW CERTAIN BENCH MARK CONSISTING
OF A STANDARD UNITED STATES COAST AND GEODETIC SURVEY DISK STAMPED "L 302
1935" AND SET IN THE TOP OF A CONCRETE POST LOCATED 30.00 FEET RIGHT OF
STATION 57+85 OF SAN DIEGO COUNTY ROAD SURVEY NO. 45; THENCE SOUTHERLY
ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES
TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE EAST-
WEST CENTER ONE OF SAID SECTION 20; THENCE SOUTH 89°37'17" EAST ALONG SAID
EAST-WEST CENTER SECTION LINE 292.00 FEET, MORE OR LESS TO A POINT OF
INTERSECTION WITH SAID 494.4 FOOT CONTOUR LINE; THENCE NORTHERLY ALONG
SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE
POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE
NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT 606 OF LAKE
SAN MARCOS UNIT NO. 7 ACCORDING TO MAP THEREOF NO. 5958 FILED IN THE OFFICE
OF SAID COUNTY RECORDER; THENCE SOUTH 46°45'00" EAST ALONG SAID
NORTHWESTERLY PROLONGATION 25.00 FEET, MORE OR LESS, TO THE MOST WESTERLY
CORNER OF SAID LOT 606 AND/OR THE MOST NORTHERLY CORNER OF LOT 1 OF
LAKESHORE EAST ACCORDING TO MAP THEREOF NO. 8500 FILED IN THE OFFICE OF SAID
COUNTY RECORDER; THENCE ALONG THE WESTERLY BOUNDARY OF SAID LAKESHORE
EAST, FOLLOWING ITS VARIOUS COURSES SOUTH 17°15'00" WEST 249.00 FEET (RECORDED
NORTH 17°10'46" EAST 249.34 PER MAP NO. 8500); SOUTH 29°49'43" WEST 137.05 FEET
(RECORDED NORTH 29°51'23" EAST PER MAP NO. 8500); SOUTH 26°00'00" WEST 225.83 FEET
(RECORDED NORTH 26°01'40" EAST PER MAP NO. 8500); SOUTH 11°56'32" WEST 140.75 FEET
(RECORDED NORTH 11°58'12" EAST PER MAP NO. 8500); SOUTH 18°34'32" WEST 199.74 FEET
(RECORDED NORTH 18°36'12" EAST PER MAP NO. 8500) THE MOST WESTERLY POINT IN
SAID BOUNDARY OF LAKESHORE EAST AND/OR AN ANGLE POINT IN THE
NORTHWESTERLY BOUNDARY OF SAID LOT 8 COUNTY OF SAN DIEGO TRACT NO. 3730;
THENCE CONTINUING ALONG SAID BOUNDARY OF LAKESHORE EAST AND/OR SAID
BOUNDARY OF LOT 8, FOLLOWING THEIR VARIOUS COURSES, SOUTH 37°38'52" EAST
128.00 FEET (RECORDED NORTH 37°37'12" WEST PER MAP NO. 8500); SOUTH 89°38'52" EAST
65.00 FEET (RECORDED NORTH 89°37'12" WEST PER MAP NO. 8500);NORTH 68°06'22" EAST
103.26 FEET (RECORDED NORTH 68°08'02" EAST PER MAP NO. 8500) TO THE TRUE POINT OF
BEGINNING. ALSO DESCRIBED AS PARCEL "B" ON CERTIFICATE OF COMPLIANCE
RECORDED DECEMBER 13, 1979 AS INSTRUMENT NO. 79-522804, OFFICIAL RECORDS.

TOGETHER WITH THAT LAND DESCRIBED IN THE DEED FROM CHARLES MCMORRIS AND
THEODORA M. MCMORRIS TO CITIZENS DEVELOPMENT CORPORATION RECORDED
FEBRUARY 1, 2007 AS INSTRUMENT NO. 71354 OF OFFICIAL RECORDS.

AND ALSO

TOGETHER WITH THAT LAND DESCRIBED IN THE DEED FROM ROBERT KAHN AND
SHARON KAY INGALLS AS SUCCESSOR TRUSTEES OF THE FALCON TRUST DATED
OCTOBER 28, 1999 TO CITIZENS DEVELOPMENT CORPORATION RECORDED DECEMBER 23,
2008 AS INSTRUMENT NO. 2008-649777.

## LEGAL DESCRIPTION
(continued)

**5205**

EXCEPTING THEREFROM

THAT LAND DESCRIBED IN THE DEED FROM CITIZENS DEVELOPMENT CORPORATION TO CHARLES MCMORRIS & THEODORA MCMORRIS, HUSBAND AND WIFE AS JOINT TENANTS RECORDED FEBRUARY 1, 2007 AS INSTRUMENT NO. 2007-71353.

AND ALSO EXCEPTING THEREFROM

THAT LAND DESCRIBED IN THE DEED FROM CITIZENS DEVELOPMENT CORPORATION TO ROBERT KAHN AND SHARON KAY INGALLS SUCCESSOR TRUSTEES OF THE FALCON TRUST DATED OCTOBER 28, 1999 RECORDED DECEMBER 23, 2008 AS INSTRUMENT NO. 2008-649776 OF OFFICIAL RECORDS.

NOTE: SAID LAND ALSO DESCRIBED AS PARCEL B OF CERTIFICATE OF COMPLIANCE RECORDED MARCH 6, 2008 AS INSTRUMENT NO. 2008-118490.

PARCEL P2:

AN EASEMENT FOR ROAD PURPOSES OVER AND ACROSS THAT PORTION OF SAID LOT8 OF COUNTY OF SAN DIEGO TRACT NO. 3730 IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9090 AS FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 24, 1979 DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID LOT 8, SAID CORNER BEING A POINT IN THE SOUTHWESTERLY LINE OF LA PLAZA DRIVE, 56.00 FEET WIDE, AS SAME IS SHOWN ON SALE MAP NO. 9090; THENCE SOUTH 26°02'59" WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 8 AND ITS SOUTHWESTERLY PROLONGATION A DISTANCE OF 568.90 FEET; THENCE NORTH 68°06'22" EAST 29.68 FEET TO A POINT IN A LINE PARALLEL WITH AND DISTANT SOUTHEASTERLY 20.00 FEET MEASURED AT RIGHT ANGLES FROM SAID NORTHWESTERLY LINE OF SAID LOT 8 AND ITS SOUTHWESTERLY PROLONGATION; THENCE NORTH 26°02'59" EAST ALONG SAID PARALLEL LINE A DISTANCE OF 541.46 FEET TO A POINT IN SAID SOUTHWESTERLY LINE OF LA PLAZA DRIVE; THENCE NORTHWESTERLY ALONG SAID SOUTHWESTERLY LINE OF LA PLAZA DRIVE AND/OR NORTHEASTERLY LINE OF SAID LOT 8 ALONG THE ARC OF A CURVE, CONCAVE TO THE NORTHEAST WITH A RADIUS OF 253.00 FEET FROM AN INITIAL TANGENT THAT BEARS NORTH 51°32'19" WEST THROUGH A CENTRAL ANGLE OF 4°41'06" A DISTANCE OF 20.69 FEET TO THE POINT OF BEGINNING.

PARCEL Q: INTENTIONALLY OMITTED.

ALTA Loan Policy (6-17-06)
72-041-06 (6/06)

Policy No.: 930015956-U50

## LEGAL DESCRIPTION
· (continued)

**5206**

PARCEL R: 221-280-44

THESE PORTIONS OF LOT 380 TO 384 INCLUSIVE OF LAKE SAN MARCOS UNIT NO. 4, IN
THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO.
5338 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY,
DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 381; THENCE NORTH 82°41'50"
EAST 120.68 FEET TO THE SOUTHEASTERLY CORNER OF LOT 380; THENCE NORTH
36°31'35" EAST 11.68 FEET TO THE SOUTHWESTERLY LINE OF THE NORTHEASTERLY 134
FEET OF SAID LOTS 380 AND 381; THENCE ALONG SAID LINE NORTH 53°38'25' WEST 60
FEET TO THE SOUTHEASTERLY LINE OF SAID LOT 382; THENCE NORTHWESTERLY TO A
POINT IN THE SOUTHEASTERLY LINE OF LOT 384 DISTANT THEREON 125 FEET
SOUTHWESTERLY FROM THE MOST EASTERLY CORNER OF LOT 384; THENCE SOUTH
76°38'25" WEST TO THE WESTERLY LINE OF LOT 384; THENCE SOUTH 13°21'35" EAST
ALONG THE WESTERLY LINE OF SAID LOTS 384, 383 AND 381 TO THE POINT OF
BEGINNING.

END OF LEGAL DESCRIPTION

ALTA Loan Policy (6-17-06)
72-041-06 (6/06)

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT    Southern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Citizens Development Corp. | Case Number:<br>10-15-15142-LT11 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Pacific Western TD Fund II, LP | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br><br>Pacific West Realty Group, Attn: Harry Bigham<br>2550 Fifth Avenue, Suite 529, San Diego, CA 92130 | Court Claim Number: 72<br>*(If known)* |
| Telephone number: | Filed on:  9/26/11 |
| Name and address where payment should be sent (if different from above): | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Telephone number: | ☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:          $            875,000.00 | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:**  Guaranties<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:** _____<br><br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). |
| Nature of property or right of setoff:  ☑ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:  See Exhibit A | ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). |
| Value of Property:$ _____ Annual Interest Rate __%<br>See Exhibit A<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $ _____    Basis for perfection:  Deed of Trust | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| Amount of Secured Claim: $   875,000.00   Amount Unsecured: $ _____ | |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*) | Amount entitled to priority:<br><br>$ _____ |
| DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date:<br>9/26/11 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Pacific West TD Fund II, LP by Harry Bigham | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT "F"

**CSD 1001A** [11/15/04]

Name, Address, Telephone No. & I.D. No.

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

CITIZENS DEVELOPMENT CORP.

Debtor.

BANKRUPTCY NO. 10-15142-LT11

Date of Hearing: September 23, 2013
Time of Hearing: 9:30 a.m.
Name of Judge: Hon. Laura S. Taylor

# ORDER ON
# DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __2__ with exhibits, if any, for a total of __2__ pages, is granted.  Motion/Application Docket Entry No. _____

//

//

//

//

//

//

DATED: _____

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Levene, Neale, Bender, Yoo & Brill L.L.P.
(Firm name)

By: /s/ Krikor J. Meshefejian
    Attorney for ☑ Movant ☐ Respondent

CSD 1001A [11/15/04] **(Page 2)**

ORDER ON    DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING

DEBTOR: CITIZENS DEVELOPMENT CORP.                        CASE NO: 10-15142-LT11

A hearing was held on September 23, 2013 at 9:30 a.m. in above-captioned Bankruptcy Court, before the Honorable Laura S. Taylor, for the Court to consider the motion (the "Motion") filed by Citizens Development Corp., Chapter 11 debtor and debtor in possession herein (the "Debtor"), for the entry of an order approving the Debtor's settlement agreement (the "Settlement Agreement") with Pac West TD Fund II, L.P. ("Pac West").  Appearances at the hearing were made as set forth on the record of the Court.

The Court, having considered the Motion, the pleadings filed by the Debtor in support of the Motion, and the entire record of this case, HEREBY FINDS:

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

B. Notice of the Motion was reasonable and appropriate under the circumstances; and

C. The proposed compromises and releases embodied in the Settlement Agreement have been negotiated in good faith and satisfy the requirements of Rule 9019 of the Federal Rules of Bankruptcy Procedure and the factors outlined in Martin v. Kane (In re A & C Properties), 784 F.2d 1377 (9th Cir. 1986); and

   The Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, IT IS HEREBY ORDERED A THAT:

1. The Motion is GRANTED;

2. The Settlement Agreement, a copy of which is attached hereto as Exhibit "1" is approved in all respects;

3. The Debtor is authorized to take all steps necessary to implement, consummate and enforce the terms of the Settlement Agreement;

4. Any dispute arising out of the performance of the terms of the Settlement Agreement shall be resolved by this Court, and this Court hereby retains jurisdiction over the parties to the Settlement Agreement for this purpose.

CSD 1001A

**CSD 1001A** [11/15/04]
Name, Address, Telephone No. & I.D. No.

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

CITIZENS DEVELOPMENT CORP.

Debtor.

BANKRUPTCY NO.  10-15142-LT11

Date of Hearing: September 23, 2013
Time of Hearing: 9:30 a.m.
Name of Judge: Hon. Laura S. Taylor

# ORDER ON
# DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO OBTAIN
# POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through ___2___ with exhibits, if any, for a total of ___2___ pages, is granted.  Motion/Application Docket Entry No. _____

//

//

//

//

//

//

DATED: _____

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Levene, Neale, Bender, Yoo & Brill L.L.P.
(Firm name)

By: /s/ Krikor J. Meshefejian
    Attorney for ☑ Movant ☐ Respondent

CSD 1001A

CSD 1001A [11/15/04] **(Page 2)**

ORDER ON DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR

DEBTOR: CITIZENS DEVELOPMENT CORP.                                    CASE NO: 10-15142-LT11

---

A hearing was held on September 23, 2013 at 9:30 a.m. in above-captioned Bankruptcy Court, before the Honorable Laura S. Taylor, for the Court to consider the motion (the "Motion") filed by Citizens Development Corp., Chapter 11 debtor and debtor in possession herein (the "Debtor"), for the entry of an order authorizing the Debtor to obtain post-petition financing from LSM Lender, LLC (the "Settlement Loan").  Appearances at the hearing were made as set forth on the record of the Court.

The Court, having read and considered the Motion, hereby orders as follows:

1. The Motion is hereby approved and granted in its entirety.

2. The Debtor is hereby authorized to enter into the Settlement Loan transaction in accordance with the terms of the loan documents attached hereto collectively as Exhibit "1".

3.  The "Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing" attached hereto in Exhibit 1 and described in the Settlement Agreement as the "LSM DOT" shall be a valid, perfected, enforceable, first priority lien against said collateral described therein superior to any and all other creditors, excepting therefrom only real estate taxes properly of record on the collateral described in the LSM DOT.

4. In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), necessary for the Debtor's performance under the Settlement Loan documents.

IT IS SO ORDERED.

CSD 1001A

# EXHIBIT "G"

# LOAN AGREEMENT

This Loan Agreement ("<u>Agreement</u>") is made and entered into as of August \_\_\_, 2013 (the "<u>Effective Date</u>"), by and between Citizens Development Corporation, a California corporation ("<u>Borrower</u>"), and LSM Lender LLC, a Delaware limited liability company ("<u>Lender</u>").

1.     <u>RECITALS/UNDERLYING FACTS</u>.

    1.1    <u>Property</u>.  Borrower owns certain real property (the "<u>Property</u>") located in San Marcos, California ("<u>State</u>") located in the County of San Diego ("<u>County</u>") described on **<u>Exhibit A</u>** attached.

    1.2    <u>Loan</u>.  Borrower desires to obtain a loan (the "<u>Loan</u>") from Lender, and Lender has agreed to make the Loan to Borrower, in the amount of $100,000.00 (the "<u>Loan Amount</u>"), on the terms and subject to the conditions set forth in this Agreement.

    1.3    <u>Note</u>.  Borrower's obligation to repay the Loan will be evidenced by a Promissory Note Secured by Deed of Trust (the "<u>Note</u>"), payable to the order of Lender in an original principal amount equal to the Loan Amount, with a maturity date of August \_\_\_, 2017 (the "<u>Maturity Date</u>").

    1.4    <u>Deed of Trust</u>.  The Note and Borrower's obligations under this Agreement will be secured by a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing encumbering the Property (the "<u>Deed of Trust</u>") and Security Agreement ("<u>Security Agreement</u>") encumbering Borrower's assets (the "<u>Assets</u>").

    1.5    <u>Loan Documents</u>.  This Agreement, the Note, the Deed of Trust, Security Agreement and other documents and instruments executed by Borrower in connection with the Loan are individually referred to as a "<u>Loan Document</u>" or collectively referred to as the "<u>Loan Documents</u>."

2.     <u>THE LOAN; CLOSING</u>.

    2.1    <u>Loan</u>.  Lender agrees to lend to Borrower, and Borrower agrees to borrow from Lender, the Loan Amount.

    2.2    <u>Closing</u>.  The closing and funding of the Loan (the "<u>Closing</u>") shall occur on or before _____, 2013 (the "<u>Outside Closing Date</u>"), subject to satisfaction of the conditions set forth in <u>Section 3</u> below.

    2.3    <u>Lender and Closing Costs</u>.  Borrower shall pay or reimburse Lender for all legal fees and costs incurred in connection with the Loan, including legal fees and costs incurred in preparing and negotiating this Agreement and the other Loan Documents, and shall pay all closing costs incurred in connection with the Loan, including escrow fees, title insurance premiums, transfer taxes, and recording and filing fees.

3.     <u>CONDITIONS TO LOAN</u>.

Lender's obligation to make the Loan and consummate the Closing is conditioned on satisfaction of the following conditions:

    3.1    <u>Receipt of Loan Documents</u>.  Lender shall have received the following documents:

        (a)    this Agreement, executed by Borrower;

        (b)    the Note, executed by Borrower;

      (c)     the Deed of Trust, executed by Borrower and with signature acknowledged by a notary public;

      (d)     the Security Agreement, executed by Borrower; and

      (e)     UCC-1 Financing Statements to be filed with the California Secretary of State and the Delaware Secretary of State, reflecting Lender's security interest in any personal property of Borrower.

3.2    <u>Recording of Deed of Trust</u>.  The Deed of Trust shall have been recorded in the Official Records of the County.

3.3    <u>Loan Title Policy</u>.  Lender shall have received, at Borrower's expense, an ALTA Loan Policy of Title Insurance (the "<u>Title Policy</u>"), with a liability equal to the Loan Amount, and with coverage and in form satisfactory to Lender, insuring the Deed of Trust as a valid first priority lien on the Property, together with such endorsements to the Title Policy as Lender may require, and containing only such exceptions from its coverage as shall have been approved in writing by Lender (the "<u>Title Policy</u>"), issued by Chicago Title Insurance Company or other title insurance company acceptable to Lender (the "<u>Title Insurer</u>").

3.4    <u>Insurance Policies</u>.  Borrower shall have delivered to Lender, and Lender shall have approved, certificates of insurance evidencing the insurance required by in <u>Section 4</u> below.

3.5    <u>UCC Search</u>.  Lender shall have received, at Borrower's expense, the results of a UCC search, dated no earlier than five days before Closing, reflecting no liens, security interests, leases, assignments or other encumbrances affecting the Assets.

4.    <u>INSURANCE</u>.

4.1    <u>Borrower's Insurance</u>.  Borrower shall, at Borrower's expense, insure and keep insured the Property against such perils and hazards, and in such amounts and with such limits, as is customary for Properties of similar size and scope; in any event, such insurance shall include:

4.1.1    <u>Casualty Insurance</u>.  Insurance against loss or damage to the Property on an "All Risk" form.  Such policy shall be in an amount equal to the full replacement cost of the Property.  Such policies shall also contain a 100% co-insurance clause with an agreed amount endorsement (with such amount to include the replacement cost of the foundation and any underground pipes).

4.1.2    <u>General Liability</u>.  Commercial general liability insurance against death, bodily injury and property damage arising in connection with the Property.  Such policy shall be written on a 1986 Standard "ISO" occurrence basis form or equivalent form, shall list Borrower as the named insured, shall designate the location of the Property and have such limits as Lender may reasonably require, but in no event less than $2,000,000 per occurrence and $4,000,000 in aggregate.

4.2    <u>Policy Requirements</u>.  All insurance required by this <u>Section 4</u> shall (a) be carried with companies with a Best's rating of B+VIII or better, or otherwise acceptable to Lender; (b) provide 30 days' advance written notice to Lender before any cancellation, adverse material modification or non-renewal; and (c) to the extent limits are not otherwise specified herein, contain customary deductibles in amounts acceptable to Lender.

4.2.1    All physical damage policies and renewals shall contain (a) a standard mortgage clause naming Lender as mortgagee, expressly stating that any breach of any condition or warranty by Borrower shall not prejudice the rights of Lender under such insurance; and (b) a loss payable clause in favor of Lender on

ISO's Loss Payable Provisions Endorsement form (CP 12 18) or equivalent.  No additional parties shall appear in the mortgage or loss payable clause.  Borrower shall not carry any separate insurance on the Property concurrent in kind or form with any insurance required hereunder, or contributing in the event of loss without Lender's prior written consent, and any such policy shall have attached a standard non-contributing mortgagee clause, with loss payable to Lender, and shall otherwise meet all other requirements set forth herein.

4.2.2    All liability policies and renewals shall name Lender as an additional insured, either in the policy or by separate endorsement.  All certificates of insurance and "blanket" insurance policies shall reference the Property by name and address.

4.2.3    All deductibles shall be in amounts acceptable to Lender.  In the event of foreclosure of the Deed of Trust or any other transfer of title to the Property in full or partial satisfaction of the Loan, all rights, title and interest of Borrower in and to all insurance policies and renewals thereof then in force shall pass to the purchaser or grantee.

4.3    <u>Evidence of Insurance</u>.  Borrower shall deliver or caused to be delivered to Lender before the Closing and from time to time thereafter (on renewal of any insurance policy or as requested by Lender) evidence of all insurance required by this <u>Section 4,</u> by delivering to Lender certificates of insurance satisfying the requirements of this <u>Section 4</u>.  Borrower shall use its best efforts to deliver evidence of all renewals or replacement policies to Lender at least 15 days before the expiration of existing policies and, in any event, Borrower shall deliver evidence of all renewals or replacement policies to Lender at least five days before the expiration of existing policies.  If Lender has not received satisfactory evidence of such renewal or replacement insurance policies by such date, Lender shall have the right, but not the obligation, to purchase such insurance for Lender's interest only, at Borrower's expense.  Any amounts so disbursed by Lender pursuant to this <u>Paragraph 4.3</u> shall be a part of the debt secured by the Deed of Trust and shall bear interest at the Default Rate under the Note.  Nothing contained in this <u>Paragraph 4.3</u> shall require Lender to incur any expense or take any action hereunder, and inaction by Lender shall never be considered a waiver of any right accruing to Lender on account of this <u>Paragraph 4.3</u>.

4.4    <u>Notice of Casualty</u>.  Borrower shall give to Lender immediate notice of any loss occurring on or with respect to the Property.

4.5    <u>Application of Proceeds</u>.

4.5.1    If all or any part of the Property is damaged or destroyed by fire, earthquake or other casualty, or damaged or taken through the exercise of the power of eminent domain or other cause, Lender shall be reimbursed for all costs and expenses incurred to collect such proceeds and thereafter hold and disburse to Borrower the net insurance proceeds, award or other compensation, proceeds from insurance (collectively, the "<u>Proceeds</u>"), and Borrower shall promptly and with all due diligence restore and repair the Property.  Lender may require that all plans and specifications for such restoration or repair be submitted to and approved by Lender in writing prior to commencement of the work.  Lender shall apply excess Proceeds, if any, to the Loan in such order and manner as Lender may elect.  Borrower hereby expressly acknowledges and agrees that the insurance subject to the requirement that Lender hold and disburse to Borrower net insurance proceeds includes all casualty insurance obtained by Borrower in connection with the Property, including without limitation earthquake insurance, whether such casualty insurance is required or not required by Lender.

4.5.2    If the Proceeds are insufficient to restore the Property in such a fashion that Lender's security interest therein remains unimpaired, then at Lender's election, to be exercised by written notice to Borrower within 30 days following Lender's unrestricted receipt in cash or the equivalent thereof of the Proceeds, the entire amount of the Proceeds shall either (a) be applied to the Loan in such order and manner as Lender may elect or (b) be made available to Borrower on the terms and conditions set forth in this <u>Paragraph 4.5</u> to finance the cost of restoration or repair.

4.5.3    The amount of the Proceeds to be made available to Borrower, together with any deposits made by Borrower hereunder, shall be held by Lender to be disbursed from time to time to pay the cost of repair or restoration either, at Lender's option, to Borrower or directly to contractors, subcontractors, material suppliers and other persons entitled to payment in accordance with and subject to such conditions to disbursement as Lender may impose to assure that the work is fully completed in a good and workmanlike manner and paid for, and that no liens or claims arise by reason thereof.  Lender may require (a) evidence of the estimated cost of completion of such restoration or repair satisfactory to Lender and (b) such architect's certificates, waivers of liens, contractor's sworn statements, title insurance endorsements, plats of survey and other evidence of cost, payment and performance as are acceptable to Lender.  If Lender requires mechanics' and materialmen's lien waivers in advance of making disbursements, such waivers shall be deposited with an escrow trustee acceptable to Lender pursuant to a construction loan escrow agreement satisfactory to Lender.  No payment made prior to final completion of the repair or restoration shall exceed 90% of the value of the work performed from time to time.  Lender shall not commingle any such funds held by it with its other general funds.  Lender shall not be obligated to pay interest in respect of any such funds held by it, nor shall Borrower be entitled to a credit against any portion of the Loan, except and to the extent the funds are applied thereto pursuant to this <u>Section 4.5</u>.  Without limitation of the foregoing, Lender shall have the right at all times to apply such funds to the cure of any Event of Default, or the performance of any obligations of Borrower under the Loan Documents.

5.    <u>REPRESENTATIONS AND WARRANTIES OF BORROWER</u>.

Borrower represents and warrants to Lender as follows:

5.1    <u>Organization</u>.  Borrower is a corporation, duly organized and validly existing under the laws of the State of California.

5.2    <u>Power and Authority</u>.  Borrower has full power and authority to execute the Loan Documents, to consummate the transactions contemplated by the Loan Documents, and to pay, perform and comply with its obligations under the Loan Documents.

5.3    <u>Due Execution and Enforceability</u>.  The Loan Documents have been duly and validly executed by Borrower and constitute the legal, valid and binding obligations of Borrower, enforceable in accordance with their respective terms, except as such enforcement may be qualified or limited by bankruptcy, insolvency or other similar laws affecting creditors' rights generally.

5.4    <u>No Violations or Defaults under Existing Agreements</u>.  Borrower is not in violation of any law, regulation or ordinance, or any order of any court or governmental authority.  The consummation of the transactions contemplated hereby and the performance by Borrower of its obligations under the Loan Documents will not result in any breach of, or constitute a default under, any agreement or instrument to which is a party, or by which Borrower may be bound or affected.

5.5    <u>Not a Foreign Person</u>.  Borrower is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended from time to time.

6.    <u>COVENANTS OF BORROWER</u>.

Borrower hereby covenants and agrees as set forth below; such covenants and agreements shall survive repayment of the Loan or any termination of this Agreement.

6.1    <u>General Indemnity</u>.  Borrower shall, at Borrower's expense, indemnify, protect, defend (with counsel acceptable to Lender) and hold Lender harmless from and against any and all claims, demands, causes

of action (whether legal or equitable in nature), damages, liabilities, losses and expenses (including court costs and reasonable attorneys' fees and expenses), relating to the Loan, the Property or the Assets.

6.2    <u>Indemnity for Claims of Contractors</u>.  Lender shall not be liable to any Contractor, or to any subcontractors, suppliers, laborers or others for materials or services provided to or for the Property. Borrower is not and shall not be considered to be the agent of Lender for any purpose.  Borrower shall, at Borrower's expense, indemnify, protect, defend (with counsel acceptable to Lender) and hold Lender harmless from and against any and all claims, demands, causes of action (whether legal or equitable in nature), damages, liabilities, losses and expenses (including court costs and reasonable attorneys' fees and expenses), arising in connection with claims of any Contractor, or to any subcontractors, suppliers, laborers or others for materials or services provided to or for the Property.

6.3    <u>Environmental Covenants</u>.

6.3.1    <u>Definitions</u>.  For purposes of this Agreement, the following capitalized terms shall have the meanings set forth below:

"<u>Environmental Action</u>" shall mean:

(a)    any notice of violation, complaint, claim, citation, demand, inquiry, report, action, assertion of potential responsibility, lien, encumbrance, or proceeding regarding the Property, whether formal or informal, absolute or contingent, matured or unmatured, brought or issued by any governmental unit, agency, or body, or any person or entity respecting (i) any Environmental Law; (ii) the environmental condition of the Property, or any portion thereof, or any property near the Property, including actual or alleged damage or injury to humans, public health, wildlife, biota, air, surface or subsurface soil or water, or other natural resources; or (iii) any Hazardous Activity on the Property or off-site;

(b)    any violation or claim of violation by Borrower of any Environmental Law whether or not involving the Property;

(c)    any lien for damages caused by, or the recovery of any costs incurred by any person or entity, including any governmental entity, for the investigation, remediation or cleanup of any Hazardous Release or threatened Hazardous Release on the Property; or

(d)    the destruction or loss of use of property, or the injury, illness or death of any officer, director, employee, agent, representative, tenant or invitee of Borrower or any other person alleged to be or possibly to be arising from or caused by the environmental condition of the Property or any Hazardous Activity on the Property.

"<u>Environmental Laws</u>" shall mean:

(a)    any present or future Federal statute, law, code, rule, regulation, ordinance, order, standard, permit, license, guidance document or requirement (including consent decrees, judicial decisions and administrative orders) together with all related amendments, implementing regulations and re-authorizations, pertaining to the protection, preservation, conservation or regulation of the environment, including, but not limited to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Re-authorization Act, 42 *U.S.C.* Sections 9601 *et seq.* (respectively, "<u>CERCLA</u>" and "<u>SARA</u>"); the Resource Conservation and Recovery Act of 1976, 42 *U.S.C.* Sections 6901 *et seq.* ("<u>RCRA</u>"); the Toxic Substances Control Act, 15 *U.S.C.* Sections 2601 *et seq.* ("<u>TOSCA</u>"); the Clean Air Act, 42 *U.S.C.* Sections 7401 *et seq.*; the

Clean Water Act, 33 *U.S.C.* Sections 1251 *et seq.*; and the Hazardous Materials Transportation Act, 49 *U.S.C.* Sections 1801 *et seq.* ("HMTA");

(b)    any present or future state or local statute, law, code, rule, regulation, ordinance, order, standard, permit, license or requirement (including consent decrees, judicial decisions and administrative orders), together with all related amendments, implementing regulations and re-authorizations, pertaining to the protection, preservation, conservation or regulation of the environment."

"Hazardous Activity" shall mean any use, exposure, Hazardous Release, generation, manufacture, sale, transport, handling, storage, treatment, reuse, presence, decontamination, clean-up or recycling of any Hazardous Substance.

"Hazardous Substances" shall mean (i) all substances defined as "hazardous substances", "hazardous materials", "toxic substances", "hazardous wastes" or "solid waste" in CERCLA, SARA, RCRA, TOSCA or HMTA; (ii) those substances listed in the United States Department of Transportation Table (49 C.F.R. 172.101 and amendments thereto) or by the Environmental Protection Agency (or any successor agency) as "hazardous substances" (40 C.F.R. Part 302 and amendments thereto); (iii) those substances defined as "hazardous wastes" in Section 25117 of the *California Health and Safety Code* or as "hazardous substances" in Section 25316 of the *California Health and Safety Code*, and in the regulations adopted and publications promulgated pursuant to such laws or which otherwise are or become regulated by any governmental authority, agency, department, commission, board or instrumentality of the United States of America, the State of California or any political subdivision thereof; (iv) any hazardous, dangerous or toxic chemical, material, waste, pollutant, contaminant or substance (collectively, "Pollutants") within the meaning of any Environmental Law prohibiting, limiting or otherwise regulating any Hazardous Activity relating to any such Pollutant; (v) any petroleum, crude oil, or fraction or by-product thereof; (vi) any radioactive material,  including any source, special nuclear or by-product material as defined at 42 U.S.C. Sections 2011 *et seq.*, as amended or hereafter amended, and in the regulations adopted and publications promulgated pursuant to such law; (vii) asbestos-containing materials in any form or condition; and (viii) polychlorinated biphenyls in any form or condition.

"Hazardous Release" shall mean the release of Hazardous Substances into the environment by any means whatsoever, including but not limited to any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping removing or disposing (including the abandonment or discarding of barrels, containers and other receptacles containing any Hazardous Substance).

6.3.2    Compliance with Environmental Laws.  Borrower shall comply, and shall cause the Property and all employees, agents, contractors and subcontractors of Borrower and any other persons occupying or present on the Property, to comply with all Environmental Laws.  All required Permits shall be obtained and shall remain in effect, and Borrower shall comply therewith.  All Hazardous Substances present, handled or generated on the Property shall be disposed of in a lawful manner without giving rise to liability under any Environmental Laws. Borrower shall satisfy all requirements of applicable Environmental Laws for the registration, operation, maintenance, closure and removal of all underground storage tanks on the Property, if any.  Without limiting the foregoing, all Hazardous Substances shall be handled, and all Hazardous Activity shall be conducted, in compliance with all applicable Environmental Laws.

6.3.3    Environmental Actions.    Borrower shall immediately notify Lender of all Environmental Actions and shall provide copies, within two business days of receipt, of all written notices, complaints, correspondence, or other documents relating thereto.  Borrower shall keep Lender informed of all actions Borrower takes in connection with such Environmental Actions.  Borrower shall promptly cure and have dismissed with prejudice all Environmental Actions in a manner satisfactory to Lender, and Borrower shall keep

the Property free of any encumbrance arising from any judgment, liability or lien imposed pursuant to any Environmental Actions.  Notwithstanding the foregoing sentence, Borrower may, diligently, in good faith and by appropriate legal proceedings, contest any Environmental Action, provided (i) Borrower first furnishes to Lender such deposits or other collateral as Lender, in its sole discretion, deems sufficient to fully protect Lender's interests; (ii) such contest shall have the effect of preventing any threatened or pending sale or forfeiture of all or any portion of the Property arising from such Environmental Action or the loss or impairment of Lender's lien and security interests in and to the Property; and (iii) such contest shall not cause Lender to incur any liability, in Lender's sole judgment.  Borrower shall permit Lender, at Lender's option, to appear in and to be represented in any such contest and shall pay upon demand all expenses incurred by Lender in so doing, including attorneys' fees.

6.3.4    Environmental Indemnity.

(a)    Borrower shall, at Borrower's expense, indemnify, protect, defend (with counsel acceptable to Lender) and hold harmless Lender and its Affiliates (as defined below) from and against any and all claims, demands, causes of action (whether legal or equitable in nature), damages, liabilities, losses and expenses (including court costs and reasonable attorneys' fees and expenses) arising from or in connection with (i) any Hazardous Substance or Hazardous Activity on, in, under or affecting all or any portion of the Property, or any surrounding areas; (ii) any breach of any covenant or agreement contained or referred to in Section 6.3 hereof; (iii) any claimed or actual violation by Borrower of, or liability of Borrower under, any Environmental Laws; (iv) the imposition of any lien for damages caused by, or the recovery of any costs for the cleanup, release or threatened release of, Hazardous Substances; or (iv) any Environmental Actions.

(b)    The foregoing indemnification, defense and hold harmless obligations shall (i) apply to administrative or judicial proceedings or orders, remedial action requirements and enforcement actions of any kind, (ii) include lost profits, consequential damages, exemplary or punitive damages, diminution in value of the Property, damages for the loss or restriction of use of the Property, damages arising from any adverse impact on marketing the Property and sums paid in settlement of claims), fees and expenses of consultants and experts incurred in investigating any claim, (iii) include any entity controlling, controlled by or under common control with Lender, and their members, managers, partners, shareholders, directors, officers, employees and other agents (collectively, "Affiliates"), and (iv) apply to any residual contamination on or under the Property, or affecting any natural resources, and to any contamination of any property or natural resources arising in connection with any Hazardous Activity, and irrespective of whether any of such Hazardous Activities were or will be undertaken in accordance with applicable Environmental Laws.

(c)    Borrower, on behalf of itself and its successors and assigns, hereby waives, releases and agrees not to make any claim or bring any cost recovery action against Lender under or with respect to any Environmental Laws.  Borrower's obligation to Lender under this indemnity shall likewise be without regard to fault on the part of Borrower or Lender with respect to the violation or conditions which results in liability to Lender.

7.    DEFAULT.

The occurrence of any of the following events shall be an event of default (each, an "Event of Default") under this Agreement:

7.1    Failure to Pay Money.  Borrower fails to timely pay any monetary payment as required by this Agreement or any other Loan Document (including Borrower's obligation to make payments under the Note), after giving effect to any express notice or cure provisions (if any) set forth in this Agreement or the applicable Loan Document.

7.2    <u>Failure to Perform Other Obligations in this Agreement</u>.    Borrower fails to timely and completely perform or comply with any obligation of Borrower in this Agreement (other than any obligation to pay money or any other breach or default described elsewhere in this <u>Section 7</u>), and such failure continues for ten business days after written notice to Borrower from Lender specifying the nature thereof.

7.3    <u>Failure to Perform Other Obligations in Other Loan Documents</u>.    Borrower fails to timely and completely perform or comply with any obligation of Borrower in any of the Loan Documents other than this Agreement (other than any obligation to pay money or any other breach or default described elsewhere in this <u>Section 7</u>), after giving effect to any express notice or cure provisions set forth therein (if any).

7.4    <u>Representation or Warranty</u>.    Breach of any representation or warranty by Borrower to Lender in any of the Loan Documents.

7.5    <u>Accelerating Transfer</u>.    Borrower sells, conveys or otherwise transfers, or further encumbers, the Property or any part of or interest in it, without the prior written approval of Lender, or the transfer, either individually or on cumulative basis, of 50% or more of the interests in profits or voting power of Borrower, without the prior written approval of Lender (each, an "<u>Accelerating Transfer</u>").

7.6    <u>Failure to Maintain Insurance</u>.    Borrower fails to keep in full force and effect any policy or policies of insurance required hereunder.

7.7    <u>Dissolution</u>.    Borrower dissolves or commences dissolution proceedings.

7.8    <u>Insolvency</u>.    Borrower becomes insolvent or unable to pay its debts as they mature.

7.9    <u>Assignment for Benefit of Creditors or Voluntary Petition in Bankruptcy</u>.    Borrower makes an assignment for the benefit of creditors, or a receiver is appointed for the Property or Borrower files a petition in bankruptcy or other similar proceeding for relief of debtors.

7.10    <u>Involuntary Petition in Bankruptcy</u>.    A petition in bankruptcy or other similar proceeding under law for relief of debtors is filed against Borrower, and such petition is not dismissed within 60 days after the filing thereof.

8.    <u>REMEDIES</u>.

8.1    <u>Actions on Event of Default</u>.    If any Event of Default occurs, Lender may, in addition to any other rights or remedies of Lender under the Loan Documents or applicable law (all of which rights and remedies shall be cumulative), at the option of Lender in its sole discretion and without notice or demand:

8.1.1    <u>Acceleration</u>.    Declare the Note immediately due and payable, including the outstanding principal balance, and all accrued but unpaid interest.

8.1.2    <u>Possession</u>.    Enter and take possession of the Property and the Assets or any portion thereof, whether in person, by agent or by court-appointed receiver.    The exercise by Lender of any of the rights or remedies provided in this <u>Subparagraph 8.1.2</u> shall not make Lender, or cause Lender to be deemed to be, a partner or joint venturer of Borrower.

8.2    <u>Cross-Default to Note, Deed of Trust, Security Agreement and Other Loan Documents</u>.    At the option of Lender, any Event of Default under this Agreement shall constitute a default under the Note, the Deed of Trust, the Security Agreement and each of the other Loan Documents, to the same extent as though the Note had by its own terms become due and payable at maturity and payment thereof had been refused, and in such event Lender may, without liability to Borrower, assert and exercise any and all rights and remedies provided for herein or in the Note, the Deed of Trust, the Security Agreement or any of the other Loan Documents or

otherwise as may be provided by law.  Such rights and remedies may be asserted concurrently or successively from time to time (either before or after commencement of foreclosure proceedings or before or after the exercise of any other remedy of Lender) until the Note, including interest thereon, and all other indebtedness of Borrower to Lender under this Agreement and the other Loan Documents, have been paid in full.

8.3    Provisional Remedies, Self-Help and Foreclosure.  No provision of this Section 8 shall limit the right of any party to this Agreement to exercise self-help remedies such as setoff, foreclosure against or sale of any real or personal property collateral or security, or to obtain provisional or ancillary remedies from a court of competent jurisdiction before, after, or during the pendency of any arbitration or other proceeding.  The exercise of a remedy does not waive the right of either party to resort to arbitration or reference.  At Lender's option, foreclosure under a deed of trust or mortgage may be accomplished either by exercise of power of sale under the Deed of Trust or by judicial foreclosure.

9.    GENERAL PROVISIONS.

9.1    Notices.  All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed duly given (i) on the date of delivery if delivered (a) personally, (b) by a recognized overnight delivery service with confirmation of delivery, or (c) by facsimile or electronic mail with a telephone or electronic confirmation of receipt, or (ii) three business days after mailing if mailed by first-class mail, postage prepaid, to the parties at their addresses set forth below, or such other address designated from time to time in writing by such party to all other parties.

> *Borrower:*
>
> Citizens Development Corporation
> Attention: Mr. Pino Vitti
> 1105 La Bonita Drive
> San Marcos, CA 92078
> Fax No.: (____) _____
>
> *Lender:*
>
> LSM Lender, LLC
> Attention: Mr. Dario De Luca
> 5505 Cancha de Golf
> Rancho Santa Fe, California 92091
> Fax No.: (858) 755-1212]

9.2    Successors and Assigns.  Subject to the restrictions on assignment set forth below, the terms of this Agreement shall be binding on and inure to the benefit of the heirs, legal representatives, successors and assigns of the parties.

9.3    Assignment.  Borrower may not assign this Agreement or any Loan funds, or assign or delegate any of its rights or obligations under this Agreement, without the prior written approval of Lender in its sole discretion.  Lender may sell or otherwise transfer the Loan without the consent of Borrower, and may sell or otherwise transfer participations or other interests in the Loan without notice to or the consent of Borrower. Lender may disclose to any actual or prospective purchaser or other transferee of the Loan, or any participation or other interest in the Loan, any financial or other information in Lender's possession relating to Borrower, the Loan or the Property.

9.4    Waivers.  No delay or omission of Lender in exercising any right or power arising from any Event of Default shall be construed as a waiver of or acquiescence to such default, nor shall any single or partial exercise of any right or power preclude any further exercise thereof or the exercise of any other right or power

arising from any Event of Default.  No waiver of any breach of this Agreement shall be construed to be a waiver of or acquiescence to any previous or subsequent breach.

9.5    Construction.  This Agreement has been negotiated at arm's length and each party has been, or has had the opportunity to be, represented by legal counsel.  Accordingly, any rule of law (including *California Civil Code* Section 1654) or legal decision that would require interpretation of any ambiguities in this Agreement against the party drafting it is not applicable and is waived.

9.6    Interpretation.  As used in this Agreement, (a) "business day" means a day other than a Saturday, Sunday or holiday on which Federal banks are closed, and if any date or time period provided for in this Agreement is or ends on a day other than a business day, then such date shall automatically be extended until the next business day; and  (b) the term "includes" or "including" or similar words shall not limit the preceding words or terms and shall be interpreted to include the words "without limitation."  Reference in this Agreement to any statute shall include any successor provisions.  The captions of the sections and paragraphs in this Agreement shall not define, limit, extend or describe the scope of this Agreement or the intent of any of its provisions.

9.7    Context.  When the context and construction so require, singular nouns and pronouns, when used herein, are deemed to include the plural of such noun or pronoun, and nouns or pronouns of the neuter or one gender or are deemed to include the equivalent pronoun of the other gender or the neuter.

9.8    Attorneys' Fees.  If any lawsuit, arbitration or other legal proceeding (including bankruptcy and insolvency proceedings, such as in connection with seeking relief from stay in a bankruptcy proceeding) is commenced to enforce or interpret any of the terms of this Agreement, the prevailing party shall have the right to recover from the other party reasonable attorneys' fees and other costs incurred in connection with such proceeding, including any appeal or enforcement of any judgment or decision rendered in such proceeding.

9.9    No Third Party.  This Agreement is made for the sole benefit of Borrower and Lender and Lender's successors and assigns, and no other person or persons shall have any rights or remedies under or by reason of this Agreement or any right to the exercise of any right or power of Lender hereunder or arising from any Event of Default.

9.10    Governing Law and Severability.  This Agreement and all of the other Loan Documents (except as otherwise expressly provided therein) shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflicts of law principles.  If any provision of this Agreement is invalid or unenforceable, such provision shall (i) be modified to the minimum extent necessary to render it valid and enforceable, or (ii) if it cannot be so modified, be deemed not to be a part of this Agreement and shall not affect the validity or enforceability of the remaining provisions.

9.11    Venue and Jurisdiction.    All proceedings to enforce or interpret this Agreement shall be commenced and maintained only in San Diego County, California.  Borrower hereby consents to personal jurisdiction in California for purposes of such proceedings.

9.12    Entire Agreement and Amendment.  This Agreement and the other Loan Documents constitute the entire understanding between the parties with respect to the Loan, and supersede all prior written or oral understandings, and may not be modified or amended except by a written agreement signed by both Lender and Borrower.  Borrower acknowledges that this Agreement and the other Loan Documents accurately reflect the agreements and understandings of the parties with respect to the Loan and waives any claims against Lender which Borrower may now have or may hereafter acquire to the effect that the actual agreements and understandings of the parties with respect to the Loan may not be accurately set forth in this Agreement and the other Loan Documents.

9.13     <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, all of which together shall constitute a one binding agreement, and each counterpart shall be deemed to be an original instrument.

9.14     <u>Time of Essence</u>.  Time of the essence under this Agreement and each of its terms and conditions.

<u>*Borrower*</u>:

Citizens Development Corporation,
a California corporation,

By: _____

Name: _____

Title: _____

<u>*Lender*</u>:

LSM Lender, LLC,
a Delaware limited liability company

By:      Pacifica Enterprises, Inc.,
         a California corporation,
         Its Manager

         By: _____

         Name: _____

         Title: _____


         By: _____

         Name: _____

         Title: _____

## <u>EXHIBIT A</u>

## LEGAL DESCRIPTION

# LEGAL DESCRIPTION

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A:  INTENTIONALLY OMITTED

PARCEL B:  INTENTIONALLY OMITTED

PARCEL C:  INTENTIONALLY OMITTED

PARCEL D: INTENTIONALLY OMITTED

PARCEL E: (221-500-35, 222-031-06)

THAT PORTION OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 16, THE EAST QUARTER OF SECTION 20, THE WEST HALF OF THE NORTHWEST QUARTER OF SECTION 21 IN TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTER LINE OF SAN MARINO DRIVE AND LA BONITA DRIVE, IN THE LAKE SAN MARCOS UNIT NO. 1, ACCORDING TO MAP THEREOF NO. 5137, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE SOUTHERLY PROLONGATION OF SAID CENTER LINE OF LA BONITA DRIVE, SOUTH 0°42'33" EAST 30.00 FEET TO THE SOUTHERLY LINE OF SAID SAN MARINO DRIVE; THENCE ALONG SAID SOUTHERLY LINE SOUTH 89°20'50" WEST 20.00 FEET; THENCE ALONG A LINE WHICH IS PARALLEL WITH AND 20.00 FEET WESTERLY AT RIGHT ANGLES FROM SAID SOUTHERLY PROLONGATION OF THE CENTER LINE OF LA BONITA DRIVE, SOUTH 04°42'33" EAST 400.25 FEET TO THE BEGINNING OF A TANGENT 275.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHERLY ALONG SAID CURVE 366.08 FEET THROUGH AN ANGLE OF 76°16'20" THENCE SOUTH 0°43'27" EAST 277.84 FEET, THENCE NORTH 89°16'33" EAST 362.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 89°16'33" WEST 37.00 FEET; THENCE SOUTH 0°43'27" EAST 130.00 FEET TO THE BEGINNING OF A TANGENT 130.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 204.20 FEET THROUGH AN ANGLE OF 90°00'; THENCE TANGENT TO SAID CURVE SOUTH 89°16'33" WEST 390.00 FEET; THENCE SOUTH 0°43'27" EAST 280.00 FEET; THENCE NORTH 89°16'33" EAST 270.00 FEET TO THE BEGINNING OF A TANGENT 130.00 FOOT RADIUS CURVE, CONCAVE WESTERLY; THENCE SOUTHEASTERLY, SOUTHERLY AND SOUTHWESTERLY

# LEGAL DESCRIPTION
(continued)

ALONG SAID CURVE 408.41 FEET THROUGH AN ANGLE OF 180°00'; THENCE TANGENT TO SAID CURVE SOUTH 89°16'33" WEST 365.00 FEET; THENCE SOUTH 0°43'27" EAST 145.00 FEET; THENCE SOUTH 51°05'50" EAST 505.00 FEET MORE OR LESS TO A POINT OF INTERSECTION WITH THE 494.4 FOOT CONTOUR LINE AS ESTABLISHED WHEN THE SURFACE OF THAT CERTAIN BODY OF WATER KNOWN AS LAKE SAN MARCOS IS LEVEL WITH THE SPILLWAY CREST OF THAT CERTAIN DAM CONSTRUCTED ACROSS AND IN SAN MARCOS CREEK AND KNOWN TO THE STATE OF CALIFORNIA DEPARTMENT OF WATER RESOURCES AS SAN MARCOS DAM, STATE NO. 848, SAID 494.4 FOOT CONTOUR LINE BEING FURTHER QUALIFIED AS A HORIZONTAL PLANE AS 494.4 FEET ABOVE SEA LEVEL, THE TERM "SEA DESIGNATING THAT CERTAIN DATUM PLANE OR POINT WHICH IS 564.07 FEET VERTICALLY BELOW CERTAIN BENCH MARK CONSISTING OF A STANDARD UNITED STATES COASTAL AND GEODETIC SURVEY DISK STAMPED "L 302 1935" AND SET IN THE TOP OF A CONCRETE POST LOCATED 30.00 FEET RIGHT OF STATION 57 PLUS 85 OF SAN DIEGO COUNTY ROAD SURVEY NO. 454; THENCE SOUTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE WESTERLY END OF THE UPSTREAM FACE OF SAID SAN MARCOS DAM; THENCE EASTERLY ALONG THE UPSTREAM FACE OF SAID SAN MARCOS DAM AND SAID 494.4 FOOT CONTOUR LINE TO THE EASTERLY END OF SAID DAM AT ITS INTERSECTION WITH SAID 494.4 FOOT CONTOUR LINE; THENCE NORTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT NO. 606 OF LAKE SAN MARCOS UNIT NO. 7, ACCORDING TO MAP THEREOF NO. 5958, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE SOUTH 46°45'00" EAST ALONG SAID NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT NO. 606, A DISTANCE OF 22 FEET MORE OR LESS, TO THE MOST WESTERLY CORNER OF SAID LOT NO. 606; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 7 AS FOLLOWS:

NORTH 43°15' EAST 94.95 FEET; NORTH 76°38'25" EAST 617.94 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.00 FEET TO THE BEGINNING OF A TANGENT 163.50 FOOT RADIUS CURVE, CONCAVE EASTERLY; THENCE NORTHWESTERLY, NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE AND THE EASTERLY EXTENSION THEREOF 513.65 FEET THROUGH AN ANGLE OF 180°00'; THENCE TANGENT TO SAID CURVE NORTH 76°38'25" EAST 5.02 FEET TO THE MOST WESTERLY CORNER OF LOT 530 OF LAKE SAN MARCOS UNIT NO. 6, ACCORDING TO MAP NO. 5551, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 6 AS FOLLOWS:

NORTH 76°38'25" EAST 465.00 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.02 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE EASTERLY, HAVING A RADIUS OF 163.50 FEET; NORTHWESTERLY, NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE 513.65 FEET THROUGH AN ANGLE OF 180°00' AND TANGENT TO SAID CURVE NORTH 76°38'25" EAST 35.00 FEET TO THE NORTHWESTERLY CORNER OF LOT 445 OF LAKE SAN MARCOS UNIT NO. 5, ACCORDING TO MAP THEREOF NO. 5447, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 5 AS FOLLOWS:

# LEGAL DESCRIPTION
(continued)

NORTH 76°38'25" EAST 435.00 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.00 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE NORTHEASTERLY HAVING A RADIUS OF 163.50 FEET; AND NORTHWESTERLY ALONG SAID CURVE 198.57 FEET THROUGH AN ANGLE OF 69°35' TO THE MOST SOUTHERLY CORNER OF LOT 362 OF LAKE SAN MARCOS UNIT NO. 4, ACCORDING TO MAP THEREOF NO. 5338, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 4 AS FOLLOWS:

CONTINUING NORTHERLY AND NORTHEASTERLY ALONG THE EXTENSION OF THE ABOVE DESCRIBED 163.50 FOOT RADIUS CURVE 315.09 FEET THROUGH AN ANGLE OF 110°25'; TANGENT TO SAID CURVE NORTH 76°38'25" EAST 270.00 FEET; AN NORTH 13°21'35" WEST 167.03 FEET TO THE MOST SOUTHERLY CORNER OF LOT 105 OF LAKE SAN MARCOS UNIT NO. 1 ACCORDING TO MAP NO. 5137, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY SAID UNIT NO. 1 AS FOLLOWS:

NORTH 13°21'35" WEST 85.57 FEET; NORTH 36°21'35" EAST 65.69 FEET; SOUTH 53°38'25" EAST 90.00 FEET TO A POINT ON A 50.00 FOOT RADIUS CURVE, CONCAVE EASTERLY, THE TANGENT OF SAID CURVE BEARING NORTH 0°30'35" WEST TO SAID POINT; NORTHERLY ALONG SAID CURVE 32.17 FEET THROUGH AN ANGLE OF 36°52'10"; AND NORTH 53°38'25" WEST 330.00 FEET TO THE MOST WESTERLY CORNER OF LOT 173 OF SAID LAKE SAN MARCOS UNIT NO. 1; THENCE ALONG THE SOUTHWESTERLY PROLONGATION OF THE NORTHERLY LINE OF SAID LOT 173 SOUTH 36°21'35" WEST 185.91 FEET TO THE BEGINNING OF A TANGENT 411.52 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 290.69 FEET THROUGH AN ANGLE OF 40°28'20" TO THE BEGINNING OF REVERSED 350.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 163.66 FEET THROUGH AN ANGLE OF 23°16'06"; THENCE SOUTH 51°06'00" WEST 30.14 FEET; THENCE SOUTH 31°22'03" WEST 160.00 FEET; THENCE SOUTH 0°43'27" EAST 400.00 FEET TO THE TRUE POINT OF BEGINNING.
EXCEPTING THEREFROM THAT PORTION DESCRIBED IN CERTIFICATE OF COMPLIANCE RECORDED DECEMBER 13, 1979 AS FILE NO. 79-522804 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITH LAKE SAN MARCOS VILLAGE, ACCORDING TO MAP THEREOF NO. 8742, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY DECEMBER 16, 1977.

PARCEL F: INTENTIONALLY OMITTED

PARCEL G: (221-510-57)

LOT 606 OF LAKE SAN MARCOS UNIT NO. 7, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 5958, RECORDED SEPTEMBER 13, 1967 IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY.

# LEGAL DESCRIPTION
(continued)

PARCEL H: INTENTIONALLY OMITTED

PARCEL I: INTENTIONALLY OMITTED

PARCEL J: INTENTIONALLY OMITTED

PARCEL K: INTENTIONALLY OMITTED

PARCEL L: INTENTIONALLY OMITTED

PARCEL M: INTENTIONALLY OMITTED

PARCEL N: INTENTIONALLY OMITTED

PARCEL O: (221-240-01)

LOT 173 OF LAKE SAN MARCOS UNIT NO. 1 IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 5137 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY MARCH 5, 1963.

PARCEL PI: (222-030-30, 56 AND 44, 222-440-15)

ALL THAT PORTION OF THE EAST ONE-HALF OF SECTION 20, THE NORTHWEST ONE-QUARTER OF SECTION 21, AND THE NORTHEAST ONE-QUARTER OF THE NORTHEAST ONE-QUARTER OF SECTION 29, TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO GOVERNMENT PLAT THEREOF, TOGETHER WITH A PORTION OF LOT 8, COUNTY OF SAN DIEGO TRACT NO. 3730, ACCORDING TO MAP THEREOF NO. 9090 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND CERTIFICATE OF CORRECTION RECORDED October 25, 1979 AS INSTRUMENT NO. 79-449143, DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST NORTHERLY CORNER OF SAID LOT 8, SAID CORNER BEING A POINT IN THE SOUTHEASTERLY LINE OF LA PLAZA DRIVE, 56.00 FEET WIDE, AS SAME IS SHOWN ON SAID MAP NO. 9090; THENCE SOUTH 26°02'59" WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 8 A DISTANCE OF 539.04 FEET TO AN ANGLE POINT THEREIN AND/OR THE TRUE POINT OF BEGINNING;

# LEGAL DESCRIPTION
(continued)

THENCE CONTINUING SOUTH 26°02'59" WEST ALONG THE SOUTHWESTERLY PROLONGATION OF SAID NORTHWESTERLY LINE A DISTANCE OF 472.64 FEET TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 8; THENCE SOUTH 54°49'09" EAST ALONG SAID SOUTHERLY LINE OF LOT 8 A DISTANCE OF 201.28 FEET TO AN ANGLE POINT THEREIN AND/OR A POINT IN THE LINE COMMON TO SAID SECTIONS 20 AND 21; THENCE SOUTH 00°40'41" EAST ALONG SAID LINE COMMON TO SECTIONS 20 AND 21 A DISTANCE OF 1988.94 FEET TO THE SOUTHERLY TERMINUS THEREOF, SAID SOUTHERLY TERMINUS ALSO BEING THE CORNER COMMON TO SAID SECTIONS 20, 21 AND 29, AND SECTION 28, TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN; THENCE SOUTH 00°41'01" EAST ALONG THE EAST LINE OF SAID SECTION 29 A DISTANCE OF 267.31 FEET; THENCE SOUTH 89°17'59" WEST 320.37 FEET; THENCE NORTH 19°38'10" WEST 297.43 FEET TO A POINT IN THE LINE COMMON TO SAID SECTIONS 20 AND 29; THENCE NORTH 2°15'00" WEST 1073.02 FEET, THENCE NORTH 35°10'29" WEST 385.37 FEET; THENCE NORTH 23°54'18" WEST 202.36 FEET; THENCE NORTH 7°24'19" WEST 380.17 FEET; THENCE NORTH 13°29'45" EAST 411.36 FEET; THENCE NORTH 24°52'49" WEST 331.34 FEET TO THE SOUTHEAST CORNER OF LOT 14 OF LAKE SAN MARCOS SHORES ACCORDING TO MAP THEREOF NO. 8206 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE ALONG THE EASTERLY LINE OF SAID LOT 14 FOLLOWING ITS VARIOUS COURSES NORTH 16°22'43" EAST 64.30 FEET (RECORDED NORTH 16°23'21" EAST PER MAP NO. 8206); NORTH 27°04'43" WEST 52.60 FEET (RECORDED NORTH 27°04'05" EAST 52.65 FEET PER MAP NO. 8206); NORTH 60°22'58" EAST 63.00 FEET (RECORDED NORTH 60°23'36" EAST 62.99 FEET PER MAP NO. 8206); NORTH 15°00'51" EAST, 261.92 FEET (RECORDED NORTH 15°01'29" EAST PER MAP NO. 8206); NORTH 23°45'56" EAST 112.72 FEET (RECORDED NORTH 23°46'38" EAST 112.68 FEET PER MAP NO. 8206); NORTH 36°55'43" EAST 256.14 FEET (RECORDED NORTH 36°56'04" EAST 258.18 FEET PER MAP NO. 8206); NORTH 16°35'51" EAST 147.79 FEET (RECORDED NORTH 16°36'27" EAST 147.44 FEET PER MA.:) NO. 8206); THENCE LEAVING SAID EASTERLY LINE OF LOT 14, SOUTH 51°05'50" EAST 25.00 FEET MORE OR LESS TO A POINT OF INTERSECTION WITH THE 494.4 FOOT CONTOUR LINE AS ESTABLISHED THE SURFACE OF THAT CERTAIN BODY OF WATER KNOWN AS LAKE SAN MARCOS IS LEVEL WITH THE SPILLWAY CREST OF THAT CERTAIN DAM CONSTRUCTED ACROSS AND IN SAN MARCOS CREEK AND KNOWN TO THE STATE OF CALIFORNIA DEPARTMENT OF WATER RESOURCES AS SAN MARCOS DAM, STATE NO. 848, SAID 494.4 FOOT CONTOUR

# LEGAL DESCRIPTION
(continued)

LINE BEING FURTHER QUALIFIED AS A HORIZONTAL PLANE 494.4 FEET ABOVE SEA LEVEL, THE TERM "SEA LEVEL" DESIGNATING THAT CERTAIN DATUM PLANE OR A POINT WHICH IS 564.07 FEET VERTICALLY BELOW CERTAIN BENCH MARK CONSISTING OF A STANDARD UNITED STATES COAST AND GEODETIC SURVEY DISK STAMPED "L 302 1935" AND SET IN THE TOP OF A CONCRETE POST LOCATED 30.00 FEET RIGHT OF STATION 57+85 OF SAN DIEGO COUNTY ROAD SURVEY NO. 45; THENCE SOUTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE EAST-WEST CENTER ONE OF SAID SECTION 20; THENCE SOUTH 89°37'17" EAST ALONG SAID EAST-WEST CENTER SECTION LINE 292.00 FEET, MORE OR LESS TO A POINT OF INTERSECTION WITH SAID 494.4 FOOT CONTOUR LINE; THENCE NORTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT 606 OF LAKE SAN MARCOS UNIT NO. 7 ACCORDING TO MAP THEREOF NO. 5958 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE SOUTH 46°45'00" EAST ALONG SAID NORTHWESTERLY PROLONGATION 25.00 FEET, MORE OR LESS, TO THE MOST WESTERLY CORNER OF SAID LOT 606 AND/OR THE MOST NORTHERLY CORNER OF LOT 1 OF LAKESHORE EAST ACCORDING TO MAP THEREOF NO. 8500 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE ALONG THE WESTERLY BOUNDARY OF SAID LAKESHORE EAST, FOLLOWING ITS VARIOUS COURSES SOUTH 17°15'00" WEST 249.00 FEET (RECORDED NORTH 17°10'46" EAST 249.34 PER MAP NO. 8500); SOUTH 29°49'43" WEST 137.05 FEET (RECORDED NORTH 29°51'23" EAST PER MAP NO. 8500); SOUTH 26°00'00" WEST 225.83 FEET (RECORDED NORTH 26°01'40" EAST PER MAP NO. 8500); SOUTH 11°56'32" WEST 140.75 FEET (RECORDED NORTH 11°58'12" EAST PER MAP NO. 8500); SOUTH 18°34'32" WEST 199.74 FEET (RECORDED NORTH 18°36'12" EAST PER MAP NO. 8500) THE MOST WESTERLY POINT IN SAID BOUNDARY OF LAKESHORE EAST AND/OR AN ANGLE POINT IN THE NORTHWESTERLY BOUNDARY OF SAID LOT 8 COUNTY OF SAN DIEGO TRACT NO. 3730; THENCE CONTINUING ALONG SAID BOUNDARY OF LAKESHORE EAST AND/OR SAID BOUNDARY OF LOT 8, FOLLOWING THEIR VARIOUS COURSES, SOUTH 37°38'52" EAST 128.00 FEET (RECORDED NORTH 37°37'12" WEST PER MAP NO. 8500); SOUTH 89°38'52" EAST 65.00 FEET (RECORDED NORTH 89°37'12" WEST PER MAP NO. 8500);NORTH 68°06'22" EAST 103.26 FEET (RECORDED NORTH 68°08'02" EAST PER MAP NO. 8500) TO THE TRUE POINT OF BEGINNING. ALSO DESCRIBED AS PARCEL "B" ON CERTIFICATE OF COMPLIANCE RECORDED DECEMBER 13, 1979 AS INSTRUMENT NO. 79-522804, OFFICIAL RECORDS.

TOGETHER WITH THAT LAND DESCRIBED IN THE DEED FROM CHARLES MCMORRIS AND THEODORA M. MCMORRIS TO CITIZENS DEVELOPMENT CORPORATION RECORDED FEBRUARY 1, 2007 AS INSTRUMENT NO. 71354 OF OFFICIAL RECORDS.


AND ALSO


TOGETHER WITH THAT LAND DESCRIBED IN THE DEED FROM ROBERT KAHN AND SHARON KAY INGALLS AS SUCCESSOR TRUSTEES OF THE FALCON TRUST DATED OCTOBER 28, 1999 TO CITIZENS DEVELOPMENT CORPORATION RECORDED DECEMBER 23, 2008 AS INSTRUMENT NO. 2008-649777.

# LEGAL DESCRIPTION
### (continued)

EXCEPTING THEREFROM

THAT LAND DESCRIBED IN THE DEED FROM CITIZENS DEVELOPMENT CORPORATION TO CHARLES MCMORRIS & THEODORA MCMORRIS, HUSBAND AND WIFE AS JOINT TENANTS RECORDED FEBRUARY 1, 2007 AS INSTRUMENT NO. 2007-71353.

AND ALSO EXCEPTING THEREFROM

THAT LAND DESCRIBED IN THE DEED FROM CITIZENS DEVELOPMENT CORPORATION TO ROBERT KAHN AND SHARON KAY INGALLS SUCCESSOR TRUSTEES OF THE FALCON TRUST DATED OCTOBER 28, 1999 RECORDED DECEMBER 23, 2008 AS INSTRUMENT NO. 2008-649776 OF OFFICIAL RECORDS.

NOTE:  SAID LAND ALSO DESCRIBED AS PARCEL B OF CERTIFICATE OF COMPLIANCE RECORDED MARCH 6, 2008 AS INSTRUMENT NO. 2008-118490.

PARCEL P2:

AN EASEMENT FOR ROAD PURPOSES OVER AND ACROSS THAT PORTION OF SAID LOT8 OF COUNTY OF SAN DIEGO TRACT NO. 3730 IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9090 AS FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 24, 1979 DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID LOT 8, SAID CORNER BEING A POINT IN THE SOUTHWESTERLY LINE OF LA PLAZA DRIVE, 56.00 FEET WIDE, AS SAME IS SHOWN ON SALE MAP NO. 9090; THENCE SOUTH 26°02'59" WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 8 AND ITS SOUTHWESTERLY PROLONGATION A DISTANCE OF 568.90 FEET; THENCE NORTH 68°06'22" EAST 29.68 FEET TO A POINT IN A LINE PARALLEL WITH AND DISTANT SOUTHEASTERLY 20.00 FEET MEASURED AT RIGHT ANGLES FROM SAID NORTHWESTERLY LINE OF SAID LOT 8 AND ITS SOUTHWESTERLY PROLONGATION; THENCE NORTH 26°02'59" EAST ALONG SAID PARALLEL LINE A DISTANCE OF 541.46 FEET TO A POINT IN SAID SOUTHWESTERLY LINE OF LA PLAZA DRIVE; THENCE NORTHWESTERLY ALONG SAID SOUTHWESTERLY LINE OF LA PLAZA DRIVE AND/OR NORTHEASTERLY LINE OF SAID LOT 8 ALONG THE ARC OF A CURVE, CONCAVE TO THE NORTHEAST WITH A RADIUS OF 253.00 FEET FROM AN INITIAL TANGENT THAT BEARS NORTH 51°32'19" WEST THROUGH A CENTRAL ANGLE OF 4°41'06" A DISTANCE OF 20.69 FEET TO THE POINT OF BEGINNING.

PARCEL Q:  INTENTIONALLY OMITTED.

# PROMISSORY NOTE

## SECURED BY DEED OF TRUST

**August __, 2013**                                                    **$100,000.00**

1.      <u>Promise to Pay</u>.   Citizens Development Corporation, a California corporation ("<u>Borrower</u>"), promises to pay, in immediately available funds, to the order of LSM Lender LLC, a Delaware limited liability company ("<u>Lender</u>"), at its office at 5505 Cancha de Golf, Rancho Santa Fe, California 92091, or at such other place as Lender from time to time may designate, the principal sum of $100,000.00 (the "<u>Loan Amount</u>"), together with interest on the principal balance outstanding from time to time accruing at the annual rate of 7% (the "<u>Interest Rate</u>"), calculated on a 360 day year.  The outstanding balance of any interest not paid when due shall also bear interest at the Interest Rate.

2.      <u>Loan Agreement</u>.   The loan evidenced by this Promissory Note Secured by Deed of Trust (the "<u>Note</u>") is being made to Borrower pursuant to a Loan Agreement between Borrower and Lender dated the same day as this Note (the "<u>Loan Agreement</u>").  Any capitalized terms not otherwise defined in this Note shall have the meanings defined in the Loan Agreement.

3.      <u>Payment Terms</u>.   The entire outstanding principal balance and all accrued interest shall be due and payable on or before August ____, 2017 (the "<u>Maturity Date</u>").  All payments on this Note shall be applied first to accrued and unpaid interest and then to principal.

4.      <u>Prepayment</u>.  Borrower may prepay this Note at any time without penalty.

5.      <u>Security</u>.   This Note is secured by a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing ("<u>Deed of Trust</u>") encumbering certain real and personal property, as therein described (the "<u>Property</u>") and a Security Agreement encumbering the assets of Borrower ("<u>Security Agreement</u>"); it may also be secured by other collateral.  The Deed of Trust includes the following provision:

> 10.1    <u>Accelerating Transfer</u>.   In the event (i) Trustor sells, conveys or otherwise transfers, or further encumbers, the Property  or any part of or interest in it, without the prior written approval of Beneficiary, or (ii) of the transfer, either individually or on cumulative basis, of 50% or more of the interests in profits or voting power of Trustor, without the prior written approval of Beneficiary (each, an "<u>Accelerating Transfer</u>"), then the Indebtedness and all other obligations secured by this Deed of Trust shall immediately become due and payable at the option of Beneficiary.  Consent to one such transaction shall not constitute a waiver of the right to require consent to any future or successive transactions.

6.      <u>Default</u>.  Any of the following events shall be a default (each, a "<u>Default</u>") under this Note:

> (a)      Borrower fails to pay any payment due under this Note within five days after it is due and payable;

> (b)      Borrower fails to pay this Note in full on the Maturity Date; or

> (c)      The occurrence an Event of Default (as defined therein) under any of the other Loan Documents (as defined in the Loan Agreement) or, if Events of Default are not defined therein, a material breach by Borrower of its obligations under any of the other Loan

Documents after giving effect to any express notice or cure provisions set forth therein (if any).

7.      <u>Remedies</u>.  If a Default occurs, then at the option of Lender, (a) all amounts payable under this Note shall be immediately due and payable, without further notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands, (b) Borrower shall pay (on demand), in addition to all other amounts payable under this Note, all costs of collection or enforcement expended or incurred by Lender, including reasonable attorneys' fees, whether or not a judicial foreclosure or other lawsuit if filed or non-judicial foreclosure proceedings are commenced under the Deed of Trust, and (c) Lender may exercise all other rights or remedies available to Lender under this Note, the Deed of Trust, the Security Agreement or other Loan Documents or applicable law.  Lender's remedies shall be cumulative, and Lender's exercise of any remedy or remedies shall not constitute an election of remedies.

8.      <u>Default Rate</u>.  So long as any Default has occurred and is continuing, the Interest Rate shall be increased to the "<u>Default Rate</u>."  The Default Rate is 5% per annum in excess of the Interest Rate.

9.      <u>Late Charge</u>.  If Lender does not receive any payment of interest or principal due under this Note within ten days after such payment is due, Lender shall be entitled to receive and Borrower shall pay on demand a late charge equal to 5% of such payment. Borrower acknowledges and agrees that (a) if Lender fails to timely receive any payment of interest or principal due under this Note, Lender will incur additional costs and expenses in servicing this Note and may incur additional costs or suffer damages due to inability to meet other financial commitments, the amount of which would be difficult to ascertain, and (b) considering all of the circumstances existing on the date of this Note, such late charge represents a reasonable estimate of the costs and damages that will be suffered by Lender due to Borrower's failure to timely make such payment.  Imposition, payment or receipt of any late charge shall not limit or impair Lender's right to collect any other amounts due or to exercise any other rights or remedies available to Lender under this Note, the Deed of Trust, the Security Agreement or other Loan Documents or applicable law.

10.      <u>Reinstatement</u>.  If any payment received by Lender under this Note is determined to have been a voidable preference or fraudulent conveyance under any bankruptcy, insolvency or other debtor relief law, then the obligation to make such payment shall survive any cancellation, satisfaction or return of this Note, and shall not be discharged or satisfied with any prior payment or cancellation of this Note, but shall remain a valid and binding obligation enforceable in accordance with the terms of this Note, and such payment shall be immediately due and payable on written demand from Lender.

11.      <u>General Provisions</u>.

        (a)      <u>Attorneys' Fees</u>.   If any lawsuit, arbitration or other legal proceeding (including bankruptcy and insolvency proceedings, such as in connection with seeking relief from stay in a bankruptcy proceeding) is commenced to enforce or interpret any of the terms of this Note, the prevailing party shall have the right to recover from the other party reasonable attorneys' fees and other costs incurred in connection with such proceeding, including any appeal or enforcement of any judgment or decision rendered in such proceeding.

        (b)      <u>Governing Law and Severability</u>.  This Note shall be governed by and construed under the laws of the State of California, without regard to its conflicts of law principles.  If any provision of this Note is invalid or unenforceable, such provision shall (i) be modified to the minimum extent necessary to render it valid and enforceable, or (ii) if it cannot be so modified, be deemed not to be a part of this Note and shall not affect the validity or enforceability of the remaining provisions.

(c)    <u>Amendment; No Offset</u>.  This Note may be amended only by a written agreement signed by Lender and Borrower.  Borrower waives any right of offset it may now or hereafter have against Lender or any other holder of this Note.

(d)    <u>Waiver</u>.  If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any Default under or breach of Borrower's obligations under this Note; no waiver by Lender shall be effective unless the waiver is expressly stated in a writing signed by Lender.

(e)    <u>Construction</u>.  This Note has been negotiated at arm's length and each party has been represented by legal counsel.  Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Note against the party drafting it is not applicable and is waived.  The provisions of this Note shall be interpreted in a reasonable manner to effect the intent of the parties and the purpose of this Note.

(f)    <u>Interpretation</u>.  As used in this Note, the term "includes" or "including" or similar words shall not limit the preceding words or terms and shall be interpreted to include the words "without limitation."  Reference in this Note to any statute shall include any successor provisions.  The captions of the sections and paragraphs in this Note shall not define, limit, extend or describe the scope of this Note or the intent of any of its provisions.

(g)    <u>Successors and Assigns; Assignment</u>.  The terms of this Note shall be binding on the heirs, legal representatives, successors and assigns of Borrower, and inure to the benefit of the legal representatives, successors and assigns of Lender; however, Borrower may not delegate any of its obligations under this Note without the prior written approval of Lender in its sole discretion.  Lender may sell or otherwise transfer the Loan and this Note without the consent of Borrower, and may sell or assign participations or other interests the Loan and this Note without notice to or the consent of Borrower.

(h)    <u>Time</u>.  Time is of the essence under this Note and every provision hereof.

Citizens Development Corporation,
a California corporation


By: _____
Name: _____

Title: _____

# SECURITY AGREEMENT

This agreement is entered into as of LSM Lender LLC, a Delaware limited liability company ("Secured Party") and Citizens Development Corporation, a California corporation ("Debtor").

1.    GRANT OF SECURITY INTEREST AND DESCRIPTION OF COLLATERAL. Pursuant to the provisions of the California Commercial Code and other applicable law, Debtor hereby grants to Secured Party and Secured Party hereby accepts a security interest in the following (the "collateral"):

1.1    All present or hereafter acquired inventory, including but not limited to raw materials, work in process and finished goods of any nature and description;

1.2    All present or hereafter acquired plant, office and/or other equipment, including without limitation all machinery, appliances, tools, fixtures, furniture and furnishings and all attachments and appurtenances thereto;

1.3    All accounts now existing or hereafter arising;

1.4    All present and hereafter acquired contracts, purchase orders, computer software, chattel paper, negotiable documents, insurance policies of any nature and all proceeds thereof;

1.5    All present and hereafter acquired general intangibles, including without limitation the name and goodwill, trademarks, trade names, copyrights, processes, patents, patent rights, patent applications, licenses, inventions, royalties and/or commissions;

1.6    All other personal property of the same or similar nature, type or class which Debtor now owns, holds or may hereafter acquire, wherever located, for use by Debtor in connection with Debtor's business, whether or not the same is specifically enumerated herein; and

1.7    All proceeds of the above.

2.    LOCATION OF COLLATERAL. The collateral is and shall remain located at the Premises shown as the address of Debtor on the signature page of this agreement or the Property described on Exhibit A attached. The collateral is and shall at all times remain personal property and shall not become real property as a result of the manner in which it is affixed or attached to or has otherwise been made a part of the Premises or the Property, as applicable.

3.    DEBTS AND OBLIGATIONS. The security interest in the collateral shall secure Debtor's payment of all indebtedness to Secured Party and the performance of all other obligations, monetary and non-monetary, of any nature whatsoever, present or future, including without limitation:

3.1    Payment of all sums required under a promissory note, dated the same date as this agreement, in the principal sum of $100,000.00, executed by Debtor in connection with this agreement;

3.2     Payment of all further advances and credit which may be made by Secured Party to Debtor, including without limitation all advances and expenditures made by Secured Party for the protection, maintenance, preservation or repair of the collateral; and

3.3     All liabilities of any kind, whether primary, secondary, direct or contingent, which are now due or which may hereafter become due from Debtor to Secured Party.

4.     <u>WARRANTIES OF DEBTOR</u>.  Debtor represents and warrants to Secured Party that:

4.1     Debtor is the owner of the collateral free and clear of all liens, charges, encumbrances and security interests, except the security interest granted in this agreement;

4.2     Debtor has full power and authority to enter into this agreement; and

4.3     Debtor's execution and performance of this agreement do not require the consent or approval of any other person or entity or contravene any other agreement, contract or commitment of Debtor.

5.     <u>COVENANTS OF DEBTOR</u>.  Debtor shall:

5.1     Pay Secured Party all amounts payable under the promissory note, and any other indebtedness or obligations of Debtor held by Secured Party as and when the same shall be due and payable, whether at maturity, by acceleration or otherwise, and will perform all obligations secured by this agreement;

5.2     Insure the collateral against risk of loss or damage by fire, including extended coverage, theft, and other casualties in an amount equal to the full replacement cost thereof, without deduction for depreciation.  Loss payable endorsements in all such policies shall be payable to Secured Party and Debtor as their interests may appear.  All policies shall provide for at least ten (10) days prior notice to Secured Party of cancellation or reduction in coverage.  Certificates of all such insurance will be furnished to Secured Party by Debtor upon execution of this agreement. Debtor shall at all times bear all risk of loss, destruction and damage to the collateral;

5.3     Maintain the collateral in a good state of repair, ordinary wear and tear excepted, and not use the collateral so as to cause or result in any waste, unreasonable deterioration or depreciation;

5.4     Pay before delinquency all taxes and special assessments levied upon or assessed against the collateral or for its use and operation;

5.5     Defend the collateral against the claims and demands of all persons;

5.6     Immediately pay Secured Party all amounts, with interest accruing thereon at the maximum rate allowed by law, and all attorneys' fees and costs, incurred by Secured Party in taking possession of, disposing of and preserving the collateral after any Event of Default, as defined below, or under the promissory note;

5.7    Continue to operate Debtor's business on a full time basis until the obligations of Debtor under the promissory note and this agreement are paid in full;

5.8    Not sell, convey, lease, assign or transfer any substantial part of Debtor's business or fixed assets, or any property or other assets necessary for the continuance of Debtor's business, including without limitation the selling of any property or other assets accompanied by the leasing back of the same, without the prior written consent of Secured Party, which shall not be unreasonably withheld; however, the proceeds from any such sale, conveyance, lease, assignment or transfer, whether or not consented to by Secured Party, shall be paid to Secured Party by Debtor to reduce the obligations of Debtor;

5.9    Not permit any liens or security interests (other than Secured Party's security interest) to attach to the collateral which would be prior to Secured Party's security interest, or a levy or execution upon any of the collateral under any legal process, or dispose of the collateral, or permit anything to be done that may impair the value of the collateral or the security interest granted in this agreement;

5.10    Not remove, or cause or allow to be removed, the collateral from the Premises without prior written notice to Secured Party; and

5.11    Immediately notify Secured Party in writing of any change in the address of Debtor's business or the location of the collateral and any change in the entity of Debtor or addition or withdrawal of any shareholders of Debtor;

5.12    Execute from time to time such additional instruments, including UCC-1 and UCC-2 financing statements, requested by Secured Party to preserve and perfect the security interest granted in this agreement; and

5.13    Furnish Secured Party, from time to time as requested by Secured Party, financial statements or other reasonable financial information certified by Debtor, or if appropriate, Debtor's auditors, which reflect fairly the then current financial condition of Debtor and Debtor's business.

6.    <u>SECURED PARTY'S RIGHT TO ACT ON BEHALF OF DEBTOR.</u>

6.1    If Debtor fails to make any payments for taxes, insurance premiums, maintenance and repairs, or any other payment necessary to preserve and protect the collateral, Secured Party may (but shall not be obligated to) make such payments.  Any payments made by Secured Party shall accrue interest at the maximum rate allowed by law, and shall be secured by this agreement and be immediately due and payable by Debtor to Secured Party.

6.2    In the Event of Default under the terms of this agreement or the promissory note, Debtor hereby nominates and appoints Secured Party as attorney in fact, to take such action as Secured Party deems necessary or advisable to perfect and continue perfected the security interest created by this agreement, including executing and filing financing statements, and to preserve, maintain, protect and collect the collateral.  To preserve, maintain, protect and collect the collateral, Debtor hereby authorizes Secured Party to enter Debtor's Premises, or such other premises where the collateral may be located, and take custody and control of the collateral.  Debtor hereby authorizes

Secured Party to endorse checks on Debtor's behalf and to collect and receive proceeds of the collateral, and this agreement shall be deemed an assignment of such checks and proceeds to Secured Party.

7.    <u>DEFAULT AND REMEDIES</u>.

  7.1 <u>Default</u>.  The occurrence of any one of the following events shall constitute an event of default ("Event of Default") under this agreement:

    7.1.1 Debtor's failure to pay any indebtedness secured hereby in accordance with its terms;

    7.1.2 Debtor's failure to pay when due any cost or expense necessary to preserve, protect or maintain the collateral;

    7.1.3 Debtor's failure to perform any term or covenant of this agreement to be performed by Debtor, or to discharge any liability to Secured Party;

    7.1.4 The breach of any agreement of guarantee, suretyship or endorsement, given as security for Debtor's performance of this agreement and the promissory note;

    7.1.5 Any representation or warranty, or any financial information furnished by Debtor, proves to be untrue or misleading;

    7.1.6 A court of competent jurisdiction enters a decree or order for relief in favor of Debtor in any involuntary case under any applicable bankruptcy, insolvency or similar law, state or federal, or a decree or order appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of Debtor or for any substantial part of the assets or property of Debtor, or ordering the winding-up or liquidation of the affairs of Debtor, and such decree or order remains unstayed and in effect for a period of sixty (60) consecutive days, or Debtor commences a voluntary case under any applicable bankruptcy, insolvency, or similar law, state or federal, or consents to the entry of an order for relief in any involuntary case under any such law, or consents to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or similar official) of Debtor or for any substantial part of the assets or property of Debtor, or shall make any general assignment for the benefit of creditors, or shall fail generally to pay its or his debts in the ordinary course or as they become due, or shall take any action in furtherance of any of the foregoing;

    7.1.7 The attachment, garnishment or levy of execution upon the assets, property, business or income of Debtor or the appointment of a receiver or trustee of or for any part of the assets, property or business of Debtor; or

    7.1.8 The unreasonable deterioration or impairment of the value of the collateral; or

    7.1.9 The occurrence of any event which Secured Party in good faith reasonably believes will impair Debtor's ability to discharge any indebtedness secured hereby in accordance

with its terms, perform the terms and covenants of this agreement, or otherwise impair the value of the security interest granted in this agreement.

7.2    <u>Remedies</u>.  Upon the occurrence of any Event of Default, Secured Party may exercise any and all rights and remedies available to a secured party under the California Commercial Code or other applicable laws, or under the terms of this agreement, or the promissory note, including without limitation the right to:

7.2.1    Accelerate the maturity of any indebtedness secured by this agreement and any other obligations of Debtor to Secured Party, regardless of the terms of any promissory note or other instrument evidencing the same;

7.2.2    Either in person or by agent with or without bringing any action or proceeding, or by a receiver to be appointed by a court, take possession of all or part of the collateral;

7.2.3    Take such other measures as Secured Party may deem necessary for the protection and preservation of the collateral and its security interest;

7.2.4    Require Debtor to assemble the collateral and to make it available to Secured Party at a place designated by Secured Party which is reasonably convenient to Secured Party and Debtor; and

7.2.5    Collect from Debtor any deficiency remaining after sale or other disposition of the collateral.

Any notice of sale, disposition or other intended action by Secured Party sent to Debtor at least five days prior to such action shall constitute reasonable notice to Debtor.  Debtor expressly waives all rights to possession of the collateral after an Event of Default which has not been cured within the time allowed by Secured Party, and all claims for injuries suffered as a result of any damage or loss caused by entry or repossession.

8.    <u>GENERAL</u>.

8.1    <u>Attorneys' Fees</u>.  If a party commences or is made a party to an action or proceeding to enforce or interpret this agreement, or to obtain a declaration of rights under this agreement, the prevailing party in such action or proceeding shall be entitled to recover from the other party all attorneys' fees, costs and expenses incurred (whether or not such costs are otherwise taxable or recoverable) in connection with such action or proceeding or any appeal or enforcement of such action or proceeding.

8.2    <u>Notices</u>.  All notices, requests, demands and other communications under this agreement shall be in writing and shall be deemed duly given (i) on the date of delivery if personally delivered, (ii) one business day after delivery by overnight courier, telegram or facsimile, or (iii) three business days after mailing if mailed by first class mail, postage prepaid, to the parties at their addresses set forth below, or such other address designated from time to time in writing by such party to all other parties.

8.3     <u>Waiver</u>.  Secured Party's waiver, whether express or implied, of any default shall not be a waiver of any subsequent default.  Secured Party's acceptance of partial or delinquent payments, or Secured Party's failure to exercise any rights it may have, shall not waive any obligation of Debtor or any rights of Secured Party, or otherwise modify this agreement, or waive any other similar matter.

8.4     <u>Entirety of Agreement</u>.  This agreement supercedes all oral agreements, statements and representations and contains the entire agreement among the parties with respect to the subject matter and transactions contemplated by this agreement.

8.5     <u>Amendment or Modification.</u>  This agreement may be amended or modified only upon the written consent of the parties hereto.  No oral amendment or modification shall be binding upon the parties.

8.6     <u>Governing Law and Severability.</u>  This agreement is entered into at San Diego, California, and shall be governed by and construed in accordance with California law.  If any provision of this agreement is invalid or unenforceable, such provision shall (i) be modified to the minimum extent necessary to render it valid and enforceable, or (ii) if it cannot be so modified, be deemed not to be a part of this agreement and shall not affect the validity or enforceability of the remaining provisions.

8.7     <u>Construction</u>.  This agreement has been negotiated at arms length and each party has been represented by legal counsel.  Accordingly, any rule of law (including without limitation California Civil Code Section 1654) or legal decision that would require interpretation of any ambiguities in this agreement against the party drafting it is not applicable and is waived.  The provisions of this agreement shall be interpreted in a reasonable manner to effect the intent of the parties and the purpose of this agreement.

8.8     <u>Headings</u>.  The captions and paragraph headings of this agreement are inserted only as a matter of convenience and are not a part of this agreement, and in no way define, limit or describe the scope or meaning of this agreement or the intent of any provision.

8.9     <u>Necessary Instruments</u>.   Debtor shall execute such additional agreements, assignments or documents deemed necessary or advisable by Secured Party to effectuate the purposes of this agreement.

8.10    <u>Binding Effect</u>.  This agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, beneficiaries, legal representatives, successors and assigns.

*Secured Party:*                                          *Debtor:*

LSM Lender, LLC,                                          Citizens Development Corporation,
a Delaware limited liability company                     a California corporation

By:  Pacifica Enterprises, Inc.,                          By:_____
      a California corporation,                           Name:_____
      Its Manager                                         Title:_____

      By:_____                   Address:    1105 La Bonita Drive
      Name:_____                               San Marcos, CA 92078
      Title:_____


      By:_____
      Name:_____
      Title:_____

Address:  5505 Cancha de Golf
              Rancho Santa Fe, CA 92091

## **EXHIBIT A**

LEGAL DESCRIPTION

# LEGAL DESCRIPTION

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A:  INTENTIONALLY OMITTED

PARCEL B:  INTENTIONALLY OMITTED

PARCEL C:  INTENTIONALLY OMITTED

PARCEL D: INTENTIONALLY OMITTED

PARCEL E: (221-500-35, 222-031-06)

THAT PORTION OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 16, THE EAST QUARTER OF SECTION 20, THE WEST HALF OF THE NORTHWEST QUARTER OF SECTION 21 IN TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTER LINE OF SAN MARINO DRIVE AND LA BONITA DRIVE, IN THE LAKE SAN MARCOS UNIT NO. 1, ACCORDING TO MAP THEREOF NO. 5137, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE SOUTHERLY PROLONGATION OF SAID CENTER LINE OF LA BONITA DRIVE, SOUTH 0°42'33" EAST 30.00 FEET TO THE SOUTHERLY LINE OF SAID SAN MARINO DRIVE; THENCE ALONG SAID SOUTHERLY LINE SOUTH 89°20'50" WEST 20.00 FEET; THENCE ALONG A LINE WHICH IS PARALLEL WITH AND 20.00 FEET WESTERLY AT RIGHT ANGLES FROM SAID SOUTHERLY PROLONGATION OF THE CENTER LINE OF LA BONITA DRIVE, SOUTH 04°42'33" EAST 400.25 FEET TO THE BEGINNING OF A TANGENT 275.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHERLY ALONG SAID CURVE 366.08 FEET THROUGH AN ANGLE OF 76°16'20" THENCE SOUTH 0°43'27" EAST 277.84 FEET, THENCE NORTH 89°16'33" EAST 362.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 89°16'33" WEST 37.00 FEET; THENCE SOUTH 0°43'27" EAST 130.00 FEET TO THE BEGINNING OF A TANGENT 130.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 204.20 FEET THROUGH AN ANGLE OF 90°00'; THENCE TANGENT TO SAID CURVE SOUTH 89°16'33" WEST 390.00 FEET; THENCE SOUTH 0°43'27" EAST 280.00 FEET; THENCE NORTH 89°16'33" EAST 270.00 FEET TO THE BEGINNING OF A TANGENT 130.00 FOOT RADIUS CURVE, CONCAVE WESTERLY; THENCE SOUTHEASTERLY, SOUTHERLY AND SOUTHWESTERLY

# LEGAL DESCRIPTION
(continued)

ALONG SAID CURVE 408.41 FEET THROUGH AN ANGLE OF 180°00'; THENCE TANGENT TO SAID CURVE SOUTH 89°16'33" WEST 365.00 FEET; THENCE SOUTH 0°43'27" EAST 145.00 FEET; THENCE SOUTH 51°05'50" EAST 505.00 FEET MORE OR LESS TO A POINT OF INTERSECTION WITH THE 494.4 FOOT CONTOUR LINE AS ESTABLISHED WHEN THE SURFACE OF THAT CERTAIN BODY OF WATER KNOWN AS LAKE SAN MARCOS IS LEVEL WITH THE SPILLWAY CREST OF THAT CERTAIN DAM CONSTRUCTED ACROSS AND IN SAN MARCOS CREEK AND KNOWN TO THE STATE OF CALIFORNIA DEPARTMENT OF WATER RESOURCES AS SAN MARCOS DAM, STATE NO. 848, SAID 494.4 FOOT CONTOUR LINE BEING FURTHER QUALIFIED AS A HORIZONTAL PLANE 494.4 FEET ABOVE SEA LEVEL, THE TERM "SEA DESIGNATING THAT CERTAIN DATUM PLANE OR POINT WHICH IS 564.07 FEET VERTICALLY BELOW CERTAIN BENCH MARK CONSISTING OF A STANDARD UNITED STATES COASTAL AND GEODETIC SURVEY DISK STAMPED "L 302 1935" AND SET IN THE TOP OF A CONCRETE POST LOCATED 30.00 FEET RIGHT OF STATION 57 PLUS 85 OF SAN DIEGO COUNTY ROAD SURVEY NO. 454; THENCE SOUTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE WESTERLY END OF THE UPSTREAM FACE OF SAID SAN MARCOS DAM; THENCE EASTERLY ALONG THE UPSTREAM FACE OF SAID SAN MARCOS DAM AND SAID 494.4 FOOT CONTOUR LINE TO THE EASTERLY END OF SAID DAM AT ITS INTERSECTION WITH SAID 494.4 FOOT CONTOUR LINE; THENCE NORTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT NO. 606 OF LAKE SAN MARCOS UNIT NO. 7, ACCORDING TO MAP THEREOF NO. 5958, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE SOUTH 46°45'00" EAST ALONG SAID NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT NO. 606, A DISTANCE OF 22 FEET MORE OR LESS, TO THE MOST WESTERLY CORNER OF SAID LOT NO. 606; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 7 AS FOLLOWS:

NORTH 43°15' EAST 94.95 FEET; NORTH 76°38'25" EAST 617.94 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.00 FEET TO THE BEGINNING OF A TANGENT 163.50 FOOT RADIUS CURVE, CONCAVE EASTERLY; THENCE NORTHWESTERLY, NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE AND THE EASTERLY EXTENSION THEREOF 513.65 FEET THROUGH AN ANGLE OF 180°00'; THENCE TANGENT TO SAID CURVE NORTH 76°38'25" EAST 5.02 FEET TO THE MOST WESTERLY CORNER OF LOT 530 OF LAKE SAN MARCOS UNIT NO. 6, ACCORDING TO MAP NO. 5551, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 6 AS FOLLOWS:

NORTH 76°38'25" EAST 465.00 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.02 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE EASTERLY, HAVING A RADIUS OF 163.50 FEET; NORTHWESTERLY, NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE 513.65 FEET THROUGH AN ANGLE OF 180°00' AND TANGENT TO SAID CURVE NORTH 76°38'25" EAST 35.00 FEET TO THE NORTHWESTERLY CORNER OF LOT 445 OF LAKE SAN MARCOS UNIT NO. 5, ACCORDING TO MAP THEREOF NO. 5447, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 5 AS FOLLOWS:

# LEGAL DESCRIPTION
(continued)

NORTH 76°38'25" EAST 435.00 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.00 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE NORTHEASTERLY HAVING A RADIUS OF 163.50 FEET; AND NORTHWESTERLY ALONG SAID CURVE 198.57 FEET THROUGH AN ANGLE OF 69°35' TO THE MOST SOUTHERLY CORNER OF LOT 362 OF LAKE SAN MARCOS UNIT NO. 4, ACCORDING TO MAP THEREOF NO. 5338, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 4 AS FOLLOWS:

CONTINUING NORTHERLY AND NORTHEASTERLY ALONG THE EXTENSION OF THE ABOVE DESCRIBED 163.50 FOOT RADIUS CURVE 315.09 FEET THROUGH AN ANGLE OF 110°25'; TANGENT TO SAID CURVE NORTH 76°38'25" EAST 270.00 FEET; AN NORTH 13°21'35" WEST 167.03 FEET TO THE MOST SOUTHERLY CORNER OF LOT 105 OF LAKE SAN MARCOS UNIT NO. 1 ACCORDING TO MAP NO. 5137, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY SAID UNIT NO. 1 AS FOLLOWS:

NORTH 13°21'35" WEST 85.57 FEET; NORTH 36°21'35" EAST 65.69 FEET; SOUTH 53°38'25" EAST 90.00 FEET TO A POINT ON A 50.00 FOOT RADIUS CURVE, CONCAVE EASTERLY, THE TANGENT OF SAID CURVE BEARING NORTH 0°30'35" WEST TO SAID POINT; NORTHERLY ALONG SAID CURVE 32.17 FEET THROUGH AN ANGLE OF 36°52'10"; AND NORTH 53°38'25" WEST 330.00 FEET TO THE MOST WESTERLY CORNER OF LOT 173 OF SAID LAKE SAN MARCOS UNIT NO. 1; THENCE ALONG THE SOUTHWESTERLY PROLONGATION OF THE NORTHERLY LINE OF SAID LOT 173 SOUTH 36°21'35" WEST 185.91 FEET TO THE BEGINNING OF A TANGENT 411.52 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 290.69 FEET THROUGH AN ANGLE OF 40°28'20" TO THE BEGINNING OF REVERSED 350.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 163.66 FEET THROUGH AN ANGLE OF 23°16'06"; THENCE SOUTH 51°06'00" WEST 30.14 FEET; THENCE SOUTH 31°22'03" WEST 160.00 FEET; THENCE SOUTH 0°43'27" EAST 400.00 FEET TO THE TRUE POINT OF BEGINNING.
EXCEPTING THEREFROM THAT PORTION DESCRIBED IN CERTIFICATE OF COMPLIANCE RECORDED DECEMBER 13, 1979 AS FILE NO. 79-522804 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITH LAKE SAN MARCOS VILLAGE, ACCORDING TO MAP THEREOF NO. 8742, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY DECEMBER 16, 1977.

PARCEL F: INTENTIONALLY OMITTED

PARCEL G: (221-510-57)

LOT 606 OF LAKE SAN MARCOS UNIT NO. 7, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 5958, RECORDED SEPTEMBER 13, 1967 IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY.

## LEGAL DESCRIPTION
(continued)

PARCEL H: INTENTIONALLY OMITTED

PARCEL I: INTENTIONALLY OMITTED

PARCEL J: INTENTIONALLY OMITTED

PARCEL K: INTENTIONALLY OMITTED

PARCEL L: INTENTIONALLY OMITTED

PARCEL M: INTENTIONALLY OMITTED

PARCEL N: INTENTIONALLY OMITTED

PARCEL O: (221-240-01)

LOT 173 OF LAKE SAN MARCOS UNIT NO. 1 IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 5137 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY MARCH 5, 1963.

PARCEL PI: (222-030-30, 56 AND 44, 222-440-15)

ALL THAT PORTION OF THE EAST ONE-HALF OF SECTION 20, THE NORTHWEST ONE-QUARTER OF SECTION 21, AND THE NORTHEAST ONE-QUARTER OF THE NORTHEAST ONE-QUARTER OF SECTION 29, TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO GOVERNMENT PLAT THEREOF, TOGETHER WITH A PORTION OF LOT 8, COUNTY OF SAN DIEGO TRACT NO. 3730, ACCORDING TO MAP THEREOF NO. 9090 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND CERTIFICATE OF CORRECTION RECORDED October 25, 1979 AS INSTRUMENT NO. 79-449143, DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST NORTHERLY CORNER OF SAID LOT 8, SAID CORNER BEING A POINT IN THE SOUTHEASTERLY LINE OF LA PLAZA DRIVE, 56.00 FEET WIDE, AS SAME IS SHOWN ON SAID MAP NO. 9090; THENCE SOUTH 26°02'59" WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 8 A DISTANCE OF 539.04 FEET TO AN ANGLE POINT THEREIN AND/OR THE TRUE POINT OF BEGINNING;

# LEGAL DESCRIPTION
### (continued)

THENCE CONTINUING SOUTH 26°02'59" WEST ALONG THE SOUTHWESTERLY PROLONGATION OF SAID NORTHWESTERLY LINE A DISTANCE OF 472.64 FEET TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 8; THENCE SOUTH 54°49'09" EAST ALONG SAID SOUTHERLY LINE OF LOT 8 A DISTANCE OF 201.28 FEET TO AN ANGLE POINT THEREIN AND/OR A POINT IN THE LINE COMMON TO SAID SECTIONS 20 AND 21; THENCE SOUTH 00°40'41" EAST ALONG SAID LINE COMMON TO SECTIONS 20 AND 21A DISTANCE OF 1988.94 FEET TO THE SOUTHERLY TERMINUS THEREOF, SAID SOUTHERLY TERMINUS ALSO BEING THE CORNER COMMON TO SAID SECTIONS 20, 21 AND 29, AND SECTION 28, TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN; THENCE SOUTH 00°41'01" EAST ALONG THE EAST LINE OF SAID SECTION 29 A DISTANCE OF 267.31 FEET; THENCE SOUTH 89°17'59" WEST 320.37 FEET; THENCE NORTH 19°38'10" WEST 297.43 FEET TO A POINT IN THE LINE COMMON TO SAID SECTIONS 20 AND 29; THENCE NORTH 2°15'00" WEST 1073.02 FEET, THENCE NORTH 35°10'29" WEST 385.37 FEET; THENCE NORTH 23°54'18" WEST 202.36 FEET; THENCE NORTH 7°24'19" WEST 380.17 FEET; THENCE NORTH 13°29'45" EAST 411.36 FEET; THENCE NORTH 24°52'49" WEST 331.34 FEET TO THE SOUTHEAST CORNER OF LOT 14 OF LAKE SAN MARCOS SHORES ACCORDING TO MAP THEREOF NO. 8206 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE ALONG THE EASTERLY LINE OF SAID LOT 14 FOLLOWING ITS VARIOUS COURSES NORTH 16°22'43" EAST 64.30 FEET (RECORDED NORTH 16°23'21" EAST PER MAP NO. 8206); NORTH 27°04'43" WEST 52.60 FEET (RECORDED NORTH 27°04'05" EAST 52.65 FEET PER MAP NO. 8206); NORTH 60°22'58" EAST 63.00 FEET (RECORDED NORTH 60°23'36" EAST 62.99 FEET PER MAP NO. 8206);NORTH 15°00'51" EAST, 261.92 FEET (RECORDED NORTH 15°01'29" EAST PER MAP NO. 8206); NORTH 23°45'56" EAST 112.72 FEET (RECORDED NORTH 23°46'38" EAST 112.68 FEET PER MAP NO. 8206); NORTH 36°55'43" EAST 256.14 FEET (RECORDED NORTH 36°56'04" EAST 258.18 FEET PER MAP NO. 8206); NORTH 16°35'51" EAST 147.79 FEET (RECORDED NORTH 16°36'27" EAST 147.44 FEET PER MA.:) NO. 8206); THENCE LEAVING SAID EASTERLY LINE OF LOT 14, SOUTH 51°05'50" EAST 25.00 FEET MORE OR LESS TO A POINT OF INTERSECTION WITH THE 494.4 FOOT CONTOUR LINE AS ESTABLISHED THE SURFACE OF THAT CERTAIN BODY OF WATER KNOWN AS LAKE SAN MARCOS IS LEVEL WITH THE SPILLWAY CREST OF THAT CERTAIN DAM CONSTRUCTED ACROSS AND IN SAN MARCOS CREEK AND KNOWN TO THE STATE OF CALIFORNIA DEPARTMENT OF WATER RESOURCES AS SAN MARCOS DAM, STATE NO. 848, SAID 494.4 FOOT CONTOUR

# LEGAL DESCRIPTION
(continued)

LINE BEING FURTHER QUALIFIED AS A HORIZONTAL PLANE 494.4 FEET ABOVE SEA LEVEL, THE TERM "SEA LEVEL" DESIGNATING THAT CERTAIN DATUM PLANE OR A POINT WHICH IS 564.07 FEET VERTICALLY BELOW CERTAIN BENCH MARK CONSISTING OF A STANDARD UNITED STATES COAST AND GEODETIC SURVEY DISK STAMPED "L 302 1935" AND SET IN THE TOP OF A CONCRETE POST LOCATED 30.00 FEET RIGHT OF STATION 57+85 OF SAN DIEGO COUNTY ROAD SURVEY NO. 45; THENCE SOUTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE EAST-WEST CENTER ONE OF SAID SECTION 20; THENCE SOUTH 89°37'17" EAST ALONG SAID EAST-WEST CENTER SECTION LINE 292.00 FEET, MORE OR LESS TO A POINT OF INTERSECTION WITH SAID 494.4 FOOT CONTOUR LINE; THENCE NORTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT 606 OF LAKE SAN MARCOS UNIT NO. 7 ACCORDING TO MAP THEREOF NO. 5958 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE SOUTH 46°45'00" EAST ALONG SAID NORTHWESTERLY PROLONGATION 25.00 FEET, MORE OR LESS, TO THE MOST WESTERLY CORNER OF SAID LOT 606 AND/OR THE MOST NORTHERLY CORNER OF LOT 1 OF LAKESHORE EAST ACCORDING TO MAP THEREOF NO. 8500 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE ALONG THE WESTERLY BOUNDARY OF SAID LAKESHORE EAST, FOLLOWING ITS VARIOUS COURSES SOUTH 17°15'00" WEST 249.00 FEET (RECORDED NORTH 17°10'46" EAST 249.34 PER MAP NO. 8500); SOUTH 29°49'43" WEST 137.05 FEET (RECORDED NORTH 29°51'23" EAST PER MAP NO. 8500); SOUTH 26°00'00" WEST 225.83 FEET (RECORDED NORTH 26°01'40" EAST PER MAP NO. 8500); SOUTH 11°56'32" WEST 140.75 FEET (RECORDED NORTH 11°58'12" EAST PER MAP NO. 8500); SOUTH 18°34'32" WEST 199.74 FEET (RECORDED NORTH 18°36'12" EAST PER MAP NO. 8500) THE MOST WESTERLY POINT IN SAID BOUNDARY OF LAKESHORE EAST AND/OR AN ANGLE POINT IN THE NORTHWESTERLY BOUNDARY OF SAID LOT 8 COUNTY OF SAN DIEGO TRACT NO. 3730; THENCE CONTINUING ALONG SAID BOUNDARY OF LAKESHORE EAST AND/OR SAID BOUNDARY OF LOT 8, FOLLOWING THEIR VARIOUS COURSES, SOUTH 37°38'52" EAST 128.00 FEET (RECORDED NORTH 37°37'12" WEST PER MAP NO. 8500); SOUTH 89°38'52" EAST 65.00 FEET (RECORDED NORTH 89°37'12" WEST PER MAP NO. 8500);NORTH 68°06'22" EAST 103.26 FEET (RECORDED NORTH 68°08'02" EAST PER MAP NO. 8500) TO THE TRUE POINT OF BEGINNING. ALSO DESCRIBED AS PARCEL "B" ON CERTIFICATE OF COMPLIANCE RECORDED DECEMBER 13, 1979 AS INSTRUMENT NO. 79-522804, OFFICIAL RECORDS.

TOGETHER WITH THAT LAND DESCRIBED IN THE DEED FROM CHARLES MCMORRIS AND THEODORA M. MCMORRIS TO CITIZENS DEVELOPMENT CORPORATION RECORDED FEBRUARY 1, 2007 AS INSTRUMENT NO. 71354 OF OFFICIAL RECORDS.


AND ALSO


TOGETHER WITH THAT LAND DESCRIBED IN THE DEED FROM ROBERT KAHN AND SHARON KAY INGALLS AS SUCCESSOR TRUSTEES OF THE FALCON TRUST DATED OCTOBER 28, 1999 TO CITIZENS DEVELOPMENT CORPORATION RECORDED DECEMBER 23, 2008 AS INSTRUMENT NO. 2008-649777.

# LEGAL DESCRIPTION
### (continued)

EXCEPTING THEREFROM

THAT LAND DESCRIBED IN THE DEED FROM CITIZENS DEVELOPMENT CORPORATION TO CHARLES MCMORRIS & THEODORA MCMORRIS, HUSBAND AND WIFE AS JOINT TENANTS RECORDED FEBRUARY 1, 2007 AS INSTRUMENT NO. 2007-71353.

AND ALSO EXCEPTING THEREFROM

THAT LAND DESCRIBED IN THE DEED FROM CITIZENS DEVELOPMENT CORPORATION TO ROBERT KAHN AND SHARON KAY INGALLS SUCCESSOR TRUSTEES OF THE FALCON TRUST DATED OCTOBER 28, 1999 RECORDED DECEMBER 23, 2008 AS INSTRUMENT NO. 2008-649776 OF OFFICIAL RECORDS.

NOTE:  SAID LAND ALSO DESCRIBED AS PARCEL B OF CERTIFICATE OF COMPLIANCE RECORDED MARCH 6, 2008 AS INSTRUMENT NO. 2008-118490.

PARCEL P2:

AN EASEMENT FOR ROAD PURPOSES OVER AND ACROSS THAT PORTION OF SAID LOT8 OF COUNTY OF SAN DIEGO TRACT NO. 3730 IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9090 AS FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 24, 1979 DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID LOT 8, SAID CORNER BEING A POINT IN THE SOUTHWESTERLY LINE OF LA PLAZA DRIVE, 56.00 FEET WIDE, AS SAME IS SHOWN ON SALE MAP NO. 9090; THENCE SOUTH 26°02'59" WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 8 AND ITS SOUTHWESTERLY PROLONGATION A DISTANCE OF 568.90 FEET; THENCE NORTH 68°06'22" EAST 29.68 FEET TO A POINT IN A LINE PARALLEL WITH AND DISTANT SOUTHEASTERLY 20.00 FEET MEASURED AT RIGHT ANGLES FROM SAID NORTHWESTERLY LINE OF SAID LOT 8 AND ITS SOUTHWESTERLY PROLONGATION; THENCE NORTH 26°02'59" EAST ALONG SAID PARALLEL LINE A DISTANCE OF 541.46 FEET TO A POINT IN SAID SOUTHWESTERLY LINE OF LA PLAZA DRIVE; THENCE NORTHWESTERLY ALONG SAID SOUTHWESTERLY LINE OF LA PLAZA DRIVE AND/OR NORTHEASTERLY LINE OF SAID LOT 8 ALONG THE ARC OF A CURVE, CONCAVE TO THE NORTHEAST WITH A RADIUS OF 253.00 FEET FROM AN INITIAL TANGENT THAT BEARS NORTH 51°32'19" WEST THROUGH A CENTRAL ANGLE OF 4°41'06" A DISTANCE OF 20.69 FEET TO THE POINT OF BEGINNING.

PARCEL Q:  INTENTIONALLY OMITTED.

Recording Requested By

And When Recorded Mail To:

LSM Lender LLC
5505 Cancha de Golf
Rancho Santa Fe, California 92091

---

## DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES,
## SECURITY AGREEMENT AND FIXTURE FILING

       This Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing (this "Deed of Trust") dated August _____, 2013 is executed by **Citizens Development Corporation**, a California corporation, whose address is 5055 Cancha de Golf, Rancho Santa Fe, California 92091 ("Trustor"), **Chicago Title Company**, a California corporation ("Trustee"), and **LSM Lender LLC**, a Delaware limited liability company, whose address is 5505 Cancha de Golf, Rancho Santa Fe, California 92091 ("Beneficiary").

       Trustor IRREVOCABLY GRANTS, TRANSFERS, CONVEYS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE AND RIGHT OF ENTRY AND POSSESSION, that certain real property in the County of San Diego, State of California, more particularly described in attached Exhibit A (the "Property");

A.    TOGETHER WITH all the reversionary estate, right, title and interest of Trustor in and to all leases and other occupancy agreements affecting the Property or any portion thereof now or hereafter existing or entered into, together with any and all amendments, extensions and renewals thereof (the "Leases"), and any and all guaranties of the obligations of lessees under the Leases and under any and all amendments, extensions and renewals thereof, and all right, title and interest of Trustor thereunder, including, without limitation, all cash or security deposits, advance rentals, and deposits or payments of a similar nature;

B.    TOGETHER WITH an absolute assignment of all leases and all rents, income, receipts, revenues, royalties, issues and profits and other benefits (collectively, the "Rents") now due or which may become due or to which Trustor may now or hereafter become entitled or may demand or claim, arising or issuing from or out of the Leases, or from or out of the Trust Estate (as defined below) or any part thereof, subject, however, to a license granted by Beneficiary to Trustor, as hereinafter provided, to collect and receive all of the Rents;

C.    TOGETHER WITH any and all buildings and improvements now or hereafter erected thereon (the "Improvements"), and all materials intended for construction, re-construction, alteration and repair of the Improvements, all of which materials shall be deemed to be included within the Property immediately upon the delivery thereof to the Property and including, but not limited to, the fixtures, attachments, appliances, equipment, machinery, and other articles attached to the Improvements (unless the context clearly indicates otherwise, all references to the "Property" shall be deemed to include not only the real property described in attached Exhibit A but also the Improvements and all easements and other real property rights and interests appurtenant to the Property);

D.    TOGETHER WITH all right, title and interest of Trustor in and to all options to purchase or lease the Property or any portion thereof or interest therein;

E.      TOGETHER WITH all right, title and interest of Trustor in and to all easements, rights-of-way and rights used in connection therewith or as a means of access thereto, and all tenements, hereditaments and appurtenances thereof and thereto, and all development rights, mineral rights, water rights and shares of stock evidencing the same;

F.      TOGETHER WITH all right, title and interest of Trustor in and to any land lying within the right-of-way of any street, open or proposed, adjoining the Property, and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Property;

G.      TOGETHER WITH all interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Property; and

H.      TOGETHER WITH all right, title and interest of Trustor in and to all claims, causes of action and recoveries by settlement or otherwise for any damage to, or loss, taking, or diminution in the value of, any of the Property, or for any breach (or rejection in bankruptcy) of any lease of the Property or Collateral (as defined below) to Trustor as lessee, by any lessor (or such lessor's trustee in bankruptcy);

I.      TOGETHER WITH all right, title and interest of Trustor in and to all tangible personal property owned by Trustor, whether or not acquired with the Loan proceeds, and now or at any time hereafter held or stockpiled on, at or off the Property for incorporation into or use in connection with the Improvements, including, but not limited to: all goods, materials, supplies, tools, chattels, furniture, machinery, equipment, engines, appliances and fixtures now or later to be attached to, placed in or on, or used in connection with the use, enjoyment, occupancy or operation of all or any part of the Property and the Improvements, including those used for generating or distributing air, water, heat, electricity, light, fuel or refrigeration, or for ventilating or sanitary purposes, or for the exclusion of vermin or insects, or for the removal of dust, refuse or garbage; all wall beds, wall safes, built-in furniture and installations, shelving, lockers, partitions, doorstops, vaults, motors, elevators, dumbwaiters, awnings, window shades, venetian blinds, light fixtures, fire hoses and brackets and boxes for the same, fire sprinklers, alarm systems, draperies, drapery rods and brackets, mirrors, mantels, screens, linoleum, carpets and carpeting, plumbing, bathtubs, sinks, basins, pipes, faucets, water closets, laundry equipment, washers, dryers, ice boxes, refrigerators, heating units, stoves, ovens, ranges, dishwashers and other appliances, disposals, water heaters, incinerators, furniture, fixtures and furnishings, communications systems, all specifically designed installations and furnishings, all building materials, supplies and equipment now or hereafter delivered to the Property; together with all additions to, substitutions for, changes in or replacements or renewals of the whole or any part of such articles of property; all of such items, whether now or hereafter installed, being hereby declared to be for all purposes of this Deed of Trust a part of the Property;

J.      TOGETHER WITH all personal property located at any other location and marked for or identified on the books and records of the Trustor, any general contractor, any subcontractor or materialman as being intended for incorporation into the Improvements;

K.      TOGETHER WITH all building permits and any other licenses and approvals that may be required by the governmental authorities having or exercising jurisdiction over the construction of the Improvements;

L.      TOGETHER WITH all plans and any working drawings that are used or intended for use in constructing the Improvements, whether in the possession of the Trustor, any architect employed by Trustor, the general contractor, any subcontractor or materialman;

M.      TOGETHER WITH all the estate, interest, right, title or other claim or demand, including claims or demands with respect to the proceeds of insurance in effect with respect thereto, which Trustor now has or may hereafter acquire in the Property, and any and all awards made for the taking by eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Property, including, without limitation, any awards resulting from a change of grade of streets and awards for severance damages;

N.     TOGETHER WITH all refunds, rebates, reimbursements, reserves, deferred payments, deposits, cost savings, governmental subsidy payments, government-registered credits (such as emissions reduction credits), other credits, waivers and payments, whether in cash or in kind, due from or payable by (i) any federal, state, municipal or other governmental or quasi-governmental agency, authority or district (a "Governmental Agency") or (ii) any insurance or utility company, relating to any or all of the Property or arising out of the satisfaction of any conditions imposed upon or the obtaining of any approvals for the development of the Property;

O.     TOGETHER WITH all refunds, rebates, reimbursements, credits and payments of any kind due from or payable by any Governmental Agency for any taxes, special taxes, assessments, or similar governmental or quasi-governmental charges or levies imposed upon Trustor with respect to the Property or upon any or all of the Property itself or arising out of the satisfaction of any conditions imposed upon or the obtaining of any approvals for the development of the Property; and

P.     TOGETHER WITH all rights that Trustor may have as declarant under any covenants, conditions or restrictions affecting the Property; and

Q.     TOGETHER WITH, to the extent not included in the foregoing, all inventory, accounts receivable, contract rights, general intangibles, chattel paper, instruments, documents, notes, drafts, letters of credit or other rights to payment arising from or related to the Property; and all replacements and proceeds of, and additions and accessions to, any of the foregoing; together with all books, records, and files relating to any of the foregoing.

The entire estate, property and interest conveyed to Trustee may be collectively referred to as the "Trust Estate."

1.     SECURED OBLIGATIONS.

This Deed of Trust is made for the purpose of securing the following obligations (the "Secured Obligations") in any order of priority that Beneficiary may choose:

1.1     Due, prompt and complete performance of each obligation, covenant and agreement of Trustor in this Deed of Trust, and repayment of any funds advanced by or which Beneficiary or Trustee become obligated to advance under this Deed of Trust with interest thereon, at the Default Rate, as provided below.

1.2     Payment of the Promissory Note Secured by Deed of Trust (the "Note") of even date herewith in the original principal amount of $100,000.00, with interest thereon, executed by Trustor, as Borrower, in favor of Beneficiary or order, and any modification, replacement, extension or renewal thereof (the "Indebtedness").

1.3     Payment and performance of such further sums and obligations of the then record owner of Property arising from any and all existing and future agreements and transactions with Beneficiary when a writing evidences the parties' agreement that the obligation or advance be so secured.

1.4     Payment and performance of each obligation of Trustor under a Loan Agreement of even date herewith executed by Trustor as "Borrower" and Beneficiary as "Lender," and all supplements, amendments and modifications thereto and all extensions and renewals thereof (the "Loan Agreement"), or in any other agreement or instrument now or hereafter executed by Trustor in connection with the loan contemplated by the Loan Agreement, including without limitation a Security Agreement of even date herewith (the "Security Agreement"), which recites that the obligations thereunder are secured by this Deed of Trust (the "Loan").

This Deed of Trust, the Note, the Loan Agreement, the Security Agreement and any other documents or instruments executed by Trustor or any guarantor in connection with the Loan may be referred to as the "Loan Documents." This Deed of Trust does not secure, and shall not be construed or deemed to secure, (i) the obligations of Trustor or any other person under any environmental indemnity agreement executed by Trustor in connection with the Loan which states that it is unsecured, or (ii) the obligations of any guarantor under any guaranty executed in connection with the Loan, notwithstanding that such agreement or guaranty is included in the

term "Loan Documents."  Any capitalized term not defined herein shall have the meaning ascribed to it in the Loan Agreement.

2.      WARRANTIES.

Trustor warrants to Beneficiary and Trustee that:

2.1     It has good and marketable title to an indefeasible fee estate in the Property and good and marketable title to the balance of the Trust Estate, subject to no liens, encumbrances, easements, assessments, security interest, claims or defects of any kind except (a) those listed in Beneficiary's title insurance policy and approved by Beneficiary in writing (the "Exceptions"), and (b) real estate taxes for the current year;

2.2     The Exceptions and the real estate taxes are not delinquent or in default;

2.3     It has the right to grant a lien and security interest in the Trust Estate;

2.4     This Deed of Trust creates a first priority lien on the Property;

2.5     It will maintain and preserve the lien of this Deed of Trust until the Secured Obligations have been fully paid, performed and satisfied; and

2.6     It has good, right and lawful authority to grant the liens and security interest as provided in and by this Deed of Trust.

3.      AFFIRMATIVE COVENANTS AND AGREEMENTS OF TRUSTOR:

3.1     Payment of Indebtedness.  Trustor shall promptly pay and perform, or shall cause Borrower to pay and perform, each Secured Obligation in accordance with its terms.

3.2     Maintenance, Repair and Alterations.  Trustor shall, with respect to the Property:

3.2.1   Keep the Property in good condition and repair;

3.2.2   Except as otherwise may be contemplated under the Loan Agreement, not remove, demolish, diminish in any respect or materially alter any of the Improvements (including landscaped and recreation areas) or any on-site paved parking area and/or structures, and in the event of the demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby and so long as such demolition or destruction is occasioned by a casualty for which Trustor is required to maintain insurance under this Deed of Trust, the same shall be replaced promptly by similar fixtures, chattels or articles of personal property free of superior titles, liens and claims and of a value at least equal to the value of the fixtures, chattels or articles of personal property demolished or destroyed;

3.2.3   Except as otherwise may be contemplated under the Loan Agreement, Trustor shall not erect any new structures of any kind or additions to existing buildings or other structures which would alter the nature or lessen the quality of the Property or Improvements without the prior written consent of Beneficiary, which consent shall not be unreasonably withheld;

3.2.4   Complete or restore promptly and in good and workmanlike manner any building or other structure that may be constructed, damaged or destroyed and pay when due all claims for labor performed and materials furnished therefor;

3.2.5   Comply with all laws, ordinances, regulations, covenants, conditions and restrictions now or hereafter affecting the Property or any part thereof or requiring any alterations or improvements to be made thereon;

3.2.6    Not commit, suffer or permit waste or deterioration;

3.2.7    Not commit, suffer or permit any act upon Property in violation of law, including but not limited to all Federal, state and local statutes, ordinances or regulations relating to hazardous or toxic waste or waste products or hazardous substances (as more fully provided in the Loan Agreement);

3.2.8    Cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the Property may be reasonably necessary to maintain its value, the specific enumerations herein not excluding the general;

3.2.9    Provide, maintain and deliver to Beneficiary, at no expense to Beneficiary or Trustee, such evidence of insurance coverage, in accordance with the requirements set forth in Paragraph 4.5 hereof and the Loan Agreement, as is satisfactory to and with loss payable to Beneficiary;

3.2.10    Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee created hereunder, and protect, preserve and defend the Property and title thereto and right of possession thereof; and pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust; and give Beneficiary and Trustee prompt notice in writing if any claim is asserted which does or could affect any of such matters, or if any action or proceeding is commenced which alleges or relates to any such claim;

3.2.11    Pay at least ten days before delinquency all taxes, levies, charges and assessments affecting the Property, including assessments on appurtenant water stock, imposed by any public or quasi-public authority or utility company (including without limitation nongovernmental levies or assessments such as maintenance charges, owner association dues, charges or fees, and levies or charges resulting from covenants, conditions and restrictions affecting the Property), which are (or, if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it;

3.2.12    Pay and promptly discharge, at Trustor's cost and expense, all liens, encumbrances and charges upon the Trust Estate, or any part thereof or interest therein whether inferior or superior to this Deed of Trust and keep and maintain the same free from the claim of all persons supplying labor or materials that will enter into the construction of any and all buildings now being erected or that hereafter may be erected on the Property regardless of by whom such labor or materials may have been contracted, provided, however, that Trustor shall have the right to contest any such claim or lien so long as Trustor shall post a bond satisfactory to Beneficiary against such contested claim or lien.  If Trustor shall fail to remove and discharge any such lien, encumbrance or charge, then, in addition to any other right or remedy of Beneficiary, Beneficiary may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such lien, encumbrance or charge by depositing in a court a bond or the amount claimed or otherwise giving security for such claim, or by procuring such discharge in such manner as is or may be prescribed by law.  Trustor shall, immediately upon demand therefor by Beneficiary, pay to Beneficiary an amount equal to all costs and expenses incurred by Beneficiary in connection with the exercise by Beneficiary of the foregoing right to discharge any such lien, encumbrance or charge, together with interest thereon from the date of such expenditure at the Default Rate as defined below;

3.2.13    Cure within the time specified in any lease or sublease, or immediately if not specified, any defaults or breaches thereof and do all acts necessary to insure that any such lease or sublease remain in full force and effect;

3.2.14    With respect to any property described above which is less than a fee-simple estate, including but not limited to a leasehold estate:

(a)    Trustor shall cure within the time specified in the above-described lease, or other agreement, or immediately if not specified therein, any default or breaches thereof and to do all acts necessary to insure the above-described lease or other agreement remains in full force and effect; and

(b)    Trustor shall not voluntarily terminate, surrender or subordinate any leasehold or other estate encumbered hereby and any attempt by Trustor to do so shall be wholly void and without any force and effect.

4.    <u>ADDITIONAL COVENANTS</u>.

Trustor further covenants and agrees that as follows:

4.1    <u>Inspections</u>.  In addition to any rights Beneficiary may have under California Civil Code Section 2929.5, and any rights of inspection provided in the Loan Agreement, Beneficiary shall have the right (including the right to authorize other persons, including but not limited to appraisers and prospective purchasers at any foreclosure sale commenced by Beneficiary) to enter on and inspect the Property at reasonable times and for reasonable durations.

4.2    <u>Actions of Beneficiary to Preserve Trust Estate</u>.  If Trustor fails to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:  make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to (i) enter upon and take possession of the Property for such purposes; (ii) make additions, alterations, repairs and improvements to the Trust Estate that Beneficiary may consider necessary or proper to keep the Trust Estate in good condition and repair; (iii) appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; (iv) pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and (v) in exercising any such powers, pay necessary expenses, employ counsel and pay reasonable fees therefor. Trustor shall pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the interest rate set forth in the Indebtedness applicable after any breach or default thereunder (the "<u>Default Rate</u>").

4.3    <u>Indemnity</u>.  Trustor agrees to indemnify and hold Beneficiary, and any of its successors in interest, harmless from any waste or violations of law, including but not limited to all Federal, state and local statutes, ordinances or regulations relating to the environment and hazardous or toxic wastes.

4.4    <u>Condemnation</u>. Trustor hereby absolutely and irrevocably assigns to Beneficiary, and authorizes the payor to pay to Beneficiary, all awards of damages and all other compensation payable directly or indirectly in connection with any condemnation, proposed condemnation or taking for public or private use of or injury to the Property or any interest therein, and shall notify Beneficiary immediately upon obtaining knowledge of the institution of any proceedings therefor.  Beneficiary, if it so chooses, may participate in any action or proceeding relating to any condemnation as herein contemplated.  All moneys paid pursuant to this paragraph shall be applied first toward reimbursement of all of Beneficiary's costs and expenses of recovering such moneys, including attorneys' fees, and then in reduction of the principal amount of the Indebtedness to the extent necessary to render its security unimpaired.  To the extent the Secured Obligations include obligations to reimburse the Beneficiary for moneys the Beneficiary is committed to advance to Trustor or third persons in the future, such award of damages shall be held as collateral for such reimbursement obligation in lieu of the property that is condemned.  In the event of a partial taking in condemnation, the proceeds shall be apportioned in accord with the provisions of *California Code of Civil Procedure Section* 1265.225, as it is in effect at the time of the award.  An action for inverse condemnation shall be deemed an action for condemnation under this paragraph.

4.5    <u>Insurance</u>.  Trustor shall maintain the insurance required under the Loan Agreement.

5.      ASSIGNMENT OF RENTS.  Trustor hereby gives to, confers upon and absolutely assigns to Beneficiary all of Trustor's right, power and interest, in and to the rents, issues and profits of the Property (the "Rents"), reserving unto Trustor the right, prior to the occurrence of any Event of Default, as defined below, by Trustor, and authority to collect and retain the Rents as they become due and payable.  Upon any such Event of Default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the Property or any part thereof, in its own name sue for or otherwise collect the Rents including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine, and Trustor hereby appoints Beneficiary its attorney-in-fact, coupled with an interest, to perform any and all of the foregoing.  The entering upon and taking possession of the Property, the collection of the Rents and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.  The assignment of the Rents contained in this Deed of Trust is absolute and constitutes a present transfer of Trustor's interest in existing and future Rents with respect to the Property described in this Deed of Trust, effective upon the execution and delivery of this Deed of Trust.

6.      STATEMENT FEE.  Trustor or any other person legally entitled thereto agrees to pay the maximum amount permitted by law for any statement provided for by law in effect at the date of such statement regarding the obligation secured hereby.

7.      SUBSTITUTION OF TRUSTEE.  Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.  Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new Trustee.

8.      RELEASES, EXTENSIONS, MODIFICATIONS AND ADDITIONAL SECURITY.  At any time or from time to time, without liability therefor and without notice, Beneficiary may: release any person liable for payment of any Secured Obligations; extend the time for payment or otherwise alter the terms of payment of any Secured Obligation; accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security; or alter, substitute or release any property securing the Secured Obligations.  At any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the evidence of the obligation secured hereby for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Beneficiary may cause Trustee to: reconvey any part of the Property without any warranty; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

9.      RECONVEYANCE.  Upon written request of Beneficiary stating that all of the Secured Obligations have been paid and performed, Beneficiary's statement that no further commitment exists to make future advances or extend credit, and upon surrender of this Deed of Trust and the evidence of the Secured Obligations to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property or the portion thereof then held hereunder.  Upon written request of Beneficiary, if less than all sums secured hereby have been paid, Trustee shall reconvey, without warranty, the portion of the Property then held hereunder specified by Beneficiary; the recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  Neither Beneficiary nor Trustee shall have any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."  Five years after issuance of such full reconveyance, Trustee may destroy the evidence of indebtedness and this Deed of Trust (unless directed in such request to retain them).

10.    ACCELERATING TRANSFER, EVENTS OF DEFAULT AND REMEDIES.

10.1    <u>Accelerating Transfer</u>.  In the event (i) Trustor sells, conveys or otherwise transfers, or further encumbers, the Property or any part of or interest in it, without the prior written approval of Beneficiary, or (ii) the transfer, either individually or on cumulative basis, of 50% or more of the interests in profits or voting power of Trustor, without the prior written approval of Beneficiary (each, an "<u>Accelerating Transfer</u>"), then the Indebtedness and all other obligations secured by this Deed of Trust shall immediately become due and payable at the option of Beneficiary.  Consent to one such transaction shall not constitute a waiver of the right to require consent to any future or successive transactions.

10.2    <u>Events of Default</u>.  Any of the following events shall be an event of default (each, an "<u>Event of Default</u>") under this Deed of Trust:

10.2.1    Trustor fails to timely pay any payment due under the Note (including payments due at maturity or by acceleration or otherwise), or to pay or deposit money as required by the Loan Agreement or any other Loan Document, after giving effect to any express notice or cure provisions set forth therein (if any).

10.2.2    Trustor fails to timely perform any obligation to pay money due under this Deed of Trust, when and as the same becomes due and payable (including payments due at maturity or by acceleration or otherwise), and does not cure that failure within seven days after written notice from Beneficiary or Trustee.

10.2.3    Trustor fails to timely and completely perform or comply with any obligation of Trustor in this Deed of Trust or any of the other Loan Documents (other than any obligation to pay or deposit money), and does not cure that failure within 21 days after written notice from Beneficiary or Trustee.

10.2.4    The occurrence an Event of Default (as defined therein) under or, if Events of Default are not defined therein, a material breach by Trustor of any of the other Loan Documents.

10.2.5    The occurrence an Event of Default (as defined therein) under or, if Events of Default are not defined therein, a material breach by Trustor of any other agreement relating to the borrowing of money by Trustor secured by a lien on the Property, regardless of whether Beneficiary has consented to such lien, and the indebtedness secured thereby is declared due and payable prior to the date on which such indebtedness would otherwise become due and payable.

10.2.6    The occurrence an Event of Default (as defined therein) under or, if Events of Default are not defined therein, a material breach by Trustor of any other agreement between Trustor and Beneficiary.

The enumeration of specific defaults above which are also covenants herein shall not create any implication that other defaults which are also covenants but are not specifically enumerated are of lesser dignity.

10.3    <u>Remedies</u>.  Upon the occurrence and during the continuance of any Event of Default, Beneficiary may, at its option and without notice or demand upon Trustor, exercise any one or more of the following remedies:

10.3.1    Declare all Indebtedness and any other sums secured hereby to be immediately due and payable and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind; provided, however, that the remedy set forth in this <u>Paragraph 10.3.1</u> shall be subject to Borrower's rights, if any, under the Loan Agreement to cure such Event of Default in the manner set forth therein.

10.3.2    In person or by agent or by a receiver appointed by a court, with or without bringing any action or proceeding and without regard to the adequacy of its security, the solvency of Trustor or the existence of waste, enter upon, take possession of, manage and operate the Property, or any part thereof, or any other portion of the Trust Estate, in its own name or in the name of Trustee, and do any acts that Beneficiary deems necessary or desirable to preserve the value, marketability or rentability of the Property and the balance of the Trust Estate, or part thereof or interest therein, to increase the income therefrom or to protect the security thereof, including without

limitation the right to do any of the following:  make, modify, enforce, cancel or accept surrender of any Leases now in effect or hereafter in effect on the Property or any part thereof; remove and evict any lessees; increase or decrease rents; decorate, clean and repair; incur and pay reasonable management, brokerage and attorneys' fees; maintain a reserve for replacement; and terminate the license granted to Trustor to collect the Rents, and, with or without taking possession of the Property, in Beneficiary's own name, demand, collect, receive, sue for, attach and levy the Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection including attorneys' fees, upon any Indebtedness, all in such order as Beneficiary may determine.  The entering upon and taking possession of the Property, the collection of such Rents and the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default.  The enforcement of such right or remedy by Beneficiary, once exercised, shall continue for so long as Beneficiary shall elect notwithstanding that the collection and applications of the Rents may have cured for the time being the original default, and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of Rents. Trustee or Beneficiary shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale contained herein.   Any of the actions referred to in this Paragraph 10.3.2 may be taken by Beneficiary, either in person or by agent, with or without bringing any action or proceeding, or by receiver appointed by a court, and any such action may also be taken irrespective of whether any notice of default or election to sell has been given hereunder.  Further, Beneficiary, at the expense of Trustor, either by purchase, repair, or construction, may from time to time maintain and restore the Property, or any part thereof, and complete construction of any Improvements uncompleted as of the date thereof and in the course of such completion may make such changes in the contemplated Improvements as Beneficiary may deem desirable and may insure the same.

10.3.3   Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants hereof.

10.3.4   Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Trust Estate to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the Official Records of the county in which the Property is located.

10.3.5   Proceed as to both the real and personal property in accordance with Beneficiary's rights and remedies in respect of the Property, or proceed to sell any personal property separately and without regard to the Property in accordance with Beneficiary's rights and remedies.

10.3.6   Exercise any or all of the other rights and remedies provided for herein, in any of the Loan Documents or other document or agreement now or hereafter securing all or any portion of the Secured Obligations, or available under law or in equity.

10.4   Non-Judicial Foreclosure.  If Beneficiary elects to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.  To the extent the obligation secured hereby arises from a commitment of Beneficiary to make future advances either to Trustor or a third party or extend credit subsequent to the recordation of a Notice of Default hereunder, the sums secured hereby shall also include the amount of such commitment to make future advances or extend credit, and subject to acceleration as provided in the previous paragraph.  The Trustee shall pay such amount at such time as it pays all other sums secured hereby and the Beneficiary shall hold same as additional collateral for the obligation secured hereby, at such interest as is available to Beneficiary's customers in an insured deposit account with no restrictions on withdrawal.

10.4.1    Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, mailed or delivered to Trustor such notice of default and election to sell as is then required by law and by this Deed of Trust. Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale has been given as required by law, sell the Trust Estate

at time and place of sale fixed by it in such notice of sale, either as a whole, or in separate lots or parcels, and in such order as it may determine, at public auction, to the highest bidder for cash in lawful money of the United States payable at the time of sale.  If the Property consists of more than one lot or parcel, the lots or parcels may be sold separately, together or in any combination, and in such order as Beneficiary determines, at the sole discretion of the Beneficiary.  Trustor waives the right to direct the order in which the Property may be sold when it consists of more than one lot or parcel.  Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including without limitation Trustor, Trustee or Beneficiary, may purchase at such sale and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.  If allowed by law, Beneficiary, if it is the purchaser, may turn in the Note at the amount owing thereon toward payment of the purchase price (or for endorsement of the purchase price as a payment on the Note if the amount owing thereon exceeds the purchase price).  Trustor hereby expressly waives any right of redemption after sale that Trustor may have at the time of sale or that may apply to the sale.

10.4.2    After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of:  all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

10.4.3    Trustee may postpone sale of all or any portion of the Trust Estate by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement or by subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement; or Trustee may, in its discretion, give a new notice of sale.  Beneficiary may rescind any such notice of default at any time before Trustee's sale by executing a notice of rescission and recording the same.  The recordation of such notice shall constitute a cancellation of any prior declaration of default and demand for sale and of any acceleration of maturity of the Indebtedness effected by any prior declaration or notice of default.  The exercise by Beneficiary of the right of rescission shall not constitute a waiver of any default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the Note or this Deed of Trust, or any of the rights, obligations or remedies of Beneficiary or Trustee hereunder.

11.    <u>APPOINTMENT OF RECEIVER</u>.  If an Event of Default shall have occurred and be continuing, Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Trust Estate or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Trust Estate, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor.  Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided in <u>Paragraph 10.3.2</u> and shall continue as such and exercise all such powers until the later of (i) the date of confirmation of sale of the Trust Estate; (ii) the disbursement of all proceeds of the Trust Estate collected by such receiver and the payment of all expenses incurred in connection therewith; or (iii) the termination of such receivership with the consent of Beneficiary or pursuant to an order by a court of competent jurisdiction.

12.    <u>REMEDIES NOT EXCLUSIVE</u>.  Trustee and Beneficiary, and each of them, shall be entitled to enforce payment and performance of any of the Secured Obligations and to exercise all rights and powers under this Deed of Trust or under any of the other Loan Documents or other agreement or any laws now or hereafter in force, notwithstanding that some or all of the Indebtedness and Secured Obligations may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise.  Neither the acceptance of this Deed of Trust nor its enforcement, whether by court action or pursuant to the power of sale or other powers herein contained, shall prejudice or in any manner affect Trustee's or Beneficiary's right to realize upon or enforce any other security now or hereafter held by Trustee or Beneficiary, it being agreed that Trustee and Beneficiary, and each of them, shall be entitled to enforce this Deed of Trust and any other security now or hereafter held by

Beneficiary or Trustee in such order and manner as they or either of them may in their absolute discretion determine. No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Documents to Trustee or Beneficiary, or to which either of them may be otherwise entitled, may be exercised concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary, and either of them may pursue inconsistent remedies.

13.    ACCOMMODATION DEED OF TRUST.  With respect to any Trustor under this Deed of Trust who is not obligated to repay the Indebtedness, such Trustor:

13.1    Authorizes Beneficiary without notice or demand and without affecting the security granted hereunder, from time to time to renew, compromise, extend, accelerate or otherwise change the time for payment of or otherwise change the terms of the indebtedness secured hereby, or any part thereof, including increase or decrease of the rate of interest thereon;

13.2    Waives any right to require Beneficiary to proceed against the persons liable for the Indebtedness secured hereby, to proceed against or exhaust any other security securing the Secured Obligations secured hereby or to pursue any other remedy in Beneficiary's power whatsoever; and

13.3    Waives any defense arising by reason of any disability, other defense, or the cessation from any cause whatsoever of the liability of any person liable for the Indebtedness secured hereby.

Until all indebtedness secured by this Deed of Trust shall have been paid in full, and no commitment on the part of the Beneficiary to make future advances or extend credit either to Trustor or a third party exists, Trustor shall have no right of subrogation, and waives any right to enforce any remedy which Beneficiary now has or may hereafter have against any person liable for the Indebtedness, and waives any benefit of, any right to participate in any security now or hereafter held by Beneficiary and without limiting the generality of the foregoing, Trustor specifically waives and relinquishes as against Beneficiary any defense or benefit otherwise available to Trustor should Beneficiary make an election of remedies as against any person liable for the Indebtedness (and irrespective of the circumstances or manner in which or whereby such election is made) which destroys or impairs Trustor's subrogation rights or rights to proceed against any person liable for the indebtedness secured hereby for reimbursement and, further, to the extent Trustor may be deemed a guarantor hereunder, such guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed the guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the *California Code of Civil Procedure* or otherwise. Trustor assumes the responsibility for being and keeping himself informed of the financial condition of any person liable for the indebtedness secured hereby and of all other circumstances bearing upon the risk of nonpayment of the indebtedness secured hereby which diligent inquiry would reveal, and agrees that Beneficiary shall have no duty to advise Trustor of information known to it regarding such condition or circumstances.

14.    MISCELLANEOUS.

14.1    Governing Law; Severability.  This Deed of Trust shall be governed by the laws of the State of California.  In the event that any provision or clause of any of the Loan Documents conflicts with applicable laws, such conflicts shall not affect other provisions of such Loan Documents which can be given effect without the conflicting provision, and to this end, the provisions of the Loan Documents are declared to be severable.

14.2    Amendment; No Implied Waiver.  This Deed of Trust cannot be modified, waived, discharged or terminated orally, but only by a written instrument signed by the party against whom enforcement of the modification, waiver, discharge or termination is asserted.  No waiver by Beneficiary of any default or breach by Trustor hereunder shall be implied from any omission by Beneficiary to take action on account of such default if

such default persists or is repeated, and no express waiver shall affect any default other than the default identified in the waiver and such waiver shall be operative only for the time and to the extent therein stated. Waivers of any covenant, term or condition contained herein shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. The consent or approval by Beneficiary to or of any act by Trustor requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar act.

14.3    <u>Notices</u>. Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties to this Deed of Trust by any of the other parties hereto, or whenever any of the parties desires to give or serve upon the others any communications with respect to this Deed of Trust, such notice shall be given in the manner specified by the Loan Agreement.

14.4    <u>Successors and Assigns</u>. This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the evidence of the obligation secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

14.5    <u>Trustee's Acceptance</u>. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law, and by its acceptance hereof, Trustee covenants faithfully to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and Trustee hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by it in accordance with the terms hereof. Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

14.6    <u>Subrogation</u>. To the extent that proceeds of the Note are used, directly or indirectly, to pay off, satisfy or discharge, in whole or in part, any outstanding lien, charge or prior encumbrance against the Trust Estate or any part thereof, then as additional security hereunder Beneficiary shall be subrogated to any and all rights, superior titles and liens owned or claimed by any owner or holder of such outstanding liens, charges and prior encumbrances, however remote and irrespective of whether said liens, charges or encumbrances have been released of record by the holder thereof upon payment.

14.7    <u>No Merger</u>. If both the lessor's and lessee's estates under any Lease or any portion thereof that constitutes a part of the Trust Estate shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger, and, in such event, Beneficiary shall continue to have and enjoy all of the rights and privileges of Beneficiary as to the separate estates. In addition, upon the foreclosure of the lien created by this Deed of Trust on the Trust Estate pursuant to the provisions hereof, any leases or subleases then existing and created by Trustor shall not be destroyed or terminated by application of the law of merger or as a matter of law as a result of such foreclosure unless Beneficiary or any purchaser at any such foreclosure sale shall so elect. No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any lease or sublease unless Beneficiary or such purchaser shall give written notice to such tenant or subtenant.

14.8    <u>Certain Rights of Beneficiary</u>. Without affecting the liability of Trustor or of any other person who is or shall become bound by the terms of this Deed of Trust or who is or shall become liable for the performance of any obligation secured hereby, Beneficiary may, in such manner, upon such terms and at such times as it deems best and without notice or demand, release any party now or hereafter liable for the performance of any such obligation, extend the time for such performance, alter any of the terms of any such obligation; or accept additional security therefor, and alter, substitute or release any property securing such performance. No exercise or non-

exercise by Beneficiary of any of its rights under this Deed of Trust, no dealing by Beneficiary with any person, firm or corporation and no change, impairment, loss or suspension of any right or remedy of Beneficiary shall in any way affect any of the obligations of Trustor hereunder or any security furnished by Trustor, or give Trustor any recourse against Beneficiary.

14.9     <u>Headings</u>.  Headings are for convenience only and are not intended as a limitation on the content of the paragraph following or as an aid to the construction thereof.

14.10    <u>Counterparts</u>.  This Deed of Trust may be executed simultaneously in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

<u>Deed of Trust as Financing Statement</u>.  This Deed of Trust is intended to constitute a security agreement between Trustor and Beneficiary and Trustor hereby grants to Beneficiary a security interest in each item or component of the Trust Estate in which a security interest may be granted under the Uniform Commercial Code. The recording of this Deed of Trust shall be effective as a financing statement filed as a fixture filing under Section 9502 of the Code with respect to any Property which now is or later may become fixtures attached to the Property or the Improvements, and is to be recorded with the appropriate authority where the Property (including said fixtures) is situated.  The mailing address of Trustor is set forth above on the first page of this Deed of Trust and the address of Beneficiary from which information concerning the security interest may be obtained is set forth above on the first page of this Deed of Trust.

15.     <u>Copy of Notice of Default</u>.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to it at the address set forth above.

<u>*Trustor:*</u>

Citizens Development Corporation,
a California corporation,

By: _____

Name: _____

Title: _____


**(ALL SIGNATURES MUST BE ACKNOWLEDGED BY A NOTARY PUBLIC)**

**<u>ACKNOWLEDGMENT</u>**

STATE OF CALIFORNIA          )
                                            )
COUNTY OF SAN DIEGO      )

On _____, 2013, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under Penalty of Perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Signature of Notary Public

                                (SEAL)

## EXHIBIT A

## LEGAL DESCRIPTION
## (ATTACHED)

# LEGAL DESCRIPTION

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A: INTENTIONALLY OMITTED

PARCEL B: INTENTIONALLY OMITTED

PARCEL C: INTENTIONALLY OMITTED

PARCEL D: INTENTIONALLY OMITTED

PARCEL E: (221-500-35, 222-031-06)

THAT PORTION OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 16, THE EAST QUARTER OF SECTION 20, THE WEST HALF OF THE NORTHWEST QUARTER OF SECTION 21 IN TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTER LINE OF SAN MARINO DRIVE AND LA BONITA DRIVE, IN THE LAKE SAN MARCOS UNIT NO. 1, ACCORDING TO MAP THEREOF NO. 5137, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE SOUTHERLY PROLONGATION OF SAID CENTER LINE OF LA BONITA DRIVE, SOUTH 0°42'33" EAST 30.00 FEET TO THE SOUTHERLY LINE OF SAID SAN MARINO DRIVE; THENCE ALONG SAID SOUTHERLY LINE SOUTH 89°20'50" WEST 20.00 FEET; THENCE ALONG A LINE WHICH IS PARALLEL WITH AND 20.00 FEET WESTERLY AT RIGHT ANGLES FROM SAID SOUTHERLY PROLONGATION OF THE CENTER LINE OF LA BONITA DRIVE, SOUTH 04°42'33" EAST 400.25 FEET TO THE BEGINNING OF A TANGENT 275.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHERLY ALONG SAID CURVE 366.08 FEET THROUGH AN ANGLE OF 76°16'20" THENCE SOUTH 0°43'27" EAST 277.84 FEET, THENCE NORTH 89°16'33" EAST 362.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 89°16'33" WEST 37.00 FEET; THENCE SOUTH 0°43'27" EAST 130.00 FEET TO THE BEGINNING OF A TANGENT 130.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 204.20 FEET THROUGH AN ANGLE OF 90°00'; THENCE TANGENT TO SAID CURVE SOUTH 89°16'33" WEST 390.00 FEET; THENCE SOUTH 0°43'27" EAST 280.00 FEET; THENCE NORTH 89°16'33" EAST 270.00 FEET TO THE BEGINNING OF A TANGENT 130.00 FOOT RADIUS CURVE, CONCAVE WESTERLY; THENCE SOUTHEASTERLY, SOUTHERLY AND SOUTHWESTERLY

# LEGAL DESCRIPTION
(continued)

ALONG SAID CURVE 408.41 FEET THROUGH AN ANGLE OF 180°00'; THENCE TANGENT TO SAID CURVE SOUTH 89°16'33" WEST 365.00 FEET; THENCE SOUTH 0°43'27" EAST 145.00 FEET; THENCE SOUTH 51°05'50" EAST 505.00 FEET MORE OR LESS TO A POINT OF INTERSECTION WITH THE 494.4 FOOT CONTOUR LINE AS ESTABLISHED WHEN THE SURFACE OF THAT CERTAIN BODY OF WATER KNOWN AS LAKE SAN MARCOS IS LEVEL WITH THE SPILLWAY CREST OF THAT CERTAIN DAM CONSTRUCTED ACROSS AND IN SAN MARCOS CREEK AND KNOWN TO THE STATE OF CALIFORNIA DEPARTMENT OF WATER RESOURCES AS SAN MARCOS DAM, STATE NO. 848, SAID 494.4 FOOT CONTOUR LINE BEING FURTHER QUALIFIED AS A HORIZONTAL PLANE 494.4 FEET ABOVE SEA LEVEL, THE TERM "SEA DESIGNATING THAT CERTAIN DATUM PLANE OR POINT WHICH IS 564.07 FEET VERTICALLY BELOW CERTAIN BENCH MARK CONSISTING OF A STANDARD UNITED STATES COASTAL AND GEODETIC SURVEY DISK STAMPED "L 302 1935" AND SET IN THE TOP OF A CONCRETE POST LOCATED 30.00 FEET RIGHT OF STATION 57 PLUS 85 OF SAN DIEGO COUNTY ROAD SURVEY NO. 454; THENCE SOUTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE WESTERLY END OF THE UPSTREAM FACE OF SAID SAN MARCOS DAM; THENCE EASTERLY ALONG THE UPSTREAM FACE OF SAID SAN MARCOS DAM AND SAID 494.4 FOOT CONTOUR LINE TO THE EASTERLY END OF SAID DAM AT ITS INTERSECTION WITH SAID 494.4 FOOT CONTOUR LINE; THENCE NORTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT NO. 606 OF LAKE SAN MARCOS UNIT NO. 7, ACCORDING TO MAP THEREOF NO. 5958, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE SOUTH 46°45'00" EAST ALONG SAID NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT NO. 606, A DISTANCE OF 22 FEET MORE OR LESS, TO THE MOST WESTERLY CORNER OF SAID LOT NO. 606; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 7 AS FOLLOWS:

NORTH 43°15' EAST 94.95 FEET; NORTH 76°38'25" EAST 617.94 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.02 FEET TO THE BEGINNING OF A TANGENT 163.50 FOOT RADIUS CURVE, CONCAVE EASTERLY; THENCE NORTHWESTERLY, NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE AND THE EASTERLY EXTENSION THEREOF 513.65 FEET THROUGH AN ANGLE OF 180°00'; THENCE TANGENT TO SAID CURVE NORTH 76°38'25" EAST 5.02 FEET TO THE MOST WESTERLY CORNER OF LOT 530 OF LAKE SAN MARCOS UNIT NO. 6, ACCORDING TO MAP NO. 5551, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 6 AS FOLLOWS:

NORTH 76°38'25" EAST 465.00 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.02 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE EASTERLY, HAVING A RADIUS OF 163.50 FEET; NORTHWESTERLY, NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE 513.65 FEET THROUGH AN ANGLE OF 180°00' AND TANGENT TO SAID CURVE NORTH 76°38'25" EAST 35.00 FEET TO THE NORTHWESTERLY CORNER OF LOT 445 OF LAKE SAN MARCOS UNIT NO. 5, ACCORDING TO MAP THEREOF NO. 5447, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 5 AS FOLLOWS:

# LEGAL DESCRIPTION
### (continued)

NORTH 76°38'25" EAST 435.00 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.00 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE NORTHEASTERLY HAVING A RADIUS OF 163.50 FEET; AND NORTHWESTERLY ALONG SAID CURVE 198.57 FEET THROUGH AN ANGLE OF 69°35' TO THE MOST SOUTHERLY CORNER OF LOT 362 OF LAKE SAN MARCOS UNIT NO. 4, ACCORDING TO MAP THEREOF NO. 5338, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 4 AS FOLLOWS:

CONTINUING NORTHERLY AND NORTHEASTERLY ALONG THE EXTENSION OF THE ABOVE DESCRIBED 163.50 FOOT RADIUS CURVE 315.09 FEET THROUGH AN ANGLE OF 110°25'; TANGENT TO SAID CURVE NORTH 76°38'25" EAST 270.00 FEET; AN NORTH 13°21'35" WEST 167.03 FEET TO THE MOST SOUTHERLY CORNER OF LOT 105 OF LAKE SAN MARCOS UNIT NO. 1 ACCORDING TO MAP NO. 5137, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY SAID UNIT NO. 1 AS FOLLOWS:

NORTH 13°21'35" WEST 85.57 FEET; NORTH 36°21'35" EAST 65.69 FEET; SOUTH 53°38'25" EAST 90.00 FEET TO A POINT ON A 50.00 FOOT RADIUS CURVE, CONCAVE EASTERLY, THE TANGENT OF SAID CURVE BEARING NORTH 0°30'35" WEST TO SAID POINT; NORTHERLY ALONG SAID CURVE 32.17 FEET THROUGH AN ANGLE OF 36°52'10"; AND NORTH 53°38'25" WEST 330.00 FEET TO THE MOST WESTERLY CORNER OF LOT 173 OF SAID LAKE SAN MARCOS UNIT NO. 1; THENCE ALONG THE SOUTHWESTERLY PROLONGATION OF THE NORTHERLY LINE OF SAID LOT 173 SOUTH 36°21'35" WEST 185.91 FEET TO THE BEGINNING OF A TANGENT 411.52 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 290.69 FEET THROUGH AN ANGLE OF 40°28'20" TO THE BEGINNING OF REVERSED 350.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 163.66 FEET THROUGH AN ANGLE OF 23°16'06"; THENCE SOUTH 51°06'00" WEST 30.14 FEET; THENCE SOUTH 31°22'03" WEST 160.00 FEET; THENCE SOUTH 0°43'27" EAST 400.00 FEET TO THE TRUE POINT OF BEGINNING.
EXCEPTING THEREFROM THAT PORTION DESCRIBED IN CERTIFICATE OF COMPLIANCE RECORDED DECEMBER 13, 1979 AS FILE NO. 79-522804 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITH LAKE SAN MARCOS VILLAGE, ACCORDING TO MAP THEREOF NO. 8742, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY DECEMBER 16, 1977.


PARCEL F: INTENTIONALLY OMITTED


PARCEL G: (221-510-57)


LOT 606 OF LAKE SAN MARCOS UNIT NO. 7, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 5958, RECORDED SEPTEMBER 13, 1967 IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY.

# LEGAL DESCRIPTION
(continued)

PARCEL H:  INTENTIONALLY OMITTED

PARCEL I:  INTENTIONALLY OMITTED

PARCEL J:  INTENTIONALLY OMITTED

PARCEL K:  INTENTIONALLY OMITTED

PARCEL L:  INTENTIONALLY OMITTED

PARCEL M:  INTENTIONALLY OMITTED

PARCEL N:  INTENTIONALLY OMITTED

PARCEL O: (221-240-01)

LOT 173 OF LAKE SAN MARCOS UNIT NO. 1 IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 5137 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY MARCH 5, 1963.

PARCEL PI: (222-030-30, 56 AND 44, 222-440-15)

ALL THAT PORTION OF THE EAST ONE-HALF OF SECTION 20, THE NORTHWEST ONE-QUARTER OF SECTION 21, AND THE NORTHEAST ONE-QUARTER OF THE NORTHEAST ONE-QUARTER OF SECTION 29, TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO GOVERNMENT PLAT THEREOF, TOGETHER WITH A PORTION OF LOT 8, COUNTY OF SAN DIEGO TRACT NO. 3730, ACCORDING TO MAP THEREOF NO. 9090 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND CERTIFICATE OF CORRECTION RECORDED October 25, 1979 AS INSTRUMENT NO. 79-449143, DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST NORTHERLY CORNER OF SAID LOT 8, SAID CORNER BEING A POINT IN THE SOUTHEASTERLY LINE OF LA PLAZA DRIVE, 56.00 FEET WIDE, AS SAME IS SHOWN ON SAID MAP NO. 9090; THENCE SOUTH 26°02'59" WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 8 A DISTANCE OF 539.04 FEET TO AN ANGLE POINT THEREIN AND/OR THE TRUE POINT OF BEGINNING;

# LEGAL DESCRIPTION
### (continued)

THENCE CONTINUING SOUTH 26°02'59" WEST ALONG THE SOUTHWESTERLY PROLONGATION OF SAID NORTHWESTERLY LINE A DISTANCE OF 472.64 FEET TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 8; THENCE SOUTH 54°49'09" EAST ALONG SAID SOUTHERLY LINE OF LOT 8 A DISTANCE OF 201.28 FEET TO AN ANGLE POINT THEREIN AND/OR A POINT IN THE LINE COMMON TO SAID SECTIONS 20 AND 21; THENCE SOUTH 00°40'41" EAST ALONG SAID LINE COMMON TO SECTIONS 20 AND 21A DISTANCE OF 1988.94 FEET TO THE SOUTHERLY TERMINUS THEREOF, SAID SOUTHERLY TERMINUS ALSO BEING THE CORNER COMMON TO SAID SECTIONS 20, 21 AND 29, AND SECTION 28, TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN; THENCE SOUTH 00°41'01" EAST ALONG THE EAST LINE OF SAID SECTION 29 A DISTANCE OF 267.31 FEET; THENCE SOUTH 89°17'59" WEST 320.37 FEET; THENCE NORTH 19°38'10" WEST 297.43 FEET TO A POINT IN THE LINE COMMON TO SAID SECTIONS 20 AND 29; THENCE NORTH 2°15'00" WEST 1073.02 FEET, THENCE NORTH 35°10'29" WEST 385.37 FEET; THENCE NORTH 23°54'18" WEST 202.36 FEET; THENCE NORTH 7°24'19" WEST 380.17 FEET; THENCE NORTH 13°29'45" EAST 411.36 FEET; THENCE NORTH 24°52'49" WEST 331.34 FEET TO THE SOUTHEAST CORNER OF LOT 14 OF LAKE SAN MARCOS SHORES ACCORDING TO MAP THEREOF NO. 8206 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE ALONG THE EASTERLY LINE OF SAID LOT 14 FOLLOWING ITS VARIOUS COURSES NORTH 16°22'43" EAST 64.30 FEET (RECORDED NORTH 16°23'21" EAST PER MAP NO. 8206); NORTH 27°04'43" WEST 52.60 FEET (RECORDED NORTH 27°04'05" EAST 52.65 FEET PER MAP NO. 8206); NORTH 60°22'58" EAST 63.00 FEET (RECORDED NORTH 60°23'36" EAST 62.99 FEET PER MAP NO. 8206);NORTH 15°00'51" EAST, 261.92 FEET (RECORDED NORTH 15°01'29" EAST PER MAP NO. 8206); NORTH 23°45'56" EAST 112.72 FEET (RECORDED NORTH 23°46'38" EAST 112.68 FEET PER MAP NO. 8206); NORTH 36°55'43" EAST 256.14 FEET (RECORDED NORTH 36°56'04" EAST 258.18 FEET PER MAP NO. 8206); NORTH 16°35'51" EAST 147.79 FEET (RECORDED NORTH 16°36'27" EAST 147.44 FEET PER MA.:) NO. 8206); THENCE LEAVING SAID EASTERLY LINE OF LOT 14, SOUTH 51°05'50" EAST 25.00 FEET MORE OR LESS TO A POINT OF INTERSECTION WITH THE 494.4 FOOT CONTOUR LINE AS ESTABLISHED THE SURFACE OF THAT CERTAIN BODY OF WATER KNOWN AS LAKE SAN MARCOS IS LEVEL WITH THE SPILLWAY CREST OF THAT CERTAIN DAM CONSTRUCTED ACROSS AND IN SAN MARCOS CREEK AND KNOWN TO THE STATE OF CALIFORNIA DEPARTMENT OF WATER RESOURCES AS SAN MARCOS DAM, STATE NO. 848, SAID 494.4 FOOT CONTOUR

## LEGAL DESCRIPTION
(continued)

LINE BEING FURTHER QUALIFIED AS A HORIZONTAL PLANE 494.4 FEET ABOVE SEA LEVEL, THE TERM "SEA LEVEL" DESIGNATING THAT CERTAIN DATUM PLANE OR A POINT WHICH IS 564.07 FEET VERTICALLY BELOW CERTAIN BENCH MARK CONSISTING OF A STANDARD UNITED STATES COAST AND GEODETIC SURVEY DISK STAMPED "L 302 1935" AND SET IN THE TOP OF A CONCRETE POST LOCATED 30.00 FEET RIGHT OF STATION 57+85 OF SAN DIEGO COUNTY ROAD SURVEY NO. 45; THENCE SOUTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE EAST-WEST CENTER ONE OF SAID SECTION 20; THENCE SOUTH 89°37'17" EAST ALONG SAID EAST-WEST CENTER SECTION LINE 292.00 FEET, MORE OR LESS TO A POINT OF INTERSECTION WITH SAID 494.4 FOOT CONTOUR LINE; THENCE NORTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT 606 OF LAKE SAN MARCOS UNIT NO. 7 ACCORDING TO MAP THEREOF NO. 5958 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE SOUTH 46°45'00" EAST ALONG SAID NORTHWESTERLY PROLONGATION 25.00 FEET, MORE OR LESS, TO THE MOST WESTERLY CORNER OF SAID LOT 606 AND/OR THE MOST NORTHERLY CORNER OF LOT 1 OF LAKESHORE EAST ACCORDING TO MAP THEREOF NO. 8500 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE ALONG THE WESTERLY BOUNDARY OF SAID LAKESHORE EAST, FOLLOWING ITS VARIOUS COURSES SOUTH 17°15'00" WEST 249.00 FEET (RECORDED NORTH 17°10'46" EAST 249.34 PER MAP NO. 8500); SOUTH 29°49'43" WEST 137.05 FEET (RECORDED NORTH 29°51'23" EAST PER MAP NO. 8500); SOUTH 26°00'00" WEST 225.83 FEET (RECORDED NORTH 26°01'40" EAST PER MAP NO. 8500); SOUTH 11°56'32" WEST 140.75 FEET (RECORDED NORTH 11°58'12" EAST PER MAP NO. 8500); SOUTH 18°34'32" WEST 199.74 FEET (RECORDED NORTH 18°36'12" EAST PER MAP NO. 8500) THE MOST WESTERLY POINT IN SAID BOUNDARY OF LAKESHORE EAST AND/OR AN ANGLE POINT IN THE NORTHWESTERLY BOUNDARY OF SAID LOT 8 COUNTY OF SAN DIEGO TRACT NO. 3730; THENCE CONTINUING ALONG SAID BOUNDARY OF LAKESHORE EAST AND/OR SAID BOUNDARY OF LOT 8, FOLLOWING THEIR VARIOUS COURSES, SOUTH 37°38'52" EAST 128.00 FEET (RECORDED NORTH 37°37'12" WEST PER MAP NO. 8500); SOUTH 89°38'52" EAST 65.00 FEET (RECORDED NORTH 89°37'12" WEST PER MAP NO. 8500);NORTH 68°06'22" EAST 103.26 FEET (RECORDED NORTH 68°08'02" EAST PER MAP NO. 8500) TO THE TRUE POINT OF BEGINNING. ALSO DESCRIBED AS PARCEL "B" ON CERTIFICATE OF COMPLIANCE RECORDED DECEMBER 13, 1979 AS INSTRUMENT NO. 79-522804, OFFICIAL RECORDS.

TOGETHER WITH THAT LAND DESCRIBED IN THE DEED FROM CHARLES MCMORRIS AND THEODORA M. MCMORRIS TO CITIZENS DEVELOPMENT CORPORATION RECORDED FEBRUARY 1, 2007 AS INSTRUMENT NO. 71354 OF OFFICIAL RECORDS.


AND ALSO


TOGETHER WITH THAT LAND DESCRIBED IN THE DEED FROM ROBERT KAHN AND SHARON KAY INGALLS AS SUCCESSOR TRUSTEES OF THE FALCON TRUST DATED OCTOBER 28, 1999 TO CITIZENS DEVELOPMENT CORPORATION RECORDED DECEMBER 23, 2008 AS INSTRUMENT NO. 2008-649777.

# LEGAL DESCRIPTION
(continued)

EXCEPTING THEREFROM

THAT LAND DESCRIBED IN THE DEED FROM CITIZENS DEVELOPMENT CORPORATION TO CHARLES MCMORRIS & THEODORA MCMORRIS, HUSBAND AND WIFE AS JOINT TENANTS RECORDED FEBRUARY 1, 2007 AS INSTRUMENT NO. 2007-71353.

AND ALSO EXCEPTING THEREFROM

THAT LAND DESCRIBED IN THE DEED FROM CITIZENS DEVELOPMENT CORPORATION TO ROBERT KAHN AND SHARON KAY INGALLS SUCCESSOR TRUSTEES OF THE FALCON TRUST DATED OCTOBER 28, 1999 RECORDED DECEMBER 23, 2008 AS INSTRUMENT NO. 2008-649776 OF OFFICIAL RECORDS.

NOTE:  SAID LAND ALSO DESCRIBED AS PARCEL B OF CERTIFICATE OF COMPLIANCE RECORDED MARCH 6, 2008 AS INSTRUMENT NO. 2008-118490.

PARCEL P2:

AN EASEMENT FOR ROAD PURPOSES OVER AND ACROSS THAT PORTION OF SAID LOT8 OF COUNTY OF SAN DIEGO TRACT NO. 3730 IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9090 AS FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 24, 1979 DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID LOT 8, SAID CORNER BEING A POINT IN THE SOUTHWESTERLY LINE OF LA PLAZA DRIVE, 56.00 FEET WIDE, AS SAME IS SHOWN ON SALE MAP NO. 9090; THENCE SOUTH 26°02'59" WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 8 AND ITS SOUTHWESTERLY PROLONGATION A DISTANCE OF 568.90 FEET; THENCE NORTH 68°06'22" EAST 29.68 FEET TO A POINT IN A LINE PARALLEL WITH AND DISTANT SOUTHEASTERLY 20.00 FEET MEASURED AT RIGHT ANGLES FROM SAID NORTHWESTERLY LINE OF SAID LOT 8 AND ITS SOUTHWESTERLY PROLONGATION; THENCE NORTH 26°02'59" EAST ALONG SAID PARALLEL LINE A DISTANCE OF 541.46 FEET TO A POINT IN SAID SOUTHWESTERLY LINE OF LA PLAZA DRIVE; THENCE NORTHWESTERLY ALONG SAID SOUTHWESTERLY LINE OF LA PLAZA DRIVE AND/OR NORTHEASTERLY LINE OF SAID LOT 8 ALONG THE ARC OF A CURVE, CONCAVE TO THE NORTHEAST WITH A RADIUS OF 253.00 FEET FROM AN INITIAL TANGENT THAT BEARS NORTH 51°32'19" WEST THROUGH A CENTRAL ANGLE OF 4°41'06" A DISTANCE OF 20.69 FEET TO THE POINT OF BEGINNING.

PARCEL Q:  INTENTIONALLY OMITTED.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO:    (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| OR | 1a. ORGANIZATION'S NAME | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any | ☐ NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| OR | 2a. ORGANIZATION'S NAME | | | |
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | ☐ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| OR | 3a. ORGANIZATION'S NAME | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

4. This FINANCING STATEMENT covers the following collateral:

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) – CALIFORNIA (REV. 01/01/08)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION NAME

OR

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX

10. MISCELLANEOUS:

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one name (11a or 11b) – do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|
| | | | ☐ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P's NAME – insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction – effective 30 years
☐ Filed in connection with a Public-Finance Transaction – effective 30 years

**FILING OFFICE COPY** – NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) – CALIFORNIA (REV. 01/01/08)

**Addendum to UCC-1 Financing Statement**

**Debtor:   Citizens Development Corporation**

**Secured Party:  LSM Lender LLC**

1.  All right, title and interest of Debtor in and to all claims, causes of action and recoveries by settlement or otherwise for any damage to, or loss, taking, or diminution in the value of, any of the property generally located at the real property in San Marcos California describe don attached <u>Exhibit A</u> (the "<u>Property</u>"), or for any breach (or rejection in bankruptcy) of any lease of the Property or Collateral (as defined below) to Debtor as lessee, by any lessor (or such lessor's trustee in bankruptcy), with the addresses set forth below.

2.  All right, title and interest of Debtor in and to all tangible personal property owned by Debtor, whether or not acquired with the subject loan proceeds, and now or at any time hereafter held or stockpiled on, at or off the Property for incorporation into or use in connection with improvements to the Property ("<u>Improvements</u>").

3.  All personal property located at any other location and marked for or identified on the books and records of Debtor, any general contractor, any subcontractor or materialman as being intended for incorporation into the Improvements.

4.  All building permits and any other licenses and approvals that may be required by the governmental authorities having or exercising jurisdiction over the construction of the Improvements.

5.  All plans and any working drawings that are used or intended for use in constructing the Improvements, whether in the possession of the Debtor, any architect employed by Debtor, the general contractor, any subcontractor or materialman.

6.  All the estate, interest, right, title or other claim or demand, including claims or demands with respect to the proceeds of insurance in effect with respect thereto, which Debtor now has or may hereafter acquire in the Property, and any and all awards made for the taking by eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Property, including, without limitation, any awards resulting from a change of grade of streets and awards for severance damages.

7.  All refunds, rebates, reimbursements, reserves, deferred payments, deposits, cost savings, governmental subsidy payments, government-registered credits (such as emissions reduction credits), other credits, waivers and payments, whether in cash or in kind, due from or payable by (i) any federal, state, municipal or other governmental or quasi-governmental agency, authority or district (a "<u>Governmental Agency</u>") or (ii) any insurance or utility company, relating to any or all of the Property or arising out of the satisfaction of any conditions imposed upon or the obtaining of any approvals for the development of the Property.

8.  All refunds, rebates, reimbursements, credits and payments of any kind due from or payable by any Governmental Agency for any taxes, special taxes, assessments, or similar governmental or quasi-governmental charges or levies imposed upon Debtor with respect to the Property or upon any or all of the Property itself or arising out of the satisfaction of any conditions imposed upon or the obtaining of any approvals for the development of the Property.

9.  All rights that Debtor may have as declarant under any covenants, conditions or restrictions affecting the Property.

10. To the extent not included in the foregoing all inventory, accounts receivable, contract rights, general intangibles, chattel paper, instruments, documents, notes, drafts, letters of credit or other rights to payment arising from or related to the Property: and all replacements and proceeds of, and additions and accessions to, any of the foregoing; together with all books, records, and files relating to any of the foregoing.

## EXHIBIT A

LEGAL DESCRIPTION
(ATTACHED)

# LEGAL DESCRIPTION

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A:  INTENTIONALLY OMITTED

PARCEL B:  INTENTIONALLY OMITTED

PARCEL C:  INTENTIONALLY OMITTED

PARCEL D: INTENTIONALLY OMITTED

PARCEL E: (221-500-35, 222-031-06)

THAT PORTION OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 16, THE EAST QUARTER OF SECTION 20, THE WEST HALF OF THE NORTHWEST QUARTER OF SECTION 21 IN TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTER LINE OF SAN MARINO DRIVE AND LA BONITA DRIVE, IN THE LAKE SAN MARCOS UNIT NO. 1, ACCORDING TO MAP THEREOF NO. 5137, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE SOUTHERLY PROLONGATION OF SAID CENTER LINE OF LA BONITA DRIVE, SOUTH 0°42'33" EAST 30.00 FEET TO THE SOUTHERLY LINE OF SAID SAN MARINO DRIVE; THENCE ALONG SAID SOUTHERLY LINE SOUTH 89°20'50" WEST 20.00 FEET; THENCE ALONG A LINE WHICH IS PARALLEL WITH AND 20.00 FEET WESTERLY AT RIGHT ANGLES FROM SAID SOUTHERLY PROLONGATION OF THE CENTER LINE OF LA BONITA DRIVE, SOUTH 04°42'33" EAST 400.25 FEET TO THE BEGINNING OF A TANGENT 275.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHERLY ALONG SAID CURVE 366.08 FEET THROUGH AN ANGLE OF 76°16'20" THENCE SOUTH 0°43'27" EAST 277.84 FEET, THENCE NORTH 89°16'33" EAST 362.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 89°16'33" WEST 37.00 FEET; THENCE SOUTH 0°43'27" EAST 130.00 FEET TO THE BEGINNING OF A TANGENT 130.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 204.20 FEET THROUGH AN ANGLE OF 90°00'; THENCE TANGENT TO SAID CURVE SOUTH 89°16'33" WEST 390.00 FEET; THENCE SOUTH 0°43'27" EAST 280.00 FEET; THENCE NORTH 89°16'33" EAST 270.00 FEET TO THE BEGINNING OF A TANGENT 130.00 FOOT RADIUS CURVE, CONCAVE WESTERLY; THENCE SOUTHEASTERLY, SOUTHERLY AND SOUTHWESTERLY

# LEGAL DESCRIPTION
(continued)

ALONG SAID CURVE 408.41 FEET THROUGH AN ANGLE OF 180°00'; THENCE TANGENT TO SAID CURVE SOUTH 89°16'33" WEST 365.00 FEET; THENCE SOUTH 0°43'27" EAST 145.00 FEET; THENCE SOUTH 51°05'50" EAST 505.00 FEET MORE OR LESS TO A POINT OF INTERSECTION WITH THE 494.4 FOOT CONTOUR LINE AS ESTABLISHED WHEN THE SURFACE OF THAT CERTAIN BODY OF WATER KNOWN AS LAKE SAN MARCOS IS LEVEL WITH THE SPILLWAY CREST OF THAT CERTAIN DAM CONSTRUCTED ACROSS AND IN SAN MARCOS CREEK AND KNOWN TO THE STATE OF CALIFORNIA DEPARTMENT OF WATER RESOURCES AS SAN MARCOS DAM, STATE NO. 848, SAID 494.4 FOOT CONTOUR LINE BEING FURTHER QUALIFIED AS A HORIZONTAL PLANE 494.4 FEET ABOVE SEA LEVEL, THE TERM "SEA DESIGNATING THAT CERTAIN DATUM PLANE OR POINT WHICH IS 564.07 FEET VERTICALLY BELOW CERTAIN BENCH MARK CONSISTING OF A STANDARD UNITED STATES COASTAL AND GEODETIC SURVEY DISK STAMPED "L 302 1935" AND SET IN THE TOP OF A CONCRETE POST LOCATED 30.00 FEET RIGHT OF STATION 57 PLUS 85 OF SAN DIEGO COUNTY ROAD SURVEY NO. 454; THENCE SOUTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE WESTERLY END OF THE UPSTREAM FACE OF SAID SAN MARCOS DAM; THENCE EASTERLY ALONG THE UPSTREAM FACE OF SAID SAN MARCOS DAM AND SAID 494.4 FOOT CONTOUR LINE TO THE EASTERLY END OF SAID DAM AT ITS INTERSECTION WITH SAID 494.4 FOOT CONTOUR LINE; THENCE NORTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT NO. 606 OF LAKE SAN MARCOS UNIT NO. 7, ACCORDING TO MAP THEREOF NO. 5958, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE SOUTH 46°45'00" EAST ALONG SAID NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT NO. 606, A DISTANCE OF 22 FEET MORE OR LESS, TO THE MOST WESTERLY CORNER OF SAID LOT NO. 606; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 7 AS FOLLOWS:

NORTH 43°15' EAST 94.95 FEET; NORTH 76°38'25" EAST 617.94 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.02 FEET TO THE BEGINNING OF A TANGENT 163.50 FOOT RADIUS CURVE, CONCAVE EASTERLY; THENCE NORTHWESTERLY, NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE AND THE EASTERLY EXTENSION THEREOF 513.65 FEET THROUGH AN ANGLE OF 180°00'; THENCE TANGENT TO SAID CURVE NORTH 76°38'25" EAST 5.02 FEET TO THE MOST WESTERLY CORNER OF LOT 530 OF LAKE SAN MARCOS UNIT NO. 6, ACCORDING TO MAP NO. 5551, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 6 AS FOLLOWS:

NORTH 76°38'25" EAST 465.00 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.02 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE EASTERLY, HAVING A RADIUS OF 163.50 FEET; NORTHWESTERLY, NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE 513.65 FEET THROUGH AN ANGLE OF 180°00' AND TANGENT TO SAID CURVE NORTH 76°38'25" EAST 35.00 FEET TO THE NORTHWESTERLY CORNER OF LOT 445 OF LAKE SAN MARCOS UNIT NO. 5, ACCORDING TO MAP THEREOF NO. 5447, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 5 AS FOLLOWS:

## LEGAL DESCRIPTION
### (continued)

NORTH 76°38'25" EAST 435.00 FEET; NORTH 13°21'35" WEST 158.00 FEET; SOUTH 76°38'25" WEST 270.00 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE NORTHEASTERLY HAVING A RADIUS OF 163.50 FEET; AND NORTHWESTERLY ALONG SAID CURVE 198.57 FEET THROUGH AN ANGLE OF 69°35' TO THE MOST SOUTHERLY CORNER OF LOT 362 OF LAKE SAN MARCOS UNIT NO. 4, ACCORDING TO MAP THEREOF NO. 5338, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY OF SAID UNIT NO. 4 AS FOLLOWS:

CONTINUING NORTHERLY AND NORTHEASTERLY ALONG THE EXTENSION OF THE ABOVE DESCRIBED 163.50 FOOT RADIUS CURVE 315.09 FEET THROUGH AN ANGLE OF 110°25'; TANGENT TO SAID CURVE NORTH 76°38'25" EAST 270.00 FEET; AN NORTH 13°21'35" WEST 167.03 FEET TO THE MOST SOUTHERLY CORNER OF LOT 105 OF LAKE SAN MARCOS UNIT NO. 1 ACCORDING TO MAP NO. 5137, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE ALONG THE BOUNDARY SAID UNIT NO. 1 AS FOLLOWS:

NORTH 13°21'35" WEST 85.57 FEET; NORTH 36°21'35" EAST 65.69 FEET; SOUTH 53°38'25" EAST 90.00 FEET TO A POINT ON A 50.00 FOOT RADIUS CURVE, CONCAVE EASTERLY, THE TANGENT OF SAID CURVE BEARING NORTH 0°30'35" WEST TO SAID POINT; NORTHERLY ALONG SAID CURVE 32.17 FEET THROUGH AN ANGLE OF 36°52'10"; AND NORTH 53°38'25" WEST 330.00 FEET TO THE MOST WESTERLY CORNER OF LOT 173 OF SAID LAKE SAN MARCOS UNIT NO. 1; THENCE ALONG THE SOUTHWESTERLY PROLONGATION OF THE NORTHERLY LINE OF SAID LOT 173 SOUTH 36°21'35" WEST 185.91 FEET TO THE BEGINNING OF A TANGENT 411.52 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 290.69 FEET THROUGH AN ANGLE OF 40°28'20" TO THE BEGINNING OF REVERSED 350.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY; THENCE SOUTHWESTERLY ALONG SAID CURVE 163.66 FEET THROUGH AN ANGLE OF 23°16'06"; THENCE SOUTH 51°06'00" WEST 30.14 FEET; THENCE SOUTH 31°22'03" WEST 160.00 FEET; THENCE SOUTH 0°43'27" EAST 400.00 FEET TO THE TRUE POINT OF BEGINNING.
EXCEPTING THEREFROM THAT PORTION DESCRIBED IN CERTIFICATE OF COMPLIANCE RECORDED DECEMBER 13, 1979 AS FILE NO. 79-522804 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITH LAKE SAN MARCOS VILLAGE, ACCORDING TO MAP THEREOF NO. 8742, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY DECEMBER 16, 1977.


PARCEL F: INTENTIONALLY OMITTED


PARCEL G: (221-510-57)


LOT 606 OF LAKE SAN MARCOS UNIT NO. 7, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 5958, RECORDED SEPTEMBER 13, 1967 IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY.

## LEGAL DESCRIPTION
(continued)

PARCEL H:  INTENTIONALLY OMITTED

PARCEL I:  INTENTIONALLY OMITTED

PARCEL J:  INTENTIONALLY OMITTED

PARCEL K:  INTENTIONALLY OMITTED

PARCEL L:  INTENTIONALLY OMITTED

PARCEL M:  INTENTIONALLY OMITTED

PARCEL N:  INTENTIONALLY OMITTED

PARCEL O: (221-240-01)

LOT 173 OF LAKE SAN MARCOS UNIT NO. 1 IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 5137 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY MARCH 5, 1963.

PARCEL PI: (222-030-30, 56 AND 44, 222-440-15)

ALL THAT PORTION OF THE EAST ONE-HALF OF SECTION 20, THE NORTHWEST ONE-QUARTER OF SECTION 21, AND THE NORTHEAST ONE-QUARTER OF THE NORTHEAST ONE-QUARTER OF SECTION 29, TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO GOVERNMENT PLAT THEREOF, TOGETHER WITH A PORTION OF LOT 8, COUNTY OF SAN DIEGO TRACT NO. 3730, ACCORDING TO MAP THEREOF NO. 9090 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND CERTIFICATE OF CORRECTION RECORDED October 25, 1979.AS INSTRUMENT NO. 79-449143, DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST NORTHERLY CORNER OF SAID LOT 8, SAID CORNER BEING A POINT IN THE SOUTHEASTERLY LINE OF LA PLAZA DRIVE, 56.00 FEET WIDE, AS SAME IS SHOWN ON SAID MAP NO. 9090; THENCE SOUTH 26°02'59" WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 8 A DISTANCE OF 539.04 FEET TO AN ANGLE POINT THEREIN AND/OR THE TRUE POINT OF BEGINNING;

# LEGAL DESCRIPTION
## (continued)

THENCE CONTINUING SOUTH 26°02'59" WEST ALONG THE SOUTHWESTERLY PROLONGATION OF SAID NORTHWESTERLY LINE A DISTANCE OF 472.64 FEET TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 8; THENCE SOUTH 54°49'09" EAST ALONG SAID SOUTHERLY LINE OF LOT 8 A DISTANCE OF 201.28 FEET TO AN ANGLE POINT THEREIN AND/OR A POINT IN THE LINE COMMON TO SAID SECTIONS 20 AND 21; THENCE SOUTH 00°40'41" EAST ALONG SAID LINE COMMON TO SECTIONS 20 AND 21A DISTANCE OF 1988.94 FEET TO THE SOUTHERLY TERMINUS THEREOF, SAID SOUTHERLY TERMINUS ALSO BEING THE CORNER COMMON TO SAID SECTIONS 20, 21 AND 29, AND SECTION 28, TOWNSHIP 12 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN; THENCE SOUTH 00°41'01" EAST ALONG THE EAST LINE OF SAID SECTION 29 A DISTANCE OF 267.31 FEET; THENCE SOUTH 89°17'59" WEST 320.37 FEET; THENCE NORTH 19°38'10" WEST 297.43 FEET TO A POINT IN THE LINE COMMON TO SAID SECTIONS 20 AND 29; THENCE NORTH 2°15'00" WEST 1073.02 FEET, THENCE NORTH 35°10'29" WEST 385.37 FEET; THENCE NORTH 23°54'18" WEST 202.36 FEET; THENCE NORTH 7°24'19" WEST 380.17 FEET; THENCE NORTH 13°29'45" EAST 411.36 FEET; THENCE NORTH 24°52'49" WEST 331.34 FEET TO THE SOUTHEAST CORNER OF LOT 14 OF LAKE SAN MARCOS SHORES ACCORDING TO MAP THEREOF NO. 8206 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE ALONG THE EASTERLY LINE OF SAID LOT 14 FOLLOWING ITS VARIOUS COURSES NORTH 16°22'43" EAST 64.30 FEET (RECORDED NORTH 16°23'21" EAST PER MAP NO. 8206); NORTH 27°04'43" WEST 52.60 FEET (RECORDED NORTH 27°04'05" EAST 52.65 FEET PER MAP NO. 8206); NORTH 60°22'58" EAST 63.00 FEET (RECORDED NORTH 60°23'36" EAST 62.99 FEET PER MAP NO. 8206);NORTH 15°00'51" EAST, 261.92 FEET (RECORDED NORTH 15°01'29" EAST PER MAP NO. 8206); NORTH 23°45'56" EAST 112.72 FEET (RECORDED NORTH 23°46'38" EAST 112.68 FEET PER MAP NO. 8206); NORTH 36°55'43" EAST 256.14 FEET (RECORDED NORTH 36°56'04" EAST 258.18 FEET PER MAP NO. 8206); NORTH 16°35'51" EAST 147.79 FEET (RECORDED NORTH 16°36'27" EAST 147.44 FEET PER MA.:) NO. 8206); THENCE LEAVING SAID EASTERLY LINE OF LOT 14, SOUTH 51°05'50" EAST 25.00 FEET MORE OR LESS TO A POINT OF INTERSECTION WITH THE 494.4 FOOT CONTOUR LINE AS ESTABLISHED THE SURFACE OF THAT CERTAIN BODY OF WATER KNOWN AS LAKE SAN MARCOS IS LEVEL WITH THE SPILLWAY CREST OF THAT CERTAIN DAM CONSTRUCTED ACROSS AND IN SAN MARCOS CREEK AND KNOWN TO THE STATE OF CALIFORNIA DEPARTMENT OF WATER RESOURCES AS SAN MARCOS DAM, STATE NO. 848, SAID 494.4 FOOT CONTOUR

# LEGAL DESCRIPTION
### (continued)

LINE BEING FURTHER QUALIFIED AS A HORIZONTAL PLANE 494.4 FEET ABOVE SEA LEVEL, THE TERM "SEA LEVEL" DESIGNATING THAT CERTAIN DATUM PLANE OR A POINT WHICH IS 564.07 FEET VERTICALLY BELOW CERTAIN BENCH MARK CONSISTING OF A STANDARD UNITED STATES COAST AND GEODETIC SURVEY DISK STAMPED "L 302 1935" AND SET IN THE TOP OF A CONCRETE POST LOCATED 30.00 FEET RIGHT OF STATION 57+85 OF SAN DIEGO COUNTY ROAD SURVEY NO. 45; THENCE SOUTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE EAST-WEST CENTER ONE OF SAID SECTION 20; THENCE SOUTH 89°37'17" EAST ALONG SAID EAST-WEST CENTER SECTION LINE 292.00 FEET, MORE OR LESS TO A POINT OF INTERSECTION WITH SAID 494.4 FOOT CONTOUR LINE; THENCE NORTHERLY ALONG SAID 494.4 FOOT CONTOUR LINE THROUGH ITS VARIOUS MEANDERING COURSES TO THE POINT OF INTERSECTION OF SAID 494.4 FOOT CONTOUR LINE WITH THE NORTHWESTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF LOT 606 OF LAKE SAN MARCOS UNIT NO. 7 ACCORDING TO MAP THEREOF NO. 5958 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE SOUTH 46°45'00" EAST ALONG SAID NORTHWESTERLY PROLONGATION 25.00 FEET, MORE OR LESS, TO THE MOST WESTERLY CORNER OF SAID LOT 606 AND/OR THE MOST NORTHERLY CORNER OF LOT 1 OF LAKESHORE EAST ACCORDING TO MAP THEREOF NO. 8500 FILED IN THE OFFICE OF SAID COUNTY RECORDER; THENCE ALONG THE WESTERLY BOUNDARY OF SAID LAKESHORE EAST, FOLLOWING ITS VARIOUS COURSES SOUTH 17°15'00" WEST 249.00 FEET (RECORDED NORTH 17°10'46" EAST 249.34 PER MAP NO. 8500); SOUTH 29°49'43" WEST 137.05 FEET (RECORDED NORTH 29°51'23" EAST PER MAP NO. 8500); SOUTH 26°00'00" WEST 225.83 FEET (RECORDED NORTH 26°01'40" EAST PER MAP NO. 8500); SOUTH 11°56'32" WEST 140.75 FEET (RECORDED NORTH 11°58'12" EAST PER MAP NO. 8500); SOUTH 18°34'32" WEST 199.74 FEET (RECORDED NORTH 18°36'12" EAST PER MAP NO. 8500) THE MOST WESTERLY POINT IN SAID BOUNDARY OF LAKESHORE EAST AND/OR AN ANGLE POINT IN THE NORTHWESTERLY BOUNDARY OF SAID LOT 8 COUNTY OF SAN DIEGO TRACT NO. 3730; THENCE CONTINUING ALONG SAID BOUNDARY OF LAKESHORE EAST AND/OR SAID BOUNDARY OF LOT 8, FOLLOWING THEIR VARIOUS COURSES, SOUTH 37°38'52" EAST 128.00 FEET (RECORDED NORTH 37°37'12" WEST PER MAP NO. 8500); SOUTH 89°38'52" EAST 65.00 FEET (RECORDED NORTH 89°37'12" WEST PER MAP NO. 8500);NORTH 68°06'22" EAST 103.26 FEET (RECORDED NORTH 68°08'02" EAST PER MAP NO. 8500) TO THE TRUE POINT OF BEGINNING. ALSO DESCRIBED AS PARCEL "B" ON CERTIFICATE OF COMPLIANCE RECORDED DECEMBER 13, 1979 AS INSTRUMENT NO. 79-522804, OFFICIAL RECORDS.

TOGETHER WITH THAT LAND DESCRIBED IN THE DEED FROM CHARLES MCMORRIS AND THEODORA M. MCMORRIS TO CITIZENS DEVELOPMENT CORPORATION RECORDED FEBRUARY 1, 2007 AS INSTRUMENT NO. 71354 OF OFFICIAL RECORDS.


AND ALSO


TOGETHER WITH THAT LAND DESCRIBED IN THE DEED FROM ROBERT KAHN AND SHARON KAY INGALLS AS SUCCESSOR TRUSTEES OF THE FALCON TRUST DATED OCTOBER 28, 1999 TO CITIZENS DEVELOPMENT CORPORATION RECORDED DECEMBER 23, 2008 AS INSTRUMENT NO. 2008-649777.

# LEGAL DESCRIPTION
### (continued)

EXCEPTING THEREFROM

THAT LAND DESCRIBED IN THE DEED FROM CITIZENS DEVELOPMENT CORPORATION TO CHARLES MCMORRIS & THEODORA MCMORRIS, HUSBAND AND WIFE AS JOINT TENANTS RECORDED FEBRUARY 1, 2007 AS INSTRUMENT NO. 2007-71353.

AND ALSO EXCEPTING THEREFROM

THAT LAND DESCRIBED IN THE DEED FROM CITIZENS DEVELOPMENT CORPORATION TO ROBERT KAHN AND SHARON KAY INGALLS SUCCESSOR TRUSTEES OF THE FALCON TRUST DATED OCTOBER 28, 1999 RECORDED DECEMBER 23, 2008 AS INSTRUMENT NO. 2008-649776 OF OFFICIAL RECORDS.

NOTE: SAID LAND ALSO DESCRIBED AS PARCEL B OF CERTIFICATE OF COMPLIANCE RECORDED MARCH 6, 2008 AS INSTRUMENT NO. 2008-118490.

PARCEL P2:

AN EASEMENT FOR ROAD PURPOSES OVER AND ACROSS THAT PORTION OF SAID LOT8 OF COUNTY OF SAN DIEGO TRACT NO. 3730 IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9090 AS FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 24, 1979 DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID LOT 8, SAID CORNER BEING A POINT IN THE SOUTHWESTERLY LINE OF LA PLAZA DRIVE, 56.00 FEET WIDE, AS SAME IS SHOWN ON SALE MAP NO. 9090; THENCE SOUTH 26°02'59" WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 8 AND ITS SOUTHWESTERLY PROLONGATION A DISTANCE OF 568.90 FEET; THENCE NORTH 68°06'22" EAST 29.68 FEET TO A POINT IN A LINE PARALLEL WITH AND DISTANT SOUTHEASTERLY 20.00 FEET MEASURED AT RIGHT ANGLES FROM SAID NORTHWESTERLY LINE OF SAID LOT 8 AND ITS SOUTHWESTERLY PROLONGATION; THENCE NORTH 26°02'59" EAST ALONG SAID PARALLEL LINE A DISTANCE OF 541.46 FEET TO A POINT IN SAID SOUTHWESTERLY LINE OF LA PLAZA DRIVE; THENCE NORTHWESTERLY ALONG SAID SOUTHWESTERLY LINE OF LA PLAZA DRIVE AND/OR NORTHEASTERLY LINE OF SAID LOT 8 ALONG THE ARC OF A CURVE, CONCAVE TO THE NORTHEAST WITH A RADIUS OF 253.00 FEET FROM AN INITIAL TANGENT THAT BEARS NORTH 51°32'19" WEST THROUGH A CENTRAL ANGLE OF 4°41'06" A DISTANCE OF 20.69 FEET TO THE POINT OF BEGINNING.

PARCEL Q: INTENTIONALLY OMITTED.

**EXHIBIT 2**

**CSD 1001A** [11/15/04]
Name, Address, Telephone No. & I.D. No.

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

CITIZENS DEVELOPMENT CORP.

Debtor.

BANKRUPTCY NO. 10-15142-LT11

Date of Hearing: September 23, 2013
Time of Hearing: 9:30 a.m.
Name of Judge: Hon. Laura S. Taylor

# ORDER ON
## DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __2__ with exhibits, if any, for a total of __2__ pages, is granted. Motion/Application Docket Entry No. _____

//

//

//

//

//

//

DATED: _____

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

Levene, Neale, Bender, Yoo & Brill L.L.P.
(Firm name)

By: /s/ Krikor J. Meshefejian
Attorney for ☑ Movant ☐ Respondent

CSD 1001A

CSD 1001A [11/15/04] (Page 2)

ORDER ON DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR

DEBTOR: CITIZENS DEVELOPMENT CORP.                                    CASE NO: 10-15142-LT11

A hearing was held on September 23, 2013 at 9:30 a.m. in above-captioned Bankruptcy Court, before the Honorable Laura S. Taylor, for the Court to consider the motion (the "Motion") filed by Citizens Development Corp., Chapter 11 debtor and debtor in possession herein (the "Debtor"), for the entry of an order authorizing the Debtor to obtain post-petition financing from LSM Lender, LLC (the "Settlement Loan").  Appearances at the hearing were made as set forth on the record of the Court. The Court, having read and considered the Motion, hereby orders as follows:

1. The Motion is hereby approved and granted in its entirety.

2. The Debtor is hereby authorized to enter into the Settlement Loan transaction in accordance with the terms of the loan documents attached hereto collectively as Exhibit "1".

3.  The "Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing" attached hereto in Exhibit 1 and described in the Settlement Agreement as the "LSM DOT" shall be a valid, perfected, enforceable, first priority lien against said collateral described therein superior to any and all other creditors, excepting therefrom only real estate taxes properly of record on the collateral described in the LSM DOT.

4. In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), necessary for the Debtor's performance under the Settlement Loan documents.

IT IS SO ORDERED.

CSD 1001A

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described as **DEBTOR'S OMNIBUS MOTION FOR: (1) ORDER APPROVING SETTLEMENT AGREEMENT WITH PAC WEST TD FUND II, L.P. PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND (2) ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c) and (d); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PINO VITTI IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On **August 26, 2013**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Susan Z. Ayers     szamos@yahoo.com
- Ron Bender    rb@lnbyb.com
- Judith A. Descalso     jad@jdescalso.com
- Jill Dickerson     jdickerson@lgclawoffice.com
- Philip J Giacinti     pjg@procopio.com, caw@procopio.com;laj@procopio.com
- Susan Gruskin     sgruskin@hemar-rousso.com
- Raffi Khatchadourian    raffi@hemar-rousso.com
- Dean T. Kirby     dkirby@kirbymac.com, jrigg@kirbymac.com;gsparks@kirbymac.com;rrobinson@kirbymac.com;jlewin@kirbymac.com
- Bernard Kornberg    bjk@severson.com
- James M. McNair    mcnairlaw@gmail.com
- Christina Melhouse    cm@ldplaw.com
- Krikor Meshefejian    kjm@lnbyb.com
- Christopher W. Olmsted     cwo@barkerolmsted.com
- Andrew S. Pauly    apauly@gpfm.com
- Richard J. Pekin    rpekin@foxjohns.com
- Maria K. Pum     mpum@hcesq.com, qnguyen@hcesq.com
- Wayne R. Terry     wterry@hemar-rousso.com, mgranzow@hemar-rousso.com
- Kelly Ann Mai Khanh Tran     ktran@mkblaw.com, ssandbeck@mkblaw.com
- United States Trustee     ustp.region15@usdoj.gov
- Victor A. Vilaplana     vavilaplana@foley.com
- Dennis J. Wickham    wickham@scmv.com, christensen@scmv.com
- Alan Steven Wolf    wdk@wolffirm.com;faxes@wolffirm.com

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**:  On **August 26, 2013**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service and/or by attorney service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*[X] Service list served by U.S. Mail attached*

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 26, 2013**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 26, 2013 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**In re CITIZENS DEVELOPMENT CORP.**
Case No. 10-15142-LT11
20 Largest Unsecured
Secured Creditors
Requests for Special Notice

**II.  SERVED VIA U.S. MAIL:**

Acushnet/Titlest
P.O. Box 88112
Chicago, IL 60695-1112

Bank Of America
P.O. Box 15731
Wilmington, DE 19886-5731

Liz Tuquero
Bank Of The West
180 Montgomery Street, 25th Floor
San Franisco, CA 94279-8006

CA State Board Of Equalization
P.O. Box 942879
Sacramento, CA 94279-8006

California Credit Union
701 N. Brand Blvd, 3rd Floor
Glendale, CA 91203

Dept Of Water Resources
P.O. Box 942836
Sacramento, CA 94236-0001

El Toreador Property Group/J. Serhan
c/o Wm. J. Caldarelli, Esq.
550 West. C Street, Ste 700
San Diego, CA 92101

Foley & Lardner LLP
555 South Flower Street
Suite 3500
Los Angeles, CA 90071-2411

German American Capital Corporation
60 Wall Street, 10th Floor
New York, NY 10005

Haineslaw
Laurence F. Haines, Esq.
139 East Third Ave., Ste. #108
Escondido, CA 92025

Jani-King Of California, Inc.-SDO
File 749318
Los Angeles, CA 90074-9318

Kitabayashi Design Studio
1227 J Street
San Diego, CA 92101

Ron Frazar
P.O. Box 4970
Whitefish, MT 59937

San Diego County Treasurer-
Tax Collector
P. O. Box 129009
San Diego, CA 92112

Steve I. Kastner, Esq.
101 West Broadway, #1700
San Diego, CA 92101

Tig Global LLC
14851 Collections Center Dr
Chicago, IL 60693

Vallecitos Water District
201 Vallecitos De Oro
San Marcos, CA 92069-1453

Vanorsdale Insurance Services
4909 Murphy Canyon Rd Ste 510
San Diego, CA 92123

Worldwide Payment Systems S.A.
Torneo, 72
41002 Sevilla. **SPAIN**

Mainfest Funding Services
PO Box 790448
St. Louis, MO 63179

Eric Dean
The Wolf Firm
2955 Main Street, 2nd Floor
Irvine, CA  92614

William J. Caldrelli
Mazzorella Caldarelli LLP
550 West C Street
Suite 700
San Diego, CA  92101

Mulvaney, Kahan & Barry LLP
Everett G. Barry, Jr., Esq.
Kelly Ann Tran, Esq.
401 West A Street, 17th Floor
San Diego, CA  92101-1010

Gordon L. Gerson/Jana M. Beck
Gerson Law Firm APC
9255 Towne Centre Drive, Suite 300
San Diego, CA 92121

4750

Chris Dinofia
1710 S. El Camino Real, #E204
Encinitas, CA  92024

Citicapital Commercial Corp.
3950 Regent Blvd.
Irving TX 75063-0000

Citicapital Commercial Leasing Corp.
3950 Regent Blvd.
Irving TX 75063-0000

D&A Semi-Annual Mortgage Fund Iii
10251 Vista Sorrento Parkway
Suite 200
San Diego CA 92121-0000

Javier Serhan
530 B Street
Suite 1530
San Diego CA 91311-0000

Pacific West Realty Group
2550 5th Avenue, Suite 529
San Diego CA 92103-0000

Telesis / Business Partners
Commercial Loan Dept
9301 Winnetka Ave
Chatsworth CA 92101-0000

US Bancorp
P.O. Box 580337
Minneapolis MN 55458-0000

Office of The United States Trustee
402 W. Broadway, Suite 600
San Diego, CA 92101-8511

Dan McAllister
Treasurer- Tax Collector
Attn: Bankruptcy Desk
1600 Pacific Hwy, Room 162
San Diego, CA 92101

_Counsel for German American Capital Corp._
Andrew S. Pauly, Esq.
Greenwald, Pauly, Foster & Miller
1299 Ocean Avenue, Suite 400
Santa Monica, CA 90401

4750